UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMAZON.COM SERVICES, LLC,<br><br>               Petitioner,<br><br>   v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE,<br><br>              Respondent. | Case No.<br><br>**PETITIONER'S MOTION FOR A PROTECTIVE ORDER PERTAINING TO SUBPOENAS ISSUED UNDER THE FINANCIAL INSTITUTIONS REFORM, RECOVERY AND ENFORCEMENT ACT**<br><br>**NOTED ON MOTION CALENDAR: JANUARY 6, 2023**<br><br>*ORAL ARGUMENT REQUESTED* |

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................ 1

BACKGROUND .................................................................................................................. 3

    I.     OSHA And SDNY Serve Amazon With Dozens Of Subpoenas. ............................. 3

    II.    Amazon Tries To Negotiate A Reasonable Scope and Schedule. .............................. 4

    III.   SDNY Repeatedly Threatens To Compel Compliance With Its Impossible Schedule. ................................................................................................................... 5

ARGUMENT ...................................................................................................................... 10

CONCLUSION ................................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A & R Body Specialty & Collision Works, Inc. v. Progressive Cas. Ins. Co.*,
 2013 WL 6044333 (D. Conn. Nov. 14, 2013) ...........................................................................10

*Fin. Pac. Leasing Inc. v. RVI Am. Ins. Co.*,
 2022 WL 4120168 (W.D. Wash. Sept. 9, 2022) ........................................................................10

*Pulphus v. Compass Health*,
 2022 WL 474081 (W.D. Wash. Feb. 16, 2022) .........................................................................11

*Seattle Times Co. v. Rhinehart*,
 467 U.S. 20 (1984) ....................................................................................................................10

*Strickland Real Est. Holdings, LLC v. Texaco, Inc.*,
 2016 WL 7243711 (W.D. Wash. Dec. 15, 2016) ......................................................................10

*United States v. McCoy*,
 954 F.2d 1000 (5th Cir. 1992) ...................................................................................................10

*United States v. Tenn. Walking Horse Breeders' & Exhibitors' Ass'n*,
 727 F. App'x 119 (6th Cir. 2018) ..............................................................................................10

*Wagafe v. Trump*,
 2019 WL 954980 (W.D. Wash. Feb. 27, 2019) .........................................................................10

*William A. Gross Const. Assocs. v. Am. Mfrs. Mut. Ins. Co.*,
 256 F.R.D. 134 (S.D.N.Y. 2009) .................................................................................................8

**Statutes**

12 U.S.C. § 1833a(h) ..........................................................................................................................5

**Rules**

Fed. R. Civ. P. 26(c)(1)(D) ..............................................................................................................10

Fed. R. Civ. P. 30(a)(2) ...................................................................................................................10

**Other Authorities**

The Sedona Conference, *Commentary on Achieving Quality in the E-Discovery Process* Sedona Conf. J. 265, 293 (2014) .......................................................................................8

## INTRODUCTION

Amazon.com Services, LLC ("Amazon") respectfully requests that this Court resolve an ongoing dispute over the deadline for production of electronically stored information ("ESI")—mainly electronic messages—in investigations being conducted by the U.S. Attorney's Office for the Southern District of New York ("SDNY") and the U.S. Department of Labor Occupational Safety and Health Administration ("OSHA"). The government—and SDNY in particular—has been unreasonably demanding production of ESI from 12 custodians with hundreds of thousands of documents to review by January 6, 2023. Amazon has agreed to produce the extensive ESI that SDNY seeks but cannot reasonably complete that production, all diligence, and privilege logs as SDNY demands until June.

OSHA claims to be investigating alleged safety risks at Amazon's facilities and has represented that it is close to concluding its investigation. SDNY stretches to assert jurisdiction under the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA") by claiming to be investigating whether Amazon misrepresented its safety record to financial institutions. Both investigations are expansive and complex, and have involved a host of unrealistic and uncoordinated information demands made over the course of several months. Now, after Amazon has consistently made every reasonable effort to accommodate the government's demands, SDNY threatens to file a Christmas Eve motion to enforce its January "deadline." Amazon has told SDNY that this arbitrary deadline is infeasible in light of the broad scope of the ESI the government seeks and the burdensome way in which the government has insisted Amazon complete its review. SDNY has refused to budge from its untenable deadline. Amazon has been reluctant to seek court intervention but now has no choice but to seek judicial relief.

SDNY claims the rapid pace of its investigation is warranted to address alleged safety risks in Amazon's warehouses, but it has refused to identify or provide specific details about these supposed risks so that Amazon can address them. Nor could SDNY remedy any purported safety risks by invoking FIRREA, a financial regulatory statute with no connection to workplace safety. Presumably recognizing that this position is untenable, SDNY has tried to justify its accelerated ESI

production schedule by citing OSHA's six-month statute of limitations although FIRREA carries a 10-year limitations period. But OSHA has rejected Amazon's offer to toll its limitations period, and OSHA's extensive investigation is set to conclude in a few weeks. OSHA does not typically seek ESI in its investigations, much less the volume sought here by SDNY, and has apparently been able to adequately complete its work without this ESI. In fact, OSHA has already held partial "closing conferences" for each of its inspections, issuing and publicizing in a press release 14 citations for record-keeping violations that OSHA designated "other-than-serious" and assessing $29,008 in penalties. There is no reason why SDNY—with a statute of limitations of ten years—should be able to impose an unrealistic production schedule on Amazon based on the time sensitivities of OSHA's nearly-completed investigation.

Unfortunately, because of the agencies' escalating demands for electronically stored emails and other electronic communications, the parties have reached an impasse on the schedule for review and production. SDNY demands that Amazon review ESI of more than 235,000 documents from 12 custodians. SDNY has also demanded that Amazon conduct its ESI review in an order based on what ESI was provided by each custodian, rather than reviewing ESI in subject-matter order—the customary and far more efficient process for large-scale ESI reviews. And SDNY arbitrarily asks that all of this review—including reviewing for privilege and privilege logging—be completed by January 6—squeezing into six weeks an entire discovery schedule that would normally occur over many months.

As Amazon has repeatedly explained to SDNY, Amazon has and will comply with the government's requests in order to dispel the unfounded concerns motivating these investigations. But the demand for ESI is only one piece of the government's expansive investigations, which has sought voluminous information dispersed across a large number of facilities and required a massive and unduly burdensome effort by Amazon to identify, collect, and review hundreds of thousands of documents and produce 22 witnesses for depositions out of 33 requested within only 13 weeks. Amazon nonetheless agreed to devote enormous resources to ESI review and production, while continuing to respond to the government's other requests. But SDNY continually expresses dissatisfaction with the pace of production, all while adding even more demands. Now, Amazon

believes all parties would benefit from a judicially imposed schedule permitting Amazon to complete its productions on a reasonable timeframe, without jeopardizing its rights, and without the need to continually redeploy resources to meet the government's constantly changing demands and priorities. The government might wish for Amazon to inefficiently review ESI by custodian, disregard its right to protect privileged information, and produce hundreds of thousands of pages of ESI materials in the span of a few weeks—but that is not reasonable, even with the Herculean efforts Amazon has undertaken.

Amazon therefore respectfully asks this Court to direct, pursuant to 18 U.S.C. § 1968(h) and 12 U.S.C. § 1833a(g)(2), that Amazon be permitted to complete its rolling productions of ESI in response to SDNY's FIRREA subpoenas on or before June 30, 2023 and that depositions of any and all custodians of that ESI commence after that production is complete and conclude no later than August 31, 2023.[1]

## BACKGROUND
### I. OSHA And SDNY Serve Amazon With Dozens Of Subpoenas.

Beginning on July 18, 2022, OSHA began a series of unannounced inspections at six Amazon facilities across five states. OSHA examined the facilities, interviewed dozens of employees, and requested that Amazon produce documents. On July 19 and 20, OSHA served Amazon with three subpoenas broadly requesting documents concerning certain facilities, their employees, training, and injury rates, going back five years. Days later on August 2, 2022, OSHA served six more subpoenas. The August 2 subpoenas superseded the July 19 and 20 subpoenas and also covered a five-year period, despite OSHA's six-month statute of limitations, and sought extensive information about Amazon facilities in five states, as well as over 900 "sibling facilities" nationwide. OSHA re-inspected several facilities in September and October, conducting over 100 additional interviews. *See* Ex. 15 (11/23/2022 Amazon Email) at 32, 36.

On August 19, SDNY served on Amazon an administrative subpoena pursuant to FIRREA. *See* Ex. 5 (FIRREA Subpoena). That subpoena included 30 document requests and requested

---

[1] Of course, Amazon will continue to meet and confer with DOJ on any responsiveness and privilege issues for documents reviewed pursuant to the ESI protocol, and reserves the right to seek a revision of the proposed schedule, if necessary.

duplicative productions of all documents requested by OSHA. Appendix A summarizes all of the subpoenas the government has served on Amazon thus far. *See also* Ex. 1 (12/22/22) at 2 n.2.

Amazon has steadily and diligently worked to respond to these numerous subpoenas and has produced approximately 40,000 documents (comprising over 160,000 pages) to date, and presented 19 witnesses for deposition, with more taking place each week.

## II. Amazon Tries To Negotiate A Reasonable Scope and Schedule.

While Amazon worked to respond to SDNY's and OSHA's numerous subpoenas, Amazon repeatedly expressed concerns about the scope of the requests and asked the agencies to clarify the information sought and collaborate on a production schedule. Amazon explained, for instance, that the requests carried a nationwide scope, covered nearly 100 topics per facility, and required production from hundreds of facilities over a decade. *See* Ex. 2 (8/15/22 GDC Ltr.) at 1. Amazon repeatedly proposed compromises to narrow the most expansive requests and was forced to ask for more time to satisfy the subpoenas' extraordinarily burdensome scope. *See* Ex. 7 (8/23/22 GDC Ltr.) at 3. At all times, though, Amazon made clear that it was cooperating with the subpoenas and working to get OSHA and SDNY the requested information as quickly as possible.

It has all been to no avail. Rather than recognizing Amazon's extraordinary efforts to comply with the subpoenas—including spending millions of dollars and devoting thousands of attorney and Amazon employee hours—SDNY in particular has repeatedly threatened Amazon with motions to compel productions on impossible timeframes. On September 13, for instance, SDNY demanded Amazon produce 20 "priority" items *that same week* and threatened to move to enforce. Ex. 8 (9/13/22 SDNY Ltr.) at 1–2; Ex. 9 (9/21/2022 GDC Letter) at 3.

To justify its unreasonable timing demands, SDNY insisted it was "critical that the Government receive[] these documents in an expeditious manner in light of the OSH Act's six-month statute of limitations." Ex. 8 (9/13/2022 SDNY Ltr.) at 1. Some of the government's priority requests, however, had nothing to do with employee safety. One such request, for example, demanded the production of information about the terms of any historical transactions "between Amazon and a Relevant Financial Institution." Ex. 5 (FIRREA Subpoena) at 5. Notably, FIRREA has a *10-year* statute of limitations. 12 U.S.C. § 1833a(h).

Even as negotiations were ongoing, Amazon continued to make large document productions. *See* Appendix B. On September 2, 2022, Amazon informed the government that it had substantially completed production for 13 of OSHA's requests, planned to begin productions responsive to 16 additional OSHA document requests, and would continue to produce documents responsive to 35 other OSHA requests. On September 13, however, SDNY sought to impose a new production schedule requiring *immediate* production of certain documents and productions responsive to 57 extensive document requests within weeks. *See* Ex. 8 (9/13/22 SDNY Ltr.) at 9.

In making these expansive and ever-increasing requests, SDNY acknowledged its production timelines "set[] an investigatory pace that is faster than most other major fraud investigations." Ex. 9 (9/21/22 SDNY Ltr.) at 1. That was an understatement; those timelines were patently unreasonable. Indeed, SDNY appears to have had trouble keeping pace with its own timing. For example, in an October 11 email, SDNY provided deposition subpoenas (including one noticed to occur in four business days) *that had been signed the prior week*, on October 7.

In responding to SDNY's many demands, Amazon agreed to produce the requested information. But Amazon also made clear that SDNY's timeframe was unworkable, particularly given the ever-changing nature of SDNY's requests.

### III. SDNY Repeatedly Threatens To Compel Compliance With Its Impossible Schedule.

Despite Amazon's good faith efforts and compliance, on October 27, 2022, SDNY expressed purported "concerns about the state of Amazon's production . . . in advance of a potential motion to enforce." Ex. 13 (10/27/22 SDNY Ltr.) at 1. SDNY asserted that Amazon had not produced enough documents, selectively noting that Amazon had produced "only" 2,500 documents in response to all but six of OSHA's requests and ignoring that Amazon had (1) produced more than 30,000 documents gathered from facilities across five different states, (2) requested clarification of the supposed violations the government is investigating to help focus Amazon's production efforts, and (3) consistently offered reasonable compromises relative to the government's unworkable production timeline. *See* Ex. 9 (9/21/22 GDC Ltr.) at 3-12. SDNY has also repeatedly undercounted and underestimated the information Amazon produced. *See* Ex. 14 (11/7/2022 Amazon Ltr.) at 14-15; *see also* Ex. 6 (SDNY 8/11/22 Email) at 5.

On November 7, 2022, Amazon explained that for the past month, it had been reviewing data from more than 900 facilities over a five-year period and was continuing to review documents and produce in good faith, as well as to identify and prepare witnesses for the depositions the government had demanded. Ex. 14 (11/7/2022 Amazon Letter) at 2. Amazon further catalogued the "counterproductive" and "ceaseless and ever-shifting nature of the government's demands." *Id*. at 3. Amazon recounted at least six clear examples of how the government had frustrated any meaningful order in its investigations—including by serving new demands on Amazon within days or hours after agreeing to anticipated schedules for production or depositions. *See id.* at 3-5.

Yet the government continued to demand more. By early November, SDNY demanded that Amazon produce 45,000 more electronic communications (just five weeks after first identifying proposed custodians and before the parties had even agreed upon ESI search terms) and produce employees for 19 depositions—including of four high-level Amazon executives—before the end of the month. *See* Ex. 14 (11/7/22 GDC Ltr.) at 7. Then, on November 17, SDNY served *another* FIRREA subpoena—this one with a deadline of just four business days. Ex. 12 (Second FIRREA Subpoena) at 1. SDNY also demanded that Amazon commit to "review and produce responsive emails and other voluminous ESI" for four custodians by December 2 (within nine business days) and to produce four witnesses for depositions during the week of December 5. Ex. 15 (11/18/22 Stewart Email) at 46-47.

On November 21, SDNY *again* threatened to move to compel compliance with unspecified subpoenas "[a]bsent significant change in Amazon's position" and demanded a response by November 23, the day before Thanksgiving. Ex. 15 (11/21/22 SDNY Email) at 41. SDNY also made new requests for the production of witnesses, ESI, and documents in December 2022. *Id*. at 45.

Amazon responded on November 23, again noting that it was working diligently to cooperate with and respond to the government's requests as quickly as possible. Amazon noted it had mobilized substantial resources to swiftly produce approximately 35,000 documents in response to 350 of the 561 total document requests, present 14 employees for depositions, provide oral and written proffers to SDNY's Rule 30(b)(6) topics, and facilitate hundreds of interviews during onsite OSHA inspections. Ex. 15 (11/23/2022 Amazon Email) at 32. Despite the significant ongoing

PETITIONER'S MOTION FOR PROTECTIVE ORDER

6

DAVIS WRIGHT TREMAINE LLP
920 FIFTH AVE, SUITE 3300
SEATTLE, WA 98104

burden, Amazon nonetheless agreed to a schedule that "mirror[ed]" the government's demands from its November 21 email, minimally adjusting a few dates for certain requests. *Id*. Amazon also offered to toll OSHA's statute of limitations for a reasonable period to grant OSHA time to complete its pre-citation investigation, but OSHA declined this offer.

On November 27, SDNY again expanded its demands. Rather than agreeing as it had proposed the prior week that the parties could "avoid motion practice" if Amazon satisfied six requests, SDNY now made *eight* more demands. *Id.* (11/27/2922 SDNY Email). SDNY demanded that Amazon provide dates for all remaining corporate deponents and that all ESI be reviewed, processed, and produced by January 6. *Id.* On November 30, Amazon responded that it was "not refusing to respond to *any* of the government's requests or refusing to do so promptly." Ex. 15 (Nov. 30 email) at 29. And it noted SDNY's November 27 threat to litigate was "(at least) the fifth time that SDNY has threatened litigation if Amazon does not comply with . . . an impractical timeline." *Id.* at 22. Amazon then largely *acceded* to SDNY's demands, causing the government to note on December 2 that it "appreciate[d]" the "movement" from Amazon and the "progress" made. Ex. 15 (Dec. 2 SDNY Email) at 20.

Specifically, Amazon agreed to substantially complete its production of non-privileged ESI with respect to four priority deponents "on or around" December 9, 2022 (SDNY had requested production by December 6)—including by devoting even more resources to ESI review. Amazon also committed to complete *all* ESI review "as promptly as feasible" but stated that it could not guarantee final production by January 6 as SDNY demanded. As Amazon explained, "[t]here are simply too many variables, including a more concrete understanding of the average pace of review for the ESI at issue here, the rate of responsiveness . . . , and privilege or other review issues." Ex. 15 (Nov. 30 GDC Email) at 24. Amazon noted that it was "currently committing over *250 attorney hours a day* towards review, on average." *Id.* Since Thanksgiving, Amazon has had a team of more than 80 lawyers devoting hundreds of hours of time each day to ESI review. In just four full weeks of ESI review, Amazon has already first-level reviewed 117,000 documents (29,750

documents per week). It has second-level reviewed 26,000 documents (6,500 documents per week). And it has produced 5,000 non-privileged ESI documents.[2]

Despite this massive effort, SDNY's unreasonable demands did not cease. On December 9, 2022, Amazon informed SDNY that Amazon was making a significant production but would need more time to substantially complete production as to the four priority deponents. Ex. 15 (Dec. 9, 2022 GDC Email) at 10. Amazon stated it anticipated substantial completion by December 15, with privileged ESI subject to a further review and logging. *Id.* But SDNY wrote back that it was "concerned about the small number of documents you anticipate producing, approximately 3,500 documents, compared to more than 15,000 unique documents" for all four custodians. Ex. 15 (Dec. 14, 2022 SDNY Email) at 7. Amazon responded the next day that it would be producing approximately 5,500 documents for the four priority custodians, with approximately 6,400 documents having been identified for privilege logging, a process that was ongoing. Ex. 15 (Dec. 15, 2022 GDC Email) at 4. Amazon offered to re-direct resources to complete the privilege review more quickly if the government so desired, but noted doing so would slow down Amazon's efforts to produce materials in response to the government's many other requests. *Id.* at 5. SDNY responded that day, noting it was "very troubled" about the number of documents Amazon was producing and made a series of new demands, requiring Amazon to divert more attorney time to correspondence rather than review. *Id.* at 2.

On December 19, 2022, SDNY wrote Amazon regarding ESI review and production. SDNY again threatened to move to compel if Amazon did not agree to complete ESI production *and* privilege logs a full seven days in advance of each custodian's deposition in January. Ex. 10 (Dec. 19, 2022 SDNY Ltr.) at 1. It claimed it needed to receive ESI "expeditiously in light of our

---

[2] Amazon is using a standard, two-level review of the ESI materials, with a final layer of quality control. That is commonplace and best practice. *See* The Sedona Conference, *Commentary on Achieving Quality in the E-Discovery Process*, 15 Sedona Conf. J. 265, 293 (2014) (describing multi-tiered quality control review as standard); *see also William A. Gross Const. Assocs. v. Am. Mfrs. Mut. Ins. Co.*, 256 F.R.D. 134, 136 (S.D.N.Y. 2009) ("[W]here counsel are using keyword searches for retrieval of ESI, they at a minimum must carefully craft the appropriate keywords, with input from the ESI's custodians as to the words and abbreviations they use, and the proposed methodology must be quality control tested to assure accuracy in retrieval and elimination of 'false positives.'"). In addition, Amazon is assessing and logging privileged documents. This is a time-intensive process that simply cannot be completed in the six weeks the government demands, given the number of documents to be reviewed.

concerns about the safety of Amazon's workers and the OSH Act's six-month statute of limitations."[3] Satisfying the government's ESI demands (in addition to other ongoing investigatory activities) would require Amazon to complete a *full* review of over 230,000 ESI documents, produce responsive documents, investigate privileged documents to confirm they are privileged or produce them if not, create a privilege log, meet and confer regarding any disputes, and simultaneously offer those same witnesses for deposition. Thus, the government is trying to shoehorn what would typically be at least a year-long (or more) discovery process into six weeks. That is plainly unreasonable and unduly burdensome.

In response, Amazon informed SDNY that the only way it could conceivably comply with the government's demands would be to "rush the production of documents—including . . . not *ever* reviewing family documents for privilege or sensitive material—at the risk of producing non-responsive and/or privileged materials" and to "forego proper due diligence during the privilege log process." Ex. 1. By demanding that Amazon complete a full review of over 230,000 documents in six weeks, SDNY is effectively asking Amazon to review and produce ESI at a pace of 5,500 documents each calendar day—all while complying with the government's other extensive demands. Even if Amazon completely disregarded best practices and responsible ESI review protocols, and instead looked at each document only once for a period of 60 seconds, meeting the government's production schedule would still require more than 685 attorneys working eight hours per day. By contrast, Amazon's already expedited process, under which over 80 reviewers are reviewing thousands of documents each day, will take approximately 5 months to complete the production of all ESI and another month to complete final privilege log due diligence. Under any reasonable schedule, then, Amazon requires an additional six months to complete its ESI production, including a final privilege log. SDNY's other objections to Amazon's production protocols regarding supposedly low responsiveness and a high number of potentially privileged materials are also meritless, as Amazon has explained in its correspondence to SDNY. *See generally* Ex. 1.

---

[3] SDNY's letter ignored Amazon had agreed to *toll* that limitations period—an offer that OSHA declined without explanation. Ex. 15 at 18 (Dec. 2, 2022 OSHA Email). SDNY also ignored the fact that OSHA *already* issued 11 "other than serious" citations to Amazon for purported record-keeping violations, proposing $29,008 in penalties. Ex. 11 (OSHA News Release).

As a result, Amazon informed SDNY that it had no choice but to ask a court to set a reasonable schedule for Amazon's continued compliance. Amazon should not be forced to jeopardize its rights by producing ESI on timeframes that would forego privilege and responsiveness review. Amazon now ask the Court to set an ESI production deadline of June 30, 2023.

## ARGUMENT

Amazon seeks this Court's assistance in setting a reasonable schedule for complying with the government's subpoenas. Amazon should not jeopardize its rights by reviewing and producing ESI on timeframes that cannot be achieved without foregoing privilege and responsiveness review.

This Court has jurisdiction under 12 U.S.C. § 1833a(g)(2), which allows a subpoenaed party to move for an order "modifying or setting aside" the subpoena, 18 U.S.C. § 1968(h).[4] The Court also has discretion to apply the Federal Rules of Civil Procedure in the context of an administrative subpoena. *See, e.g.*, *United States v. Tenn. Walking Horse Breeders' & Exhibitors' Ass'n*, 727 F. App'x 119, 124–25 (6th Cir. 2018); *United States v. McCoy*, 954 F.2d 1000, 1004 (5th Cir. 1992).[5] "The Court has broad discretion to control discovery." *Wagafe v. Trump*, 2019 WL 954980, at *3 (W.D. Wash. Feb. 27, 2019). That discretion includes the power to "forbid[ ] inquiry into certain matters, or limit[ ] the scope of disclosure or discovery to certain matters. . . ," Fed. R. Civ. P. 26(c)(1)(D), and the power "to decide when a protective order is appropriate and what degree of protection is required," *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). A protective order is appropriate where "needed to prevent 'annoyance, embarrassment, oppression, or undue burden or expense.'" *Fin. Pac. Leasing Inc. v. RVI Am. Ins. Co.*, 2022 WL 4120168, at *2–3 (W.D. Wash. Sept. 9, 2022). A key means of alleviating the burden of extensive discovery requests is setting a reasonable production schedule. *See Strickland Real Est. Holdings, LLC v. Texaco, Inc.*, 2016 WL 7243711, at *4 (W.D. Wash. Dec. 15, 2016); *A & R Body Specialty & Collision Works, Inc. v. Progressive Cas. Ins. Co.*, 2013 WL 6044333, at *12 (D. Conn. Nov. 14, 2013). That is all Amazon seeks here.

---

[4] Pursuant to 18 U.S.C. § 1968(h), "[t]he time allowed for compliance with the demand in whole or in part as deemed proper and ordered by the court shall not run during the pendency of such petition in the court."

[5] Indeed, SDNY invoked the Federal Rules by serving a subpoena for corporate testimony under Rule 30(b)(6). Ex. 5 (FIRREA Subpoena) at Rider C.

OSHA and SDNY have served more than 560 document requests demanding that Amazon produce documents and electronic communications spread across more than 900 company facilities comprising a potential document universe numbering millions of documents and potentially tens of millions of pages. Meanwhile, Amazon is preparing employees to testify for 33 depositions—far more than the default 10 that the Federal Rules provide in civil litigation. *See* Fed. R. Civ. P. 30(a)(2). Amazon has undertaken a massive effort to produce responsive documents and present witnesses for depositions as quickly as possible. *See* Ex. 9 (9/21/22 SDNY Ltr.) at 4. In five months, Amazon has produced more than 40,000 documents and presented 19 witnesses for deposition. It has engaged with the government repeatedly to understand the government's priorities and the nature of its investigation, and tailored document productions accordingly. Amazon will continue to do so. Yet SDNY has continued to demand a faster and unduly burdensome production schedule while shifting its priorities and broadening its demands.

Amazon now asks, pursuant to 18 U.S.C. § 1968(h), that this Court direct that Amazon be permitted to complete the review and production of all ESI responsive to the FIRREA subpoenas by June 30, 2023, with depositions set to follow thereafter and commence by August 31, 2023. Such a schedule complies with customary and best practices and is most efficient, allowing for effective preparation and depositions and avoiding any potential recall of witnesses. Amazon fully intends to cooperate, subject to its objections about which the government and Amazon continue to meet and confer. To do so, however, Amazon needs more time.

Giving Amazon additional time to complete its review and production to ESI in response to SDNY's requests imposes no meaningful hardship on the government. *See Pulphus v. Compass Health*, 2022 WL 474081, at *3 (W.D. Wash. Feb. 16, 2022). Amazon is already providing SDNY with thousands of documents, deposition testimony, and even attorney proffers on SDNY's Rule 30(b)(6) topics. In fact, Amazon has been producing so many documents that the government has had to delay in downloading—let alone reviewing—them, underscoring that the government's claims of urgency are unsupported. Multiple times, the government has failed to download Amazon's productions for more than a week—and has even had to ask Amazon to resend production

download links because the links expired after the full week in which they were available but never used. Ex. 8 (11/17/22 DOJ Email) at 2; Ex. 9 (11/17/22 DOJ Email) at 2.

SDNY has never justified the basis for its timeline; it has simply asserted, without explanation, that Amazon must produce documents and witnesses on an accelerated timeline given "concerns about the safety of hundreds of thousands of workers and OSHA's six-month statute of limitations." Ex. 15 (11/17/22 SDNY Email) at 52. Indeed, SDNY has no authority to do so under FIRREA and is cramming an investigation that would typically last years into a matter of months. *See, e.g.*, *United States v. UBS Securities, LLC, et al.*, Case No. 1:18-cv-06369 (E.D.N.Y.) (six-year investigation for FIRREA claims); DOJ Press Release No. 14-884 (August 21, 2014) (settlement of FIRREA claims after two-year investigation). SDNY has refused to identify any specific safety concerns and OSHA has refused to consider Amazon's offer to toll its limitations period. Indeed, SDNY's allegation that it needs documents quickly due to OSHA's six-month limitations period is belied by the fact that OSHA has completed a significant portion of its investigation and issued "other-than-serious" recordkeeping citations to Amazon, with $29,008 in proposed fines. *See* Ex. 11 (OSHA Press Release), stating it expects to conclude its investigation in a few weeks.

Amazon will continue to regularly produce documents and ESI to OSHA and SDNY between now and the deadline it proposes. Amazon merely seeks a relatively modest extension of the time to review and produce responsive documents—an extension that ultimately will serve the government's interest in receiving complete and organized productions.

## CONCLUSION

Amazon respectfully requests a protective order directing production of all ESI on or before June 30, 2023 and that depositions shall occur thereafter and no later than August 31, 2023.

Dated: December 22, 2022
Seattle, Washington

Respectfully submitted,

/s/ *James E. Howard*
James E. Howard, WSBA# 37259
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
Telephone: +1 206.757.8336
Facsimile: +1 206.757.7336
Email: jimhoward@dwt.com

GIBSON, DUNN & CRUTCHER LLP

Jason C. Schwartz (*pro hac vice* forthcoming)
Ryan C. Stewart (*pro hac vice* forthcoming)
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Tel.: (202) 955-8500
jschwartz@gibsondunn.com

Zainab N. Ahmad (*pro hac vice* forthcoming)
Mylan L. Denerstein (*pro hac vice* forthcoming)
200 Park Avenue
New York, NY 10166
Tel.: (212) 351-4000
zahmad@gibsondunn.com
mdenerstein@gibsondunn.com

*Attorneys for Petitioner Amazon.com Services, LLC*

# APPENDIX A

## OSHA Subpoenas and Requests By Date Issued

| Dates of Subpoena/Requests | Number and Nature of Requests | Changes Made to Prior Requests |
|---|---|---|
| August 2, 2022 | OSHA subpoena containing 86 separate document requests for Facility 1 | |
| August 2, 2022 | OSHA subpoena containing 86 separate document requests for Facility 2 | |
| August 2, 2022 | OSHA subpoena containing 86 separate document requests for Facility 3 | Superseded prior OSHA subpoena issued on July 19, 2022 |
| August 2, 2022 | OSHA subpoena containing 86 separate document requests for Facility 4 | |
| August 2, 2022 | OSHA subpoena containing 86 separate document requests for Facility 5 | Superseded prior OSHA subpoena issued on July 19, 2022 |
| August 2, 2022 | OSHA subpoena containing 88 separate document requests for Facility 6 | Superseded prior OSHA subpoena issued on July 19, 2022 |
| August 2, 2022 | Medical Access Order for Facility 1 | Supplemented August 2nd OSHA subpoena with request for any and all medical records going back five years |
| August 2, 2022 | Medical Access Order for Facility 2 | Supplemented August 2nd OSHA subpoena with request for any and all medical records going back five years |
| August 2, 2022 | Medical Access Order for Facility 3 | Supplemented August 2nd OSHA subpoena with request for any and all medical records going back five years |
| August 2, 2022 | Medical Access Order for Facility 4 | Supplemented August 2nd OSHA subpoena with request for any and all medical records going back five years |
| August 2, 2022 | Medical Access Order for Facility 5 | Supplemented August 2nd OSHA subpoena with request for any and all medical records going back five years |
| August 2, 2022 | Medical Access Order for Facility 6 | Supplemented August 2nd OSHA subpoena with request for any and all medical records going back five years |
| August 11, 2022 | OSHA subpoena containing two additional document requests related to COVID-19 policies at Facility 5 | Supplemented August 2nd OSHA subpoena to Facility 5 |

| | | |
|---|---|---|
| September 23, 2022 | Deposition subpoena issued by OSHA to Employee 1 | |
| September 23, 2022 | Deposition subpoena issued by OSHA to Employee 2 | |
| September 23, 2022 | Deposition subpoena issued by OSHA to Employee 3 | |
| September 23, 2022 | Deposition subpoena issued by OSHA to Employee 4 | |
| September 23, 2022 | Deposition subpoena issued by OSHA to Employee 5 | |
| September 23, 2022 | Deposition subpoena issued by OSHA to Employee 6 | |
| September 23, 2022 | Deposition subpoena issued by OSHA to Employee 7 | |
| October 31, 2022 | Deposition subpoena issued by OSHA to Employee 8 | |
| October 31, 2022 | Deposition subpoena issued by OSHA to Employee 9 | |
| October 31, 2022 | Deposition subpoena issued by OSHA to Employee 10 | |
| October 31, 2022 | Deposition subpoena issued by OSHA to Employee 11 | |
| October 31, 2022 | Deposition subpoena issued by OSHA to Employee 12 | |
| October 31, 2022 | Deposition subpoena issued by OSHA to Employee 13 | |
| October 31, 2022 | Deposition subpoena issued by OSHA to Employee 14 | |
| October 31, 2022 | Deposition subpoena issued by OSHA to Employee 15 | |
| October 31, 2022 | Deposition subpoena issued by OSHA to Employee 16 | |
| November 2, 2022 | Deposition subpoena issued by OSHA to Employee 17 | |
| November 2, 2022 | Deposition subpoena issued by OSHA to Employee 18 | |
| November 2, 2022 | Deposition subpoena issued by OSHA to Employee 19 | |
| November 2, 2022 | Deposition subpoena issued by OSHA to Employee 20 | |
| November 2, 2022 | Deposition subpoena issued by OSHA for corporate designee testimony | |
| November 17, 2022 | OSHA subpoena adding five new document requests for Facility 5 | Supplemented August 2nd OSHA subpoena to Facility 5 |

| | | |
|---|---|---|
| November 22, 2022 | Deposition subpoena issued by OSHA to Employee 21 | |
| November 22, 2022 | Deposition subpoena issued by OSHA to Employee 22 | |
| December 7, 2022 | Deposition subpoena issued by OSHA to Employee 23 | |
| December 7, 2022 | Deposition subpoena issued by OSHA to Employee 24 | |
| December 7, 2022 | Deposition subpoena issued by OSHA to Employee 25 | |

**SDNY Subpoenas and Requests By Date Issued**

| | | |
|---|---|---|
| August 2, 2022 | Informal set of 14 interrogatories and 14 document requests from SDNY | |
| August 19, 2022 | SDNY subpoena containing 30 separate document requests | Superseded SDNY's informal August 2nd requests, duplicated in part OSHA's document requests, and added 16 new document requests beyond what OSHA had already requested |
| August 19, 2022 | SDNY's subpoena for Rule 30(b)(6) deposition | |
| October 11, 2022 | Deposition subpoena issued by SDNY to Employee 1 | |
| October 11, 2022 | Deposition subpoena issued by SDNY to Employee 2 | |
| October 11, 2022 | Deposition subpoena issued by SDNY to Employee 3 | |
| October 11, 2022 | Deposition subpoena issued by SDNY to Employee 4 | |
| October 11, 2022 | Deposition subpoena issued by SDNY to Employee 5 | |
| October 11, 2022 | Deposition subpoena issued by SDNY to Employee 6 | |
| October 11, 2022 | Deposition subpoena issued by SDNY to Employee 7 | |
| October 11, 2022 | Deposition subpoena issued by SDNY to Employee 8 | |
| October 11, 2022 | Deposition subpoena issued by SDNY to Employee 9 | |
| November 3, 2022 | Deposition subpoena issued by SDNY to Employee 10 | |
| November 17, 2022 | SDNY subpoena adding five | Supplemented August 19 SDNY |

|  | new document requests | subpoena |

**APPENDIX B**

| Dates of Production | Documents Produced To Date | Subpoena Requests Addressed |
|---|---|---|
| 6 productions (July 29–August 19, 2022) | Approximately 6,000 documents, totaling 9,572 pages. | OSHA subpoena requests 1, 4, 5, 7, 8, 10, 11, 12, 16, 40, 41, 43, 44, 45, 46, 47, 49, 50, 58, 74, 75, 76, 77 |
| 2 productions (August 24–September 2, 2022) | Approximately 12,250 documents (inclusive of productions up to August 19, 2022), totaling 21,459 pages. | OSHA subpoena requests 1, 2, 4, 7, 8, 10, 11, 13, 14, 15, 16, 21, 22, 25, 26, 28, 30, 31, 36, 37, 40, 41, 43, 44, 45, 46, 47, 54, 57, 58, 74, 75, 76, 77<br><br>SDNY subpoena requests 4, 5, 7, 8, 10, 17, 18, 27 |
| 3 productions (September 9–21, 2022) | Approximately 12,560 documents (inclusive of productions up to September 2, 2022), totaling 24,500 pages. | OSHA subpoena requests 4, 8, 11, 13, 14, 23, 25, 26, 37, 43, 45, 47, 54, 56, 58, 59, 62, 63, 66, 67, 74, 77<br><br>SDNY subpoena requests 3, 4, 5, 7, 8, 10, 14, 18, 20, 22, 24, 27 |
| 10 productions (September 30–November 25, 2022) | Approximately 35,308 documents (inclusive of productions up to September 21, 2022) totaling 144,111 pages. | OSHA subpoena requests 3, 6, 13, 14, 18, 19, 20, 24, 26, 27, 28, 30, 34, 37, 42, 43, 45, 47, 48, 51, 53, 55, 56, 58, 59, 62, 63, 64, 66, 67, 73, 74, 75, 77<br><br>SDNY subpoena requests 3, 8, 9, 14, 20, 23, 24, 25 |
| 5 productions (December 2–16) | Approximately 39,514 documents from all productions to date, totaling 160,478 pages | OSHA subpoena requests 6, 10, 14, 15, 19, 20, 26, 27, 28, 30, 53, 55, 61, 62, 64, 66, 69, 87<br><br>SDNY subpoena requests 3, 6, 8, 9, 12, 14, 21 |