1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

| | |
|---|---|
| Amazon.com Services, LLC,<br><br>*Petitioner*,<br><br>v.<br><br>United States Department of Justice,<br><br>*Respondent*. | **DECLARATION OF RYAN C. STEWART IN SUPPORT OF PETITIONER'S MOTION FOR A PROTECTIVE ORDER PERTAINING TO SUBPOENAS ISSUED UNDER THE FINANCIAL INSTITUTIONS REFORM, RECOVERY AND ENFORCEMENT ACT** |

I, Ryan C. Stewart, declare and state as follows:

1.     I am an attorney licensed to practice law in Washington, DC and have an application for *pro hac vice* admission forthcoming before this Court. I am Of Counsel at the law firm Gibson, Dunn & Crutcher LLP and counsel for the Petitioner Amazon.com Services, LLC. I have personal knowledge of the following facts and, if called as a witness, could and would competently testify thereto.

2.     I respectfully submit this Declaration in support of the Petitioner's Motion for a Protective Order.

DECLARATION IN SUPPORT OF
MOTION FOR PROTECTIVE ORDER

GIBSON, DUNN & CRUTCHER LLP
1050 CONNECTICUT AVENUE, NW
WASHINGTON, DC 20036

3.      Attached hereto as **Exhibit 1** is a true and correct redacted copy of a letter dated December 22, 2022 from Zainab Ahmad to Jeffrey Oestericher, Jacob Lillywhite, Dominika Tarczynska, Elizabeth J. Kim, and Adam Gitlin.[1]

4.      Attached hereto as **Exhibit 2** is a true and correct copy of a letter dated August 15, 2022 from Zainab Ahmad to Jacob Lillywhite, Daniel Hennefeld, and David Jaklevic.

5.      Attached hereto as **Exhibit 3** is a true and correct excerpted copy of an email dated November 17, 2022 from Kevil Gemmill to Ryan Stewart.

6.      Attached hereto as **Exhibit 4** is a true and correct excerpted copy of an email dated November 17, 2022 from David Jaklevic to Nikki McArthur.

7.      Attached hereto as **Exhibit 5** is a true and correct redacted copy of a subpoena issued by the Department of Justice to Amazon.com, Inc. under authority of Section 951 of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 on August 19, 2022 ("FIRREA").

8.      Attached hereto as **Exhibit 6** is a true and correct excerpted copy of an email dated August 11, 2022 from Jacob Lillywhite to multiple Gibson, Dunn & Crutcher LLP attorneys.

9.      Attached hereto as **Exhibit 7** is a true and correct copy of a letter dated August 23, 2022 from Zainab Ahmad to Jacob Lillywhite, Daniel Hennefeld, and David Jaklevic.

10.     Attached hereto as **Exhibit 8** is a true and correct redacted copy of a letter dated September 13, 2022 from Jacob Lillywhite, Dominika Tarczynska, and Elizabeth J. Kim to Zainab Ahmad.

11.     Attached hereto as **Exhibit 9** is a true and correct redacted copy of a letter dated September 21, 2022 from Zainab Ahmad to Jacob Lillywhite, Daniel Hennefeld, and David Jaklevic.

---

[1] Consistent with Local Civil Rule 5(g)(1)(B), Amazon has redacted sensitive information from these exhibits that the Court need not consider. Should the Court wish to see this redacted information, Amazon will meet and confer with Respondent and submit unredacted exhibits under seal with an accompanying motion to seal.

DECLARATION IN SUPPORT OF
MOTION FOR PROTECTIVE ORDER

GIBSON, DUNN & CRUTCHER LLP
1050 CONNECTICUT AVENUE, NW
WASHINGTON, DC 20036

12.     Attached hereto as **Exhibit 10** is a true and correct redacted copy of a letter dated December 19, 2022 from Jacob Lillywhite to Zainab Ahmad.

13.     Attached hereto as **Exhibit 11** is a true and correct copy of a news release issued on December 16, 2022 by the United States Department of Labor.

14.     Attached hereto as **Exhibit 12** is a true and correct copy of the second subpoena issued to Amazon.com, Inc. by the United States Department of Justice pursuant to FIRREA on November 17, 2022.

15.     Attached hereto as **Exhibit 13** is a true and correct redacted copy of a letter dated October 27, 2022 from Jacob Lillywhite, Dominika Tarczynska, Elizabeth Kim, Jefferey Oestericher, and Adam Gitlin to Zainab Ahmad.

16.     Attached hereto as **Exhibit 14** is a true and correct redacted copy of a letter dated November 7, 2020 from Zainab Ahmad to Jefferey Oestericher, Jacob Lillywhite, Dominika Tarczynska, Elizabeth Kim, Adam Gitlin, Daniel Hennefeld, and David Jaklevic.

17.     Attached hereto as **Exhibit 15** is a true and correct redacted copy of an email chain dated between October 7, 2022 and December 15, 2022 between multiple United States Department of Justice attorneys and Gibson, Dunn & Crutcher LLP attorneys.

18.     Pursuant to Local Rule 26(c), counsel for Amazon has engaged in a good-faith meet and confer conference with counsel for Respondent in an effort to resolve the dispute without Court action.  Specifically, counsel for Amazon and counsel for Respondent met and conferred on November 10 and November 17, 2022, via telephone.  Mylan Denerstein and Zainab Ahmad led discussions on behalf of Amazon.  Dominika Tarczynska and Jacob Lillywhite, attorneys with the United States Attorney's Office for the Southern District of New York, led discussions on behalf of Respondent.  Dan Hennefeld led the discussion for the United States Department of Labor.  Other attorneys attended the meet and confer as well.  The parties also have exchanged numerous detailed

DECLARATION IN SUPPORT OF
MOTION FOR PROTECTIVE ORDER

GIBSON, DUNN & CRUTCHER LLP
1050 CONNECTICUT AVENUE, NW
WASHINGTON, DC 20036

1    letters and email correspondence regarding the production timelines that are the subject of Amazon's

2    motion, including letter correspondence on November 7, December 19, and December 22 and the

3    email correspondence attached hereto as **Exhibit 15.**

4         I declare under penalty of perjury that the foregoing is true and correct.

6    Dated: December 22, 2022

7    Tampa, FL.

8                                                             By:

9                                                                  Ryan C. Stewart

# Exhibit 1

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY  10166-0193
Tel 212.351.4000
www.gibsondunn.com

Zainab N. Ahmad
Direct: +1 212.351.2609
Fax: +1 212.817.9500
ZAhmad@gibsondunn.com

**CONFIDENTIAL TREATMENT REQUESTED**

December 22, 2022

<u>VIA EMAIL</u>

Jeffrey Oestericher
Jacob Lillywhite
Dominika Tarczynska
Elizabeth J. Kim
Adam Gitlin
Assistant U.S. Attorneys
U.S. Attorney's Office for the
Southern District of New York
86 Chambers Street
New York, NY 10007

  Re: <u>Amazon ESI Review and Production</u>

Counsel:

  We write in response to your December 19, 2022 letter regarding ESI review and production.  As detailed below, your letter mischaracterizes the record and continues the government's well-documented pattern in these investigations of moving the goalposts and then blaming Amazon for your own lack of clarity and coordination.  Now you claim Amazon has engaged in "obstructionist" behavior.  Ltr. at 1.  That language is inappropriate, and the accusation is false.

  Amazon has devoted substantial resources towards complying with the government's various subpoenas over the past four months.  As your December 19 letter admits, the scope of the documents and information requested by the government in this matter is extremely broad, including more than 560 document requests, many of which span Amazon's facilities nationwide, and 33 subpoenas for deposition testimony.[1]  As a result of Amazon's extensive

---

[1] On July 19 and 20, 2022, the U.S. Department of Labor Occupational Safety and Health Administration ("OSHA") served three subpoenas with respect to Amazon's DYO1, MCO2, and MDW8 facilities.  On August 2, OSHA served six new subpoenas (including three replacing the original July 2022 subpoenas) with respect to Amazon's ALB1, BOI2, DEN5, DYO1, MCO2, and MDW8 facilities.  Those subpoenas demanded responses to nearly 90 different document requests for each facility, as well as—for many of the requests—documents from approximately 900 so-called "Sibling Facilities" nationwide.  On August 11, OSHA issued another subpoena for the DYO1

Beijing · Brussels · Century City · Dallas · Denver · Dubai · Frankfurt · Hong Kong · Houston · London · Los Angeles · Munich
New York · Orange County · Palo Alto · Paris · San Francisco · São Paulo · Singapore · Washington, D.C.

**GIBSON DUNN**

Jacob Lillywhite
U.S. Department of Justice
December 22, 2022
Page 2

**CONFIDENTAL TREATMENT REQUESTED**

efforts to date, we have collected, reviewed, and produced nearly 40,000 documents (totaling over 160,000 pages).  Amazon has also been working diligently to schedule witnesses subpoenaed by OSHA for depositions.  Between September 23 and November 9, OSHA served Amazon with 27 subpoenas for testimony, including 25 current or former Amazon employees from the site, regional, and national levels and 2 Rule 30(b)(6) corporate designee subpoenas (with 11 topics each, excluding subparts).[2]  All but five of these witnesses (those jointly-noticed witnesses whose depositions SDNY has now tied to the full completion of ESI review and privilege logging) have either already been presented for testimony or are scheduled to provide testimony on or before January 13.  Specifically, 21 fact witnesses already have sat for deposition with OSHA and 3 more depositions (1 fact witness and 2

_____

facility with two document requests related to that facility's COVID-19 safety policies.  On August 19, the United States Attorney's Office for the Southern District of New York ("SDNY") issued a subpoena pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, 12 U.S.C. § 1833a ("FIRREA").  The FIRREA subpoena adds 30 more document requests to OSHA's demands, including requests seeking health and safety related documents encompassing an expanded geographic and temporal scope.  In total, these eight subpoenas include more than 560 document requests.  The FIRREA subpoena also noticed a Fed. R. Civ. P. 30(b)(6) deposition on nine topics, eight of which are focused on health and safety related information.  On November 17, OSHA and SDNY both issued "supplemental" subpoenas, each containing five additional document requests, several of which seek data and information from all Amazon facilities nationwide dating back five years.

[2] Specifically, OSHA subpoenaed or otherwise noticed the intent to depose witnesses on September 23 (7 witnesses, all noticed to appear within 17 business days), October 10 (5 witnesses, all demanded to appear within 19 business days), October 12 (4 witnesses, all noticed to appear within 13 business days), October 28 (1 witness and a corporate designee, all requested to appear within 14 business days), November 2 (5 witnesses, all of which were jointly noticed by SDNY, noticed to appear within 15 business days), November 3 (1 witness, requested to appear within 11 business days), and November 9 (2 witnesses and a corporate designee, requested to appear within 13 business days).

In addition to a Rule 30(b)(6) deposition subpoena with several topics, SDNY has subpoenaed 10 witnesses for deposition, 5 of which are jointly noticed (4 were jointly noticed by OSHA weeks later, shortly after Amazon made clear it would not be feasible to prioritize those depositions during the OSH Act's six-month statute of limitations period given OSHA's other deposition subpoenas).  Nine of the deposition subpoenas were served on October 11, with witnesses noticed to appear in just 15 business days and all 9 witnesses noticed to appear within the next 28 business days.  The tenth subpoena was served on November 3, with the witness noticed to appear in just 10 business days.

**GIBSON DUNN**

Jacob Lillywhite
U.S. Department of Justice
December 22, 2022
Page 3

**CONFIDENTAL TREATMENT REQUESTED**

corporate designee depositions, with multiple corporate designees) are scheduled for early January.[3]

In addition to document productions and depositions, Amazon has been working diligently to make its facilities and more than 100 non-management employees available to OSHA for additional inspection activities and interviews at five different sites, with each re-inspection lasting multiple days. Amazon has also provided information responsive to SDNY's Rule 30(b)(6) subpoena, including a detailed 127-page written proffer related to Topic A and a nearly two-hour-long oral proffer related to Topic C.

Amazon has been equally committed to ESI review. Amazon first received SDNY's ESI proposal on September 28. J. Lillywhite Sep. 28 Email. By November 17—in just seven weeks—Amazon not only collected and processed this voluminous ESI for review but also completed a series of meet and confer efforts with SDNY regarding ESI search terms for these custodians. While we maintained the search terms were still too broad, SDNY refused to further narrow them absent additional information that could only be provided by conducting the review. D. Tarczynska Nov. 14 Email; R. Stewart Nov. 18 Email (summarizing Nov. 17 meet and confer).

The resulting ESI review protocol was broad, totaling nearly 235,000 documents across 12 different custodians. In our various correspondence and during our meet and confers in November, we explained (repeatedly) that best practice, and the most efficient way, to conduct ESI review is on a subject-matter by subject-matter basis and that depositions should follow a complete document review. SDNY rejected these best practices because you wanted to move forward with all depositions (even those not "jointly" noticed by OSHA) no later than February 1 to meet your investigatory "deadlines." J. Lillywhite Dec. 2 Email. Your preference was to proceed with expedited ESI production on a custodian-by-custodian basis, with depositions proceeding simultaneously. We repeatedly explained that this approach was neither efficient nor practical. R. Stewart Nov. 14 Email (summarizing Nov. 10 meet and confer); R. Stewart Nov. 16 Email; R. Stewart Nov. 18 Email. We even explained that we anticipated our total ESI review time would be at least 25% slower if we proceeded in this inefficient manner. R. Stewart. Nov. 16 Email. But you insisted we proceed in the way that you wished, and you threatened to take Amazon to court on a motion to compel over Thanksgiving if we did not.

---

[3] Amazon also offered dates for the five jointly-noticed depositions in December and early January, but SDNY postponed the December depositions pending further ESI review and production.

**GIBSON DUNN**

Jacob Lillywhite
U.S. Department of Justice
December 22, 2022
Page 4

**CONFIDENTAL TREATMENT REQUESTED**

So we agreed to undertake ESI review in the inefficient manner you demanded and committed that: (1) we would upload the document "hits" and begin ESI review the week of Thanksgiving; (2) we would "conduct our ESI review on a custodian-by-custodian basis" starting with those custodians with the lowest volume of "hits"; (3) we would "devote additional resources towards ESI review"; (4) we would "substantially complete" the production of non-privileged ESI for the first four custodians "on or around December 9"; and (5) we would provide witness availability for deposition dates in December and January, to the extent feasible.  As your letter notes, we explicitly made no commitment to meet your January 6 "deadline" for the production of all ESI because we did not think that deadline was feasible.  Nor did we make (and SDNY did not demand) *any* commitments related to the completion of privilege logs or privilege log diligence in advance of any depositions.[4]

Amazon now has met those commitments.  We trained ESI reviewers and began ESI review on the day before Thanksgiving.  ESI review began on a full-time basis the Monday after Thanksgiving and has proceeded expeditiously ever since.  Since Thanksgiving, Amazon has had a team of more than 80 lawyers, devoting, on average, *hundreds* of hours of time *per day* to a robust ESI review process.  Consistent with best practices—and to ensure the protection of Amazon's rights—this process includes first level attorney review for relevancy and privilege and second level attorney review for responsiveness and privilege. Documents deemed responsive and non-privileged have been quality checked and produced. Documents containing clear indicia of privilege after second level review have been withheld pending privilege log due diligence.  As you have surely seen, the substantive review of these documents is also time consuming and complicated, including detailed and dense memoranda and correspondence that spans many years and multiple subject areas.

As a result of the thousands of attorney hours per week Amazon has devoted to ESI review, Amazon has completed a substantial volume of review in the four weeks since this process got underway.  Amazon has already first-level reviewed approximately 117,000 documents (29,250 documents per week).  We have second-level reviewed approximately 26,000 documents (6,500 documents per week).  And we have quality-checked and (as of tomorrow's production which is currently in processing will have) produced approximately 5,500 non-privileged ESI documents.

---

[4] As previously noted, Amazon's commitments were also made on the explicit understanding that no additional government requests would be added during this time.  However, OSHA did make additional requests, for interviews and documents, shortly afterwards.  R. Stewart December 16 Email.

**GIBSON DUNN**

Jacob Lillywhite
U.S. Department of Justice
December 22, 2022
Page 5

## CONFIDENTIAL TREATMENT REQUESTED

We have also now "substantially completed" the production of non-privileged ESI for each of the first four custodians and offered deposition dates for three of them in December. ████████████████ depositions were scheduled for December.[5]  Accordingly, we directed efforts to substantially complete production of their ESI first and did so on December 15, in the third week after ESI review began.

Nevertheless, the government postponed ████████████████ depositions because it now demands not the "substantial completion" of the production of non-privileged ESI in advance of depositions, but a *complete* production of *all* non-privileged ESI, a completed privilege log, and resolution of any ESI or privilege disputes at least seven days in advance of any depositions.  That is the orderly process we originally suggested, consistent with best practice, but that we were clear was not feasible on the expedited timeline you demanded.

What you are demanding—that (in addition to other investigatory activities that are ongoing) Amazon complete a *full* review of nearly 235,000 documents of ESI, production of non-privileged responsive documents, and a detailed privilege log, meet and confer regarding any ESI and privilege disputes, and simultaneously offer those same witnesses for deposition—is shoehorning what would typically be at least a year-long (or more) discovery process into six weeks.  That is not reasonable.

The case law SDNY itself has cited makes clear that this demand and schedule are untenable.  *See* J. Lillywhite Nov. 17 Email (citing *Fort Worth v. J.P. Morgan Chase Co.*, 297 F.R.D. 99, 114 (S.D.N.Y. 2013) (ESI was staged prior to depositions and reviewed "over the course of discovery in the litigation" which lasted a full calendar year) & *U.S. ex rel. Basson v. Omnicare*, 15 Civ. 4179, ECF No. 134-2 (Omnicare agreed to first-level review 24,000 ESI documents per week but made no commitments regarding second level review, privilege review, productions, or simultaneous depositions)).  It is also out of step with typical court schedules dealing with ESI discovery and the typical length of a FIRREA investigation.  *E.g., Brown v. Barnes & Noble, Inc.*, 474 F. Supp. 3d 637, 643 (S.D.N.Y. 2019) (ESI review and production, including privilege logs, completed in 8 months); *see also* R. Stewart Nov. 23 email (collecting examples of FIRREA investigations lasting multiple years).

The only way Amazon could conceivably comply with your demands would be to (1) rush the production of documents—including (as your prior correspondence suggests) not

---

[5] ████████ was not available in December.  ████████████ deposition was not scheduled for December because the government was not available on December 21 as offered.  Amazon will substantially complete the production of non-privileged ESI for ████████████ tomorrow.  The production is currently processing.

**GIBSON DUNN**

Jacob Lillywhite
U.S. Department of Justice
December 22, 2022
Page 6

**CONFIDENTAL TREATMENT REQUESTED**

*ever* reviewing family documents for privilege or otherwise—at the risk of producing non-responsive or privileged materials, and (2) forego proper due diligence during the privilege log process likely to result in the unnecessary production of privileged information or withholding of some non-privileged communications.  None of this is acceptable or consistent with Amazon's rights.

Nor are your demands for an unreasonable and uniquely accelerated schedule necessary.  OSHA has rejected our offer to discuss the tolling of its statute of limitations and has already issued citations.  SDNY's investigation is under FIRREA, a civil fraud statute with a 10-year statute of limitations and without any enforcement authority related to workplace safety.  The purported, but undefined, "concerns about the safety of Amazon's workers" is therefore not relevant to SDNY's case, and the "needs of the case" do not require Amazon to forego its right to review documents it provides to the government and protect its privileged material.

Given the government's continued and unreasonable demands,[6] we are left with no choice but to seek court relief and to ask a court to set a reasonable schedule for Amazon's continued compliance with these subpoenas.  Accordingly, concurrent with this letter, we are filing in federal court a motion for a protective order seeking a reasonable schedule for the production of ESI and privilege logs (to be completed on a rolling basis on or before June 30, 2023) and depositions (to be completed shortly thereafter).[7]  During the pendency of our motion we will continue to move forward expeditiously with ESI review and production so that this requested time frame remains feasible.

In light of the holiday, we are willing to stipulate to an extension to briefing deadlines if you would like.  And, of course, if the government withdraws its unreasonable demands and timeframe for ESI production and depositions, we would withdraw our motion.

---

[6] Your letter states you will file a motion to enforce or compel this week if Amazon does not meet your infeasible demands.  As you know from our prior correspondence, but to ensure our position regarding the venue for such a motion is clear, Amazon does not consent to a motion to enforce SDNY's FIRREA subpoenas in the Southern District of New York.

[7] This reasonable ESI schedule will also allow us sufficient time to hold meaningful meet and confers regarding any purported concerns you might have regarding privilege or responsiveness rates.  To the extent any meet and confer efforts result in additional document review that might necessitate an adjustment to the anticipated schedule for completing all ESI productions and privilege logs.

**GIBSON DUNN**

Jacob Lillywhite
U.S. Department of Justice
December 22, 2022
Page 7

<b>CONFIDENTAL TREATMENT REQUESTED</b>

Finally, below we set forth responses to the specific "concerns" and demands raised in your December 19 letter.  As you requested, we are available to meet and confer tomorrow between 1:30 and 3 pm ET regarding the issues set out in your letter.

### A.   Pace of Review

Your December 19 letter asserts that Amazon's pace of review is "alarming," claiming Amazon has only reviewed 12,500 documents in three weeks, which you calculate is less than 4,200 documents per week and amounts to 25 minutes per document.  Ltr. at 3-4. That is false.  The 12,500 figure you cite is not Amazon's total rate of review over the past three weeks.  Those are documents that we have produced (meaning they have been first-level reviewed, second-level reviewed, and quality checked) or withheld for privilege log diligence (meaning they have been first and second level reviewed).  As noted above, in just four weeks Amazon has first-level reviewed approximately 117,000 documents and second-level reviewed approximately 26,000 documents.  That is actually *faster* than the 20,000 documents per week you requested.  *See* J. Lillywhite November 23, 2022 Email.  It appears that you simply believe Amazon should produce documents after first-level review only (and that Amazon should produce all of their family documents/attachments without *ever* reviewing them).  That is the only way Amazon could have completed the review on the schedule you propose.  That is plainly contrary to best practice and would not adequately protect Amazon's right to protect privileged communications.

### B.   Privilege

Second, you contend the rate at which documents have been routed to privilege log review is "astonishing."  Ltr. at 2-3.  And your letter is littered with thinly veiled accusations that these documents are being withheld in bad faith.  That is, again, false.  As have we reiterated, these documents have been routed for privilege log diligence because they demonstrate clear indicia of privilege, meaning they are labeled privileged or are communications including Amazon in-house counsel.  Indeed, over 96.5% of these documents contain the word "privilege," the phrase "legal counsel" (as in "seeking legal counsel"), or include Amazon in-house counsel on their face.  As detailed above, we are of course willing—and have always intended—to complete a sufficiently detailed privilege log regarding each of these documents, following appropriate due diligence.  And we are happy to do so on a rolling basis, by custodian.  But we never agreed, and it is not possible, to complete that process in a matter of weeks.  Many documents require time-consuming follow up conversations with custodians to determine whether they (or any portions thereof) are, or are not, privileged.

**GIBSON DUNN**

Jacob Lillywhite
U.S. Department of Justice
December 22, 2022
Page 8

**CONFIDENTAL TREATMENT REQUESTED**

Indeed, it is particularly important that we conduct a thorough and diligent privilege review in light of the government's unfounded accusations that Amazon is making "baseless claims of privilege."  Ltr. at 3 (regarding ▮▮▮ 2016 ergonomic assessments.)  To be clear—and as demonstrated by the redacted request for proposal that ▮▮ produced to you in response to its third-party subpoena—that 2016 project was conducted at the direction and under the supervision of Amazon's Legal Department.  You claim you are "not aware of actual or reasonably anticipated litigation" concerning ergonomic issues, including in 2016.  But that project was initiated within months after Amazon received a Hazard Letter *from OSHA* in December 2015 (still publicly available here) that specifically related to ergonomics.  (We understand that no citations were ultimately issued.)  And, in any event, experts can assist in providing legal advice even if it is not also protected as attorney work product.  Those are separate and independent grounds for protection from disclosure.  We look forward to continue working with you regarding any potential privilege disputes on a reasonable schedule.

C.    **Responsiveness**

Finally, your letter argues that the responsive rate of each custodian's "hits" is "concerning[ly]" low.  Ltr. at 3 (contending that the first four custodians' ESI resulted in "more than half" of document hits being unresponsive).

As an initial matter, your calculations are inaccurate and misleading because you are relying on the total count of documents (including family) that have been produced/withheld against the total count of documents (including family) in the total review population.  But a smaller subset of documents hit on SDNY's search terms than are included in the total review population.  Family documents are only implicated where the underlying document that "hit" on the search terms is responsive.  Here, approximately 60% of these unique underlying hits have been deemed responsive.  While ESI review is case dependent, that rate is not abnormal in our experience—much less "concerningly low"—especially given the breadth of the search terms you requested here.

Indeed, you claim that your search terms were "narrowly tailored to capture documents referencing words and phrases at the heart of our investigation"—particularly "ergonomic and related issues."  Ltr. at 3.  But the search terms are not narrowly tailored.  They include, for example, all documents containing the term "improv*" within 15 words of the term "transfer*."  All documents containing the terms "low*," "down," or "wors*" within proximity of the term "restrict*."  And all documents containing the term Austin—the system Amazon uses to record injuries—within 15 words of the term "recordable*," whether

**GIBSON DUNN**

Jacob Lillywhite
U.S. Department of Justice
December 22, 2022
Page 9

**CONFIDENTAL TREATMENT REQUESTED**

or not the injury at issue was in fact recorded or related to any of the potential hazards (ergonomic, struck-by, heat, etc.) contemplated by your document requests.

Your letter contemplates that Amazon re-review all of the documents deemed not responsive during its earlier review and group them into subject matter "categories" to be listed for your consideration.  Ltr. at 4.  Although we are, of course, willing to continue working with you regarding any concerns you might have regarding responsiveness rate on a reasonable schedule, we were not in a position to complete another level of review of thousands of documents on two days' notice.  Nor do we have time, on the expedited schedule you are demanding, to also allocate significant resources to second-level, QC review of documents tagged as non-relevant during first-level review.  That is something we are, of course, willing to discuss once a reasonable review and production schedule is in place.

That said, in the interest of starting to meet and confer regarding your purported concerns, we can provide some examples of documents that have been withheld on responsiveness grounds, specifically:

- Documents relating to injuries outside of the United States (several custodians have global positions);

- Documents relating to Amazon sites that are not "Sibling Facilities";

- Documents that fall outside of the relevant time period, as limited by Amazon's objections;

- Documents regarding Covid-19 policies and protocols;

- Documents regarding specific associate injuries that neither involved the failure to record an injury or illness on a Facility's OSHA 300 log or concerning recommendations or determinations related to pace of work, ergonomics, heat, or struck-by hazards; and

- Emails sent by Amazon employees within the ████████ group, whose signature block was expected to contain the below language (which contains the word "ergonomics" within proximity to the word "pace").

**GIBSON DUNN**

Jacob Lillywhite
U.S. Department of Justice
December 22, 2022
Page 10

## CONFIDENTAL TREATMENT REQUESTED



As some other illustrative examples, the following documents were not responsive, even though they "hit" on your search terms:

- An FAQ regarding requesting landlord consent before making changes to facility, which hit on your search terms because of the phrase: " . . . their general contractor inspect the alterations at completion, and/or we provide all lien waivers."

- An email regarding insider trading policy, which hit on your search terms because of the sentence: "Violation of these securities laws can result in serious penalties for the offender (like significant fines and jail time), as well as the Company, so it is critical that any trade you make complies with the Company's trading policy."

- An email regarding flooding due to broken sprinkler head, which hit on your search terms because of the sentences: "The incident is tracked via trouble ticket. Injuries Reported: No injuries."

- A white paper regarding the Worldwide Sustainability team and Climate Pledge, which hit on your search terms because of the sentence on lines 300 to 301 of the white paper: "In addition, our work with Climate Pledge Arena contractually stipulates that we stand up and fund a Seattle community -lead group associated with the Arena and environment issues."

**GIBSON DUNN**

Jacob Lillywhite
U.S. Department of Justice
December 22, 2022
Page 11

**CONFIDENTAL TREATMENT REQUESTED**

- Multiple United Airways plane ticket confirmations, which hit on your search terms because of the phrase: "travel may be restricted to specific flights and/or times and a minimum…"

- A COVID-19 scientific update with summaries from medical journals, which hit on your search terms because of reference to Covid "fatality rates" generally.

- A Weather report, which hit on your search terms because of the following sentence related to a "low" weather risk:  "Check cargo door wind restrictions and use caution handling empty containers."

- A chime message discussing a workers' compensation claim not otherwise responsive, which hit on your search terms because of the sentence "GM sir, no follow up."

Thank you for your continued consideration.  We look forward to continuing to work with you in your investigation.

Sincerely,

GIBSON, DUNN & CRUTCHER LLP

Zainab N. Ahmad
Partner

ZNA

CC:  Daniel Hennefeld
     Dave Jaklevic

# Exhibit 2

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Zainab N. Ahmad
Direct: +1 212.351.2609
Fax: +1 212.817.9500
ZAhmad@gibsondunn.com

August 15, 2022

<u>VIA EMAIL</u>

Jacob Lillywhite
Assistant U.S. Attorney
U.S. Attorney's Office for the
Southern District of New York
86 Chambers Street
New York, NY 10007

Daniel Hennefeld
Counsel for OSHA
U.S. Department of Labor
Office of the Solicitor
201 Varick Street
New York, NY 10014

David Jaklevic
Senior Trial Attorney
U.S. Department of Labor
Office of the Solicitor
201 Varick Street
New York, NY 10014

Re:     OSHA & SDNY Document Requests and Proposed Production Schedule

Counsel:

    We write to memorialize our August 10, 2022 discussion with you and respond to Mr. Lillywhite's August 11 email.  That email included the government's proposed production schedule pertaining to seven OSHA document subpoenas served between August 2 and August 11,[1] and the informal SDNY requests for document production served on August 2[2] (collectively, the "document requests").

    ***Proposed Production Schedule.***  Thank you for sending the government's proposed production schedule.  We look forward to continuing our discussion on this topic during our call today.  As you know, we have already provided nearly 3,000 documents in response to eight of the document requests (totaling over 5,000 pages) and continue to identify and produce responsive documents on a rolling basis.  As we previewed during the August 10 call, however, the government's overall anticipated timeline is unworkable and unreasonable.  The proposal contemplates that Amazon will *complete* by mid-September document productions in response to the more than 500 requests for production contained in the document requests—many of which cover a 10-year period.  The requests span a diverse range of issues and some of them purport to have a nationwide scope, thus covering materials at hundreds of facilities that Amazon operates around the country.  It is impossible to expect Amazon to identify and gather that broad universe of information in such a short time period—particularly when the government is seeking information far beyond the types of documents subject to OSHA record-keeping regulations and ordinarily sought by OSHA

---

[1] OSHA originally served three document subpoenas on July 20, 2022.  However, OSHA subsequently served additional subpoenas on August 2 and instructed that those subpoenas superseded the prior versions.

[2] We expect to discuss the question of whether Amazon intends to request formal process, in lieu of informal document requests, from SDNY on our call scheduled for this afternoon.

Beijing · Brussels · Century City · Dallas · Denver · Dubai · Frankfurt · Hong Kong · Houston · London · Los Angeles · Munich
New York · Orange County · Palo Alto · Paris · San Francisco · São Paulo · Singapore · Washington, D.C.

**GIBSON DUNN**

Jacob Lillywhite
U.S. Department of Justice
August 15, 2022
Page 2

during the course of workplace safety inspections.  Amazon needs sufficient time to review the universe of potentially responsive information (likely to number in the millions of pages), identify responsive documents, and produce them.

When we raised these concerns during the August 10 call, Mr. Lillywhite said that the pace of production the government is proposing is necessary because "we don't want more people getting injured while we are investigating."  As we explained to you, Amazon shares the government's interest in ensuring its employees have the safest work environment possible and avoiding employee injury, but we are unaware of any such ongoing safety concerns.  We asked Mr. Lillywhite to share with us specific information about the alleged safety risks you described but the government has thus far provided nothing in response. Moreover, we do not understand how complying with an unduly burdensome set of document and information requests on such a short timetable would abate any alleged imminent harm—particularly when much of the information you seek relates to a time period going back a full decade.  We reiterate the request we made during the August 10 call that the government identify the specific imminent safety concerns and provide evidence supporting those concerns, so that Amazon can evaluate those concerns and address them if needed.

As we explained during the August 10 call, the burden Amazon is facing in response to these 500+ requests for document production seeking millions of pages of documents propounded by OSHA and SDNY is significant and severe.  In response to our concerns about the scope of these requests, Mr. Lillywhite noted that his prior experience in corporate law led him to believe that Amazon's burden could be alleviated by having our firm "scale up" its reviewing team, or by Amazon hiring additional outside law firms.  As an initial matter, the number of lawyers a company can hire to respond to document requests is irrelevant to whether requests are unduly burdensome.  *See Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 53 (S.D.N.Y. 1996) (explaining that "what constitutes an undue burden . . . turns on such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described, and the burden imposed").  In any event, the burden here cannot be alleviated simply by expanding the legal team.  (Though cost *is* a relevant factor in addressing burden, and "scaling up" a legal team to the proportions the government is contemplating would require a significant deployment of resources.)  The primary reason the government's schedule would be impossible for us to meet is the time required to confer with the appropriate subject matter experts within Amazon who will guide the search for responsive information within the company's records—information that falls far beyond the confines of OSHA's record-reporting regulations.  Identifying appropriate custodians and designing an appropriate search protocol takes time in the context of every subpoena, but it is especially true here, where the subpoenas encompass over 500 document requests across

**GIBSON DUNN**

Jacob Lillywhite
U.S. Department of Justice
August 15, 2022
Page 3

hundreds of facilities nationwide and dating back many years.  As detailed above, this will be an incredibly time-consuming process.

*The Document Requests' Apparent Nationwide Scope.*  We also noted during the August 10 call that we have significant concerns with the "sibling facility" definitions in the OSHA subpoenas.  The six subpoenas define "Sibling Facilities" to mean "other" sortation centers, sortable fulfillment centers, non-sortable fulfillment centers, and delivery stations "in the United States."  In other words, the subpoenas seek records from *every* Amazon sortation center, sortable fulfillment center, non-sortable fulfillment center, and delivery station in the entire country—of which there are more than eight hundred.  During the August 10 call, we sought the government's position as to whether subpoenas issued by an OSHA Area Director are authorized by law or regulation to have nationwide scope, and Mr. Hennefeld said that he views the subpoenas as having such reach—but he did not cite any law or regulation in support of that proposition.  We asked for case law or other statutory authority that supports that expansive view and reiterate that request here, so we can review the relevant authority and decide on a path forward.  We look forward to discussing this issue further this afternoon.

*Relevant Financial Institution.*  In addition, we would like to revisit our August 10 discussion of how "relevant financial institution" is defined in the SDNY requests for document production.  Request 13 asks Amazon to produce "[a]ll documents reflecting or concerning communications about Health and Safety or compliance with applicable labor laws or regulations at one or more Facilities (including about Injury Rates) between Amazon and one or more Relevant Financial Institutions."  Yet the document requests' definition of "Relevant Financial institutions" is "a financial institution with which Amazon communicated about Health and Safety or compliance with applicable labor laws or regulations in one or more Facilities"—thus rendering the definition of "relevant financial institution" and Request 13 completely circular (as we pointed out on August 10).  Mr. Lillywhite acknowledged during the August 10 call that the subpoena as written would require Amazon to review 10 years' worth of communications by dozens, if not hundreds, of its employees with at least 70 different financial institutions *simply to determine which financial institutions are relevant to the SDNY's inquiry*.  Such a request is plainly overbroad and unduly burdensome.

In response, Mr. Lillywhite indicated that SDNY is interested in only certain "significant transactions" with banks with whom Amazon has "major relationships," but did not define either of those terms.  Instead, he noted that if Amazon were to provide SDNY with information about the general nature, volume, or counterparties of each and every financial transaction that Amazon engages in annually, SDNY will advise us what the threshold for "significant" and "major" are.  Although we appreciate that general sentiment,

**GIBSON DUNN**

Jacob Lillywhite
U.S. Department of Justice
August 15, 2022
Page 4

it is not reasonable to place on Amazon the obligation to assist SDNY in narrowing the scope of these requests where SDNY has provided no clarity or specificity about what information it seeks.  When we inquired during the August 10 call, Mr. Lillywhite declined to provide any example of Amazon making representations about employee safety or regulatory compliance to financial institutions that could guide our search for responsive documents. He was also unable to explain to us what sort of documentation accompanying which categories of financial transactions would even be *likely* to contain such representations. Only SDNY, not Amazon, knows what types of financial transactions are relevant to the financial fraud investigation Mr. Lillywhite has informed us SDNY has initiated with respect to Amazon.

We ask that SDNY issue a more narrowly-tailored and less burdensome request for production of communications with relevant financial institutions and look forward to discussing this topic further with you this afternoon.

***FIRREA Theory.***  To explain the scope of (and authorization for) SDNY's document requests, Mr. Lillywhite initially stated that SDNY is proceeding under the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"), 12 U.S.C. § 1833a.  On our August 10 call, Mr. Lillywhite noted that SDNY is also investigating other, unspecified, categories of fraud.  In addition to information pertaining to financial transactions, SDNY's requests seek information pertaining to employee safety more broadly.  Yet Mr. Lillywhite has not indicated that SDNY is investigating Amazon's compliance with any applicable employee health and safety laws.  For good reason: FIRREA addresses financial fraud, not employee safety.  As noted above, SDNY has not been able to provide any specific details about the context within which financial institutions purportedly engage in health and safety inquiries concerning counterparties' businesses.

In any event, attempting to base a FIRREA claim on generalized representations and warranties about regulatory compliance strikes us as an extremely tenuous legal theory, and certainly an unprecedented one.  Given the difficulty Mr. Lillywhite had supplying us with examples of when and why representations regarding employee health and safety would be provided to financial institutions in the context of a financial transaction, it seems hard to imagine how such a representation—even if it were to exist—could possibly be material, as FIRREA clearly requires.

As we noted during the August 10 call, Amazon is deeply committed to ensuring the safety of its employees and working with OSHA and DOL to ensure safety and compliance with applicable regulations under the OSH Act.  But it is difficult to understand how a safety inquiry could plausibly be shoehorned into a FIRREA investigation.  Rather than forcing Amazon to guess at why SDNY's requests fall within the confines of 12 U.S.C. § 1833a, we

**GIBSON DUNN**

Jacob Lillywhite
U.S. Department of Justice
August 15, 2022
Page 5

ask that SDNY share further information about the theory of this investigation to help us better understand whether and why the information sought is relevant or material to the SDNY investigation.

   ***Employee Contact Information & *Ex Parte* Communications.***  As we discussed during the August 10 call, we are following up with Amazon about the government's request for additional employee contact information and expect to be able to provide that information shortly.

   We appreciate the government's assurance on our prior call that SDNY and DOL intend to inform all current and former Amazon employees they contact that those employees or former employees are under no obligation to speak to the investigators.  We sought this assurance because we found troubling certain comments by Department of Labor Senior Trial Attorney David Jaklevic during an August 4 call.  Specifically, Mr. Jaklevic objected to Amazon managers informing employees of their right not to speak with OSHA during the various on-site inspections OSHA conducted at Amazon facilities in July and August.  Mr. Jaklevic said he believed it was "not a manager's place to tell workers what their rights are," and went on to say that "there are plenty of resources for workers to figure out what their obligations to communicate with OSHA are," which in his view alleviated the need for managers to inform employees of these obligations.  Mr. Jaklevic's comments suggested that OSHA intended to interview employees without advising them of their rights and that OSHA was improperly attempting to prevent Amazon from advising employees of such rights.

   We again notify the government that all current Amazon managers are represented and should therefore be contacted only through company counsel, and that we might represent individual former managers as well.  We further note that, with respect to conversations with former managers, the government is obligated to determine whether they are represented and to ensure that they do not share confidential or privileged information gained during their employment with Amazon with the government.  *See, e.g.*, N.Y. Rules of Professional Conduct 4.2 cmt. 7; A.B.A. Model Rules 4.2, 4.4 & cmt. 7; *Harris Davis Rebar, LLC v. Structural Iron Workers Loc. Union No. 1, Pension Tr. Fund*, 2019 WL 447622, at *6 (N.D. Ill. Feb. 5, 2019).

   Thank you again for your attention to this matter.  We look forward to speaking with you later today concerning these issues.

**GIBSON DUNN**

Jacob Lillywhite
U.S. Department of Justice
August 15, 2022
Page 6


Sincerely,


GIBSON, DUNN & CRUTCHER LLP


Zainab N. Ahmad
Partner

ZNA

cc:     Angeline Loftus (Email: loftus.angie@dol.gov)
        Jing Acosta (Email: Acosta.jing@dol.gov)
        Sukhvir Kaur (Email: Kaur.Sukhvir@dol.gov)
        Nicole O'Connor (Email: OConnor.Nicole@dol.gov)

# Exhibit 3

| | |
|---|---|
| **From:** | Gemmill, Kevin (USANYS) [Contractor] <Kevin.Gemmill@usdoj.gov> |
| **Sent:** | Thursday, November 17, 2022 3:01 PM |
| **To:** | Stewart, Ryan C. |
| **Subject:** | RE: Amazon - correspondence |

[WARNING: External Email]

Hi Ryan,

I am working with our vendor to implement the overlay provided below but the link is expired. Can you please reactivate the link so that I can access it?

Thanks,
Kevin

**Kevin Gemmill**
Paralegal
U.S. Attorney's Office, Southern District of New York
Civil Division
86 Chambers Street, Third Floor
New York, NY  10007
(212) 637-2764

**From:** Stewart, Ryan C. <RStewart@gibsondunn.com>
**Sent:** Tuesday, November 8, 2022 10:31 PM
**To:** Ahmad, Zainab <ZAhmad@gibsondunn.com>; Tarczynska, Dominika (USANYS) <DTarczynska@usa.doj.gov>
**Cc:** Boizelle, Ashley <boizelle@amazon.com>; Schwartz, Jason C. <JSchwartz@gibsondunn.com>; Denerstein, Mylan L. <MDenerstein@gibsondunn.com>; Hennefeld.Daniel@dol.gov; Jaklevic.David.M@dol.gov; Lillywhite, Jacob (USANYS) <JLillywhite@usa.doj.gov>; Kim, Elizabeth (USANYS) <EKim3@usa.doj.gov>; Gemmill, Kevin (USANYS) [Contractor] <KGemmill@usa.doj.gov>; Oestericher, Jeffrey (USANYS) <JOestericher@usa.doj.gov>; Gitlin, Adam (USANYS) <AGitlin@usa.doj.gov>; McArthur, Nikki <NMcArthur@gibsondunn.com>
**Subject:** [EXTERNAL] RE: Amazon - correspondence

Counsel:

In response to item # 2 in Dominika's November 7 email—and as discussed in our November 7 letter and during our meet and confer call this afternoon—please see below a link to overlay files for the injury and incident records produced out of Austin and from third-party Sedgwick.  The password will follow via separate email.

As discussed during our call, these documents were produced as they were exported with all metadata, including file path metadata for Austin documents and file name metadata for Sedgwick documents sufficient to identify and group the documents by case number and associate.  The overlay files we have provided below will allow you to group the documents by these metadata fields for ease of review.

1

If you have any technical issues or if the overlay files do not resolve this concern please let us know promptly and we will discuss further.

Thank you,
Ryan

https://ftpus.consilio.com/public/file/ewQ_QWHvF0q12BQeudM_BA/OSHA%20custom%20overlays.zip

**Ryan Stewart**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3523 • Cell + 1 202.604.0176 • Fax +1 202.467.0539
RStewart@gibsondunn.com • www.gibsondunn.com

# Exhibit 4

| | |
|---|---|
| **From:** | Jaklevic, David M - SOL <Jaklevic.David.M@dol.gov> |
| **Sent:** | Thursday, November 17, 2022 4:35 PM |
| **To:** | McArthur, Nikki |
| **Cc:** | Stewart, Ryan C. |
| **Subject:** | RE: Amazon Response to OSHA Subpoena |

**[WARNING: External Email]**

Good evening, Nikki. Can you please resend the document production that was included in the links below along with passwords. I was unable to download the documents before the links expired.

Thanks,

**Dave Jaklevic**
Senior Trial Attorney
U.S. Department of Labor
646-264-3666 (Direct)
646-264-3660 (Fax)

***Please direct all communications to me via phone or email. Please <u>do not</u> send correspondence by paper mail, courier, or fax unless necessary. Save a tree.***

*This message may contain information that is privileged or otherwise exempt from disclosure under applicable law or privilege. Do not disclose without consulting the Office of the Solicitor. If you think you received this e-mail in error, please notify the sender immediately.*

---

**From:** McArthur, Nikki <NMcArthur@gibsondunn.com>
**Sent:** Friday, November 11, 2022 7:50 PM
**To:** Hennefeld, Daniel - SOL <Hennefeld.Daniel@dol.gov>; Jaklevic, David M - SOL <Jaklevic.David.M@dol.gov>
**Cc:** Boizelle, Ashley <boizelle@amazon.com>; jschwartz <jschwartz@gibsondunn.com>; Denerstein, Mylan L. <MDenerstein@gibsondunn.com>; Ahmad, Zainab <ZAhmad@gibsondunn.com>; Belelieu, Christopher D. <CBelelieu@gibsondunn.com>; Stewart, Ryan C. <RStewart@gibsondunn.com>; Young, Rita - OSHA <Young.Rita@dol.gov>; Vargas, Marc - OSHA <Vargas.Marc@dol.gov>; Gonzalez, Michelle - OSHA <Gonzalez.Michelle@dol.gov>; Smith, Christopher M - SOL <smith.christopher.m@DOL.GOV>; Loftus, Angie - OSHA <Loftus.Angie@dol.gov>; Acosta, Jing - SOL <Acosta.Jing@dol.gov>; Kaur, Sukhvir - OSHA <Kaur.Sukhvir@dol.gov>; O'Connor, Nicole - OSHA <OConnor.Nicole@dol.gov>; Ellis, Beau - SOL <Ellis.Beau@dol.gov>; Wu, Emily - SOL <Wu.Emily@dol.gov>; 'Dominika.Tarczynska@usdoj.gov' <Dominika.Tarczynska@usdoj.gov>; 'Jacob.Lillywhite@usdoj.gov' <Jacob.Lillywhite@usdoj.gov>; 'Elizabeth.Kim@usdoj.gov' <Elizabeth.Kim@usdoj.gov>; Gemmill, Kevin (USANYS) [Contractor] <Kevin.Gemmill@usdoj.gov>
**Subject:** Amazon Response to OSHA Subpoena

> **CAUTION: This email originated from outside of the Department of Labor. Do not click (select) links or open attachments unless you recognize the sender and know the content is safe. Report suspicious emails through the "Report Phishing" button on your email toolbar.**

All,

Please find attached production cover letters for today's productions, which can be accessed at the links below:

# Exhibit 5

# UNITED STATES OF AMERICA

## UNITED STATES DEPARTMENT OF JUSTICE

### SUBPOENA

**TO:**  Amazon.com, Inc.

410 Terry Ave. N.

Seattle, WA 98019

---

☒ **YOU ARE HEREBY COMMANDED TO PRODUCE** and permit inspection and copying of, at the place and on the date and time indicated, all documents and tangible things described in the attached Rider A, which are necessary in the performance of the responsibility of the United States Department of Justice to investigate, in contemplation of a civil proceeding under 12 U.S.C. § 1833a, a violation of, or a conspiracy to violate, sections 215, 656, 657, 1005, 1006, 1007, 1014, or 1344 of Title 18, or section 287, 1001, 1032, 1341, or 1343 of Title 18 affecting a federally insured financial institution.

**PLACE:**  United States Attorney's Office  **DATE AND TIME:** September 19, 2022
Southern District of New York
86 Chambers Street, 3rd Floor                  10:00 a.m.
New York, New York 10007

The production of documents and things in response to this subpoena must be made under a sworn certification, in the form provided herewith, by the person to whom this subpoena is directed or, if not a natural person, by a person or persons having knowledge of the facts and circumstances relating to such production.

---

☒ **YOU ARE HEREBY COMMANDED TO APPEAR** before the official of the United States Department of Justice designated below, at the place and time designated below, to give oral testimony in connection with this matter as described in the attached Rider C.

**BEFORE:**  Jacob Lillywhite                  **DATE AND TIME:** September 6, 2022

Assistant United States Attorney                  10:00 a.m.

**PLACE:**  United States Attorney's Office
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007

---

**FAILURE TO COMPLY WITH THE REQUIREMENTS OF THIS SUBPOENA WILL RENDER YOU LIABLE TO PROCEEDINGS IN THE DISTRICT COURT OF THE UNITED STATES TO ENFORCE OBEDIENCE TO THE REQUIREMENTS OF THIS SUBPOENA, AND TO PUNISH DEFAULT OR DISOBEDIENCE.**

Issued under authority of Sec. 951 of the Financial Institutions Reform,
Recovery, and Enforcement Act of 1989, Public Law No. 101-73
(12 U.S.C. § 1833a).



*IN TESTIMONY WHEREOF*

*The undersigned official of the United States Department of Justice has hereunto set his/her hand this*

19th  *day of* August  , 20 22

Jeannette Vargas /JL

AUSA Jeannette Vargas, Acting Chief, Civil Division

# RIDER A

## DEFINITIONS

1.     "Amazon" refers to Amazon.com, Inc.; Amazon.com Services LLC; Amazon, Inc.; Amazon.com Corporate LLC; Amazon.com LLC; Amazon.com.azdc LLC; Amazon.com.dedc LLC; Amazon.com.indc LLC; Amazon.com.ksdc LLC; Amazon.com.kydc LLC; Amazon.com.nvdc LLC; and Prime Now LLC, as well as to any predecessor, successor, corporate parent, subsidiary, or affiliate of any of these entities and to any officer, employee, agent, representative, or person acting or purporting to act on behalf of any such entity or on behalf of any predecessor, successor, corporate parent, subsidiary, or affiliate.

2.     "Amazon Boards" means the boards of directors of any company that falls within the definition of "Amazon" above.

3.     "AmCare" means the first-aid center or medical provider located within a Facility.

4.     "And" and "or" both mean "and/or."

5.     "Any" and "all" both mean "any and all."

6.     "Austin" means the electronic system referred to as "Austin" that Amazon uses, among other things, to enter information concerning Worker injuries and illnesses.

7.     "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

8.     "Complaints" means any information raising actual or potential issue or concerns.

9.     "Concerning" means relating to, referring to, describing, evidencing, or constituting.

10.    "Documents" means without limitation any item described by Federal Rule of Civil Procedure 34, and any written, printed, typed, graphic, photographed, and recorded or otherwise reproduced or stored communication or representation, including but not limited to letters, memoranda, correspondences, e-mails, and canceled checks.  This term includes whatever form and by whatever means such documents may have been created or stored including, but not limited to: any handmade form, such as writing; any photographic form, such as microfilm, microfiche, prints, slides, negatives, photocopies; any mechanical form such as printing, or typing; any electrical, electronic, or magnetic form such as tape recordings, cassettes, or any information on an electronic or magnetic storage device such as floppy diskettes, hard disks, backup tapes, CD-ROMS, optical discs, printer buffers, smart cards, memory calculators, electronic dialers, hard drives, or electronic notebooks; and any printout or readout from any magnetic or solid state storage device.  All documents provided in response to this subpoena are to include all marginalia and post-its, as well as any attachments referred to in or incorporated by the documents.  All documents provided in response to this subpoena are to include all versions of each responsive document, including all drafts and copies of each document.

11.   "Ergo Inspected Facilities" means all Facilities subject to a state or federal health and safety inspection since January 1, 2020, that included potential ergonomic hazards in the scope of inspection, including the Facilities designated ALB1, ████████, BOI2, DEN5, DYO1, MCO2, and MDW8.

12.   "Facilities" means the facilities operated by Amazon in the United States to transport products to Amazon customers, including Amazon's sortable and non-sortable fulfillment centers, sortation centers, receive centers, delivery stations, crossdocks, air hubs, Prime Now hubs, and specialty facilities.

13.   "Facility Staff Members" means current and former employees or consultants who performed work in or concerning one or more Facilities and are not National Staff Members or Regional Staff Members.

14.   "Gensuite" means the electronic system referred to as "Gensuite" that Amazon previously used, among other things, to enter information concerning Worker injuries and illnesses.

15.   "Health and Safety" means Worker health and safety at one or more Facilities, including actual or potential hazards and actual, reported, or recorded injuries or illnesses.

16.   "H&S Responsible Person" means each Amazon employee, executive, or officer whose responsibilities included (in whole or in part) Health and Safety at one or more Facilities during the Relevant Period.

17.   "H&S Management Chain" means each H&S Responsible Person, as well as those who supervise, oversee, or manage an Amazon employee or executive in this management chain or did so during the Relevant Period.

18.   "Including" means "including, but not limited to."

19.   "Injury Rate" means a rate at which Workers in one or more Facilities become injured or ill, as calculated by Amazon, regardless of whether it has been calculated according to all injuries or illnesses, only those injuries or illnesses that require job restriction or days off work, or in some other fashion.

20.   "Manager" means a Worker who supervised, oversaw, or managed one or more other Workers.

21.   "National Staff Members" means current and former Amazon employees or consultants whose responsibilities, at some point during the Relevant Period, concerned all Facilities across the United States.

22.   "OSH Act" means the Occupational Safety and Health Act of 1970.

23.   "Outside Medical Provider" means a medical provider, whether an individual, clinic, hospital, or practice, that provides a medical diagnosis or care to an Amazon Worker outside of an Amazon facility.

24.     "Process" means a specific job type in the Facilities.

25.     "Productivity Rate" means the rate at which a Worker performed one or more of the tasks assigned to the Worker.

26.     "Productivity Requirement or Guidance" means any requirement, expectation, or guidance concerning Productivity Rates.

27.     "Relevant Financial Institution" means a financial institution that (a) since August 1, 2017, has been a counterparty or signatory to agreements with Amazon involving at least $90 million in aggregate; and (b) with which, during the Relevant Period, Amazon has communicated about Health and Safety, Injury Rates, or compliance with applicable labor laws or regulations (including the OSH Act) in one or more Facilities.

28.     "Relevant Period" means the time period from August 1, 2012, to the present.

29.     "Regional Staff Members" means current and former Amazon employees or consultants other than National Staff Members whose responsibilities, at some point during the Relevant Period, concerned multiple Facilities.

30.     "Safety Managers" means the Amazon employees who, at some point during the Relevant Period, supervised one or more Facility's safety officers.

31.     "Time Off Task" means the time calculated by Amazon under that heading.

32.     "Worker" means anyone who worked at a Facility during the Relevant Period, whether classified by Amazon as an employee, temporary employee, independent contractor, or something else, including delivery drivers who lifted packages in a Facility and Amazon employees assigned to a region, nationwide, or worldwide who performed work at a Facility.

33.     "Worker Fatality" means a Worker who died at a Facility during the Relevant Period, whether or not Amazon determined the cause of death was work-related.

34.     "You" and "your" refer to Amazon.

## INSTRUCTIONS

1.     Unless otherwise specified, this subpoena calls for the production of all documents responsive to the document requests below, and which are in your possession, custody, or control regardless of where such documents or information are located.  Please include all documents that relate to or used during the relevant time period even if they had been prepared or published prior.  Further, if any document requested is no longer in your possession, custody, or control, identify such document completely and provide the following information regarding the document:

        a.      Its present location and custodian;

b.    The manner in which it was disposed, including the date of disposal, the reason of disposal, the person authorizing the disposal, and the person(s) who disposed of the document.

2.    If no documents exist that are responsive to a request below, please include, in your response to this subpoena and at the time of production, a written statement to that effect.

3.    For any document or part thereof that you decide not to produce by reason of a claim of privilege, please state the privilege being claimed, give an explanation for your claim of such privilege, and provide the following information concerning the putatively privileged document:

a.    The type of document;

b.    The date of the document;

c.    The subject matter of the document;

d.    The author of the document, including his or her address, telephone number, and role in relation to Amazon;

e.    All recipients of the document, including their addresses, telephone numbers, and roles in relation to Amazon;

f.    The number of pages of the document.

4.    In responding to this subpoena, all documents produced should be segregated and labeled so as to identify which request(s) such documents respond to.  Alternatively, you shall identify, by bates-numbers, the documents responsive to each request herein.

5.    In responding to this subpoena, please locate, gather, and produce documents from your files and other sources in such a manner as to ensure that the source and location of each document may be readily determined.

6.    In responding to this subpoena, if you locate responsive documents in file folders or other containers, please produce these folders and containers, including any labels identifying such folders or containers, together with the responsive documents contained therein.

7.    In responding to this subpoena, please do not separate documents attached to each other unless you also identify such separation and provide records sufficient to permit the reconstruction of such grouping of documents.

8.    In responding to this subpoena, if you locate any document that have markings on both sides, please produce both sides of the document.

9.    In responding to this subpoena, please locate, gather, and produce documents or information stored electronically in accordance with the "Document and ESI Production Specifications," attached as Rider B to this subpoena.

10. In identifying a former employee or contractor, please provide the date of separation as well as that employee's or contractor's last known home address, phone number, and email address.

11. Please promptly produce responsive documents or information located at any time after your initial response to this subpoena.

## **DOCUMENT REQUESTS**

1. All documents reflecting or concerning statements made by Amazon about Health and Safety, Injury Rates, or compliance with applicable labor laws or regulations (including the OSH Act) at one or more Facilities to one or more Relevant Financial Institutions.

2. Documents reflecting the terms of any transactions during the Relevant Period between Amazon and a Relevant Financial Institution.

3. Documents responsive to the requests set forth in the subpoenas issued by the United States Department of Labor Occupational Safety and Health Administration ("OSHA") on August 2, 2022, in connection with Facilities designated ALB1, BOI2, DEN5, DYO1, MCO2, and MDW8, with "Sibling Facilities" replaced by "Facilities" (as defined in this subpoena) throughout OSHA's requests.

4. Documents sufficient to identify each current and former:

   a. National Staff Member who is or was an H&S Responsible Person;

   b. National Staff Member who is or was part of the H&S Management Chain;

   c. committee of an Amazon Board that has or had any responsibility for Health and Safety at the Facilities;

   d. member of an Amazon Board who, singly or together with others, has or had any responsibility for Health and Safety at the Facilities;

   e. Regional Staff Member who is or was an H&S Responsible Person; and

   f. Regional Staff Member who is or was part of the H&S Management Chain.

5. For each current and former National Staff Member who is or was an H&S Responsible Person, documents sufficient to identify that Member's position, work location, and responsibilities concerning Health and Safety in the Facilities.

6. Documents reflecting or concerning any statement or suggestion by a current or former H&S Responsible Person that the pace of work for any Process in the Facilities did or could create a safety hazard.

7. Documents sufficient to identify each incident involving Worker injury or illness that an H&S Responsible Person determined was or may have been caused, in whole or in part,

by the pace of work, including the Facility where the incident occurred, the name of the Worker involved in the incident, the nature of the injury or illness work, and date of the incident.

8. Documents reflecting all Productivity Requirements or Guidance in effect at any Facility during the Relevant Period.

9. Documents sufficient to show the method or methods by which each Productivity Requirement or Guidance in effect at any Facility during the Relevant Period was developed, including whether the impact on Health and Safety was considered, and if so, how the impact on Health and Safety was considered.

10. Documents sufficient to identify the role of (a) National Staff Members, (b) Regional Staff Members, and (c) Facility Staff Members in establishing Productivity Requirements or Guidance in effect at any Facility during the Relevant Period.

11. Documents sufficient to identify each contractor who was contacted or retained by a National Staff Member or Regional Staff Member and who did any work (including a site visit or review of any data sent by Amazon) in connection with any potential risk to Health and Safety created by the pace of work for any Process in a Facility, whether or not that consultant was formally retained or an analysis was completed.

12. For each Process in the Facilities, documents concerning or reflecting any analysis conducted by or for Amazon of whether some pace of work poses a risk to Health and Safety.

13. For each Ergo Inspected Facility, video surveillance of Workers in the 30 days prior to each inspection by state or federal health and safety inspectors.

14. For each Ergo Inspected Facility, all documents (including internal communications) concerning the pace of work in the Facility or the Facility's input or output (whether in trucks, boxes, items, weight, or otherwise), or anything that would reduce pace of work or input or output, on a day that Facility was being inspected by state or federal health and safety inspectors.

15. Documents prepared by National Staff Members or Regional Staff Members concerning or reflecting any audit, analysis, monitoring, or other review of Injury Rates at one or more Facilities.

16. Documents prepared by National Staff Members or Regional Staff Members concerning or reflecting any audit, analysis, monitoring, or other review of the effect of one or more Outside Medical Providers on Injury Rates.

17. Documents sufficient to identify the individuals who participated in the drafting of Amazon's "Delivered with Care" report.

18. All documents, including internal communications, prepared by National Staff Members or Regional Staff Members (including consultants) concerning AmCare's 21-Day

Program.

19.     All documents, including internal communications, concerning Amazon's 2021 decision to alter its policies or practices concerning Time Off Task and any prior or subsequent consideration of these or other changes with respect to Time Off Task.

20.     All documents, including internal communications, concerning Amazon's decision to transition from Gensuite to Austin.

21.     All documents, including internal communications, prepared by National Staff Members or Regional Staff Members (including consultants) concerning or referencing actual or potential risks to Health and Safety posed by the pace of work at any Facility.

22.     All documents prepared by National Staff Members or Regional Staff Members (including consultants) concerning turnover at one or more Facilities that reference injuries in those Facilities.

23.     All documents prepared by National Staff Members or Regional Staff Members (including consultants) forecasting the labor pool available to work in one or more Facilities.

24.     All documents, including internal communications, prepared by National Staff Members or Regional Staff Members (including consultants) concerning or reflecting recommendations made by Safety Managers related to the pace of work, struck-by hazards, or heat hazards that were not followed.

25.     All documents prepared by National Staff Members or Regional Staff Members (including consultants) concerning any actual or reported instances of:

    a.      pressure from Managers not to report injuries;

    b.      retaliation against a Worker for reporting an injury, reporting work restrictions, or going out on medical leave;

    c.      the failure to fill out an Initial Report Form, an Initial Report of Injury Form, or the predecessors of such forms within one week of a Worker report of injury or illness; or

    d.      the failure to record an injury or illness on a Facility's 300 log.

26.     All documents, including communications, prepared by National Staff Members or Regional Staff Members concerning the actual or potential effect of one or more Outside Medical Providers on the Injury Rate at one or more Facilities.

27.     All documents prepared by, prepared for, or shared with National Staff Members or Regional Staff Members concerning any Worker Fatality.

28.     All documents prepared by National Staff Members (including consultants) concerning

statements, including public statements, to representatives of any branch of federal government about Health and Safety or compliance with applicable labor laws or regulations at one or more Facilities.

29.   Minutes of any Amazon Board meetings, including committee meetings, concerning Health and Safety, Injury Rates, or compliance with the OSH Act at one or more Facilities.

30.   All documents presented at any Amazon Board meeting, including committee meetings, concerning Health and Safety, Injury Rates, or compliance with the OSH Act at one or more Facilities.

**RIDER B**

## I. Electronically Stored Information (ESI)

a. Electronically stored information (ESI) should be produced in accordance with these specifications. If compliance with these specifications would cause undue burden, please contact the government attorney designated on the subpoena to discuss. Please do not vary from these standards without prior approval from a government attorney.

b. ***All ESI must be produced both in native file format, and in electronically converted TIFF image format including extracted text and load files.***

## II. Transactional and Database Records

a. Transactional records extracted from a database shall be produced in delimited ASCII text data format or in another easily computer-importable non-proprietary file format that does not incur a loss of data. Field headers shall be included for each column of data, and a data dictionary or other explanation of the contents of each column shall be provided.

b. Images of items associated with transactions, such as checks, shall be produced in graphic data files in a commonly readable, non-proprietary format, such as TIFF or JPEG, with the highest image quality maintained, and named in a manner that uniquely associates them with the relevant transaction record(s).

c. Where responsive ESI is contained in a complex relational or proprietary database (*e.g.*, Oracle, SAP, SQL, MySQL, QuickBooks) from which records cannot readily be exported without loss of related data, please call the government attorney to arrange a meet-and-confer. Identify the database type and version number, and provide the database dictionary and user manuals or other documentation sufficient to describe the structure and content of the database. The meet-and-confer will evaluate, for example, production of a backup of the database (*e.g.*, an .SDF file for a SQL implementation), or other alternatives, such as delimited ASCII exports of custom queries.

d. <u>**Banks**</u>: Please produce records of account transactions as indicated in paragraphs a. and b. above, and not simply in the form of an image or printout of a monthly statement.

## III. Native File Format for ESI

a. All documents must be provided in the original file or "native" format in which the document was created.

b. System and executable files should not be produced unless specifically requested.

c. Email files must be delivered in their native format (*e.g.*, Outlook .PST or .msg, Lotus .NSF, etc.).

d. Relevant information stored in database applications (*e.g.*, Oracle, Sybase, or MSSQL) should only be produced after first consulting with the government attorney to determine method and format of delivery.

   e.  Files must be copied and produced in such a manner as to preserve all associated document and file system metadata. See list of required metadata fields below.

   f.  Note: a PDF file is *not* considered a native file unless the document was initially created as a PDF.

## IV.   Electronically Converted TIFF Format for ESI

   a.  <u>In addition to the native format</u>, you must also provide an electronically-produced (*i.e.*, not a printed and scanned) TIFF image version, including extracted text and load files, and available metadata, for each document produced in native format.

   b.  The electronically converted TIFF production must comply with the TIFF Image Production and Cross Reference File Specifications set forth below.

   c.  The electronically converted TIFF production must be provided in a Concordance .dat load, together with images and the necessary image cross-reference file. *See* the Delivered Fields Specifications below.

## V.   Custodian, ESI Source Location, and Path—Naming Conventions

   a.  For each document that is produced, the custodian; the ESI source location (*e.g.*, network server, network hard drive, media); and the network or folder path, must be specified in a .dat file.

   b.  All ESI provided must be broken down in the following folder structure: by custodian, then by data category (*e.g.*, JohnDoe/Mailfiles/datafiles/desktopfiles).

## VI.   Production of Paper Records

   a.  Paper records should be produced in ASCII delimited format, as detailed below.

     <u>ASCII delimited text file (.dat) format</u>
      i.  The first line of the text file must contain the field names.
      ii.  In most instances, the StartBates should be the Image Key field unless another field has been designated the key field by the Government.
      iii.  The delimiters used should be the default values used by Concordance: comma (ASCII value 20); quote (ASCII value 254); and newline (ASCII value 174).
      iv.  Produce a page header indicator in the following format, <<**batesno**>>, on a separate line for every page of OCR.

   b.  If there will be more than one production, please confirm the database fields and structure remain consistent between data deliveries.

## VII.   Delivered Fields Specifications

The database and load file provided must contain, at minimum, the first and last Bates number for each document, and all applicable OCR text.  The .dat file should contain a path to the OCR.  The OCR of the documents should be on a document level.

VIII. **TIFF Image Production and Cross Reference File Specifications**

   a. Documents should be electronically converted or, if need be, scanned (at 300 dpi) into single-page CCITT Group IV TIFF files.  TIFF file names should match the assigned Bates number of the underlying document page, should be unique, and sequentially numbered. Searchable PDF files will be accepted only after a consultation between the provider and USAO technical support staff.  Multi-page TIFF files are strongly discouraged.

   b. Bates numbers should be electronically "endorsed" onto images.   The file name assigned to the image should match the underlying document's Bates number.   Bates numbers should be alpha-numeric, with the numeric portion of the stamp being "zero-filled".  As an example, as assigned Bates numbered series of documents such as "ABC1", "ABC2", "ABC3" would be unacceptable, whereas "ABC000001", "ABC000002", "ABC000003" is preferred.

   c. Images should be placed on delivered media in a master folder named **XIMAGES**.

   d. Cross-reference File. TIFF files must be accompanied with an image cross-reference file, preferably an Opticon .opt file, otherwise an IPRO .lfp file will be acceptable. *See* below. This file must associate each Bates number with the corresponding single-page TIFF file name and indicate its location on the media provided. The file should contain one line for every page in the collection, and must contain the document Bates number and the fully qualified path to the image, beginning with the media volume.

Below is a sample for an Opticon .opt file

```
XYZCO_00663941,,D:\Company\Doe Production\AUTO0003\XYZCO_00663941.tif,Y,,,1
XYZCO_00663942,,D:\Company\Doe Production\AUTO0003\XYZCO_00663942.tif,Y,,,1
XYZCO_00663943,,D:\Company\Doe Production\AUTO0003\XYZCO_00663943.tif,Y,,,2
XYZCO_00663944,,D:\Company\Doe Production\AUTO0003\XYZCO_00663944.tif,,,,
XYZCO_00663945,,D:\Company\Doe Production\AUTO0003\XYZCO_00663945.tif,Y,,,1
XYZCO_00663946,,D:\Company\Doe Production\AUTO0003\XYZCO_00663946.tif,Y,,,2
XYZCO_00663947,,D:\Company\Doe Production\AUTO0003\XYZCO_00663947.tif,,,,
```

Below is a sample for an IPRO .lfp file:

```
IM,ABC-000001,D,0,@VOL01;IMG_0000001;ABC-000001.tif;2,0
IM,ABC-000002,,0,@VOL01;IMG_0000001;ABC-000002.tif;2,0
IM,3542-S-000001,D,0,@VOL01;IMG_0000001;3542-S-000001.tif;2,0
IM,3542-S-000002,,0,@VOL01;IMG_0000001;3542-S-000002.tif;2,0
IM,3542-S-000003,,0,@VOL01;IMG_0000001;3542-S-000003.tif;2,0
```

IX. **Delivery Media**

   a. All data and image deliveries must be made through a file-sharing site approved by this Office (*i.e.* USAfx), thumb drive, or USB 3.0 external hard drive, depending on data volume.

**X.  Metadata Fields**

The production should include the following metadata fields:

```
Prodbeg
Prodend
Prodbegattach
Prodendattach
From
To
CC
BCC
Subject
Date sent
Time Sent
Author
Date Created
Time Created
Date last Modified
Time Last Modified
File Name/Document Name
File Extension
Document Type/Record Type
MD5 Hash
Custodian
Page Count
File Size
Original Folder Path
```

**Rider C**
**Notice of List of Topics for Rule 30(b)(6) Deposition**

PLEASE TAKE NOTICE that, under Rule 30(b)(6) of the Federal Rules of Civil

Procedure, the United States of America, by its attorney, Damian Williams, the United States

Attorney for the Southern District of New York, will take the deposition upon oral examination

of defendant Amazon.com, Inc. ("Amazon"), on September 6, 2022, at 10:00 a.m., at the United

States Attorney's Office for the Southern District of New York, 86 Chambers Street, Third

Floor, New York, NY, concerning the subjects described below.  The deposition will be

stenographically recorded and/or videotaped.

PLEASE TAKE FURTHER NOTICE that, under Rule 30(b)(6), Amazon has a duty to

designate one or more of its officers, directors or agents to testify with regard to the subjects set

forth below.  *See* Fed. R. Civ. P. 30(b)(6).  In the event that more than one representative is

designated to testify on behalf of Amazon with regard to these subjects, Amazon is requested to

provide the undersigned counsel with the names of the deponents designated and the subjects on

which each will testify at least one week prior to the date of the deposition.

PLEASE TAKE FURTHER NOTICE that the definitions set forth in Rider A to this

subpoena apply to this notice, except that "Relevant Period" shall mean "on or after August 1,

2017," for purposes of this notice.

## SUBJECTS OF EXAMINATION

The subjects of this deposition under Rule 30(b)(6) will be the following:

**A. Roles and Responsibilities of National and Regional H&S Responsible Persons**

The roles and responsibilities, by title, of National Staff Members and Regional Staff
Members who were H&S Responsible Persons at any point during the Relevant Period.

### B.  National and Regional Pace of Work Analyses

Analyses conducted or relied upon by National Staff Members or Regional Staff Members (including contractors) during the Relevant Period of any actual or potential risk to Health and Safety Information created by the pace of work for any Process in one or more Facilities.

### C.  Productivity Requirements or Guidance

Amazon's development of Productivity Requirements or Guidance during the Relevant Period, including:

- how Amazon developed Productivity Requirements or Guidance
- information about any analyses that informed that development;
- what involvement National Staff Members, Regional Staff Members, and Facility Staff Members (by title) had in that development, if any; and
- changes in Amazon's Productivity Requirements or Guidance, supporting analyses, and relative involvement of National Staff Members, Regional Staff Members, and Facility Staff Members (by title).

### D.  Review of Injury Rates

National Staff Members' and Regional Staff Members' review of Injury Rates during the Relevant Period, including:

- which Staff Members (by title) conducted such review;
- how they conducted such review; and
- what further actions, if any, resulted from such review.

### E.  Strategies for Reducing Injury Rates

Actions taken or recommended during the Relevant Period by National Staff Members or Regional Staff Members to reduce Injury Rates at one or more Facilities—excluding actions intended to remediate a safety hazard—including changes to:

- the decision-making process concerning whether to record an injury or illness on an OSHA 300 log;
- the frequency or circumstances in which AmCare staff or safety team member refers a worker to an Outside Medical Provider; and
- Amazon's relationship with certain Outside Medical Providers.

### F.  Failure to Record Recordable Injuries

National Staff Members' and Regional Staff Members' knowledge during the Relevant Period concerning how Amazon determined whether to record an injury or illness on an OSHA

300 log, including how often Amazon failed to record OSHA-recordable injuries on an OSHA 300 log and why.

### G. Review of Outside Medical Providers

National Staff Members' and Regional Staff Members' review of Outside Medical Providers in connection with the frequency with which they provided care beyond first-aid, recommended work restrictions or medical leave, or found an injury or illness to be work-related, including:

- which Staff Members (by title) conducted such review;
- how they conducted such review; and
- what actions by Amazon, if any, resulted from such review.

### H. Vice President of Worldwide Workplace Health & Safety ("H&S VP")

Amazon's current and former H&S VPs' knowledge during the Relevant Period concerning ergonomic and other potential Health & Safety hazards related to the pace of work at the Facilities and what steps, if any, the H&S VPs took or recommended Amazon take to analyze or remediate these potential hazards.

### I. Statements Concerning Injury Rates and Health and Safety

The preparation during the Relevant Period of Amazon statements to the public, to officers or agencies of the federal government, or to Relevant Financial Institutions concerning (a) Injury Rates or (b) to Relevant Financial Institutions only, concerning Health and Safety or compliance with applicable labor laws and regulations, including:

- who was involved in preparing such statements;
- who made final decisions about the text of such statements; and
- what diligence was done, if any, in connection with the portions of these statements concerning Injury Rates.

3

# Exhibit 6

**From:** Lillywhite, Jacob (USANYS) <Jacob.Lillywhite@usdoj.gov>
**Sent:** Thursday, August 11, 2022 11:09 AM
**To:** Ahmad, Zainab <ZAhmad@gibsondunn.com>; Denerstein, Mylan L.
<MDenerstein@gibsondunn.com>; Schwartz, Jason C. <JSchwartz@gibsondunn.com>
**Cc:** Tarczynska, Dominika (USANYS) <Dominika.Tarczynska@usdoj.gov>; Kim, Elizabeth
(USANYS) <Elizabeth.Kim@usdoj.gov>; Hennefeld, Daniel - SOL
<Hennefeld.Daniel@dol.gov>; Jaklevic, David M - SOL <Jaklevic.David.M@dol.gov>;
Ashley Boizelle <boizelle@amazon.com>
**Subject:** RE: Amazon production

 **[WARNING: External Email]**
Hi all,

Good to talk with you yesterday.  As we discussed, below is the production schedule we
would like to meet over the coming weeks.  We understand it will require a significant
mobilization of resources for Amazon and for you, but in light of our significant
concerns about the safety of so many workers, we believe we have to move as quickly
as possible here.  We are happy to discuss ways to reduce the burden associated with
any of these requests; if we can get the information we need in a more efficient
fashion, that's fine.

We look forward to talking on Monday and hearing what Amazon can commit to.  We
understand you may not be able to respond as to each item at that point, and we
expect this will be the first of several conversations next week about the production
schedule.  If there are specific reasons why the timing for a given item isn't possible, it
would be helpful to understand why in as much detail as possible.

Note that in many of the items below, we are asking (at this time) for a subset of the
information called for in our requests; for those items, we've identified in parentheses
one or more of the broader requests that encompass our present, narrower request.

- This week:
    - Begin your production of documents responsive to DOL RFP 47,
      prioritizing the most recent if you can.
    - Send the March 2022 revision of the Conservative Care Protocols. (DOL
      RFP 43(a).)
    - Send full rosters for ALB1, BOI2, DEN5, DYO1, MCO2, and MDW8 that

include contact information for all former employees and information
about regional employees and that go back the full five years (or until the
facility opened—often much more recently). (DOL RFP 4.)

- Week of 8/15:
  - Information responsive to SDNY Rog 1(a), (b), (e), (f), and Rog 2.
  - Information responsive to SDNY Rog 5.
  - Begin identification and production of national and regional ergonomic or
    other analyses concerning pace of work.  (SDNY Rog 6, SDNY RFP 4; DOL
    RFP 62-64, 67-69, 72.)
  - Information responsive to SDNY Rog 13.
- Week of 8/22:
  - Information responsive to SDNY Rog 8.
  - Identify financial institutions, over the last five years, that have been
    counterparties to agreements with Amazon involving at least $90 million
    in aggregate. (Toward narrowing SDNY Rog 14.)
  - Begin production of documents responsive to SDNY RFP 6.
  - Complete the production of documents responsive to DOL RFP 47.
  - Produce national and regional productivity and safety policies, training,
    and written guidance. (DOL RFP 13-14, 58.)
- Week of 8/29:
  - Documents responsive to DOL RFP 60 and 61.
  - Documents responsive to SDNY RFP 7.
  - Nationwide data on Key Productivity Metrics. (DOL RFP 24 + SDNY
    national request.)
  - Documents prepared by National Staff Members concerning worker
    productivity. (DOL RFP 29 + SDNY national request.)
  - Complete identification and production of national and regional
    ergonomic or other analyses concerning pace of work.  (SDNY Rog 6, SDNY
    RFP 4; DOL RFP 62-64, 67-69, 72.)
- Week of 9/6:
  - Documents concerning fatalities. (DOL RFP 50.)
  - Policies, training, or written guidance concerning recording an injury or
    illness.  (DOL RFP 43(g), 56(d), 75.)
  - Documents responsive to DOL RFP 78.
  - Documents responsive to SDNY RFP 10.
  - Documents responsive to SDNY RFP 13.
  - Complete production of documents responsive to SDNY RFP 6.
- Week of 9/12:
  - Data showing turnover by job process and by Facility (nationwide).  (DOL
    RFP 55 + SDNY national request.)
  - Documents responsive to DOL RFP 53.
  - Documents prepared by National Staff Members concerning or reflecting
    an Injury Rate at a Facility. (DOL RFP 55 + SDNY national request.)
  - Documents responsive to DOL RFPs 34-41.
  - Information requested by SDNY Rog 9 for National Staff Members and

Regional Staff Members.
- Documents responsive to SDNY RFP 8.
- Documents responsive to DOL RFP 52.

As we also discussed yesterday, we would like to depose a 30(b)(6) witness the week of 9/6 on the following topics:

1. The roles of National Staff Members and Regional Staff Members who were H&S Responsible Persons.
2. National and regional ergonomic or other analyses concerning pace of work.
3. How Productivity Requirements or Guidance are established.
    a. Technical details of any analyses.
    b. Involvement of National Staff, Regional Staff, and Facility Staff.
    c. Changes over the last five years.
4. The review of injury rates at the national and regional levels.
    a. By whom?
    b. How?
    c. With what consequences?
5. The review of Outside Medical Providers at the national and regional levels. (Same questions as 4.)
6. Over the last five years, the role and knowledge of the Vice President of Worldwide Workplace Health & Safety concerning ergonomic and other potential hazards related to pace of work at the Facilities.
7. Preparation of corporate statements, to the public, to officers or agencies of the federal government, and to financial institutions concerning Injury Rates at the Facilities.  (Happy to postpone this 30(b)(6) topic to a later date, if you would prefer.)

If you have any questions about the above, happy to jump on a call before Monday to clarify.

Best,

Jake

Jacob Lillywhite
Assistant United States Attorney
Southern District of New York
86 Chambers Street, Third Floor
New York, New York 10007
(212) 637-2639

---

**From:** Lillywhite, Jacob (USANYS)
**Sent:** Monday, August 8, 2022 8:48 PM
**To:** Schwartz, Jason C. <JSchwartz@gibsondunn.com>

**Cc:** Denerstein, Mylan L. <[MDenerstein@gibsondunn.com](mailto:MDenerstein@gibsondunn.com)>; Ahmad, Zainab <[ZAhmad@gibsondunn.com](mailto:ZAhmad@gibsondunn.com)>; Tarczynska, Dominika (USANYS) <[DTarczynska@usa.doj.gov](mailto:DTarczynska@usa.doj.gov)>; Kim, Elizabeth (USANYS) <[EKim3@usa.doj.gov](mailto:EKim3@usa.doj.gov)>; Hennefeld, Daniel - SOL <[Hennefeld.Daniel@dol.gov](mailto:Hennefeld.Daniel@dol.gov)>; Jaklevic, David M - SOL <[Jaklevic.David.M@dol.gov](mailto:Jaklevic.David.M@dol.gov)>; Ashley Boizelle <[boizelle@amazon.com](mailto:boizelle@amazon.com)>
**Subject:** RE: Amazon production

Yes, noon Wednesday works for us.  Thanks Jason.

---

**From:** Schwartz, Jason C. <[JSchwartz@gibsondunn.com](mailto:JSchwartz@gibsondunn.com)>
**Sent:** Monday, August 8, 2022 7:16 PM
**To:** Lillywhite, Jacob (USANYS) <[JLillywhite@usa.doj.gov](mailto:JLillywhite@usa.doj.gov)>
**Cc:** Denerstein, Mylan L. <[MDenerstein@gibsondunn.com](mailto:MDenerstein@gibsondunn.com)>; Ahmad, Zainab <[ZAhmad@gibsondunn.com](mailto:ZAhmad@gibsondunn.com)>; Tarczynska, Dominika (USANYS) <[DTarczynska@usa.doj.gov](mailto:DTarczynska@usa.doj.gov)>; Kim, Elizabeth (USANYS) <[EKim3@usa.doj.gov](mailto:EKim3@usa.doj.gov)>; Hennefeld, Daniel - SOL <[Hennefeld.Daniel@dol.gov](mailto:Hennefeld.Daniel@dol.gov)>; Jaklevic, David M - SOL <[Jaklevic.David.M@dol.gov](mailto:Jaklevic.David.M@dol.gov)>; Ashley Boizelle <[boizelle@amazon.com](mailto:boizelle@amazon.com)>
**Subject:** [EXTERNAL] RE: Amazon production

Would sometime between 10-1 on Wednesday work?  Thanks.  Best, Jason

**Jason C. Schwartz**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.955.8242 • Cell +1 703.475.0363
[JSchwartz@gibsondunn.com](mailto:JSchwartz@gibsondunn.com) • [www.gibsondunn.com](http://www.gibsondunn.com)

---

**From:** Schwartz, Jason C. <[JSchwartz@gibsondunn.com](mailto:JSchwartz@gibsondunn.com)>
**Sent:** Monday, August 8, 2022 2:00 PM
**To:** Lillywhite, Jacob (USANYS) <[Jacob.Lillywhite@usdoj.gov](mailto:Jacob.Lillywhite@usdoj.gov)>
**Cc:** Denerstein, Mylan L. <[MDenerstein@gibsondunn.com](mailto:MDenerstein@gibsondunn.com)>; Ahmad, Zainab <[ZAhmad@gibsondunn.com](mailto:ZAhmad@gibsondunn.com)>; Tarczynska, Dominika (USANYS) <[Dominika.Tarczynska@usdoj.gov](mailto:Dominika.Tarczynska@usdoj.gov)>; Kim, Elizabeth (USANYS) <[Elizabeth.Kim@usdoj.gov](mailto:Elizabeth.Kim@usdoj.gov)>; Hennefeld, Daniel - SOL <[Hennefeld.Daniel@dol.gov](mailto:Hennefeld.Daniel@dol.gov)>; Jaklevic, David M - SOL <[Jaklevic.David.M@dol.gov](mailto:Jaklevic.David.M@dol.gov)>; Ashley Boizelle <[boizelle@amazon.com](mailto:boizelle@amazon.com)>
**Subject:** Re: Amazon production

Yikes.  Sure thing.  We'll circle back shortly with times.  Best, Jason

On Aug 8, 2022, at 1:58 PM, Lillywhite, Jacob (USANYS)
<Jacob.Lillywhite@usdoj.gov> wrote:

**[WARNING: External Email]**

Hi Jason,

We can discuss when we talk.  Speaking of, I'm in the midst of some
homeowner drama at the moment (involving a busted A/C at a bad time
to be without A/C).  Sorry for the short notice, but can we push our call to
tomorrow afternoon?  We're free at 3:30 pm tomorrow; we're also
relatively flexible Wednesday if that doesn't work.

Thanks,

Jake

---

**From:** Schwartz, Jason C. <JSchwartz@gibsondunn.com>
**Sent:** Friday, August 5, 2022 2:28 PM
**To:** Lillywhite, Jacob (USANYS) <JLillywhite@usa.doj.gov>; Denerstein,
Mylan L. <MDenerstein@gibsondunn.com>; Ahmad, Zainab
<ZAhmad@gibsondunn.com>
**Cc:** Tarczynska, Dominika (USANYS) <DTarczynska@usa.doj.gov>; Kim,
Elizabeth (USANYS) <EKim3@usa.doj.gov>; Hennefeld, Daniel - SOL
<Hennefeld.Daniel@dol.gov>; Jaklevic, David M - SOL
<Jaklevic.David.M@dol.gov>
**Subject:** [EXTERNAL] RE: Amazon production

Hi, Jake.  Can DOL share it with you?  The production
was just the rosters we promised.  Thanks.  Best, Jason

**Jason C. Schwartz**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.955.8242 • Cell +1 703.475.0363
JSchwartz@gibsondunn.com • www.gibsondunn.com

---

**From:** Lillywhite, Jacob (USANYS) <Jacob.Lillywhite@usdoj.gov>
**Sent:** Friday, August 5, 2022 1:41 PM
**To:** Denerstein, Mylan L. <MDenerstein@gibsondunn.com>; Schwartz,
Jason C. <JSchwartz@gibsondunn.com>; Ahmad, Zainab
<ZAhmad@gibsondunn.com>

**Cc:** Tarczynska, Dominika (USANYS) <Dominika.Tarczynska@usdoj.gov>;
Kim, Elizabeth (USANYS) <Elizabeth.Kim@usdoj.gov>; Hennefeld, Daniel -
SOL <Hennefeld.Daniel@dol.gov>; Jaklevic, David M - SOL
<Jaklevic.David.M@dol.gov>
**Subject:** Amazon production

 **[WARNING: External Email]**

Hi Jason,

We understand from DOL that you made a production to them earlier
today in response to Document Request No. 4.  Will you be making the
same production to SDNY?  If so, when can we expect it?

Thanks,

Jake

Jacob Lillywhite
Assistant United States Attorney
Southern District of New York
86 Chambers Street, Third Floor
New York, New York 10007
(212) 637-2639

---

This message may contain confidential and privileged information for the
sole use of the intended recipient. Any review, disclosure, distribution by
others or forwarding without express permission is strictly prohibited. If it
has been sent to you in error, please reply to advise the sender of the
error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information
regarding the firm and/or our privacy policy.

---

This message may contain confidential and privileged information for the sole use of
the intended recipient. Any review, disclosure, distribution by others or forwarding
without express permission is strictly prohibited. If it has been sent to you in error,
please reply to advise the sender of the error and then immediately delete this
message.

Please see our website at https://www.gibsondunn.com/ for information regarding the
firm and/or our privacy policy.

---

This message may contain confidential and privileged information for the sole use of
the intended recipient. Any review, disclosure, distribution by others or forwarding

without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

# Exhibit 7

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY  10166-0193
Tel 212.351.4000
www.gibsondunn.com

Zainab N. Ahmad
Direct: +1 212.351.2609
Fax: +1 212.817.9500
ZAhmad@gibsondunn.com

August 23, 2022

<u>VIA EMAIL</u>

Jacob Lillywhite
Assistant U.S. Attorney
U.S. Attorney's Office for the
Southern District of New York
86 Chambers Street
New York, NY 10007

Daniel Hennefeld
Counsel for OSHA
U.S. Department of Labor
Office of the Solicitor
201 Varick Street
New York, NY 10014

David Jaklevic
Senior Trial Attorney
U.S. Department of Labor
Office of the Solicitor
201 Varick Street
New York, NY 10014

Re:    OSHA & SDNY Subpoenas and Anticipated Production Timeline

Counsel:

As discussed during our videoconference on August 15 and my subsequent email correspondence on August 17, we write to provide you with information regarding our anticipated timeline for the production of documents responsive to the six administrative OSHA subpoenas served on August 2, as well as the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA") subpoena served by SDNY on August 19.  We appreciate that SDNY provided the FIRREA subpoena formally to Amazon, in lieu of informal document and information requests, consistent with our discussion on August 15.

As you know, the FIRREA subpoena, and its corresponding definitions and instructions, contain significant differences and additions to what had previously been requested informally.  We are reviewing those new requests now, as well as Mr. Lillywhite's August 23 letter correspondence received today.  We intend to respond to both promptly.

In the interim, we take this opportunity to reiterate that Amazon is committed to working cooperatively with both OSHA and SDNY to produce, within reason, documents responsive to the six OSHA subpoenas and the FIRREA subpoena.  As outlined below, there are some document requests for which we are not yet in a position to propose a production timeline.  For those outstanding requests we intend to provide an updated timeline and/or concrete compromise proposals, where feasible, for your consideration by September 2, and to continue to confer with you regarding the scope and burden of responding to the requests as currently drafted.  We would also be happy to provide those updates on a rolling basis, if you prefer.

Amazon has continued to make good progress on its production in response to the subpoenas, including documents that both OSHA and SDNY have identified as priority requests.  Since receiving the subpoenas, Amazon has produced nearly ***6,000 documents*** in

Beijing · Brussels · Century City · Dallas · Denver · Dubai · Frankfurt · Hong Kong · Houston · London · Los Angeles · Munich
New York · Orange County · Palo Alto · Paris · San Francisco · São Paulo · Singapore · Washington, D.C.

Page 55

**GIBSON DUNN**

Jacob Lillywhite
U.S. Department of Justice
August 23, 2022
Page 2

response to more than 25 separate document requests.  Specifically, we have produced documents responsive to OSHA subpoena request numbers 1, 4, 5, 7, 8, 10, 11, 12, 16, 40, 41, 43, 44, 45, 46, 47, 49, 50, 58, 74, 75, 76, and 77.  While Amazon has not yet produced responsive documents directly to SDNY because it just received the requested formal process on August 19, we have already produced documents to OSHA that are responsive to several independent requests in the SDNY subpoena, including SDNY Request Nos. 7, 18, and 27, and will produce those documents directly to SDNY promptly.

We also anticipate making an additional production of **3,000 documents** tomorrow.

Further, in the coming weeks, Amazon anticipates the following timeline for its continued productions:

### Document Requests For Which Amazon Has Already Substantially Completed Its Anticipated Production

- OSHA Request Nos.  2, 4, 8, 36, 58, and 75.

### Week of August 22

- Begin production for OSHA Request Nos. 15, 16, 46, 76, 81, as well as SDNY Request No. 24.

- Continue production for OSHA Request Nos. 47 and 50, as well as SDNY Request Nos. 7 and 27.

- Substantially complete production for OSHA Request Nos. 1, 7, and 8.

### Week of August 29

- Begin production for OSHA Request Nos. 13, 14, 21, 22, 25, 37, 58, 62, and 75, as well as SDNY Request Nos. 8, 12, 14, 21, and 24.

- Continue production for OSHA Request No. 47 and 50, as well as SDNY Request Nos. 7 and 27.

- Substantially complete production for OSHA Request No. 8.

- Substantially complete production for OSHA Request No. 11 for ALB1, DEN5, and BOI2.

**GIBSON DUNN**

Jacob Lillywhite
U.S. Department of Justice
August 23, 2022
Page 3


### Week of September 5

- Substantially complete production for OSHA Request No. 47 / SDNY Request No. 7.

In addition to the document requests identified above, Amazon has agreed to produce promptly documents responsive to OSHA Request Nos. 2, 3, 17, 19, 31, 37, 48, 56, 57, 67, 73, 80, 83, and 88.  These documents are also responsive to independent SDNY Request No. 25.  As noted above, we will update you on our anticipated timeline for production of these documents by September 2.

\* \* \*

This anticipated timeline prioritizes the production of documents in response to the OSHA administrative subpoenas, which were received first in time.  Of course, to the extent that the documents produced are also responsive to independent requests contained in SDNY's August 19 subpoena, we will produce those documents directly to SDNY.

Contemporaneous with this letter, Amazon is serving formal responses and objections to the OSHA administrative subpoenas.  The anticipated timeline above adheres to those objections, including that Amazon is committing to the production of documents from the six facilities that were subject to OSHA's inspection and formed the basis of these requests (as well as national or regional documents that are applicable to these facilities) from October 1, 2021, to the present.[1]  As you know from our previous correspondence and discussions, we have concerns about the breadth of material and information sought by the subpoenas, including to the extent that they seek the production of documents beyond those six facilities. This is further complicated by the definition of "Facilities" in SDNY's administrative subpoena served on Friday, which encompasses not only "Sibling Facilities" (as defined by OSHA to include all "sortation centers in the United States") but any and all "facilities operated by Amazon in the United States to transport products to Amazon customers."

As we have discussed, the sweeping scope of these requests make those inquiries extraordinarily burdensome.  During our August 15 call, you explained that you are open to further discussion regarding, and the narrowing of, the scope of these requests, on a request by request basis.  For example, you indicated during the conference that, in response to certain requests (including OSHA Request Nos. 62 and 69 / SDNY Request Nos. 6, 12, and 21), you might consider the production of only data, rather than "all documents," sufficient. In other requests, you indicated that you might consider data or documents that are

---

[1] These six facilities are DY01, MCO2, MDW8, ALB1, DEN5, and BOI2.

**GIBSON DUNN**

Jacob Lillywhite
U.S. Department of Justice
August 23, 2022
Page 4

maintained at a national (or otherwise centrally stored) level sufficient, as opposed to data and documents stored at the facility level (across all facilities).  Likewise, you indicated that in response to certain requests (including those relating to productivity metrics), that documents "sufficient to show," as opposed to "all documents," might be sufficient.

We appreciate these initial attempts at narrowing and clarifying the scope of the subpoenas.  As we indicated, we have taken these clarifications into account in assessing the priority of our document collection efforts and our anticipated production timeframe above.  Until we have conferred and reached an agreement, however, on the scope of what will constitute a sufficient production for each of these requests, we cannot commit to a firm "completion" date for productions in response to each request.

Moreover, as set out in our objections, there are several categories of requests for which we are not yet able to estimate the timing of the production of documents, pending our further meet and confer efforts.  This includes OSHA Request Nos. 6, 9, 18-20, 24, 26-30, 32-35, 38-39, 42, 51-55, 59-61, 63-66, 68-72, 78-79, 82, and 84-87 as well as overlapping independent SDNY Request Nos. 4-6, 11, 15-16, 20, 22-23, 26, and 29-30.  We have described certain of the concerns we have with respect to the burden and scope of those requests in our OSHA subpoena responses and objections.  We are committed to continuing to cooperate and work with you on the documents sought and the scope of these requests.  In that vein, we will endeavor to provide compromise proposals regarding what documents or data can reasonably be produced in response to these outstanding requests by September 2.

As we continue our significant efforts to gather and produce responsive documents as outlined above, we welcome further collaboration regarding the terms and scope of these requests.  We will follow up shortly with a proposal regarding which requests are ripe for that discussion, and of course welcome any thoughts you have on which requests you would like to discuss on a priority basis.

As we emphasized on our call, we are doing all that we can to fully cooperate with your investigation, and have not paused our efforts at the production of documents, even as we work with you to tailor the document requests to an appropriate scope.

Thank you again for your attention to this matter.

# GIBSON DUNN

Jacob Lillywhite
U.S. Department of Justice
August 23, 2022
Page 5


Sincerely,


GIBSON, DUNN & CRUTCHER LLP


Zainab N. Ahmad
Partner

ZNA

cc:    Angeline Loftus (Email: loftus.angie@dol.gov)
       Jing Acosta (Email: Acosta.jing@dol.gov)
       Sukhvir Kaur (Email: Kaur.Sukhvir@dol.gov)
       Nicole O'Connor (Email: OConnor.Nicole@dol.gov)

# Exhibit 8

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*86 Chambers Street*
*New York, New York 10007*

September 13, 2022

<u>By Email</u>

Zainab N. Ahmad
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166-0193
ZAhmad@gibsondunn.com

Re:    SDNY and OSHA Subpoenas

Ms. Ahmad:

We write to provide a revised proposed production schedule and to respond to certain points raised in your letters of August 23, 2022, September 2, 2022, and September 7, 2022, and during our meet and confer on September 7, 2022.  We would like to meet and confer further with you later this week to see if we can reach agreement on a mutually acceptable production schedule.

As we have stressed throughout our discussions, it is critical that the Government receives these documents in an expeditious manner  in light of the OSH Act's six-month statute of limitations, as well as our aforementioned concerns about the safety of Amazon's workers.[1]  We appreciate the limited production Amazon has made to date, but we are extremely concerned that, more than one month after OSHA and this Office served our requests,[2] Amazon has yet to commit to (1) producing documents for more than half of the requests in the FIRREA subpoena and for dozens of the requests in the OSHA subpoenas; (2) dates for completing the production of documents responsive to any but thirteen of the Government's requests; or (3) producing information predating October 2021.  This is particularly concerning for the Government's most time-sensitive requests, which call for information—like the identities of certain relevant Amazon employees—that the Government needs immediately to enable it to take further investigative steps.

Amazon has requested a meet and confer with respect to thirty-nine of the Government's requests; we should hold that meeting this week.  However, Amazon has not yet articulated any specific concerns about those requests beyond boilerplate objections that they are "overbroad" or "unduly burdensome."  To allow this meeting to be productive, we ask that Amazon submit in writing its specific concerns and relevant factual bases prior to our meeting, so that the Government has an opportunity to review Amazon's concerns and can respond to them at the meeting.

We also ask that Amazon provide a revised production schedule no later than September 20.  If, at that point, the Government does not believe the parties will be able promptly to reach

---

[1] Contrary to your assertions in the September 7 letter, we have identified specific concerns regarding ergonomic hazards, struck-by hazards, heat hazards, and PIT hazards, many of which appears to be caused by the extreme pace of work.

[2] OSHA served its outstanding subpoenas on Amazon on August 2.  At Amazon's request, this Office served information requests, rather than a subpoena, the same day.  After Amazon subsequently changed its mind and requested that this Office serve a subpoena, we did so on August 19.

agreement on a reasonable production schedule, the Government expects to move to enforce the subpoenas.  In that regard, it is critical that Amazon complete its production this week (or very shortly thereafter) of information responsive to OSHA Request Nos. 4 and 49 (both for the last five years) and SDNY Request Nos. 4 and 5, as well as the specific documents identified in section F below in response to OSHA Request Nos. 60-68.

### A.  **Proposed Production Schedule**

We appreciate the updated production timeline for responding to the OSHA and the SDNY FIRREA subpoenas that you provided in your September 2 letter, as supplemented by your September 9 email.  However, we note two significant concerns: (1) there are still many requests for which you have not provided a date by which Amazon will commence production, and (2) for the vast majority of requests, no completion dates have been proposed.

Attached please find the Government's counterproposal for the timing of production of documents.  As you will see, it tracks in many ways what Amazon is proposing, while addressing the two concerns identified above.  Please note that this schedule contemplates the production of responsive documents other than email.  We would like to initiate the discussion regarding collection of email documents and will reach out separately in that regard.

There are a few points raised in your August 23 and September 2 letters regarding Amazon's production to date and proposed production schedule about which we would like additional information about:

- You indicated that documents have been produced in response to the following requests, but we have not seen these identified in the production cover letters.  Please provide the bates numbers of documents responsive to the following requests: OSHA Request Nos. 8, 28, 31, SDNY Request Nos. 4, 5, 7, 8, 10, 17, 18 and 27.

- In your August 23 letter you indicated that you have produced documents for OSHA Request No. 5, but it does not appear on the list of completed or in-progress requests in your September 2 letter.  Please provide the bates number for documents responsive to that request.

- In your August 23 letter you indicated that production for SDNY Request No. 24 and OSHA Request No. 81 would begin during the week of August 22, but these requests do not appear on the list of completed or in-progress requests in your September 2 letter.  Please clarify and provide the bates number of production.

- In your September 2 letter, a small subset of the requests you identified as those for which "Amazon has substantially completed its anticipated production" also appear as requests for which Amazon has only "started its production"—specifically, OSHA Request Nos. 54, 58, 75.  Please advise whether Amazon has substantially completed its productions for those three requests.

### B.  **Time-Period for Production**

An overarching issue with Amazon's subpoena response to date is that Amazon has only produced documents and data for the last ten months (October 2021 to the present), though the OSHA subpoenas request information for the prior five years and the SDNY subpoena requests

information for the last ten.[3]  Please produce documents for the entire date range requested in the subpoenas, unless the parties expressly agree to limit the time period for a given request.  For the information contained in Amazon's electronic systems, the burden to produce for the entire requested time period appears to be minimal, and we would like Amazon to supplement its prior productions to include information for a five-year time period.  If, for a specific request, there are reasons why it would be substantially more burdensome to include the full time-period, please provide that information to us in writing in advance of our meet and confer.[4]  For rolling productions, we ask that, wherever practicable, you begin with the most recent documents and information and work backward.

### C.  Limiting Production of Facility-Specific Information to Six Warehouses Inspected by OSHA

We understand that although Amazon is producing information from the national and regional levels, it is refusing to produce facility-specific information beyond the six warehouses that were inspected by OSHA.  We see no legal basis for this limitation.  With respect to data that is centrally maintained in Amazon's electronic systems, we expect the burden to produce responsive data for all facilities to be minimal.  To the extent a request for facility-specific information for warehouses beyond the six inspected by OSHA would require the manual collection of documents or data at each facility, please let us know; we would be happy to consider modifying those requests or agreeing on a sampling approach.

### D.  Amazon's Failure to Produce Documents to SDNY

We remain puzzled as to why Amazon has not produced any documents directly to the SDNY in response to the SDNY subpoena.  For weeks Amazon did not produce documents to the SDNY, even though we raised this issue on August 5, the same day Gibson made its first production to OSHA, and then during our meet and confer on August 10.  We again raised this issue during the September 7 meet and confer, and via a follow-up email on September 8.  At each point, we have asked that Amazon comply with the SDNY subpoena and make productions *to SDNY*.  Instead, in Ryan Stewart's September 9 email response, he indicated that Amazon would "copy SDNY on all productions to OSHA going forward."  And Amazon's September 9 production was made to OSHA with SDNY attorneys copied on the transmittal email. The SDNY

---

[3] In its general objections to the OSHA subpoenas, Amazon asserts that "Amazon and OSHA previously agreed to a time period of October 1, 2021, to the present, subject to further discussion if and as necessary in the future."  That is not true.  As OSHA was conducting the three initial warehouse inspections the week of July 18, it served three limited subpoenas on Amazon on July 19 and 20, each with 12 to 14 requests.  David Jaklovic from SOL discussed those requests with Melanie Paul of Jackson Lewis; as reflected in Ms. Paul's letter of July 29, they agreed to limit production for a handful of those requests to a 10-month time frame, subject to further requests for the remainder of the documents.  On August 2, OSHA issued the six operative subpoenas at issue here, which superseded the prior subpoenas; they requested information over a five-year period.  Contrary to Amazon's assertion, OSHA never agreed to a blanket 10-month limitation applicable beyond these handful of requests.  Nor has SDNY made such an agreement.  Rather, the Government has advised that we are willing to consider limiting the relevant time period on a request-by-request basis where Amazon can make specific factual representations about the burden associated with producing documents across a longer period.  Specifically, for OSHA Request No. 4—one of the requests subject to the earlier agreement with OSHA—we advised you during our meet and confer on August 10 that the Government needed employee information going back the full five years.

[4] We are open to considering modification of the time period for some items; for example, see below regarding OSHA Request No. 47.

subpoena requires that productions be made directly to SDNY, and we ask again that you comply with that instruction.

E.  **Request Specific Issues**

OSHA Request Nos. 6, 19-22: To the extent that certain data responsive to these requests is not tracked or maintained on a per shift basis, but is maintained on a daily basis, we understand that Amazon will produce it in the format that it is maintained.  We have no objection.

OSHA Request No. 25: In your September 2 letter, you offered to "produce promptly spreadsheets that itemize all formal discipline or warnings provided to employees due to Productivity Rate or Time Off Task."  We may be willing to agree to hold in abeyance the production of documents beyond spreadsheets for this request, but we want to be sure that we are receiving all responsive data that is maintained in Amazon's electronic systems.  Specifically, we request confirmation that the "additional documents" and informal "feedback" that you propose excluding from production are records that are not centrally maintained, and instead would be one-off communications via email, paper, or orally.  We also want to ensure that the spreadsheets Amazon will be producing include records of the other steps required by Amazon to address productivity or quality issues, including coaching and retraining.

To date, we have received spreadsheets that reflect feedback and progressive discipline. (*See, e.g.*, AMZ-BOI2-9837.)  These spreadsheets identify employees by identification numbers, not names, and do not include employees who were written up or terminated due to their DPMO rates or for other "quality" issues or because of unsafe conduct related to the hazards listed in the Government's subpoenas.  Please (a) either reproduce these spreadsheets with employee names or provide employee identification numbers, in addition to employee names, in the spreadsheets produced in response to OSHA Request. No. 4; and (b) reproduce these spreadsheets and include feedback and discipline related to "quality" issues and relevant unsafe conduct.  Please be aware that, while Amazon distinguishes between "productivity" and "quality" issues, we view the two to be inextricably intertwined when it comes to pace of work; consequently, Amazon should not exclude quality-related information when responding to OSHA's and SDNY's requests regarding Productivity Rates.[5]

OSHA Request No. 47:   Please confirm that you have produced all responsive records going back to October 2021.  To allow Amazon to focus its efforts on other requests, we are willing to limit this request to (a) electronic information that is centrally stored, which appears to include the information of the sort contained in AMZ-MCO2-4111, for the five-year period and (b) for other responsive documents and information, to January 1, 2021, to the present.  We reserve our right to later request additional documents from before 2021 if needed.

OSHA Request No. 62:   With respect to any regional or national audits regarding ergonomic hazards, risk factors for musculoskeletal disorders, pace of work, struck-by hazards, or heat hazards, we request that Amazon produce the audit reports and any related documents.  We know the number of facility-specific audits covering these topics is large.  Accordingly, please identify the types of audits that would include information concerning actual or potential hazards related to pace of work, ergonomics, struck-by, heat, or PIT accidents.  We are willing to limit the

---

[5] In addition, we note that many of the Government's requests call for documents related to "performance" generally (*see, e.g.*, OSHA Request Nos. 13-14).

request to those audits for the six warehouses inspected by OSHA and agree on a sampling approach for the remainder. Also, please advise whether Amazon centrally maintains electronic information indicating whether or to what extent an audit found issues.

Additionally, your September 2 letter references certain narrowing that you may be applying to other requests based on a discussion during the August 15 call in which we indicated that in certain instances centrally stored data or documents may provide the Government sufficient information. While we are certainly open to considering narrowing in this way, at least in the first instance, to do so we would need to review that data and understand from Amazon what additional documents or information are not being produced.

Finally, in your August 23 and September 2 letters, you asked to meet and confer concerning many of the Government's requests (OSHA Request Nos. 6, 9, 18, 24, 27, 29, 32, 33, 34, 35, 38, 39, 51, 53, 55, 59, 60, 68-73, 79, 80, 82, 84-87; SNY Request Nos. 6, 11, 15, 16, 20, 22, 23, 30, 36, 39,). For other requests, though you have not requested a meet and confer, you have not provided a proposed time frame for production (OSHA Request Nos. 42, 48, 83, 88; SDNY Nos. 1-3, 13, 19, 25, 28). As indicated above, we would like to hold this meet and confer later this week. In advance, please submit to us in writing any specific concerns about particular requests—including, specific facts that support a claim of undue burden for a particular request.

## F.  OSHA Request Nos. 60-68

As noted during the September 7 meet and confer, OSHA Request Nos. 60-68 are a priority for the government. To help facilitate the start of Amazon's production in response to these requests, we have identified the following responsive documents that we believe Amazon should be able to promptly produce:

- Copy of ███████████████████████████████ (referenced on page 2 of ██████████████████████████ )

- Copy of ███████████████████████ (referenced on page 3 of ████ ██████████████ )

- Copies of all ergonomic risk assessments (referenced in Paragraph 5.3.1 of the ████████ and Paragraph 5.2 of the ██████████ ) performed at ALB1, BOI2, DEN5, DYO1, MCO2, and MDW8.

- Copies of all individual ergonomic evaluations (referenced in Paragraph 5.3.2 of the ██████████████████████ and Paragraph 5.2 of the ████████████ ) performed at ALB1, DOI2, DEN5, DYO1, MCO2, and MDW8, including any employee request to perform an individual ergonomic evaluation, Amazon's response to any employee request, and any document or report that memorializes the result or conclusion of any such evaluation.

- Copies of all technical ergonomic assessments (referenced in Paragraph 5.3.3.2 of the ██████████████████ Paragraph 5.2 of the ████████████ ██████████ ) performed at ALB1, DOI2, DEN5, DYO1, MCO2, and MDW8.

- Copies of any associate communications (referenced in Paragraph 5.3.3.3 of the ████████████████ and Paragraph 5.2 of the ████████████

 ) concerning the status or result of any ergonomic evaluation that was performed at ALB1, DOI2, DEN5, DYO1, MCO2, and MDW8.

- A copy of the register of tasks referenced in Paragraph 5.3.3.4 of the ▮▮▮▮▮ ▮▮▮▮▮ in its current form as the register of tasks applies to ALB1, DOI2 DEN5, DYO1 MCO2, and MDW8.

- Copies of all progress reports (referenced in Paragraph 12 of the ▮▮▮▮▮ ▮▮▮▮▮ ) concerning ALB1, DOI2, DEN5, DYO1, MCO2, and MDW8's progress toward implementing the ▮▮▮▮▮ .

- Copies of all meeting minutes or meeting notes generated by any safety, health, or ergonomics committee at ALB1, DOI2, DEN5, DYO1, MCO2, and MDW8.

- Copies of all documents shared or reviewed at any safety, health, or ergonomics committee meeting at ALB1, DOI2, DEN5, DYO1, MCO2, and MDW8.

- Copy of Amazon ▮▮▮▮▮ (referenced in Paragraph 14 of the ▮▮▮▮▮ )

- Copy of ▮▮▮▮▮ (referenced in Paragraph 14 of the ▮▮▮▮▮ )

- Copy of ▮▮▮▮▮ s (referenced in Paragraph 14 of the ▮▮▮▮▮ )

- Copy of ▮▮▮▮▮ (referenced in Paragraph 14 of the ▮▮▮▮▮ )

- Copies of any contracts or agreements between Amazon and ▮▮▮▮▮ that set forth or memorialize any services that ▮▮▮▮▮ provided to Amazon at ALB1, DOI2, DEN5, DYO1, MCO2, or MDW8.

- Copies of all ergonomic design work paths, Phase I, Phase II, and Phase III assessments (referenced in Paragraph 6 of the ▮▮▮▮▮ ) for any work process at ALB1, DOI2, DEN5, DYO1, MCO2, or MDW8.

To be clear, the documents identified above are simply a subset of the documents we expect Amazon to produce in response to OSHA Request Nos. 60-68. As reflected in the attached schedule, we request that Amazon produce these documents this week.

### G. Surveillance Video

On September 1, we requested that you provide further information about the "monetary cost" and "employee hours" that you referenced in your August 25 email regarding the production and preservation of surveillance video. Mr. Stewart indicated in his September 2 email response that you would revert back shortly with a more detailed response regarding the burden of preservation and production. Yet, more than ten days later, we still have not received this information. Please provide this to us in advance of our meet and confer.

## H.  30(b)(6) Topics

To follow up on our September 7 meet and confer, and your September 9 email, regarding the 30(b)(6) deposition topics:

- Topic A: Although we are amenable in principle to your proposal of addressing Topic A with a written proffer in lieu of testimony with the preservation of the Government's rights to require a deposition after reviewing the written proffer, we are concerned about Amazon's proposed timing.  This is key information to inform next steps in the Government's investigation.  And given the narrow nature of the request—the titles and roles and responsibility of regional and national staff focused on health and safety—it should not require over a month to gather.  Accordingly, we request that Amazon provide this written proffer by September 20.

- Topic B: While we understand that one key person with knowledge is out on leave, we would like to start receiving information about the analyses conducted or relied upon by National and Regional staff regarding the risks created by the pace of work as soon as possible.  And while we understand that this individual may be necessary to provide a complete list, we expect that a number of other Amazon employees have information regarding such analyses.  Accordingly, we would ask that Amazon start identifying and providing these analyses on a rolling basis and provide the names of the staff with knowledge so that we can notice them for fact depositions.

- Topic C: We are willing to put off Rule 30(b)(6) testimony on Topic C, provided Amazon offers an alternative that promptly provides the Government the information it needs.  You have offered a "primer" from attorneys on Amazon's productivity review process, but we expect that would be duplicative of information we already have (see, e.g., AMZ-BOI2-00009815, -9816, -9818, -9832).  We need to understand: (1) how Amazon's productivity guidelines (including suggested rates and expected rates for guardrails) are calculated; (2) how and by whom (by title) those methods were developed, including what analyses informed that development; and (3) how these requirements have changed over the last five years.  We again suggest that you make available one or more employees with knowledge on these topics for an interview the week of September 19.  We would also like to receive earlier versions of ████████████████████████████████████████

- Deposition Locations: As we indicated on the call, we would like to conduct these depositions in person.  Our preference is to hold the depositions in New York; however, depending on the locations of witnesses and the number of people who would be required to travel, we are willing to consider travel to other locations.  Please identify the proposed locations as you begin to identify witnesses and we can discuss further.

- Prioritization of Other Topics:  After Topics A-C, we ask that you prioritize Topics D, E, and F.

Thank you for your attention to this matter.  We look forward to speaking with you further regarding these matters.  Please advise of some dates later this week when you are available for a meet and confer.[6]

Sincerely,

DAMIAN WILLIAMS
United States Attorney
Southern District of New York

By:    /s/ Dominika Tarczynska
JACOB LILLYWHITE
DOMINIKA TARCZYNSKA
ELIZABETH J. KIM
Assistant United States Attorneys
86 Chambers Street, Third Floor
New York, New York 10007
(212) 637-2745
jacob.lillywhite@usdoj.gov

---

[6] We disagree with your contention in your September 7 letter that the governing ethical rules bar SDNY and DOL attorneys from contacting any current managers without your prior consent.  As we previously advised, we are aware of our professional and ethical obligations, and will only engage in communications that are permissible under relevant Rules of Professional Conduct.

In addition, we do not understand why you continue to insist that Mr. Jaklevic made the statements you attribute to him on the August 10 call.  It was Mr. Kaplan, not Mr. Jaklevic, who spoke on that topic during the August 10 call.

| Week of 9/5 | Week of 9/12 | Week of 9/19 | Week of 9/26 | Week of 10/3 | Week of 10/10 | Week of 10/17 |
|---|---|---|---|---|---|---|
| OSHA 4 | | | | | | |
| OSHA 13 | | | | | | |
| OSHA 14 | | | | | | |
| OSHA 30 | | | | | | |
| OSHA 43 | | | | | | |
| OSHA 45 | | | | | | |
| OSHA 49 | | | | | | |
| SDNY 4 | | | | | | |
| SDNY 5 | | | | | | |
| SDNY 27 | | | | | | |
| | OSHA 74 | | | | | |
| | SDNY 8 | | | | | |
| | SDNY 18 | | | | | |
| | SDNY 21 | | | | | |
| | OSHA 47 | | | | | |
| | SDNY 24 | | | | | |
| | | OSHA 64 | | | | |
| | OSHA 24 | | | | | |
| | OSHA 29 | | | | | |
| | OSHA 37 | | | | | |
| | Specific documents requested in connection with OSHA 60-68 | | | | | |
| | OSHA 18 | | | | | |
| | OSHA 42 | | | | | |
| | OSHA 50 | | | | | |
| | OSHA 68 | | | | | |
| | | OSHA 67 | | | | |
| | | SDNY 9 | | | | |
| | | SDNY 15 | | | | |
| | | SDNY 11 | | | | |
| | | SDNY 12 | | | | |
| | | | OSHA 61 | | | |
| | | | OSHA 71 | | | |
| | | | OSHA 73 | | | |
| | | | SDNY 28 | | | |
| | | | SDNY 14 | | | |
| | | | SDNY 26 | | | |
| | | | SDNY 16 | | | |
| | | | SDNY 22 | | | |
| | | | SDNY 23 | | | |
| | | | SDNY 25 | | | |
| | | | | OSHA 55 | | |
| | | | | OSHA 69 | | |
| | | | | OSHA 72 | | |
| | | | | SDNY 2 | | |
| | | | | SDNY 16 | | |
| | | | | SDNY 6 | | |
| | | | | | OSHA 60 | |
| | | | | | OSHA 70 | |
| | | | | | OSHA 78 | |

Exhibit 9

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY  10166-0193
Tel 212.351.4000
www.gibsondunn.com

Zainab N. Ahmad
Direct: +1 212.351.2609
Fax: +1 212.817.9500
ZAhmad@gibsondunn.com

**CONFIDENTIAL TREATMENT REQUESTED**

September 21, 2022

<u>VIA EMAIL</u>

| | | |
|---|---|---|
| Jacob Lillywhite | Daniel Hennefeld | David Jaklevic |
| Dominika Tarczynska | Counsel for OSHA | Senior Trial Attorney |
| Elizabeth J. Kim | U.S. Department of Labor | U.S. Department of Labor |
| Assistant U.S. Attorneys | Office of the Solicitor | Office of the Solicitor |
| U.S. Attorney's Office for the | 201 Varick Street | 201 Varick Street |
| Southern District of New York | New York, NY 10014 | New York, NY 10014 |
| 86 Chambers Street | | |
| New York, NY 10007 | | |

Re:    <u>OSHA & SDNY Subpoenas</u>

Counsel:

We write in response to your September 13, 2022 letter and proposed production schedule, which responded to our prior correspondence over the past several weeks, including principally our August 23 letter.

As noted in our September 15 email, we understand that you would like us to move even faster in responding to the eight subpoenas and the Rule 30(b)(6) deposition requests in line with the aggressive schedule—which you have acknowledged sets an investigatory pace that is faster than most other major fraud investigations—set forth in your correspondence to date.  Amazon is working diligently and in good faith to provide you with responsive materials as quickly as possible.[1]

---

[1] On July 19 and 20, 2022, the U.S. Occupational Safety and Health Administration ("OSHA") served subpoenas on Amazon's DYO1, MCO2, and MDW8 facilities.  On August 2, OSHA served new subpoenas (replacing the original three) on Amazon's ALB1, BOI2, DEN5, DYO1, MCO2, and MDW8 facilities.  Those subpoenas demanded responses to nearly 90 different document requests for each facility, as well as—for many of the requests—documents from hundreds of so-called "sibling facilities" nationwide.  On August 11, OSHA issued another subpoena for the DYO1 facility with two document requests related to that facility's COVID-19 safety policies.  On August 19, the United States Attorney's Office for the Southern District of New York ("SDNY") issued a subpoena pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, 12 U.S.C. § 1833a ("FIRREA").  The FIRREA subpoena adds 30 more document requests to OSHA's demands, including requests seeking health and safety related documents for an expanded geographic and

Beijing · Brussels · Century City · Dallas · Denver · Dubai · Frankfurt · Hong Kong · Houston · London · Los Angeles · Munich
New York · Orange County · Palo Alto · Paris · San Francisco · São Paulo · Singapore · Washington, D.C.

Page 71

**GIBSON DUNN**

Jacob Lillywhite
U.S. Department of Justice
September 21, 2022
Page 2

**CONFIDENTAL TREATMENT REQUESTED**

In that vein, we are responding here to the various topics and demands raised in your September 13 letter (topics and demands that we understand from our September 7 meet and confer call you originally intended to provide us the week of September 5).  As you requested, this letter further explains our concerns regarding the specific document requests to which we have objected and that we hoped to discuss in a meet and confer.  We have also provided updated responses and/or counterproposals for each such request.  At this time, Amazon has committed to providing, on a rolling basis, documents (if any) responsive to all but 34 of the more than 550 total requests across the eight subpoenas.[2]  We remain ready to have a call to further meet and confer at your convenience and have already provided you with our availability to do so on Friday afternoon.  We anticipate, however, that many of our responses here might moot the need to meet and confer on many of the document requests, especially in light of your agreement in your letter—for the first time—to address the burden of collecting and producing email communications separately at a later date.  In light of our responses and significant productions to date, and our reasonable proposals for compromise, we believe that motion practice on the sweeping nature of the subpoenas and the aggressive pace of this dual investigation is unnecessary.

We also are providing with this letter an updated schedule that details our current anticipated timeline for the production of documents responsive both to the 188 priority requests included in your September 13 proposed production schedule and many other requests that you did not list on that schedule.  Your letter notes the fact that OSHA is constrained by the OSH Act's six-month statute of limitations.  We understand that limitation and for that reason, as noted below and in our prior correspondence, we have prioritized the production of documents responsive to the OSHA subpoenas over those responsive to the FIRREA subpoena (although, as you know, all of the documents responsive to the OSHA subpoenas are also responsive to the FIRREA subpoena and are also being produced to SDNY).

Finally, in part to justify your aggressive production schedule, your September 13 letter again references a purported "extreme pace of work" at Amazon that is purporting to cause "ergonomic hazards, struck-by-hazards, heat hazards, and PIT hazards."  As we have previously indicated, we disagree with the proposition that Amazon's "pace of work" is

---

temporal scope.  In total, these eight subpoenas include more than 550 document requests.  The FIRREA subpoena also noticed a Fed. R. Civ. P. 30(b)(6) deposition on nine topics, eight of which are focused on health and safety related information.

[2] Specifically, as detailed below, Amazon reiterates its good faith request to meet and confer regarding OSHA Request Nos. 29, 52, 60, 85, and 86 (for each of the facilities), OSHA Request No. 82 (for DYO1), and SDNY Request Nos. 16, 24, and 26.

**GIBSON DUNN**

Jacob Lillywhite
U.S. Department of Justice
September 21, 2022
Page 3

<b>CONFIDENTIAL TREATMENT REQUESTED</b>

"extreme" or that it is the frequent cause of injury. We also have repeatedly asked you for more specific information so that we can address your purported concerns. But as noted in our prior correspondence, the government has not—other than generally listing broad categories of injuries it claims might be caused by a faster pace of work—identified any specific injuries or incidents (or threat thereof). Nor is it clear to us what you mean by "extreme pace of work." As detailed in our September 7 letter,



Again, to the extent you believe there is an imminent health and safety hazard present at any Amazon facility, we welcome any and all information about that potential hazard so that Amazon can promptly review and address it as appropriate.

### A.   Proposed Production Schedule

We appreciate the counterproposal production schedule that you provided on September 13, in response to our production schedules provided on August 23 and September 2. We also appreciate that your proposed schedule updated the document requests that the government considers a priority. Given the volume of requests at issue—over 550 total requests for production contained across the seven OSHA subpoenas and the FIRREA subpoena—as we have noted previously, it is helpful to know which requests are priorities for you, so we can respond accordingly in our efforts to cooperate with your investigations.

*Immediate priority documents.* Your letter identified 20 immediate priority items for which you requested production "this week (or very shortly thereafter)"—including several specific documents (by title) not previously identified. (Ltr. at 2, 5-6). As noted in our September 16 email, we have been working diligently to produce documents as quickly as

**GIBSON DUNN**

Jacob Lillywhite
U.S. Department of Justice
September 21, 2022
Page 4

**CONFIDENTAL TREATMENT REQUESTED**

possible, and we refocused some of that attention to produce as many of these 20 immediate priority items as possible in the three days following receipt of your letter.  To that end, our September 16 production included documents and/or information responsive to 8 of the items you identified.

Further, Amazon is making today another production containing the following items from that list:

- Documents responsive to SDNY Request No. 5;

- Documents responsive to SDNY Request No. 4 for current employees;

- Documents responsive to OSHA Request No. 4 for the past five years;

- Copies of all readily available meeting minutes or meeting notes generated by the Associate Safety Committees at ALB1, BOI2, DEN5, DYO1, and MCO2, as well as copies of all documents shared or reviewed by the Associate Safety Committees at those facilities (to the extent identified after a reasonably diligent search).  We are continuing to collect responsive documents at the facility level and will provide a supplemental production of additional documents, if any, on or before September 30.

With respect to other items on your list:

- We have previously produced copies of ergonomic risk assessments, individual ergonomic evaluations, and/or technical ergonomic assessments performed at DEN5 and ALB1.  We are continuing to collect responsive documents at the facility level and will provide a supplemental production of additional responsive documents, if any, on or before September 30.

- We will provide an update regarding your specific request for ergonomic design workpaths, Phase I, Phase II, and Phase III assessments and produce responsive documents, if any, by next week.

- In the course of our reasonably diligent search to date, we have not yet been able to identify any documents responsive to your requests for (i) a register of ergonomic tasks for ALB1, BOI2, DEN5, DYO1, MCO2, or MDW8; or (ii) any contracts or agreements between Amazon and ▮▮▮▮▮▮▮▮ to provide services at ALB1, BOI2, DEN5, DYO1, MCO2, or MDW8.  Our review is ongoing.  If we identify any additional non-privileged, responsive documents, we will produce them promptly.

- We have previously produced copies of associate communications concerning the status or result of any ergonomic evaluation performed at the facilities, located at

**GIBSON DUNN**

Jacob Lillywhite
U.S. Department of Justice
September 21, 2022
Page 5

**CONFIDENTAL TREATMENT REQUESTED**

AMZ-OSHA6-00000285—AMZ-OSHA6-00000286, AMZ-OSHA6-00000292—
AMZ-OSHA6-00000293, AMZ-OSHA6-00000310—AMZ-OSHA6-00000311,
AMZ-OSHA6-00000312, AMZ-OSHA6-00000316—AMZ-OSHA6-00000317,
AMZ-OSHA6-00000320—AMZ-OSHA6-00000323, AMZ-OSHA6-00000332—
AMZ-OSHA6-00000333, AMZ-OSHA6-00000338—AMZ-OSHA6-00000339,
AMZ-OSHA6-00000344—AMZ-OSHA6-00000345, AMZ-OSHA6-00000346,
AMZ-OSHA6-00000355.  Our review is ongoing.  If we identify any additional non-
privileged, responsive documents, we will produce them promptly.

We appreciate your identifying these specific priority items.  To the extent you
identify other specific documents that are a priority in your investigation, we welcome that
information and will focus our efforts accordingly.

***Specific Document Questions***.  Your letter raised several specific questions
regarding the production of documents to date.  (Ltr. at 2.)  We provide responses to those
specific questions below.

*First*, with respect to your questions regarding which documents we have provided in
response to the following OSHA document requests:

- OSHA Request No. 8:  Amazon provided the operating hours of the OSHA inspected
  facilities in our production letters on July 29, 2022 and September 21, 2022.  We
  believe that those prior production letters have been provided to SDNY by OSHA.  If
  that is not the case, please let us know, and we will provide the information directly
  to SDNY.

- OSHA Request No. 28:  These documents are located at AMZ-ALB1-00003545,
  AMZ-BOI2-00009837, and AMZ-MCO2-00004175.

- OSHA Request No. 31:  In the course of our reasonably diligent search to date, we
  have not yet identified any documents responsive to this request.  If we identify any
  non-privileged, responsive documents, we will produce them promptly.

*Second*, as noted in our September 16 production letter, Amazon has produced the
following documents responsive to SDNY document requests:

- SDNY Request No. 3:  AMZ-OSHA6-00000001—AMZ-OSHA6-00001134; AMZ-
  ALB1-00000001—AMZ-ALB1-00003666; AMZ-BOI2-00000001—AMZ-BOI2-
  000009837; AMZ-DEN5-00000001—AMZ-DEN5-00002131; AMZ-DYO1-
  00000001—AMZ-DYO1-00000819; AMZ-MCO2-00000001—AMZ-MCO2-
  00004308; and AMZ-MDW8-00000001—AMZ-MDW8-00000556.

**GIBSON DUNN**

Jacob Lillywhite
U.S. Department of Justice
September 21, 2022
Page 6

**CONFIDENTAL TREATMENT REQUESTED**

- SDNY Request No. 4: AMZ-OSHA6-00000405—AMZ-OSHA6-00000409; AMZ-OSHA6-00000414—AMZ-OSHA6-00000418; AMZ-OSHA6-00001119—AMZ-OSHA6-00001123; and AMZ-OSHA6-00001128—AMZ-OSHA6-00001135.

- SDNY Request No. 5: AMZ-OSHA6-00001119—AMZ-OSHA6-00001123 and AMZ-OSHA6-00001128—AMZ-OSHA6-00001135.

- SDNY Request No. 7:  AMZ-ALB1-00000002—AMZ-ALB1-00003394; AMZ-ALB1-00003395—AMZ-ALB1-00003489; AMZ-ALB1-00003505—AMZ-ALB1-00003523; AMZ-ALB1-00003548—AMZ-ALB1-00003553; AMZ-BOI2-00000002—AMZ-BOI2-00000755; AMZ-BOI2-00000756—AMZ-BOI2-00007823; AMZ-BOI2-00007828—AMZ-BOI2-00009814; AMZ-DEN5-00000002; AMZ-DEN5-00000029—AMZ-DEN5-00002112; AMZ-DYO1-00000317—AMZ-DYO1-00000686; AMZ-DYO1-00000687; AMZ-DYO1-00000688—AMZ-DYO1-00000705; AMZ-DYO1-00000721; AMZ-MCO2-00000282—AMZ-MCO2-00003830; AMZ-MCO2-00003831—AMZ-MCO2-00004111; AMZ-MCO2-00004178—AMZ-MCO2-00004200; AMZ-MDW8-00000298—AMZ-MDW8-00000498; AMZ-MDW8-00000499; and AMZ-MDW8-00000500—AMZ-MDW8-00000524.

- SDNY Request No. 8:  AMZ-ALB1-00003524—AMZ-ALB1-00003545; AMZ-BOI2-00009815—AMZ-BOI2-00009816; AMZ-BOI2-00009818—AMZ-BOI2-00009837; and AMZ-MCO2-00004154–AMZ-MCO2-00004175.

- SDNY Request No. 10: AMZ-ALB1-00003540— AMZ-ALB1-00003544.

- SDNY Request No. 14:  AMZ-ALB1-00003545; AMZ-BOI2-00009837; and AMZ-MCO2-00004175.[3]

- SDNY Request No. 18:  AMZ-OSHA6-00001136—AMZ-OSHA6-00001268.

- SDNY Request No. 22:  AMZ-OSHA6-00000455.

---

[3] We note that our prior reference to the production of documents in response to SDNY Request No. 17 was an inadvertent error.  We intended to refer to Request No. 14, as shown above.

**GIBSON DUNN**

Jacob Lillywhite
U.S. Department of Justice
September 21, 2022
Page 7

**CONFIDENTAL TREATMENT REQUESTED**

- <u>SDNY Request No. 24</u>:  AMZ-ALB1-00003646—AMZ-ALB1-00003649; AMZ-BOI2-00009817; AMZ-DEN5-00002113—AMZ-DEN5-00002122; AMZ-DYO1-00000715—AMZ-DYO1-00000718; AMZ-MCO2-00004151—AMZ-MCO2-00004153; and AMZ-MDW8-00000550.

- <u>SDNY Request No. 27</u>:  AMZ-ALB1-00000002—AMZ-ALB1-00003394; AMZ-ALB1-00003395—AMZ-ALB1-00003489; AMZ-ALB1-00003505—AMZ-ALB1-00003523; AMZ-ALB1-00003548—AMZ-ALB1-00003553; AMZ-BOI2-00000002—AMZ-BOI2-00000755; AMZ-BOI2-00000756—AMZ-BOI2-00007823; AMZ-BOI2-00007828—AMZ-BOI2-00009814; AMZ-DEN5-00000002; AMZ-DEN5-00000029—AMZ-DEN5-00002112; AMZ-DYO1-00000317—AMZ-DYO1-00000686; AMZ-DYO1-00000687; AMZ-DYO1-00000688—AMZ-DYO1-00000705; AMZ-DYO1-00000721; AMZ-MCO2-00000282—AMZ-MCO2-00003830; AMZ-MCO2-00003831—AMZ-MCO2-00004111; AMZ-MCO2-00004178—AMZ-MCO2-00004200; AMZ-MDW8-00000298—AMZ-MDW8-00000498; AMZ-MDW8-00000499; and AMZ-MDW8-00000500—AMZ-MDW8-00000524

*Third*, as indicated in our September 16 production letter, Amazon has produced documents in response to OSHA Request No. 63 that are overinclusive of the documents sought by SDNY Request No. 24 in that they demonstrate or concern potential changes to practices or conditions at the OSHA-inspected facilities to reduce potential ergonomic hazards.  This includes:  AMZ-ALB1-00003646—AMZ-ALB1-00003649 and AMZ-DEN5-00002113—AMZ-DEN5-M00002122.  Pursuant to Amazon's Responses and Objections to the FIRREA subpoena, and as further detailed below, we ask that you clarify Request No. 24 to facilitate further production efforts.

We can confirm that Amazon has produced documents responsive to OSHA Request No. 81; as set forth on our August 24 production letter, those documents are AMZ-OSHA6-00000241—AMZ-OSHA6-275.  We consider our production in response to this Request to be substantially complete.

*Fourth*, we consider our production in response to OSHA Request Nos. 54 and 75 substantially complete.  With respect to OSHA Request No. 58, Amazon has substantially completed its production of documents responsive to certain subparts of the Request, including documents concerning the roles and responsibilities of Safety Team Members and policies and practices intended to avoid, remediate, or reduce potential ergonomic hazards. We anticipate producing additional responsive documents concerning worker safety,

**GIBSON DUNN**

Jacob Lillywhite
U.S. Department of Justice
September 21, 2022
Page 8

**CONFIDENTAL TREATMENT REQUESTED**

including training provided to associates regarding safety protocols and best practices with
respect to particular job responsibilities on a rolling basis by the week of October 17.

For all Requests that we have described as substantially complete, our investigation is
ongoing, and we will produce additional responsive documents, if any, on a rolling basis.

***Updated Proposed Production Schedule.***  As noted above, we appreciate the
proposed production schedule in your September 13 letter, which responds to our
correspondence on August 23, September 2, and September 7.  Amazon has now produced
more than 12,000 documents (over 24,400 pages) in response to more than 150 of the
document requests.  We understand that you want us to respond even faster to the eight
subpoenas and deposition requests.  We are working diligently to provide you with
responsive materials as quickly as possible, given the quantity and breadth of documents and
information the government has requested.

We appreciate the clarification—for the first time—in your September 13 letter that
your proposed production schedule does not contemplate the collection, review, and
production of responsive emails, which will be separately discussed.  For the avoidance of
doubt, we interpret this representation to apply equally to other individually held electronic
communications given that such communications carry the same burden of collection and
review.  As noted in our formal objections, many of the requests would call for the
production of electronic communications from a host of custodians.  Thus, removing this
overbroad aspect of these requests, for now, significantly advances our ability to provide the
responses and compromise approaches set forth below, as well as a more definite anticipated
production schedule.

In line with the above, we are providing another updated and comprehensive
production schedule.  Consistent with our commitment to prioritize the production of
documents that you have identified as a priority, our anticipated production schedule
includes production dates for each of the 188 requests identified on your proposed schedule,
as well as anticipated production times for more than 100 other requests that you have not
identified on your proposed schedule.

As noted in the introduction to your letter, we recognize that OSHA is differently
situated from SDNY in light of the OSH Act's six-month statute of limitations.  As a result,
our anticipated production schedule continues to prioritize in the first instance OSHA's
document requests.

Finally, we understand that you would like us to provide anticipated completion dates
for each category.  We will continue to do so, where feasible.  And we will continue to notify

**GIBSON DUNN**

Jacob Lillywhite
U.S. Department of Justice
September 21, 2022
Page 9

**CONFIDENTAL TREATMENT REQUESTED**

you when our anticipated production is substantially complete with respect to specific requests. However, we note that our production will be made on a rolling basis and in certain instances, it will not be feasible for Amazon to commit to a date certain for the complete production of any and all responsive documents.

**B.     Time-Period & Facility Scope of Productions**

Your letter raises two overarching concerns regarding the scope of Amazon's production in response to the subpoenas.

*First*, you take issue with the time period for which Amazon is producing documents and data in response to the OSHA subpoenas. To date, Amazon has committed to providing responsive documents and data from October 2021 to the present. That 10-month time frame is consistent with a prior agreement between Amazon and OSHA to limit production with respect to several document requests in OSHA's original subpoenas (served on July 19 and 20) that were later substituted with those served on August 2.

We understand that OSHA now prefers five years' worth of documents in response to all requests. But that request is incompatible with your simultaneous demands that Amazon produce responsive documents and information (in response to eight different subpoenas) on an expedited basis with dates certain that are unreasonable and infeasible. In some circumstances—such as the collection of associate medical and incident records—the collection of additional years of responsive documents will require Amazon to collect documents from different systems that are no longer active. And even if that is not the case, collecting an additional four years of responsive documents (i.e., approximately four times as much as we are already collecting), for review and production will significantly affect Amazon's ability to produce documents on the aggressive timeline demanded by OSHA and the SDNY—especially if that five-year lookback is applied across *each* of the more than 500 sweeping OSHA documents requests at issue.

The requested, across-the-board, five-year lookback is also inconsistent with the OSH Act's six-month statute of limitations. Indeed, it is difficult to understand how documents or data from 2017—regarding, by way of example, things like worker leave (OSHA Request No. 46), turnover (OSHA Request No. 54), and powered industrial truck inspections (OSHA Request No. 87)—could be relevant to a potential OSHA citation in 2022.

In an effort to reach a compromise, Amazon can produce to OSHA responsive data and documents dating back one year (double the length of the applicable statute of limitations) to August 2, 2021. Further, Amazon is available to meet and confer with you in good faith about the production of documents beyond that one-year lookback either upon

**GIBSON DUNN**

Jacob Lillywhite
U.S. Department of Justice
September 21, 2022
Page 10

**CONFIDENTAL TREATMENT REQUESTED**

substantial completion of its production or now, on a request-by-request basis, if OSHA believes that there are certain requests for which documents beyond that period are particularly relevant or informative at this stage of your investigation.  For example, Amazon has already agreed to produce documents and data responsive to OSHA Request Nos. 4 and 49 for a five-year period.

Separately, we recognize that SDNY, and its FIRREA investigation, is not subject to the OSH Act's six-month statute of limitations.  Accordingly, as set forth in Amazon's responses and objections to the FIRREA subpoena served on September 19, Amazon will not limit its production of documents in response to SDNY Requests to the same time frame as the OSHA Requests.  Rather, Amazon has generally committed—subject to its objections— to the production of responsive documents dating back to August 2, 2017.  That five-year lookback period is consistent with the approach SDNY took in narrowing the definition of Relevant Financial Institution in the FIRREA subpoena from that first provided in SDNY's informal requests.  Further, Amazon remains available to meet and confer with you in good faith regarding the production of documents beyond that five-year lookback upon substantial completion of its production of documents or now, on a request-by-request basis, if there are certain document requests you believe are particularly informative at this stage of your investigation.

*Second*, you have expressed concern about our claims of undue burden with respect to producing documents pertaining to each of Amazon's facilities.  As we have explained, the scope of OSHA's subpoena requests related to "sibling facilities" would call for the production of documents from more than 900 facilities nationwide.  To be clear, we have not categorically rejected the production of documents or data from other facilities.  Rather— consistent with the aggressive production schedule the government is demanding and the OSH Act's six-month statute of limitations—we have explained that we intend to first produce responsive documents from the six facilities that OSHA selected for inspection and subpoena as well as national and regional network communications.  To proceed otherwise would bog down the production process by requiring us to identify and collect many documents directly from individual custodians at each of the "sibling facilities."

Indeed, your September 13 letter recognizes that production from "sibling facilities" would be overly burdensome where responsive documents are not centrally stored.  (Ltr. at 3 (noting that in such circumstances OSHA would consider a different, sampling approach).) This is true for documents responsive to nearly every sibling facility request, including OSHA Request No. 29 (seeking "all documents . . . analyses . . . and communications" concerning Worker Productivity at any Sibling Facility), OSHA Request No. 55 (seeking "all documents" that reflect the Injury Rate at any Sibling Facility or the turnover rate at any Sibling Facility), OSHA Request No. 64 (seeking "all documents concerning" potential

**GIBSON DUNN**

Jacob Lillywhite
U.S. Department of Justice
September 21, 2022
Page 11

**CONFIDENTAL TREATMENT REQUESTED**

ergonomic hazards at any Sibling Facility, including deep dive emails sent by site level safety specialists), OSHA Request No. 67 (seeking "any documents reflecting or concerning" an ergonomic risk assessment for any work performed in any Sibling Facility), and OSHA Request No. 71 (seeking "any documents reflecting analysis of the size of the labor pool available" for any Sibling Facility). Because documents responsive to these requests are 

associated with separately identifying and collecting responsive documents from each Sibling Facility would be severe.

Further,  (seeking productivity and time off task metrics for each Sibling Facility)—the burden associated with enlarging that data pull is significant, especially when it comes to your proposed sweeping, national approach.

Even collecting the raw data for this dataset (not to mention then reviewing and processing that data into a producible format—which has been difficult and time-consuming even for much smaller datasets) would divert Amazon employees' time and attention for *at least* two weeks and potentially more. In addition, pulling associate level productivity data, on a per-shift basis, across more than 900 facilities would likewise result in a massive dataset. The most efficient way to collect such a significant amount of data would require Amazon employees to code and create an entirely new system dashboard to collect and process the data. We anticipate this would take *at minimum* three weeks of work by Amazon employees.

For all of these reasons, Amazon maintains that the nationwide scope of OSHA's subpoenas is not feasible and furthermore inconsistent with the government's aggressive timeline. That said—and again in the interest of reaching a compromise—we propose that OSHA select an additional four facilities (including one from each facility type covered by the six OSHA-inspected facilities) from which Amazon would then collect and produce responsive documents and data.

**C.   Production of Documents to SDNY**

Your September 13 letter contained a section regarding the production of documents directly to SDNY. To be clear, the government previously represented to us that SDNY was receiving from OSHA all documents produced by Amazon in these dual investigations. As we stated in our September 9 email, Amazon nonetheless agreed to re-produce all documents previously provided to OSHA directly to SDNY the week of September 12, along with a cover letter identifying documents responsive to each SDNY request. Amazon complied

**GIBSON DUNN**

Jacob Lillywhite
U.S. Department of Justice
September 21, 2022
Page 12

**CONFIDENTAL TREATMENT REQUESTED**

with that commitment on September 16 and will continue to produce documents responsive to the FIRREA subpoena directly to SDNY.

> D.   **Request Specific Issues, Updated Responses, and Compromise Proposals**

*Specific Requests Identified In Your September 13 Letter.*   Your letter responded to information we previously provided regarded certain document requests.

- OSHA Request Nos. 6, 19-22.  Thank you for confirming that you do not object to Amazon producing responsive data in the format that it is maintained.

- OSHA Request No. 25.  You had certain questions regarding our proposal that Amazon produce spreadsheets that itemize all formal discipline or warnings provided to employees due to Productivity Rate or Time Off Task.  To aid your understanding, we refer you to AMZ-ALB1-00003545; AMZ-BOI2-00009837; AMZ-MCO2-00004175 and AMZ-OSHA6-00001269, which are the relevant spreadsheets for ████████████ and Time Off Task, respectively.  We can confirm that the additional documents—i.e., the individual, underlying feedback documents delivered to any such employee—are not maintained in a central system that permits them to be pulled collectively but instead would require individual collection of each underlying document.

  Pursuant to your request, Amazon will look into reproducing these spreadsheets with employee names or providing employee identification numbers matched to names for reference.

  Finally, documents demonstrating discipline or feedback provided to an associate for "performance" reasons are not responsive to this Request.  As an initial matter, the Request calls for "discipline, warnings, or other feedback . . . due to" either Productivity Rate (defined as the rate at which a Worker performed one or more tasks) or Time Off Task (as "calculated by Amazon").  Performance for quality-related discipline, ███████████████████████████████ Rather, ██████████████████████████████████████████████████ ██████████████████████.[4]

---

[4] To the extent this representation regarding a desire for "performance" or "quality" data in your September 13 letter was intended to apply more broadly across all requests seeking documents or data related to productivity or performance, we object for the same reasons on grounds of relevance to your stated theory.

**GIBSON DUNN**

Jacob Lillywhite
U.S. Department of Justice
September 21, 2022
Page 13

**CONFIDENTAL TREATMENT REQUESTED**

- <u>OSHA Request No. 47</u>:  We can confirm that Amazon has substantially completed its production of documents responsive to Document Request 47(a)-(j) dating back to October 1, 2021.  There are additional workers' compensation documents responsive to Document Request 47(k) that we have collected and are in the process of reviewing for production.  We anticipate producing those additional documents on a rolling basis starting next week and substantially completing this production by the week of October 10.

- <u>OSHA Request No. 62</u>:  Thank you for confirming your agreement that you are not requesting underlying documentation for all facility-specific safety audits (thousands per facility) shown in AMZ-MDW8-00000550; AMZ-DYO1-00000715-718, AMZ-DYO1-00000820; AMZ-MCO2-00004151-153; AMZ-BOI2-00009817; AMZ-ALB1-00003666; and AMZ-DEN5-00002131.  We are reviewing the feasibility of your proposal that we limit the production of underlying documents to specific types of audits.  As background, we understand that collecting these underlying documents will require a manual collection for each entry.  We are investigating options and will provide promptly our assessment of what is feasible.

*Updated Responses and Compromise Approaches.*  As correctly noted in your letter, Amazon's formal Responses & Objections to the subpoenas indicated the need to meet and confer on a number of document requests given the scope of those requests.[5]  In many instances, however, your agreement in your September 13 letter to separately discuss the production of individual electronic communications resolves for now many of these concerns.  Accordingly, we provide below updated responses in response to each of the document requests outlined in your letter for the requested meet and confer.  (Ltr. at 5.).  We trust that these commitments should resolve the need to meet and confer on many of these issues.  However, we are available to meet and confer further on any topic.  So that we can be prepared in advance of any telephonic meet and confer, we ask that you identify which requests you would like to discuss sufficiently in advance based on the representations below.

---

[5] We disagree with your contention that Amazon's objections in this regard are "boilerplate."  To the contrary, we identified specific reasons why the phrasing and/or terminology of each request encompassed an infeasibly broad universe of documents.

**GIBSON DUNN**

Jacob Lillywhite
U.S. Department of Justice
September 21, 2022
Page 14

**CONFIDENTAL TREATMENT REQUESTED**

- **OSHA Request No. 6:** "Documents sufficient to show the Key Productivity Metrics for each shift during the Relevant Period."

  o   As noted in Amazon's Specific Objections, Amazon objects to the presumption that it maintains all information requested by the definition of "Key Productivity Metrics."  Consistent with our prior meet and confer discussions regarding the production of productivity related data, and subject to its General and Specific Objections, Amazon will produce facility-level data regarding units processed and hours in process paths, as it is routinely measured and stored by Amazon for all portions of time that such data may be pulled using reasonably diligent efforts.

- **OSHA Request No. 9:** "Documents sufficient to show the schedule of each Worker at the Facility."

  o   As noted in Amazon's Specific Objections, the schedule for any individual employee may change frequently even after a shift is assigned.  Subject to its General and Specific Objections, Amazon will produce documents sufficient to demonstrate the shift schedule for associates at the Facility.  Moreover, Amazon's production of documents in response to other OSHA's Requests for data related to Worker productivity will be sufficient to demonstrate the dates and times any individual Worker performed work during the relevant time frame.

- **OSHA Request No. 18:** "Documents sufficient to show, for each process and each shift, any Productivity Requirements or Guidance provided to Workers for that shift."

  o   As noted above, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮.  Subject to Amazon's General and Specific Objections, Amazon will produce informational documents regarding



- **OSHA Request No. 24:** "The documents requested in Document Request Nos. 20 (Key productivity metrics from facility), 22 (Productivity Rate of each worker), and 23 (time off task) for each Sibling Facility."

  o   As noted above, the burden of pulling and processing data responsive to this request for all of more than 900 facilities encompassed in the definition of

**GIBSON DUNN**

Jacob Lillywhite
U.S. Department of Justice
September 21, 2022
Page 15

**CONFIDENTAL TREATMENT REQUESTED**

Sibling Facility is substantial.  As set forth above, Amazon proposes that OSHA select an additional four facilities from which it will produce responsive data.

- **OSHA Request No. 27:**  "All documents provided to Managers concerning the productivity or performance of Workers they supervise or manage."

  o   As noted in Amazon's Specific Objections, this Request is unduly burdensome on the grounds or to the extent that it would encompass the production of individual electronic communications related to specific Amazon associates and managers.  Your agreement to later and separately address the production of individual email or electronic communications resolves this concern for now.

  Subject to Amazon's General and Specific Objections, Amazon will produce a representative sampling of the ██████ feedback documents provided to managers and delivered by managers to Tier 1 associates at the Ergo-Inspected Facilities for productivity and time off task.  In other words, Amazon will provide a representative sampling of the underlying feedback documents corresponding to the entries on AMZ-OSHA6-00001269, AMZ-ALB1-00003545, AMZ-BOI2-00009837, and AMZ-MCO2-00004175.  Moreover, Amazon has already committed to produce, in response to other Requests, spreadsheets demonstrating the productivity metrics that were available to managers.

- **OSHA Request No. 29:**  "All documents, including internal analyses and communications, concerning Worker productivity at a Sibling Facility or an aggregate of Amazon facilities including a Sibling Facility."

  o   Consistent with Amazon's Responses and Objections, this is a request for each and every document, including individual email communications, that in any way concerns associate "productivity" at any sortable fulfillment center, non-sortable fulfillment center, delivery station, or sortation center in the United States.  This would include not only the productivity data that Amazon is already providing but also individual communications or analysis conducted at the facility level for each of the hundreds of facilities.  Without specificity as to the documents OSHA is seeking that are distinct from those already sought in response to OSHA Request No. 24, Amazon cannot respond to this request.  Amazon reiterates its good faith request to meet and confer and requests that OSHA provide further explanation of what it seeks in response to this request.

**GIBSON DUNN**

Jacob Lillywhite
U.S. Department of Justice
September 21, 2022
Page 16

**CONFIDENTAL TREATMENT REQUESTED**

- **OSHA Request No. 32:** "Documents reflecting the manner in which the productivity of Workers supervised, overseen, or managed by a Manager at the Facility impacted a promotion decision regarding that Manager."

  o   Amazon understands this request to seek formal polices and requirements that directly and specifically link the productivity metrics of a manager's Tier 1 associate subordinates to that manager's consideration for promotion. Pursuant to its reasonably diligent search to date, Amazon has not identified any such documents.  Amazon's investigation is ongoing.  To the extent any such documents are identified, we will produce them promptly.

- **OSHA Request No. 33:** "Documents reflecting the manner in which the productivity of a group of Workers supervised, overseen, or managed at the Facility or the performance of the Facility impacted the compensation provided to any Managers."

  o   Amazon understands this request to seek formal polices and requirements that directly link the productivity metrics of a manager's Tier 1 associate subordinates to that manager's compensation.  Pursuant to its reasonably diligent search to date, Amazon has not identified any such documents. Amazon's investigation is ongoing.  To the extent any such documents are identified, we will produce them promptly..

- **OSHA Request No. 34:** "Documents concerning the decision to transition from Gensuite to Austin, including documents sufficient to identify each Amazon employee involved in that decision and the role of each such employee in that decision."

  o   As noted in Amazon's Specific Objections, this request calls for all documents, including individual email or electronic communications, that in any way concern the transition from Gensuite to Austin.  Subject to Amazon's General and Specific Objections, Amazon agrees to produce non-privileged documents located after a reasonable search sufficient to identify National Staff Members with primary responsibility for the decision to transition from Austin to Gensuite.

- **OSHA Request No. 35:** "Documents sufficient to identify the Amazon employees or consultants who developed Austin, including those who assisted in determining its capabilities or the logic it employs, as well as the role of each such employee or consultant."

**GIBSON DUNN**

Jacob Lillywhite
U.S. Department of Justice
September 21, 2022
Page 17

**CONFIDENTAL TREATMENT REQUESTED**

- o   As noted in Amazon's Specific Objections, this Request is overbroad in that it would require the production of documents sufficient to identify each and every individual who in any way worked on the development of Austin, regardless of his or her role, which would require the manual review of a significant number of files, including individual emails.  Your agreement to later and separately address the production of individual email or electronic communications resolves this concern for now.

    Subject to its General and Specific Objections, Amazon will produce documents sufficient to identify the principal individuals involved in the technical development of Austin and those individuals who had final approval regarding the determination of Austin's capabilities.

- **OSHA Request No. 38:**  "Documents sufficient to identify the inputs, outputs, and logic of any algorithms coded into Austin that determine or could impact, for a given potential injury or illness: a. whether the potential injury or illness is recorded on the facility's 300 log;  b. whether an OSHA Form 301 is generated;  c. whether medical care or advice is provided to the Worker; and d. whether that Worker is referred for diagnosis or treatment to an outside medical provider."

    - o   Subject to its General and Specific Objections, Amazon will produce documents sufficient to identify the inputs, outputs, and logic of any algorithms coded into Austin that determine the requested topics for a given potential injury or illness.  Amazon will also produce screenshots sufficient to show the inputs, outputs, and information entered into Austin for a given potential injury or illness.

- **OSHA Request No. 39:**  "Documents sufficient to show any differences in the logic used by Austin as compared with the logic used by Gensuite with respect to the decisions identified in Document Request No. 38."

    - o   Subject to its General and Specific Objections, Amazon will produce documents responsive to this Request, including documents sufficient to show the inputs, outputs, and information entered into Gensuite for a given potential injury or illness.

- **OSHA Request No. 42:**  "Documents sufficient to identify any processes by which the number of injuries or illnesses at the Facility or a related topic (including the number of injuries or illnesses recorded on a 300 log, the number of workers' compensation cases, or the number of Workers on job restriction or medical leave)

**GIBSON DUNN**

Jacob Lillywhite
U.S. Department of Justice
September 21, 2022
Page 18

**CONFIDENTAL TREATMENT REQUESTED**

are reviewed, who is involved in each such process (by title), how that review is conducted, and any possible effects or consequences of such review."

o   As noted in Amazon's Specific Objections, this Request is overbroad in that it seeks documents related to "any process" by which the number of injuries or illnesses is reviewed at the facility level.  Consistent with Amazon's commitment to employee health and safety, individual managers and safety employees at the facility level have access to injury rate metrics and access that information on an individual basis.  Collecting and producing documents sufficient to show individual review of such metrics would require an individual collection of emails or documents from tens of custodians per facility.  Your agreement to later and separately address the production of individual email or electronic communications resolves this concern for now.

Subject to its General and Specific Objections, Amazon will produce documents sufficient to identify formal processes by which the number of injuries or illnesses at the Facility are provided for review on a routine basis and who receives that information, including network communications regarding the certification of OSHA 300 logs and facility level business report communications related to Amazon's global metrics report.

- **OSHA Request No. 48:**  "For each Worker reassigned due to injury or illness, documents sufficient to show the pre-injury job, the post-injury job, the physical requirements for each job, the applicable work restrictions, and the dates of the reassignment."

o   You identified this Request for a meet and confer, although Amazon has already agreed, through its Responses and Objections, to produce responsive documents to the extent that they relate to reassignment due to work-related illnesses or injuries.  To that end, Amazon will produce policy documents related to this Request.  Amazon will also produce documents sufficient to show for any associate reassigned the employee's applicable work restrictions, the post-injury job, its physical job requirements, and the dates of the assignment. ██████████████████████████████████████ ██████████████████████████████████████ .

- **OSHA Request No. 51:**  "All documents concerning any AmCare Medical Consultant, including:  a. contracts with such providers;  b. communications with such providers;  c. internal communications or documents concerning such providers; d. audits, analyses, or reviews of such providers; and  e. information reflecting the actual or estimated performance of such a provider or its effect on, or value to,

**GIBSON DUNN**

Jacob Lillywhite
U.S. Department of Justice
September 21, 2022
Page 19

**CONFIDENTAL TREATMENT REQUESTED**

Amazon, including any analysis of the number of consultations with such a provider as compared with the number of times Workers were referred to an Outside Medical Provider or the number of recordable injuries of these Workers, the cost of workers' compensation claims for Workers for whom consultation was sought with such a provider, or analysis of the cost of such a provider as compared with the cost of an alternative in-house or external provider or service."

o   As noted in Amazon's Specific Objections, to the extent this Request seeks "all" documents related to internal communications that reference or concern any AmCare Medical Consultant and "all" communications between Amazon (and its employees) with AmCare Medical Consultants, it is overbroad and unduly burdensome, as it would require the collection and review of the custodial documents of hundreds of custodians.  Subject to Amazon's General and Specific Objections, Amazon will produce executed contracts or agreements with such AmCare Medical Consultants who performed work at any of the six OSHA-inspected facilities as well as ███████████ ████████████████████████████████████████████████████ ███████████████████████████████████

- **OSHA Request No. 52:**  "Documents concerning any Outside Medical Provider, including:

  a. contracts with such a provider;

  b. communication with or about such a provider;

  c. documents sufficient to identify each Amazon employee who selected such a provider or decided to continue, discontinue, or otherwise change Amazon's relationship with such a provider;

  d. documents sufficient to identify the Amazon employee or employees who were the point of contact for such providers with Amazon;

  e. audits, analyses, or reviews of such a provider; and

  f. information reflecting how often the provider provided care beyond first-aid to Amazon Workers or put Amazon Workers on work restrictions or days away during some period of time within the Relevant Period; and

  g. information reflecting the actual or estimated performance of such a provider or its effect on, or value to, Amazon of Amazon's relationship with one or more such

**GIBSON DUNN**

Jacob Lillywhite
U.S. Department of Justice
September 21, 2022
Page 20

**CONFIDENTAL TREATMENT REQUESTED**

providers, including any analysis of the number of visits by Amazon Workers to such a provider as compared with the number of recordable injuries of these Workers, the cost of workers' compensation claims for Workers who visited such a provider, or analysis of the cost of such a provider as compared with the cost of an alternative in-house or external provider or service."

o   As set forth in Amazon's Specific and Definition Objections, this Request is vague and ambiguous, overbroad, and unduly burdensome because of the definition of Outside Medical Provider. Outside Medical Provider is defined to include any "medical provider, whether an individual, clinic, hospital, or practice, that provides a medical diagnosis or care to an Amazon Worker outside of an Amazon facility." Accordingly, this Definition and Request includes any and all medical providers from whom Amazon associates have received medical care. This would include an unknown universe of medical providers, anyone who ever treated any of Amazon's thousands of employees at the inspected facilities. Without OSHA specifying the type of medical providers or medical treatment OSHA is seeking in this Request, Amazon cannot meaningfully respond. Amazon reiterates its good faith request to meet and confer and requests that OSHA provide further explanation, in writing, regarding the documents it seeks in this Request.

•   **OSHA Request No. 53:** "All documents, including internal communications, concerning or reflecting Injury Rate at the Facility (or an aggregate of Amazon facilities including this Facility), whether or not they were generated or shared with Managers in the Facility, including any trend analyses."

o   As noted in Amazon's Specific Objections, this Request is overbroad and unduly burdensome in that it calls for the production of all documents that in any way reference Injury Rate, including individual emails and other documents that are not centrally maintained by Amazon. Consistent with its commitment to workplace health and safety, Amazon regularly includes injury rate metric data in facility and operations-related documents and therefore anticipates that this Request would implicate each of the thousands of Amazon employees at the Facilities and that tens of thousands of documents would be responsive. Your agreement to later and separately address the production of individual email or electronic communications resolves this concern for now.

Subject to its General and Specific Objections, Amazon will produce any facility-level and regional network communications, identified after a

**GIBSON DUNN**

Jacob Lillywhite
U.S. Department of Justice
September 21, 2022
Page 21

**CONFIDENTAL TREATMENT REQUESTED**

reasonably diligent search, sent on a weekly or monthly basis for the purpose of providing trend analysis related to injury rates at the Facility or an aggregate of facilities including the Facility, including the Critical Metrics Report and any non-privileged improvement plans resulting therefrom.

- **OSHA Request No. 55:** "The documents requested in Document Request Nos. 53 to 54 for each Sibling Facility."

  o As detailed above, documents responsive to this Request, including Critical Metric Report distributions and other communications reflecting the Injury Rate at any Sibling Facility, are housed at the facility level. Collecting responsive documents would require the individual identification and collection of responsive documents at each one of the more than 900 Sibling Facilities nationwide. Accordingly, Amazon proposes that OSHA select an additional four facilities from which Amazon will produce responsive information sufficient to identify incident rate by facility type and process path on a nationwide basis.

- **OSHA Request No. 59:** "Documents sufficient (a) to identify each Amazon employee, executive, or officer whose responsibilities included health and safety at the Facility or an aggregate of Amazon facilities including the Facility during the Relevant Period (including regionally, nationwide, or worldwide); (b) to show the scope of such person's responsibilities; (c) to identify each person who directly reported to such an employee, executive, or officer; and (d) to identify each person to whom such an employee, executive, or officer reported."

  o As detailed in Amazon's Specific Objections, the use of the phrase "whose responsibilities included health and safety" is overbroad in that all Amazon employees are expected to maintain responsibility for employee health and safety. Consistent with our prior meet-and-confer discussion regarding the definition of H&S Responsible Person in the FIRREA subpoena, Amazon construes this Request to seek information regarding Amazon's Workplace Health and Safety employees whose primary job responsibilities include issues related to health and safety. Accordingly, and subject to its General and Specific Objections, Amazon will produce documents sufficient to show the reporting chain for such national and regional employees, the reporting chain for such employees within the facilities, and job descriptions for all Workplace Health and Safety roles at L8 and above. Amazon has already produced employee rosters and job descriptions responsive to this Request at the facility level.

**GIBSON DUNN**

Jacob Lillywhite
U.S. Department of Justice
September 21, 2022
Page 22

**CONFIDENTAL TREATMENT REQUESTED**

- **OSHA Request No. 60:** "Communications with Amazon's Vice President of Worldwide Workplace Health & Safety concerning ergonomic hazards, musculoskeletal disorders, pace of work, struck-by hazards, or injury rates at the Facility, a Sibling Facility, or an aggregate of Amazon facilities including the Facility or a Sibling Facility."

  o   As detailed in Amazon's Specific Objections, this Request is overbroad and unduly burdensome because it calls for the production of all communications with an Amazon executive responsible for health and safety that includes the words "ergonomic hazards," "injury rates," and four other broad health and safety related topics.  We anticipate that the number of responsive communications will be in the hundreds of thousands. Furthermore, meeting and conferring regarding this Request at this time is inconsistent with your proposal that the parties separately meet and confer regarding the production and collection of email communications.  That said, in the interest of transparency and demonstrating Amazon's good faith, we can represent that Amazon is in the process of collecting electronic communications from its current Vice President of Worldwide Workplace Health & Safety, and we are available to meet and confer with you regarding search terms.  We ask that you provide a list of proposed search terms for us to discuss applying to these communications.

- **OSHA Request No. 68:** "Any documents reflecting or concerning Amazon's relationship with any external expert or consultant with experience with ergonomic hazards who received information from Amazon concerning the manner in which Workers work in one or more Amazon facilities, including through any site visits."

  o   As noted in Amazon's Specific Objections, this Request is overbroad and unduly burdensome to the extent that it requests "any [and all] documents" that reflect Amazon's relationship with any external expert or consultant with ergonomic hazard experience and therefore calls for the production of all email and electronic communications relating to such an expert or consultant. Subject to its General and Specific Objections, Amazon will produce executed contracts or agreements located after a reasonably diligent search, if any, with any external expert or consultant with experience with ergonomic hazards who received information from Amazon concerning the manner in which Workers work in one of the six OSHA-inspected facilities, including through any site visits.

**GIBSON DUNN**

Jacob Lillywhite
U.S. Department of Justice
September 21, 2022
Page 23

**CONFIDENTAL TREATMENT REQUESTED**

- **OSHA Request No. 69:** "Any documents concerning whether a certain Productivity Rate or pace of work for one or more processes in the Facility, Sibling Facility, or an aggregate of Amazon facilities including this Facility or a Sibling Facility creates, contributes to, or exacerbates a risk to Workers of injury or illness."

  o As detailed in Amazon's Specific Objections, this Request is overbroad and unduly burdensome in that it seeks "any documents" concerning whether Productivity Rate or pace of work, at any of the six-OSHA inspected facilities, any of the over 900 Sibling Facilities, or any combination thereof. Aside from formal reports/analyses conducted at the national level, potentially responsive documents would consist of ergonomic assessments or individual electronic communications non-centrally stored at the facility level. Subject to its General and Specific Objections, Amazon will produce any non-privileged, formal analyses or reports concerning whether a certain Productivity Rate or pace of work contributes to, or exacerbates a risk to Workers of injury or illness conducted at the six OSHA-inspected facilities or conducted on a nationwide basis that are identified after a reasonably diligent search.

- **OSHA Request No. 70:** "Any documents reflecting analysis of the profitability or other value to Amazon of a Productivity Rate or pace of work for one or more processes in the Facility, a Sibling Facility, or an aggregate of Amazon facilities including this Facility or a Sibling Facility."

  o Amazon understands this request to be for documents reflecting analyses of any profits or cost savings that Amazon attributes to varying productivity rates for Tier 1 associates at Non-Sortable Fulfillment Centers, Sortable Fulfillment Centers, Delivery Stations, and Sortation Centers in the United States. In its reasonably diligent search to date, Amazon has not identified any responsive documents. Amazon's investigation is ongoing, and we will produce any such documents identified after a reasonably diligent search.

- **OSHA Request No. 71:** "Any documents reflecting analysis of the size of the labor pool available, now or in the future, for the Facility, a Sibling Facility, or an aggregate of Amazon facilities including this Facility or a Sibling Facility."

  o As detailed in Amazon's specific objections, this Request is overbroad and unduly burdensome in that it seeks "any documents" reflecting any analysis of the size of the labor pool available for the Facility and therefore calls for the burdensome collection, review, and production of individual custodian ESI

**GIBSON DUNN**

Jacob Lillywhite
U.S. Department of Justice
September 21, 2022
Page 24

### CONFIDENTAL TREATMENT REQUESTED

and emails of several hundred custodians at the facility level. Your agreement to later and separately address the production of individual email or electronic communications resolves this concern for now.

Subject to its General and Specific Objections, Amazon will produce formal analyses, if any, reflecting the size of the labor pool available to the OSHA-inspected facilities.

- **OSHA Request No. 72:** "Any documents generated by a third-party consultant concerning potential ergonomic hazards, risk factors of musculoskeletal disorders, pace of work, struck-by hazards, or Injury Rates in the Facility, a Sibling Facility, or an aggregate of Amazon facilities including this Facility or a Sibling Facility."

  ○ As detailed above, documents responsive to this Request, if any,  As a result, this Request would call

    Subject to its General and Specific Objections, Amazon will produce any non-privileged reports or analyses generated by a third-party consultant concerning potential ergonomic hazards, musculoskeletal disorders, pace of work, struck-by hazards, or Injury Rates in the OSHA-inspected facilities or an aggregate of facilities including an OSHA-inspected facility. Further, Amazon proposes that OSHA select an additional four "sibling" facilities from which Amazon will produce documents.

- **OSHA Request No. 73:** "Any documents reflecting or concerning any information submitted by Workers at the Facility or a Sibling Facility to Amazon concerning actual or potential safety hazards, including relevant posts to Amazon's Voice of the Associate boards and the results of any surveys conducted in connection with Amazon's Safety Leadership Index initiative."

  ○ As detailed in Amazon's Specific Objections, this Request is overbroad and unduly burdensome to the extent it seeks any and all documents reflecting "any information" submitted by Workers regarding potential safety hazards, regardless of the avenue by which that information was reported. As a result, this Request calls for the production of individual email or electronic communications, voicemail messages, or handwritten documentation, for all of which any of the thousands of associates at the Facilities potentially could be a relevant custodian. As noted in its formal Responses, Amazon will produce responsive communications by Facility employees submitted through proper reporting means for such information that is centrally stored, including

**GIBSON DUNN**

Jacob Lillywhite
U.S. Department of Justice
September 21, 2022
Page 25

**CONFIDENTAL TREATMENT REQUESTED**

submissions to Amazon's Voice of the Associate boards, ethics hotline, executive escalations, centrally maintained human resources reports, and Safety Leadership Index surveys, to the extent such documents are located after a reasonably diligent search.

- **OSHA Request No. 79:** "Documents concerning any incentives provided to Workers (including Managers) for shifts or longer periods without reported injuries or illnesses."

  o As detailed in Amazon's Specific Objections, this Request is vague and ambiguous in that its use of the phrase "any incentives provided" could include, for example, informal feedback or positive messaging regarding the number of hours, shifts, or days without an injury or incident. Amazon understands this Request to seek documents concerning any direct incentives, such as monetary or other benefit-related incentives, provided to Amazon associates for shifts (or longer periods) without reported injuries or illnesses. Subject to its General and Specific Objections, Amazon will produce documents sufficient to identify any such incentives. At this time, Amazon has not identified any responsive documents. Amazon's investigation is ongoing, and we will produce responsive documents to the extent any are located following a reasonably diligent search.

- **OSHA Request No. 80:** "Any documents concerning or reflecting potential retaliation against Workers who have reported injuries."

  o As detailed in Amazon's Specific Objections, this Request is overbroad and unduly burdensome in that it seeks "any documents" concerning or reflecting potential retaliation for reporting injuries and, therefore, both (i) suggests that Amazon must review all facility-level files and employment actions for employees who reported injuries to determine whether any "potential retaliation" occurred, and (ii) collect, search, and produce email or other electronic communications from the thousands of employees at the OSHA-inspected facilities to identify any potential complaint or reference to such retaliation. Subject to its General and Specific Objections, Amazon will produce non-privileged documents centrally stored in Amazon's Voice of the Associate boards, ethics hotline, executive escalations, and centrally maintained human resources reports reflecting any Facility associate's allegation that he or she (or another Facility associate) was retaliated against for reporting an injury, to the extent such documents are located after a reasonably diligent search.

**GIBSON DUNN**

Jacob Lillywhite
U.S. Department of Justice
September 21, 2022
Page 26

**CONFIDENTAL TREATMENT REQUESTED**

- **OSHA Request No. 82:** "Documents sufficient to show any rules, restrictions, requirements, or guidance provided by Amazon to entities that employ delivery drivers who lift packages in the Facility to load their trucks."

  o  The only OSHA inspected facility that contracts with entities that employ delivery drivers is DYO1. In response to Request No. 81, we have produced contracts with those entities sufficient to demonstrate that the drivers providing services for those contractors are not Amazon employees and therefore fall outside the scope of OSHA's regulatory authority. On that basis, the production of any additional documents or information would be irrelevant and unduly burdensome. Amazon is available meet and confer with OSHA in good faith regarding this Request and what additional information Amazon can provide.

- **OSHA Request No. 83:** "Documents reflecting or concerning any Complaints from one or more Workers concerning potential ergonomic hazards, risk factors for musculoskeletal disorders, Productivity Rate, pace of work, struck-by hazards, alleged pressure not to report injuries or illnesses, or purported retaliation at the Facility for reporting injuries or illnesses, including discussions of such Complaints or responses to them."

  o  As detailed in Amazon's Specific Objections, this Request is overbroad and unduly burdensome to the extent it seeks any and all documents reflecting "any Complaints" submitted by Workers regarding the identified safety hazards, alleged pressure not to report injuries or illnesses, or purported retaliation for reporting injuries or illnesses and therefore would call for the production of any complaints made on an individual basis through informal measures that are not centrally stored. As a result, this Request calls for the production of individual email or electronic communications, voicemail messages, or handwritten documentation from thousands of potentially relevant custodians at the Facilities. Further, this Request is duplicative of OSHA Request Nos. 73 and 80. As noted in its formal Responses, Amazon will produce non-privileged formal complaints, if any, submitted by employees at the Facility through proper protocol or procedure to the extent such information is located after a reasonably diligent search of submissions to Amazon's Voice of the Associate boards, ethics hotline, executive escalations, centrally maintained human resources reports, and data related to Safety Leadership Index surveys.

**GIBSON DUNN**

Jacob Lillywhite
U.S. Department of Justice
September 21, 2022
Page 27

**CONFIDENTAL TREATMENT REQUESTED**

- **OSHA Request No. 84:** "Documents reflecting or concerning any Complaints from one or more Workers concerning AmCare at the Facility, including discussions of such Complaints or responses to them."

  o   As set out in Amazon's Specific Objections, this Request is overbroad and unduly burdensome to the extent it seeks documents reflecting "any Complaints" submitted by Workers regarding AmCare and therefore calls for the production of any complaints made on an individual basis through informal channels that are not centrally stored.  As a result, this Request calls for the production of individual email or electronic communications, voicemail messages, or handwritten documentation from thousands of potentially relevant custodians at the Facilities.  Subject to its General and Specific Objections, Amazon will produce non-privileged documents reflecting complaints, if any, submitted by employees at the Facility to the extent such information is located after a reasonably diligent search of submissions to Amazon's Voice of the Associate boards, ethics hotline, executive escalations, centrally maintained human resources reports, or data related to Safety Leadership Index surveys.

- **OSHA Request No. 85:** "Documents reflecting or concerning any Complaints from one or more Workers concerning Outside Medical Providers, including discussions of such Complaints or responses to them."

  o   As set out in Amazon's Specific Objections, this Request is overbroad and unduly burdensome to the extent it seeks documents reflecting "any Complaints" submitted by Workers regarding Outside Medical Providers. Further, as detailed above, the definition of Outside Medical Provider is vague and ambiguous and encompasses every third-party medical provider that provided any medical care to an Amazon associate.  Amazon will provide an updated response to this Request promptly after any clarification OSHA can provide regarding its intended definition of Outside Medical Providers.

- **OSHA Request No. 86:** "Documents reflecting or concerning any Complaints from one or more Outside Medical Providers concerning (a) potential ergonomic hazards, risk factors for musculoskeletal disorders, Productivity Rate, pace of work, or struck-by hazards at the Facility; (b) the care provided to injured Workers by AmCare or Outside Medical Providers; (c) the work restrictions or days away imposed on injured Workers."

**GIBSON DUNN**

Jacob Lillywhite
U.S. Department of Justice
September 21, 2022
Page 28

<strong>CONFIDENTAL TREATMENT REQUESTED</strong>

- As detailed above, the definition of Outside Medical Provider is vague and ambiguous and encompasses every third-party medical provider that provided any medical care to an Amazon associate.  To the extent that is correct, Amazon anticipates that the only responsive documents, if any, reasonably identifiable will be workers' compensation documents Amazon produces in response to OSHA Request No. 47.  Amazon will provide an updated response to this Request promptly after any clarification OSHA can provide regarding its intended definition of Outside Medical Providers.

- **OSHA Request No. 87:**  "Records of any inspections of powered industrial trucks."

  - Amazon will produce responsive documents within its possession, custody, and control, located after a reasonably diligent search.

- **OSHA Request No. 88:**  "Records of any evaluations or certifications of operators of powered industrial trucks."

  - The term "evaluations" is vague and ambiguous and could include, for example, employee performance evaluations or other evaluations unrelated to qualifications to operate powered industrial trucks.   To respond to this Request, Amazon will construe "evaluations" to mean evaluations for the purpose of demonstrating qualifications to operate a powered industrial truck.  Amazon will produce responsive documents within its possession, custody, and control, located after a reasonably diligent search.

- **SDNY Request No. 1:**  "All documents reflecting or concerning statements made by Amazon about Health and Safety, Injury Rates, or compliance with applicable labor laws or regulations (including the OSH Act) at one or more Facilities to one or more Relevant Financial Institutions."

  - Amazon specified the documents it can reasonably produce in response to these Requests without incurring an undue burden—and committed to the production of such documents—in its Specific Responses and Objections served on September 19.  Specifically, Amazon has committed to produce documents, if any, reflecting contractually-binding representations, warranties, or other formal statements about Health and Safety, Injury Rates, or compliance with the OSH Act in one or more Facilities for purposes of an agreement with Amazon involving at least $90 million.

- **SDNY Request No. 2:**  "Documents reflecting the terms of any transactions during the Relevant Period between Amazon and a Relevant Financial Institution."

GIBSON DUNN

Jacob Lillywhite
U.S. Department of Justice
September 21, 2022
Page 29

**CONFIDENTAL TREATMENT REQUESTED**

o   Amazon specified the documents it can reasonably produce in response to these Requests without incurring an undue burden—and committed to the production of such documents—in its Specific Responses and Objections served on September 19.  Specifically, Amazon has committed to produce principal contract documents reflecting the terms of any transactions entered into by Amazon since August 1, 2017, that involved at least $90 million, for which a financial institution was a signatory or counterparty, and in which Amazon made representations or warranties to such a financial institution about Health and Safety, Injury Rates, or compliance with the OSH Act.

- **SDNY Request No. 6:**  "Documents reflecting or concerning any statement or suggestion by a current or former H&S Responsible Person that the pace of work for any Process in the Facilities did or could create a safety hazard."

  o   Amazon specified the documents it can reasonably produce in response to these Requests without incurring an undue burden—and committed to the production of such documents—in its Specific Responses and Objections served on September 19.  Specifically, Amazon will produce any non-privileged formal reports concerning whether the pace of work for any process at the six OSHA-inspected Facilities, or an aggregate of facilities including the six OSHA-inspected facilities, did or could create a safety hazard that are identified after a reasonably diligent search.

- **SDNY Request No. 11:**  "Documents sufficient to identify each contractor who was contacted or retained by a National Staff Member or Regional Staff Member and who did any work (including a site visit or review of any data sent by Amazon) in connection with any potential risk to Health and Safety created by the pace of work for any Process in a Facility, whether or not that consultant was formally retained or an analysis was completed."

  o   Amazon specified the documents it can reasonably produce in response to these Requests without incurring an undue burden—and committed to the production of such documents—in its Specific Responses and Objections served on September 19.  Specifically, Amazon has committed to producing executed contracts or agreements with any contractors, identified after a reasonably diligent search, that were retained by Amazon to review a potential risk to Health and Safety created by the pace of work for any process path in a facility.  Further, Amazon has committed to producing any non-privileged studies or analysis identified after a reasonable search that were provided by such a contractor.   Pursuant to reasonably diligent efforts to date, Amazon

**GIBSON DUNN**

Jacob Lillywhite
U.S. Department of Justice
September 21, 2022
Page 30

**CONFIDENTAL TREATMENT REQUESTED**

has not identified any such documents.  Amazon's investigation is ongoing.
To the extent any such documents are identified, Amazon will produce them.

- **SDNY Request No. 13:**  "For each Ergo Inspected Facility, video surveillance of Workers in the 30 days prior to each inspection by state or federal health and safety inspectors."

  o   Amazon specified the documents it can reasonably produce in response to these Requests without incurring an undue burden—and committed to the production of such documents—in its Specific Responses and Objections served on September 19.  Specifically, Amazon has committed to providing SDNY with 30 minutes of exemplar video footage and then, if requested, providing access to all video footage at an Amazon facility.

- **SDNY Request No. 15:**  "Documents prepared by National Staff Members or Regional Staff Members concerning or reflecting any audit, analysis, monitoring, or other review of Injury Rates at one or more Facilities."

  o   Amazon specified the documents it can reasonably produce in response to these Requests without incurring an undue burden—and committed to the production of such documents—in its Specific Responses and Objections served on September 19.  As noted therein, this Request is overbroad and unduly burdensome in that it calls for the production of all documents that in any way reflect "monitoring" or "review" of Injury Rates by National or Regional Staff and therefore calls for the production of all documents that in any way reference Injury Rate, including individual emails and other documents that are not centrally maintained by Amazon.  Your agreement to later and separately address the production of individual email or electronic communications resolves this concern for now.

  Consistent with its commitment to workplace health and safety, Amazon National and Regional Staff regularly include injury rate metric data in documents—even where the principal purpose of such documents is not a review of injury reports—and therefore anticipates that this Request would implicate hundreds of custodians and tens of thousands of documents.  Amazon will produce any non-privileged injury rate audits or analyses prepared by or for a National Staff member as well as quarterly business reports and monthly business reports prepared by National or Regional Staff members for the purpose of reviewing injury rates within the facilities.

**GIBSON DUNN**

Jacob Lillywhite
U.S. Department of Justice
September 21, 2022
Page 31

**CONFIDENTAL TREATMENT REQUESTED**

- **SDNY Request No. 16:** "Documents prepared by National Staff Members or Regional Staff Members concerning or reflecting any audit, analysis, monitoring, or other review of the effect of one or more Outside Medical Providers on Injury Rates."

    o As detailed above, the definition of Outside Medical Provider is vague and ambiguous and encompasses every third-party medical provider that provided any medical care to an Amazon associate.  Amazon will provide an updated response to this Request promptly after any clarification OSHA can provide regarding its intended definition of Outside Medical Providers.

- **SDNY Request No. 19:** "All documents, including internal communications, concerning Amazon's 2021 decision to alter its policies or practices concerning Time Off Task and any prior or subsequent consideration of these or other changes with respect to Time Off Task."

    o Amazon specified the documents it can reasonably produce in response to these Requests without incurring an undue burden—and committed to the production of such documents—in its Specific Responses and Objections served on September 19.  Specifically, Amazon has committed to produce non-privileged communications, if any, located after a reasonable search sufficient to demonstrate data or considerations taken into account with respect to any alterations to the Time Off Task policies implemented in 2021.

- **SDNY Request No. 20:** "All documents, including internal communications, concerning Amazon's decision to transition from Gensuite to Austin."

    o Amazon specified the documents it can reasonably produce in response to these Requests without incurring an undue burden—and committed to the production of such documents—in its Specific Responses and Objections served on September 19.  Specifically, Amazon has committed to produce responsive, non-privileged documents, if any, identified after a reasonable search of the files of National Staff Members who participated substantively in the decision to transition from Gensuite to Austin.

- **SDNY Request No. 22:** "All documents prepared by National Staff Members or Regional Staff Members (including consultants) concerning turnover at one or more Facilities that reference injuries in those Facilities."

    o Amazon specified the documents it can reasonably produce in response to these Requests without incurring an undue burden—and committed to the production of such documents—in its Specific Responses and Objections

**GIBSON DUNN**

Jacob Lillywhite
U.S. Department of Justice
September 21, 2022
Page 32

**CONFIDENTAL TREATMENT REQUESTED**

served on September 19.  Specifically, Amazon has committed to produce non-privileged documents identified after a reasonable search prepared by or for the Vice President of Worldwide Workplace Health and Safety or one of her direct reports that concern turnover at one or more Facilities and reference injuries in those Facilities.

- **SDNY Request No. 23:**  "All documents prepared by National Staff Members or Regional Staff Members (including consultants) forecasting the labor pool available to work in one or more Facilities."

  o   Amazon specified the documents it can reasonably produce in response to these Requests without incurring an undue burden—and committed to the production of such documents—in its Specific Responses and Objections served on September 19.  Specifically, Amazon has committed to produce responsive, non-privileged documents located after a reasonable search, if any, that were prepared by or for National Staff Members.

- **SDNY Request No. 25:**  "All documents prepared by National Staff Members or Regional Staff Members (including consultants) concerning any actual or reported instances of:

  a. pressure from Managers not to report injuries;

  b. retaliation against a Worker for reporting an injury, reporting work restrictions, or going out on medical leave;

  c. the failure to fill out an Initial Report Form, an Initial Report of Injury Form, or the predecessors of such forms within one week of a Worker report of injury or illness; or

  d. the failure to record an injury or illness on a Facility's 300 log."

  o   As detailed in Amazon's Specific Objections, this Request is overbroad and unduly burdensome in that it seeks "all documents prepared" by National or Regional staff concerning the four topics and, therefore, encompasses individual documents, including email communications, that are not centrally stored.  Identifying such documents would require the burdensome collection and search review of electronic data from hundreds of Amazon employees. Subject to its General and Specific Objections, Amazon will produce non-privileged studies, reports, and white papers prepared by National or Regional Staff Members identified after a reasonably diligent search in which a

**GIBSON DUNN**

Jacob Lillywhite
U.S. Department of Justice
September 21, 2022
Page 33

**CONFIDENTAL TREATMENT REQUESTED**

principal objective or a finding of the study, report, or white paper was the
assessment of the four types of instances identified in this Request.

- **SDNY Request No. 30:** "All documents presented at any Amazon Board meeting,
including committee meetings, concerning Health and Safety, Injury Rates, or
compliance with the OSH Act at one or more Facilities."

  o Amazon specified the documents it can reasonably produce in response to
  these Requests without incurring an undue burden—and committed to the
  production of such documents—in its Specific Responses and Objections
  served on September 19. Specifically, Amazon has committed to produce
  non-privileged documents responsive to this request that are located after a
  reasonably diligent search.

### E.    CCTV Video Footage

You asked for more detail regarding the cost and burden of producing closed circuit
television video requested in SDNY Request No. 13. The cost and undue burden associated
with producing the requested video footage is a direct result of the sheer volume of footage
involved. Using BOI2 as an example, there are ▮▮▮▮▮▮▮▮ in areas of the facility where
associates are performing work. Those ▮▮▮▮▮▮ run 24 hours a day. As a result, the
request for 14 days of video footage translates to 326,256 hours or *more than 37 years* of
video footage. As previously explained, the data size of that footage is over 300 terabytes.
Likewise, two weeks of footage at ALB1 would be approximately 300 terabytes of data, and
MDW8 and MCO2 would total approximately 80 terabytes and 70 terabytes of data,
respectively.

This video footage is currently stored on each facility's video system servers.
Producing this footage externally would require Amazon to purchase tens of thousands of
dollars' worth of hard drives (per facility) with sufficient storage to hold this volume of data.
At BOI2, for example, we estimate $36,000 worth of hard drive space would be required for
just two weeks' worth of video. In addition to this cost, the employee hours required to
manually transfer the data to an external device is significant. At BOI2, for example, we
estimate at least 304 active employee hours would be required, across multiple teams, to
transfer the data for external production. Based on a typical 40-hour workweek, that is over
7.5 weeks of employee time devoted to just producing BOI2's footage. And these estimates
are based on 14 days of footage—they would double based on the government's pending
request for an additional two weeks of post-inspection footage from BOI2.

**GIBSON DUNN**

Jacob Lillywhite
U.S. Department of Justice
September 21, 2022
Page 34

**CONFIDENTAL TREATMENT REQUESTED**

The preservation of this volume of video footage is also unduly burdensome.  As noted above, the footage is stored on each facility's video system servers.  Those servers are designed to retain two weeks' video on a continual, rolling basis and—when necessary—maintain short periods of footage from specific cameras.  By maintaining additional *weeks* of video footage across all cameras on the servers, a significant portion of the space available on the system is being redirected for that purpose.  In MCO2, for example, the preserved footage is taking up nearly 1/3 of all space on the facility's video system.  As a result, the video functions are running on a system with significantly reduced capacity.  That jeopardizes the system and risks malfunctions, with attendant safety and security issues.

As stated in our September 2 email—to which we have not received a response—limiting the scope of video surveillance requested by date range, hour range, and by the number of cameras involved (e.g., which areas of the facility) would help reduce this burden both on preservation and production.  To ease the burden of continued preservation while we continue to meet and confer, we ask that, at minimum, you limit your request to specific areas of the facility, days of the week, and shifts for which OSHA conducted pace of work assessments during the inspections.  Please provide your position by Monday, September 26.

Further, we anticipate from prior experience that the video footage requested might not be helpful for the purpose you intend to use it due to the quality of the footage.  In order to help you better understand these limitations, we will provide you with 30 minutes of sample video footage (5 minutes from 6 different cameras).  If there are particular areas of the BOI2 facility that you would like this sample footage to cover, please let us know.

If, after reviewing the sample footage, SDNY continues to believe that viewing additional footage is necessary for purposes of a FIRREA investigation, Amazon is happy to make the decades of video footage available for viewing at an Amazon facility, which is the least burdensome way to provide it.

**F.    30(b)(6) Topics**

Finally, regarding the 30(b)(6) deposition topics:

- Topic A.  Thank you for your confirmation that you will accept a written proffer in lieu of 30(b)(6) testimony at this time.  As discussed, we will provide job descriptions and a written proffer—namely an attorney-created organizational chart—sufficient to provide the requested information regarding the titles and roles and responsibilities of regional and national staff primarily focused on health and safety.  We understand that you would have liked to have received this by

**GIBSON DUNN**

Jacob Lillywhite
U.S. Department of Justice
September 21, 2022
Page 35

**CONFIDENTAL TREATMENT REQUESTED**

September 20, however, as we stated on our call, we needed a few additional days. We will provide this on or before September 23.

- <u>Topic B</u>.  As we indicated in response to your document requests seeking analysis related to any connection between pace of work and injury rates, we will produce any responsive, non-privileged analysis regarding pace of work on a rolling basis. We understand that you would like us to prioritize these documents.  We are, of course, willing to do so and have been working diligently in that regard.  We will continue to prioritize this request and endeavor to begin production of non-privileged documents by the week of October 3.

- <u>Topic C</u>.  We appreciate your willingness to accept alternative approaches to obtaining the information you are seeking.  We think an attorney proffer will be helpful.  Further, we maintain that an attorney oral or written proffer is more efficient than a Rule 30(b)(6) deposition or employee interview, either of which would take more time to prepare and conduct.

Thank you for identifying the three specific categories of information that are a top priority for you on this topic.  In order to provide the requested information quickly, we propose the following:

(1) Counsel for Amazon will provide the contemplated oral proffer on a mutually convenient date the week of September 26.  This proffer also will include some information about how Amazon's guardrail productivity rates are set and the process by which those tools were developed.  We also believe the information will provide important context, including the limited application of Amazon's ███ process across Amazon facilities.  To the extent you continue to have specific questions, Amazon will promptly collect and provide the relevant information via supplemental proffers.

(2) Amazon will begin production of formal policy and training documents demonstrating earlier versions of ███ and the ███ process over the past five years by the week of October 3.  We believe these documents will be sufficient to demonstrate how these processes have changed over that period.  To the extent they do not, we believe a written proffer would be the most efficient and timely way to provide supplemental information.

- <u>Prioritization of topics D-F</u>.  We appreciate you identifying topics D-F as your next tier of priority topics.  As noted above—and in line with the statements in your letter regarding the OSH Act's six-month statute of limitations—Amazon is prioritizing

**GIBSON DUNN**

Jacob Lillywhite
U.S. Department of Justice
September 21, 2022
Page 36

**CONFIDENTAL TREATMENT REQUESTED**

responses to OSHA's seven subpoenas in this dual investigation.  Given that the OSHA subpoenas do not (and cannot) include Rule 30(b)(6) deposition requests, we understand that the Rule 30(b)(6) requests are not tied to the shorter OSH Act statute of limitations.  Still, Amazon is committed to cooperating with both investigations and providing the information you need.  With that in mind, we maintain that providing the initial information you seek on these topics through attorney written or oral proffers—which do not require the identification, edification, and preparation of a corporate witness—is the most efficient way to proceed in the near term.  If you confirm that you are amenable to a similar approach with respect to these requests, we will provide a proposal and anticipated time frame for such proffers on a rolling basis by the week of October 3.  We welcome any further insights you can provide regarding the priority information you seek in response to each of these requests, so we can prepare accordingly.

We thank you for your time and consideration.

Sincerely,

GIBSON, DUNN & CRUTCHER LLP

Zainab N. Ahmad
Partner

ZNA

# Exhibit 10



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*86 Chambers Street*
*New York, New York 10007*

December 19, 2022

<u>By Email</u>

Zainab N. Ahmad
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166-0193
ZAhmad@gibsondunn.com

Re:     <u>Amazon ESI Review and Production</u>

Counsel,

Your response of December 16, and the current state of the ESI review and production, is deeply troubling and unacceptable. Once again, you pledge cooperation but take positions that are both obstructive and unreasonable. As a result, we may need to move to compel compliance with OSHA's and SDNY's subpoenas in connection with the review and production of ESI. Please provide us the information requested below prior to 5 p.m. on Thursday and advise us of times this Friday you are free for a meet and confer in advance of such a motion.

As you know, three weeks ago we were close to moving to compel compliance with OSHA's and SDNY's subpoenas in connection with your review and production of ESI, as well as several other issues. At that point, you had offered to review 3,000 to 5,000 documents per week unless we agreed that you could drop all other activity in response to the subpoenas, in which case you could review 8,000 to 10,000 documents. (11/16/22 Email from R. Stewart.) We told you that was unacceptable and requested that you review 20,000 document hits per week to allow you to produce responsive ESI for the first four deponents by December 6 and for the rest of the custodians by January 6. (11/23/22 Email from J. Lillywhite; 11/27/22 Email from J. Lillywhite.) On November 23, you committed to "[d]evote additional resources towards ESI review and substantially complete production of responsive ESI from [those first four deponents] on or around December 9." (11/23/22 Email from R. Stewart.) With respect to our demand for the production of ESI for the remaining custodians, on November 30 you represented you had "continued to direct more resources toward ESI review to speed up review to the extent feasible," that you were "committing over 250 attorney hours a day toward review, on average, and will continue to do so over the next several weeks," and you agreed to target January 6 but said while you were "not refusing to meet []our January 6 deadline" you were not sure it was possible and you would "provide weekly updates . . . regarding the status of [y]our ESI review efforts." (11/30/22 Email from R. Stewart.) We elected not to file our motion to compel and proceeded to schedule depositions for nine custodians in December and January, relying on your commitments.

As we have told you, it is important that the government receives this ESI, together with other high-priority items, expeditiously in light of our concerns about the safety of Amazon's workers and the OSH Act's six-month statute of limitations.

**The State of Your ESI Review and Production**

It is now December 18 and you have not "substantially complete[d] production of responsive ESI" from any of those first four initial custodians. For ████, for whom you reported more than 6,000 document hits under our search protocol, you produced just 868 documents—fewer than 15% of those document hits. You have advised that you are not producing more than 3,400 of ██████ document hits—55% of the total hits—because you deemed them unresponsive; you are withholding an additional 1,900 documents for ████—more than one and a half times as many documents as you have produced, and nearly 70% of the documents you deemed responsive—because they purportedly have "indicia of privilege" and you wish to conduct further review. For ████, you have produced about 2,000 documents, just 25% of his nearly 8,000 document hits. Again, you are not producing almost half of all of his document hits because you deemed them unresponsive (3,761 of 7,904 documents), and you are withholding 2,100 documents—more than half of all documents you deemed responsive—for further review because they have "indicia of privilege." You have produced fewer than 10% of ██████ document hits (458 documents of 4,605 hits) and almost nothing for ████ (7 documents out of 8,188 hits).[1]

Because you have withheld more than three-quarters of ████ and ████ document hits as either unresponsive or potentially privileged, we could not move forward with their depositions on December 19 and 20. We had already made arrangements for these depositions, which we were forced to cancel. And we fear that, without motion practice, this situation will not be remedied sufficiently in advance of their rescheduled deposition dates in January.

You do not dispute that you have not substantially completed your productions for ████ and ████, but you take the position that you have lived up to your commitment of November 23—"substantially complet[ing] production of responsive ESI" for the first four deponents—with respect to ████ and ████. That is obviously untrue.

**Potentially Privileged Documents**

First, it is unacceptable for you to withhold half or more of the documents you deem responsive as potentially privileged, while providing no date for review of those documents or production of a privilege log, and at the same time insist that we should not be able to reopen any of these depositions to the extent you produce a substantial number of documents after a deposition's conclusion.

When you committed to "substantially complet[ing] production of responsive ESI" for these four custodians on or around December 9, you did not advise us that these productions would

---

[1] In your December 15 email, you stated that you were "quality reviewing" approximately 2,000 more documents from ████ and ████, the vast majority of which you indicated are for ████, and that 2,400 of their documents were being withheld as having "indicia of privilege." (12/15/22 Email from R. Stewart.) No date has been provided for your production of the documents deemed responsive and without "indicia of privilege."

not include half or more of the documents you deemed responsive because you might (or might not) claim privilege after some future review. That is absurd.

And the rate you are claiming "indicia of privilege" is astonishing. You assert that about 70% of ▮▮▮▮▮ documents that you deemed responsive have some "indicia of privilege," and the same for about half of ▮▮▮▮▮ documents you deemed responsive. These custodians are health and safety employees, not in-house counsel. We are not aware of actual or reasonably anticipated litigation concerning these issues during these years. It appears to us extremely unlikely that half or more of their communications about the ergonomic and related issues captured by our search terms would be privileged. And the fact that you have made what appears to be a baseless claim of privilege with respect to the BSI ergonomic assessment—more than a week after our request, we are still waiting for information from you about the basis for that claim—only heightens our concerns.

### Responsiveness

Second, your claim that approximately half of each custodians' hits are unresponsive is concerning. The scope of our investigations is broad, encompassing nationwide safety hazards, particularly ergonomic hazards, and related fraudulent schemes implemented, in part, through Amazon's first-aid centers and recordkeeping practices. The scope of OSHA's and SDNY's subpoenas match the scope of our investigations. By contrast, to allow for quick review and production, our search terms were narrowly tailored to capture documents referencing words and phrases at the heart of our investigations. Our terms pulled only several thousand documents for each of these four deponents over several years, despite the fact that these custodians have responsibilities directly relevant to our investigations: ▮▮▮▮▮ oversaw Amazon's first-aid centers; ▮▮▮▮▮ and ▮▮▮▮▮ were responsible for analyses and remediation of ergonomic hazards; and ▮▮▮▮▮ was head of recordkeeping. For many of our search strings, it is hard to imagine many documents that include the queried terms in close proximity to one another being unresponsive, let alone more than half of all such hits.

### Rate of Review

Your rate of review to date is also alarming. You initially offered to review 3,000 to 5,000 or 8,000 to 10,000 documents per week; on November 23 and 30, after we requested that you review 20,000 document hits per week (not including families) to meet our January 6 deadline, you promised to "continue to direct more resources toward ESI review to speed up review to the extent feasible." (11/30/22 Email from R. Stewart.) On November 30, there were approximately six weeks until January 6. About three weeks later—halfway through that period—you advised that you have reviewed all but 2,000 of the documents for the first four custodians, who had approximately 14,500 document hits (excluding families). 12,500 document hits reviewed in three weeks is a rate of review of less than 4,200 document hits per week. That is within the lower of the two rates you offered to us before agreeing to commit more resources when we called even 10,000 per week "unacceptable" and requested 20,000. At a rate of review of 5,000 document hits per week—20% faster than you appear to be reviewing now—to complete the remaining 100,000 document hits would take 20 weeks or until the first week of May. That remains completely unacceptable.

It is hard to square this pace of review with your assertion that you have spent more than 5,300 attorney hours on ESI review since November 30, for an average rate of 330 hours per day. That is about **25 minutes per document reviewed**, when the documents are less than four pages on average (at least among those you produced). And, in part because of the small percentage of reviewed documents you are producing, you claim to have spent 1.5 attorney hours per document produced and 20 minutes per page produced. These figures are wildly out of step with our experience of ESI review.

## ESI from Mr. Bezos and Mr. Jassy

There is no reason to delay running a hit report against the ESI collected from Mr. Bezos and Mr. Jassy. In past hit reports you have included all other ESI custodians, whether or not they are scheduled for depositions, and it should take little time to instruct your vendor to do this.

\*   \*   \*

We expect to resolve these issues, consensually or otherwise, by the end of December, given that we are scheduled to fly around the country to take nine depositions in January. To that end, please provide the following information by no later than **5 p.m. on Thursday**:

- **Privilege**

    o Please identify the "indicia of privilege" you are using to determine whether to withhold a document as potentially privileged.

    o Please advise whether you are withholding documents as potentially privileged when no attorney is part of the communication and there is no reference to an attorney's advice or request for information.

    o Produce a partial privilege log including at least the metadata fields[2] for the documents you have withheld as potentially privileged to date.

    o Produce a full privilege log for every tenth document among the 1,900 documents from ███████ you withheld as potentially privileged (a total of 190 documents to log), using your review platform's internal control numbers.

    o Explain why the attorneys conducting this review are spending about 25 minutes per document when the average document is four pages long.

    o Provide the basis for your claim of privilege with respect to the information we subpoenaed from BSI.

- **Responsiveness.** For each of the four initial custodians: for each of the four search terms that resulted in the largest number of hits for that custodian, identify the three largest

---

[2] As explained in our December 15 email, we are requesting the following information: Author, Recipients (if applicable), File type, File date, File Name or Subject (for emails). (12/15/22 Email from D. Tarcyznska.) These fields should be included in a privilege log and can be pulled quickly from your document processing platform. There is no basis for your refusal to provide this information.

categories of unresponsive documents by subject and advise us of the approximate number of documents in each category for that custodian.

- **Updated Hit Report Including ESI from Mr. Bezos and Mr. Jassy.** Please provide us an updated hit report, in the same format you provided the most recent report, that includes ESI hits from Mr. Bezos and Mr. Jassy.

We look forward to your response.

Sincerely,

DAMIAN WILLIAMS
United States Attorney
Southern District of New York

By:    /s/ Jacob Lillywhite
        JACOB LILLYWHITE
        DOMINIKA TARCZYNSKA
        ELIZABETH J. KIM
        JEFFREY OESTERICHER
        ADAM GITLIN
        Assistant United States Attorneys
        86 Chambers Street, Third Floor
        New York, New York 10007
        (212) 637-2639
        jacob.lillywhite@usdoj.gov

# Exhibit 11

12/21/22, 3:52 PM    Federal safety inspections at six Amazon warehouse facilities find company failed to record, report worker injuries, illnesses

Case 2:22-cv-01815-JCC   Document 8   Filed 12/23/22   Page 114 of 239



**U.S. Department of Labor**
Email Subscription Service

# Federal safety inspections at six Amazon warehouse facilities find company failed to record, report worker injuries, illnesses

United States Department of Labor sent this bulletin at 12/16/2022 11:57 AM EST

News Release from OSHA

Having trouble viewing this email? View it as a Web page.



U.S. Department of Labor  |  December 16, 2022

## Federal safety inspections at six Amazon warehouse facilities find company failed to record, report worker injuries, illnesses

*Investigation ongoing in Colorado, Florida, Idaho, Illinois, New York*

**WASHINGTON** – The U.S. Department of Labor today announced that its Occupational Safety and Health Administration has cited Amazon during inspections at six warehouse facilities in five states for failing to properly record work-related injuries and illnesses. The findings are part of an ongoing investigation.

Following referrals from the U.S. Attorney's Office for the Southern District of New York, OSHA opened inspections on July 18, 2022, at Amazon locations in Deltona, Florida; Waukegan, Illinois; and New Windsor, New York; and on Aug. 1, 2022, at locations in Aurora, Colorado; Nampa, Idaho; and Castleton, New York.

OSHA issued Amazon citations for 14 recordkeeping violations, including failing to record injuries and illnesses, misclassifying injuries and illnesses, not recording injuries and illnesses within the required time, and not providing OSHA with timely injury and illness records. Amazon faces $29,008 in proposed penalties.

"Solving health and safety problems in the workplace requires injury and illness records to be accurate and transparent," said Assistant Secretary for Occupational Safety and Health Doug Parker. "Our concern is that nothing will be done to keep an injury from recurring if it isn't even recorded in the logbook which – in a company the size of Amazon – could have significant consequences for a large number of workers."

federal safety inspectors at six Amazon warehouse facilities found company failed to record, report worker injuries, illnesses

OSHA's investigations at the six locations are ongoing. The agency issued the recordkeeping citations now to ensure they were issued within six months as federal law requires.

Amazon has 15 business days from receipt of the citation and proposed penalty to comply, request an informal conference with OSHA's area director, or contest the findings before the Occupational Safety and Health Review Commission.

Learn more about OSHA.

###

**Media Contacts:**

Amanda McClure, 202-693-4675, mcclure.amanda.c@dol.gov
Victoria Godinez, 202-693-4667, godinez.victoria.c@dol.gov

Release Number:  22-2343-NAT

---



Questions? Contact Us

Manage Preferences

# Subscribe to updates from United States Department of Labor

Email Address [                    ]  e.g. name@example.com

[ Subscribe ]

## Share Bulletin

Powered by



Privacy Policy | Cookie Statement | Help

Exhibit 12

# UNITED STATES OF AMERICA

## UNITED STATES DEPARTMENT OF JUSTICE

### SUBPOENA

**TO:**   Amazon.com, Inc.

410 Terry Ave. N.

Seattle, WA 98019

☒   **YOU ARE HEREBY COMMANDED TO PRODUCE** and permit inspection and copying of, at the place and on the date and time indicated, all documents and tangible things described in the attached Rider A, which are necessary in the performance of the responsibility of the United States Department of Justice to investigate, in contemplation of a civil proceeding under 12 U.S.C. § 1833a, a violation of, or a conspiracy to violate, sections 215, 656, 657, 1005, 1006, 1007, 1014, or 1344 of Title 18, or section 287, 1001, 1032, 1341, or 1343 of Title 18 affecting a federally insured financial institution.

**PLACE:**   United States Attorney's Office   **DATE AND TIME:** November 23, 2022
Southern District of New York
86 Chambers Street, 3rd Floor                                                 10:00 a.m.
New York, New York 10007

The production of documents and things in response to this subpoena must be made under a sworn certification, in the form provided herewith, by the person to whom this subpoena is directed or, if not a natural person, by a person or persons having knowledge of the facts and circumstances relating to such production.

☐   **YOU ARE HEREBY COMMANDED TO APPEAR** before the official of the United States Department of Justice designated below, at the place and time designated below, to give oral testimony in connection with this matter as described in the attached Rider C.

**BEFORE:**   _____   **DATE AND TIME:** _____
Assistant United States Attorney
_____

**PLACE:**   United States Attorney's Office
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007

**FAILURE TO COMPLY WITH THE REQUIREMENTS OF THIS SUBPOENA WILL RENDER YOU LIABLE TO PROCEEDINGS IN THE DISTRICT COURT OF THE UNITED STATES TO ENFORCE OBEDIENCE TO THE REQUIREMENTS OF THIS SUBPOENA, AND TO PUNISH DEFAULT OR DISOBEDIENCE.**

Issued under authority of Sec. 951 of the Financial Institutions Reform,
Recovery, and Enforcement Act of 1989, Public Law No. 101-73
(12 U.S.C. § 1833a).

*IN TESTIMONY WHEREOF*

*The undersigned official of the United States Department of Justice has hereunto set his/her hand this*

17th   *day of* November _____ , 20 22

_____

AUSA Jeffrey Oestericher, Chief, Civil Division

## RIDER A

## DEFINITIONS

1.  "Amazon" refers to Amazon.com, Inc.; Amazon.com Services LLC; Amazon, Inc.; Amazon.com Corporate LLC; Amazon.com LLC; Amazon.com.azdc LLC; Amazon.com.dedc LLC; Amazon.com.indc LLC; Amazon.com.ksdc LLC; Amazon.com.kydc LLC; Amazon.com.nvdc LLC; and Prime Now LLC, as well as to any predecessor, successor, corporate parent, subsidiary, or affiliate of any of these entities and to any officer, employee, agent, representative, or person acting or purporting to act on behalf of any such entity or on behalf of any predecessor, successor, corporate parent, subsidiary, or affiliate.

2.  "AmCare" means the first-aid center or medical provider located within a Facility.

3.  "And" and "or" both mean "and/or."

4.  "Any" and "all" both mean "any and all."

5.  "Austin" means the electronic system referred to as "Austin" that Amazon uses, among other things, to enter information concerning Worker injuries and illnesses.

6.  "Bypasses" means the metric referred to as "bypasses" concerning injured Workers who receive medical care from Outside Medical Providers.

7.  "Centrally-Stored Data" means information related to the Facilities that is maintained in one or more central repositories.

8.  "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

9.  "Concerning" means relating to, referring to, describing, evidencing, or constituting.

10. "Documents" means without limitation any item described by Federal Rule of Civil Procedure 34, and any written, printed, typed, graphic, photographed, and recorded or otherwise reproduced or stored communication or representation, including but not limited to letters, memoranda, correspondences, e-mails, and canceled checks.  This term includes whatever form and by whatever means such documents may have been created or stored including, but not limited to: any handmade form, such as writing; any photographic form, such as microfilm, microfiche, prints, slides, negatives, photocopies; any mechanical form such as printing, or typing; any electrical, electronic, or magnetic form such as tape recordings, cassettes, or any information on an electronic or magnetic storage device such as floppy diskettes, hard disks, backup tapes, CD-ROMS, optical discs, printer buffers, smart cards, memory calculators, electronic dialers, hard drives, or electronic notebooks; and any printout or readout from any magnetic or solid state storage device.  All documents provided in response to this subpoena are to include all marginalia and post-its, as well as any attachments referred to in or incorporated by the documents.  All documents provided in response to this subpoena are to include all

versions of each responsive document, including all drafts and copies of each document.

11.     "Facilities" means the facilities operated by Amazon in the United States to transport products to Amazon customers, including Amazon's sortable and non-sortable fulfillment centers, sortation centers, receive centers, delivery stations, crossdocks, air hubs, Prime Now hubs, and specialty facilities.

12.     "Gensuite" means the electronic system referred to as "Gensuite" that Amazon previously used, among other things, to enter information concerning Worker injuries and illnesses.

13.     "Including" means "including, but not limited to."

14.     "Injury Goal" means a target, goal, or expectation concerning a metric reflecting the number or rate of injuries, overall or of a particular kind, in any Facility, including RIR, MSD RIR, DART, LTIR, SIR, DAFW, DJTR, TCIR, TRIR, LTI, or SLI.

15.     "Injury Rate" means a rate at which Workers in one or more Facilities become injured or ill, as calculated by Amazon, regardless of whether it has been calculated according to all injuries or illnesses, only those injuries or illnesses that require job restriction or days off work, or in some other fashion.

16.     "Manager" means a Worker who supervised, oversaw, or managed one or more Workers.

17.     "Medical Goal" means a target, goal, or expectation concerning a metric reflecting medical treatment provided to injured Workers in any Facility, including metrics reflecting the provision of first-aid, the use of a Nurse on Demand service, referrals for injured Workers to seek medical care outside of Amazon, or Bypasses.

18.     "National Staff Members" means current and former Amazon employees or consultants whose responsibilities, at some point during the Relevant Period, concerned all Facilities across the United States.

19.     "Relevant Period" means the time period from August 1, 2012, to the present.

20.     "Regional Staff Members" means current and former Amazon employees or consultants other than National Staff Members whose responsibilities, at some point during the Relevant Period, concerned multiple Facilities.

21.     "RIR" means the recordable incidence rate as tracked by Amazon.

22.     "Worker" means anyone who worked at a Facility during the Relevant Period, whether classified by Amazon as an employee, temporary employee, independent contractor, or something else, including delivery drivers who lifted packages in a Facility and Amazon employees assigned to a region, nationwide, or worldwide who performed work at a Facility.

23.    "You" and "your" refer to Amazon.

## **INSTRUCTIONS**

1.    Unless otherwise specified, this subpoena calls for the production of all documents responsive to the document requests below, and which are in your possession, custody, or control regardless of where such documents or information are located.  Please include all documents that relate to or used during the relevant time period even if they had been prepared or published prior.  Further, if any document requested is no longer in your possession, custody, or control, identify such document completely and provide the following information regarding the document:

      a.    Its present location and custodian;

      b.    The manner in which it was disposed, including the date of disposal, the reason of disposal, the person authorizing the disposal, and the person(s) who disposed of the document.

2.    If no documents exist that are responsive to a request below, please include, in your response to this subpoena and at the time of production, a written statement to that effect.

3.    For any document or part thereof that you decide not to produce by reason of a claim of privilege, please state the privilege being claimed, give an explanation for your claim of such privilege, and provide the following information concerning the putatively privileged document:

      a.    The type of document;

      b.    The date of the document;

      c.    The subject matter of the document;

      d.    The author of the document, including his or her address, telephone number, and role in relation to Amazon;

      e.    All recipients of the document, including their addresses, telephone numbers, and roles in relation to Amazon;

      f.    The number of pages of the document.

4.    In responding to this subpoena, all documents produced should be segregated and labeled so as to identify which request(s) such documents respond to.  Alternatively, you shall identify, by bates-numbers, the documents responsive to each request herein.

5.    In responding to this subpoena, please locate, gather, and produce documents from your files and other sources in such a manner as to ensure that the source and location of each document may be readily determined.

6.      In responding to this subpoena, if you locate responsive documents in file folders or other containers, please produce these folders and containers, including any labels identifying such folders or containers, together with the responsive documents contained therein.

7.      In responding to this subpoena, please do not separate documents attached to each other unless you also identify such separation and provide records sufficient to permit the reconstruction of such grouping of documents.

8.      In responding to this subpoena, if you locate any document that have markings on both sides, please produce both sides of the document.

9.      In responding to this subpoena, please locate, gather, and produce documents or information stored electronically in accordance with the "Document and ESI Production Specifications," attached as Rider B to this subpoena.

10.     In identifying a former employee or contractor, please provide the date of separation as well as that employee's or contractor's last known home address, phone number, and email address.

11.     Please promptly produce responsive documents or information located at any time after your initial response to this subpoena.

12.     For all data you produce that concerns individual Workers, please identify each such Worker by Amazon's identification number for that Worker.

## <u>DOCUMENT REQUESTS</u>

31.     Information stored in Austin or Gensuite concerning injuries at any Facility since August 1, 2017.

32.     Information stored in one or more central databases reflecting Amazon's response to Worker requests at any Facility for job modification, reassignment, or leave as a result of injury or illness, including the database or databases containing responsive information of the sort set forth in AMZ-OSHA6-00003583.

33.     Documents or information prepared by National Staff Members or Regional Staff Members concerning Injury Goals or Medical Goals for one or more Facilities, including documents or information identifying such goals or reflecting how they were developed.[1]

34.     Documents sufficient to show any incentives provided to Facility Staff Members, Regional Staff Members, or National Staff Members based in whole or in part on a

---

[1] Documents responsive to this request are also responsive to OSHA Request Nos. 10, 13, 14, 26, 27, 53, 55, and 57 and SDNY Request Nos. 3 and 15.  As your counsel has suggested otherwise, we include this request in this supplemental subpoena to avoid any dispute.

comparison of actual performance to one or more Injury Goals or Medical Goals.[2]

35.   Documents or information sufficient to show, for each Worker identified in data produced pursuant to this subpoena or this Office's subpoena of August 19, 2022, each of the identifiers Amazon used to refer to that Worker in the data produced, including that Worker's name, Amazon identification number, and Amazon username.

---

[2] Documents responsive to this request are also responsive to OSHA Request Nos. 10 and 42 and SDNY Request Nos. 3 and 15.  As your counsel has suggested otherwise, we include this request in this supplemental subpoena to avoid any dispute.

5

**RIDER B**

## I.  Electronically Stored Information (ESI)

a.  Electronically stored information (ESI) should be produced in accordance with these specifications. If compliance with these specifications would cause undue burden, please contact the government attorney designated on the subpoena to discuss. Please do not vary from these standards without prior approval from a government attorney.

b.  ***All ESI must be produced both in native file format, and in electronically converted TIFF image format including extracted text and load files.***

## II.  Transactional and Database Records

a.  Transactional records extracted from a database shall be produced in delimited ASCII text data format or in another easily computer-importable non-proprietary file format that does not incur a loss of data. Field headers shall be included for each column of data, and a data dictionary or other explanation of the contents of each column shall be provided.

b.  Images of items associated with transactions, such as checks, shall be produced in graphic data files in a commonly readable, non-proprietary format, such as TIFF or JPEG, with the highest image quality maintained, and named in a manner that uniquely associates them with the relevant transaction record(s).

c.  Where responsive ESI is contained in a complex relational or proprietary database (*e.g.*, Oracle, SAP, SQL, MySQL, QuickBooks) from which records cannot readily be exported without loss of related data, please call the government attorney to arrange a meet-and-confer. Identify the database type and version number, and provide the database dictionary and user manuals or other documentation sufficient to describe the structure and content of the database. The meet-and-confer will evaluate, for example, production of a backup of the database (*e.g.*, an .SDF file for a SQL implementation), or other alternatives, such as delimited ASCII exports of custom queries.

d.  **<u>Banks</u>**: Please produce records of account transactions as indicated in paragraphs a. and b. above, and not simply in the form of an image or printout of a monthly statement.

## III.  Native File Format for ESI

a.  All documents must be provided in the original file or "native" format in which the document was created.

b.  System and executable files should not be produced unless specifically requested.

c.  Email files must be delivered in their native format (*e.g.*, Outlook .PST or .msg, Lotus .NSF, etc.).

d.  Relevant information stored in database applications (*e.g.*, Oracle, Sybase, or MSSQL) should only be produced after first consulting with the government attorney to determine method and format of delivery.

e.  Files must be copied and produced in such a manner as to preserve all associated document and file system metadata. See list of required metadata fields below.

f.  Note: a PDF file is *not* considered a native file unless the document was initially created as a PDF.

## IV.   Electronically Converted TIFF Format for ESI

a.  <u>In addition to the native format</u>, you must also provide an electronically-produced (*i.e.*, not a printed and scanned) TIFF image version, including extracted text and load files, and available metadata, for each document produced in native format.

b.  The electronically converted TIFF production must comply with the TIFF Image Production and Cross Reference File Specifications set forth below.

c.  The electronically converted TIFF production must be provided in a Concordance .dat load, together with images and the necessary image cross-reference file. *See* the Delivered Fields Specifications below.

## V.   Custodian, ESI Source Location, and Path—Naming Conventions

a.  For each document that is produced, the custodian; the ESI source location (*e.g.*, network server, network hard drive, media); and the network or folder path, must be specified in a .dat file.

b.  All ESI provided must be broken down in the following folder structure: by custodian, then by data category (*e.g.*, JohnDoe/Mailfiles/datafiles/desktopfiles).

## VI.   Production of Paper Records

a.  Paper records should be produced in ASCII delimited format, as detailed below.

   <u>ASCII delimited text file (.dat) format</u>
   i.   The first line of the text file must contain the field names.
   ii.  In most instances, the StartBates should be the Image Key field unless another field has been designated the key field by the Government.
   iii. The delimiters used should be the default values used by Concordance: comma (ASCII value 20); quote (ASCII value 254); and newline (ASCII value 174).
   iv.  Produce a page header indicator in the following format, <<**batesno**>>, on a separate line for every page of OCR.

b.  If there will be more than one production, please confirm the database fields and structure remain consistent between data deliveries.

## VII.   Delivered Fields Specifications

The database and load file provided must contain, at minimum, the first and last Bates number for each document, and all applicable OCR text.  The .dat file should contain a path to the OCR.  The OCR of the documents should be on a document level.

## VIII.   TIFF Image Production and Cross Reference File Specifications

a. Documents should be electronically converted or, if need be, scanned (at 300 dpi) into single-page CCITT Group IV TIFF files.  TIFF file names should match the assigned Bates number of the underlying document page, should be unique, and sequentially numbered. Searchable PDF files will be accepted only after a consultation between the provider and USAO technical support staff.  Multi-page TIFF files are strongly discouraged.

b. Bates numbers should be electronically "endorsed" onto images.   The file name assigned to the image should match the underlying document's Bates number.   Bates numbers should be alpha-numeric, with the numeric portion of the stamp being "zero-filled".  As an example, as assigned Bates numbered series of documents such as "ABC1", "ABC2", "ABC3" would be unacceptable, whereas "ABC000001", "ABC000002", "ABC000003" is preferred.

c. Images should be placed on delivered media in a master folder named **XIMAGES**.

d. Cross-reference File. TIFF files must be accompanied with an image cross-reference file, preferably an Opticon .opt file, otherwise an IPRO .lfp file will be acceptable. *See* below. This file must associate each Bates number with the corresponding single-page TIFF file name and indicate its location on the media provided. The file should contain one line for every page in the collection, and must contain the document Bates number and the fully qualified path to the image, beginning with the media volume.

Below is a sample for an Opticon .opt file

```
XYZCO_00663941,,D:\Company\Doe Production\AUTO0003\XYZCO_00663941.tif,Y,,,1
XYZCO_00663942,,D:\Company\Doe Production\AUTO0003\XYZCO_00663942.tif,Y,,,1
XYZCO_00663943,,D:\Company\Doe Production\AUTO0003\XYZCO_00663943.tif,Y,,,2
XYZCO_00663944,,D:\Company\Doe Production\AUTO0003\XYZCO_00663944.tif,,,,
XYZCO_00663945,,D:\Company\Doe Production\AUTO0003\XYZCO_00663945.tif,Y,,,1
XYZCO_00663946,,D:\Company\Doe Production\AUTO0003\XYZCO_00663946.tif,Y,,,2
XYZCO_00663947,,D:\Company\Doe Production\AUTO0003\XYZCO_00663947.tif,,,,
```

Below is a sample for an IPRO .lfp file:

```
IM,ABC-000001,D,0,@VOL01;IMG_0000001;ABC-000001.tif;2,0
IM,ABC-000002,,0,@VOL01;IMG_0000001;ABC-000002.tif;2,0
IM,3542-S-000001,D,0,@VOL01;IMG_0000001;3542-S-000001.tif;2,0
IM,3542-S-000002,,0,@VOL01;IMG_0000001;3542-S-000002.tif;2,0
IM,3542-S-000003,,0,@VOL01;IMG_0000001;3542-S-000003.tif;2,0
```

## IX.   Delivery Media

a. All data and image deliveries must be made through a file-sharing site approved by this Office (*i.e.* USAfx), thumb drive, or USB 3.0 external hard drive, depending on data volume.

## X.  Metadata Fields

The production should include the following metadata fields:

```
Prodbeg
Prodend
Prodbegattach
Prodendattach
From
To
CC
BCC
Subject
Date sent
Time Sent
Author
Date Created
Time Created
Date last Modified
Time Last Modified
File Name/Document Name
File Extension
Document Type/Record Type
MD5 Hash
Custodian
Page Count
File Size
Original Folder Path
```

Exhibit 13



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*80 Chambers Street*
*New York, New York 10007*

October 27, 2022

By Email

Zainab N. Ahmad
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166-0193
ZAhmad@gibsondunn.com

Re:     SDNY and OSHA Subpoenas

Counsel,

As we mentioned on our call of October 25, we have serious concerns about the state of Amazon's production to date, nearly three months after the OSHA and SDNY requests were served, and we ask to meet and confer with you on or before Tuesday, November 1, in advance of a potential motion to enforce. Putting aside records of individual injuries responsive to OSHA Request 47, Amazon has produced only about 2500 documents—many of which are duplicates you produced three to six times, once for each inspected site. Of particular concern, Amazon has produced only a handful of documents in response to many of the requests we flagged as priorities, after the deadlines by which you agreed to have substantially completed those productions.

For example, you agreed to substantially complete your production of documents responsive to OSHA Requests 13 and 14, which request documents related to productivity and performance expectations, by 10/7. As we have repeatedly told you, these requests are a high priority for us, given our concerns about the pace of work. It is now ten days after that deadline, and you have produced just 14 documents. These documents concern only the current ███████ which does not apply to all warehouses. They do not comprehensively describe the current system—e.g., they do not provide any details about how suggested rates are calculated or used. You have produced no documents describing (a) ███████

███████ (b) productivity and performance expectations in warehouses ███████ or (c) ███████

Similarly, we asked you to prioritize OSHA Request 18, which requested documents concerning productivity requirements and guidance provided to workers. In response, you agreed to substantially complete your production by 10/3. It is now more than three weeks after that deadline, and you have produced just three unique documents.

There are many more examples. You committed to substantially complete productions in response to OSHA Request 18 and SDNY Request 18 by 10/3 and 10/10, respectively; we have fewer than 30 documents in response to OSHA Request 18 and a single document in response to SDNY Request 18. You committed to begin productions in response to OSHA Requests 55, 61, 68, and 73 last month or earlier this month; you have made no productions to date.

You have not advised us that you would be missing any of these deadlines, let alone offered an explanation or proposed new dates.

This is troubling.  As we have discussed at length, OSHA's six-month statute of limitations requires that OSHA receive these documents expeditiously, to enable OSHA to question witnesses about them, make additional requests based on information contained in these documents, and review all pertinent information in time to make decisions in advance of the close of that period.  OSHA issued these subpoenas on August 2.  At that time, we were frank that the government required Amazon to move quickly to produce a large volume of responsive material, given the health and safety concerns here.  Yet nearly three months later, Amazon has produced about 2500 documents; has not responded to our ESI search proposal made one month ago; and has not produced a single witness in response to the 30(b)(6) notice, instead providing two attorney proffers that offered only limited information.

We would like to set aside several hours later this week for a meet and confer in which we go request by request and you advise us of (a) the state of your production to date; (b) what remains to be produced; (c) what if any obstacles have prevented productions to date; and (d) how quickly you can complete that production.  Amazon will need to dramatically increase the rate of production if we are to avoid a motion to enforce.

We identify below some particular areas of concern, where we need especially prompt movement.

**Documents Responsive to OSHA Requests 60-68**

We have repeatedly identified OSHA Requests 60-68 as a high priority.  In our letter of September 13, we asked for specific items responsive to those requests.  To date, we have received few documents responsive to those requests and only a small number of ergonomic risk assessments, individual ergonomic evaluations, technical ergonomic assessments, or other ergonomic assessments.  In Mr. Stewart's email of 10/24, you proposed substantially completing your productions in response to OSHA Requests 62 and 63 (documents concerning specific hazards and remediation to address them) the week of 11/28.  That is too late, especially as to the six inspected facilities, as distinct from the additional "sample" facilities.  We need the specific items we have requested responsive to OSHA Requests 60-68 produced no later than **November 11**.

**Centrally-Stored Data**

As discussed on Tuesday, we need (a) to know what databases you are collecting for production; (b) a modest sample from each database, so we can review the fields and manner in which data was input (and may be able to advise you that we do not need certain databases or fields); and (c) a firm schedule for the full production of these databases.  Please identify these databases, send samples, and provide a schedule for full production no later than **Tuesday, November 1.**

**30(b)(6)**

As we have told you, your proffer in response to Topic A was deficient.  You simply printed job postings for a number of jobs.  For the most part, these job postings do not provide the

detail we need about the actual, day-to-day roles and responsibilities of these employees. In many cases, you represented that the roles and responsibilities of multiple employees at different levels, with different titles, and in different reporting lines were identical, as set out in a job description for a title that does not match. Indeed, after carefully reviewing that proffer, we identified custodians and deponents, only to learn that the first deponent we noticed was not responsible for North American facilities—a fact that was absent from your proffer.

We insist that you promptly produce a designee to answer questions on Topic A. It has been more than two months since we sent our 30(b)(6) topics, and Topic A is quite simple. We have offered to further narrow that topic, for the time being, to the roles and responsibilities of three employees and their direct reports. You need not produce those individuals—though you have that option, and they should need very little preparation—but you do need to produce a knowledgeable designee promptly. We would like to hold that deposition, remotely, by **Friday, November 4**.

We were also disappointed by Tuesday's proffer in response to Topic C, which concerns Amazon's development of productivity requirements. For ease of reference, Topic C is set forth here:

> Amazon's development of Productivity Requirements or Guidance during the Relevant Period, including
>
> • how Amazon developed Productivity Requirements or Guidance;
>
> • information about any analyses that informed that development;
>
> • what involvement National Staff Members, Regional Staff Members, and Facility Staff Members (by title) had in that development, if any; and
>
> • changes in Amazon's Productivity Requirements or Guidance, supporting analyses, and relative involvement of National Staff Members, Regional Staff Members, and Facility Staff Members (by title).

The proffer did not cover, and you were unable to answer questions about, the core of the topic: "Amazon's development or Productivity Requirements or Guidance." You could not say how they were developed, what analyses informed that development, or who was involved in that development. The proffer only covered ███████████

███████████████████████████████████. And you provided only very general information about ████████████, which applied before March 2020.

Please produce a designee to answer questions under Topic C by no later than **Friday, November 11**. In particular, Amazon's designee should be able to address how these productivity requirements/guidance were developed; what analyses (including, in particular, safety analyses) informed that development; who was involved; and how those requirements have changed over

time.  The designee should be able to speak to how shift/process specific rate expectations are developed, ███████████████.

### SDNY Depositions and Keyword Searches of ESI

We have told you repeatedly that we expect to hold our depositions on the dates they were noticed.  We also expect that Amazon will work with us in good faith to produce as much ESI as possible in advance of those depositions.  We proposed custodians and search terms nearly one month ago, on September 28.  You have not yet responded.  We are open to postponing certain of these depositions and prioritizing the review and production of documents that hit on certain searches, but we need a hit report from you that provides hits per custodian and per search (total and unique) to do so.  We understand you have completed the collection of potentially responsive ESI and are now running our search terms.  Please share a hit report with us no later than **Tuesday, November 1**.

Thank you for your attention to these matters.

Sincerely,

DAMIAN WILLIAMS
United States Attorney
Southern District of New York

By:      /s/ Jacob Lillywhite_____
JACOB LILLYWHITE
DOMINIKA TARCZYNSKA
ELIZABETH J. KIM
JEFFREY OESTERICHER
ADAM GITLIN
Assistant United States Attorneys
86 Chambers Street, Third Floor
New York, New York 10007
(212) 637-2639
jacob.lillywhite@usdoj.gov

# Exhibit 14

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY  10166-0193
Tel 212.351.4000
www.gibsondunn.com

Zainab N. Ahmad
Direct: +1 212.351.2609
Fax: +1 212.817.9500
ZAhmad@gibsondunn.com

**CONFIDENTIAL TREATMENT REQUESTED**

November 7, 2022

<u>VIA EMAIL</u>

| | | |
|---|---|---|
| Jeffrey Oestericher | Daniel Hennefeld | David Jaklevic |
| Jacob Lillywhite | Counsel for OSHA | Senior Trial Attorney |
| Dominika Tarczynska | U.S. Department of Labor | U.S. Department of Labor |
| Elizabeth J. Kim | Office of the Solicitor | Office of the Solicitor |
| Adam Gitlin | 201 Varick Street | 201 Varick Street |
| Assistant U.S. Attorneys | New York, NY 10014 | New York, NY 10014 |
| U.S. Attorney's Office for the | | |
| Southern District of New York | | |
| 86 Chambers Street | | |
| New York, NY 10007 | | |

Re:   <u>OSHA & SDNY Subpoenas</u>

Counsel:

We write in response to Mr. Lillywhite's October 27 letter and Ms. Tarczynska's October 31 email correspondence.

As an initial matter, we reiterate the concerns outlined in our October 28 letter regarding the manner in which these dual investigations are proceeding.  SDNY's correspondence continues to assert that Amazon is refusing to comply with certain aspects of the government's subpoenas.  But any objective review of the record in this case shows that the opposite is true.  Amazon has never refused to comply with the government's various subpoenas in these investigations, has promptly collected, reviewed, and produced 32,600 documents (totaling over 137,000 pages), and has already offered 2 witnesses for depositions that have been completed over the last 12 weeks (5 more witnesses are scheduled for deposition this week and 9 more are scheduled for deposition over the next five weeks).  As detailed in our October 28 letter and below (*infra* at 13), Amazon has already made substantial productions in this matter, across many priority requests, on a short timeframe.

Amazon continues to be committed to providing documents, information, and witnesses as promptly as practicable.  And we are doing so in a sequence that is consistent with the government's own reasoning for the accelerated pace of this investigation:  the OSH Act's six-month statute of limitations and the government's purported concerns regarding

Beijing · Brussels · Century City · Dallas · Denver · Dubai · Frankfurt · Hong Kong · Houston · London · Los Angeles · Munich
New York · Orange County · Palo Alto · Paris · San Francisco · São Paulo · Singapore · Washington, D.C.

**GIBSON DUNN**

Dominika Tarczynska
U.S. Department of Justice
November 7, 2022
Page 2

**CONFIDENTAL TREATMENT REQUESTED**

unspecified and unsupported but allegedly immediate safety hazards at Amazon facilities. *See*, *e.g.*, D. Tarczynska Sept. 13 Ltr. at 1; J. Lillywhite October 27 Ltr. at 2.

For the avoidance of any doubt, Amazon reiterates its commitment to cooperating with the government's investigations and complying with the government's 43 subpoenas, which include (as of today):

- 7 document subpoenas served by the U.S. Department of Labor Occupational Safety and Health Administration ("OSHA") containing, in aggregate, 521 document requests seeking documents related to the six facilities inspected by OSHA as well as—for many of the requests—documents from over 900 other so-called "Sibling Facilities" nationwide;[1]

- 12 deposition subpoenas served by OSHA for testimony from Amazon employees at the national and regional level;[2]

- 11 deposition subpoenas served by OSHA for testimony from current and former Amazon employees at the site-level for Amazon's ALB1, DYO1, DEN5, MDW8, BOI2, and MCO2 facilities;

- A deposition subpoena served by OSHA for corporate designee testimony from Amazon.com Services LLC covering 11 topics (36 inclusive of subparts);

- A document subpoena served by the United States Attorney's Office for the Southern District of New York ("SDNY") pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, 12 U.S.C. § 1833a ("FIRREA"), containing 30 document requests (including one request that seeks all documents responsive to the OSHA document subpoenas);[3]

---

[1] On July 19 and 20, 2022, OSHA served three subpoenas with respect to Amazon's DYO1, MCO2, and MDW8 facilities.  On August 2, OSHA served six new subpoenas (including three replacing the original July 2022 subpoenas) with respect to Amazon's ALB1, BOI2, DEN5, DYO1, MCO2, and MDW8 facilities.  On August 11, OSHA issued another subpoena for the DYO1 facility with document requests related to that facility's COVID-19 safety policies.

[2] OSHA issued subpoenas or otherwise identified the subpoenaed witnesses on September 23 (7 witnesses), October 10 (5 witnesses), October 12 (4 witnesses), October 28 (1 witness and the corporate designee subpoena), November 2 (five witnesses), and November 3 (1 witness).

**GIBSON DUNN**

Dominika Tarczynska
U.S. Department of Justice
November 7, 2022
Page 3

**CONFIDENTAL TREATMENT REQUESTED**

- 10 deposition subpoenas served by SDNY pursuant to FIRREA for testimony from Amazon employees at the national level, including high-level executives at the Director and VP level; and

- A Fed. R. Civ. P. 30(b)(6) deposition subpoena served by SDNY pursuant to FIRREA for testimony from Amazon designees covering nine topics different than those set out in OSHA's corporate deposition subpoena.

In addition to complying with these 43 subpoenas, Amazon has been simultaneously coordinating with OSHA over the past six weeks to facilitate on-site reinspections at its DYO1, MDW8, DEN5, BOI2, and MCO2 facilities. These reinspections have included additional ergonomic measurements and inspection activities, supplemental document requests, managerial witness interviews, and coordination of more than 100 non-managerial witness interviews.

Amazon is working diligently and in good faith to comply with each of these subpoenas. But doing so takes time and also risks diverting individuals entirely from their business responsibilities—which in many cases includes the health and safety of Amazon employees—to identify and gather responsive materials. Nor is Amazon required to undertake unreasonable steps or suffer undue burden to comply with the subpoenas. That is why the ceaseless and ever-shifting nature of the government's demands is troubling and counterproductive. Amazon has tried to secure a global production schedule for documents and witnesses that fulfills the government's various demands, but as soon as an apparent agreement is reached, the government has repeatedly served new subpoenas that disrupt the agreed upon schedule and render compliance infeasible. There are many examples but to describe a few:

- Amazon met and conferred with OSHA and SDNY over your respective document subpoenas for several weeks, including through written correspondence and five video calls. That process culminated in Amazon's proposal of an aggressive production schedule on September 21 that focused on the government's *188* **"priority" document requests** and was premised on the government's representation that the burdensome process of collecting, reviewing, and producing ESI would be handled separately. Z. Ahmad September 21 Ltr. at 2.

- Amazon, OSHA, and SDNY held a meet and confer regarding that anticipated production schedule on September 23. Neither OSHA nor SDNY raised any

**GIBSON DUNN**

Dominika Tarczynska
U.S. Department of Justice
November 7, 2022
Page 4

**CONFIDENTAL TREATMENT REQUESTED**

additional or new priorities or mentioned that any additional subpoenas would be issued.

- Within 30 minutes of the conclusion of that September 23 meet and confer, however, OSHA served seven subpoenas for deposition testimony and demanded that those depositions take place within four weeks.  *See* D. Jaklevic Sept. 23 Email; Z. Ahmad Oct. 28 Ltr. at 5.

- Within three business days of that September 23 meet and confer, and notwithstanding prior statements that ESI collection and production would proceed on a separate track, SDNY provided a proposed ESI protocol including 13 custodians and 17 broad search strings that resulted in more than 510,000 hits. *See* Z. Ahmad Oct. 28 Ltr. at 2, 14-15 (explaining that Amazon's anticipated production schedule for non-ESI documents was premised on an understanding that collection and production of those documents would move forward first and not simultaneously with ESI review or other discovery like depositions).

- On October 6, Amazon provided available dates and locations for the depositions of the 7 regional and site-level deponents subpoenaed by OSHA on September 23.  Within two business days, on October 10, OSHA subpoenaed five more deponents and again demanded those depositions take place within the next four weeks.  Two days later, on October 12, OSHA subpoenaed four more deponents, which were noticed to be completed within three weeks.

- On October 11, OSHA confirmed the deposition dates and locations proposed by Amazon for the first 7 regional and site-level deponents.  Just six hours later, SDNY served 10 deposition subpoenas which were noticed to be completed within fewer than 30 days.

- Mr. Lillywhite's October 11 email serving SDNY's deposition subpoenas stated those depositions would commence "after receipt of relevant ESI" pursuant to an agreed-upon ESI protocol.  Yet, just over a week later—while Amazon was in the process of finalizing proposed dates for the 9 OSHA depositions noticed on October 10 and 12 —Ms. Tarczynska's October 19 letter reversed course, suddenly demanding that SDNY's depositions should proceed as noticed starting in two weeks' time (between November 1 and November 21), and that relevant ESI collection, review, and production should also be completed on that timetable.  Ltr. at 1.

**GIBSON DUNN**

Dominika Tarczynska
U.S. Department of Justice
November 7, 2022
Page 5

**CONFIDENTAL TREATMENT REQUESTED**

These shifting directions and priorities have continued with the latest SDNY correspondence.  At the conclusion of our attorney proffer in response to SDNY 30(b)(6) Topic C on October 25, Mr. Lillywhite stated that SDNY intended to provide a letter regarding Amazon's document production that week and reiterated the demand that SDNY's depositions should generally go forward on the dates noticed.  We noted our concerns related to the government's shifting demands and priorities, explained (again) that Amazon is prioritizing OSHA demands and that it would be helpful if the government identified specific and concrete priorities (or even priorities within its priorities).

In response, Mr. Lillywhite suggested that better coordination could stem, for example, from OSHA withdrawing some of its depositions to accommodate SDNY's depositions and document requests.  Nothing like that occurred.  Instead, two days later on October 27, Mr. Lillywhite sent a letter admonishing Amazon for the pace of its production and demanding a multi-hour meet and confer within three business days regarding each of the more than 550 document requests at issue.  Ltr. at 1-2.

Meanwhile, on top of the 25 depositions already noticed by OSHA and/or SDNY, OSHA issued eight additional deposition subpoenas (including a subpoena for 30(b)(6) corporate testimony on different topics) between October 28 and November 3—one of which was noticed to be held in just three business days from its receipt and two of which were noticed to proceed within three weeks.[4]

To be clear, and as the record reflects, Amazon has never refused to comply with SDNY's document or deposition subpoenas.  But it is not reasonable or feasible to expect Amazon to do so on the timeline SDNY is demanding, simultaneously with OSHA depositions and Amazon's efforts to complete document productions.  The infeasibility of, and undue burden associated with, such an expectation is underscored by the current deposition schedule to which Amazon has committed over a six week period:

---

[4] *See* J. Acosta Oct. 28 Email, D. Jaklevic Nov. 2 Email, and E. Wu Nov. 3 Email.  These subpoenas are for the deposition testimony of ███████████, Amazon.com Services LLC, ███████ ███████████████.  Amazon has accepted service of those subpoenas, reserving all rights, and will meet and confer with OSHA regarding a mutually agreeable schedule.

**GIBSON DUNN**

Dominika Tarczynska
U.S. Department of Justice
November 7, 2022
Page 6

## CONFIDENTIAL TREATMENT REQUESTED

| Issuing Agency | Subpoenaed Deponent | Deposition Date Set |
|---|---|---|
| OSHA | ███████████ ██████ ) | October 26 |
| OSHA | ███████████ ██ | October 28 |
| OSHA | ███████████ ████████ ) | November 7 |
| OSHA | ████████ ) | November 7 |
| OSHA | ███████████ ████████ | November 8 |
| OSHA | ████████ r) | November 8 |
| OSHA | ███████████ ██████ ) | November 9 |
| OSHA | ███████████ | November 14 |
| OSHA | ███████████ ██████ ) | November 17 |
| OSHA | ██████████ ██████ | November 17 |
| OSHA | ██████████ ██████ | November 18 |
| OSHA | ███████████ | November 21 |
| OSHA | ███████████ | November 22 |
| OSHA | ██████████ | November 22 |
| OSHA | █████████ ██████ | November 30 |
| OSHA | ██████████ ██ | December 8 |

**GIBSON DUNN**

Dominika Tarczynska
U.S. Department of Justice
November 7, 2022
Page 7

**CONFIDENTAL TREATMENT REQUESTED**

| OSHA | ███████████ | TBD |
| --- | --- | --- |
|  |  | OSHA's October 28 email demanding the deposition requested it occur by November 17. |
| OSHA | Amazon.com Services LLC designee(s) for 11 topics | TBD |
|  |  | OSHA's October 28 email demanding the deposition requested it occur by November 17. |
| OSHA | ███████████ | TBD |
|  |  | OSHA's November 3 email demanding the deposition requested it occur by November 18. |

SDNY's most recent demands would add to this schedule (i) two more Fed. R. Civ. P. 30(b)(6) depositions (by November 4 and November 11), (ii) four high-level corporate depositions (two by November 18 and two by December 4), (iii) the review and production of at *least* 30,000 electronic communications (by November 22), and (iv) the review and production of at least an additional 15,000 electronic communications (by November 30). That is clearly unreasonable.

As detailed above, Amazon already has committed substantial resources and is working expeditiously to produce witnesses requested by OSHA as part of its health and safety investigation, in light of the six-month statute of limitation—which SDNY identified as the basis for its demand that documents and information be produced on an expedited basis. Once Amazon has done so, Amazon can and will promptly turn to producing witnesses in response to SDNY's subpoenas issued pursuant to FIRREA, a statute that is not rooted in workplace health and safety conditions and which has a ten-year statute of limitations. In other words, there is no reason for the extreme speed at which SDNY has requested that Amazon produce documents and witness testimony, and compliance with such demands is unreasonable and infeasible.

**GIBSON DUNN**

Dominika Tarczynska
U.S. Department of Justice
November 7, 2022
Page 8

**CONFIDENTAL TREATMENT REQUESTED**

Again, we want to make clear that Amazon is committed to cooperating with OSHA and SDNY in your investigations, but cooperation is a two-way street that requires reasonableness and coordination from the government.  Amazon is committed to working with you to resolve the government's outstanding issues.  To that end, and in line with the government's recent request for more frequent communication, we propose scheduling a weekly standing call to address specific questions or concerns you have regarding Amazon's productions.  This weekly call should include both SDNY and OSHA.  To ensure that our calls are productive, we ask that you provide us with a proposed agenda with specific issues or topics that you would like to discuss sufficiently in advance of each weekly call.

We hope that we are able to continue working with the government on a cooperative basis without the need for court intervention.  As with prior correspondence from your Office, your October 27 letter threatens a "motion to enforce."  J. Lillywhite Oct. 27 Ltr. at 1, 2.  But any such application would be unwarranted and unproductive and not supported by a fair recitation of the record in this case.  Amazon would vigorously defend against any motion to enforce and such litigation would simply divert both sides from focusing on the exchange of information and documents you seek.

We provide below responses to each of the specific items raised in the October 27 letter and October 31 email.

> ### A.    Documents Responsive to OSHA Request Nos. 60-68

Mr. Lillywhite's October 27 letter asks for Amazon to commit to producing the specific items requested in SDNY's September 13 letter related to OSHA Request Nos. 60-68 by November 11.  We had previously committed to completing our production of those documents by the week of November 28.  At this time—and in light of our continued efforts to direct our resources to your priorities—we can revise our anticipated substantial completion date for those documents to November 18.  We will continue to produce them on a rolling basis during that time.

As you know—Amazon agreed to OSHA's request, related to OSHA Request Nos. 62-64, 67, and 72, to produce responsive documents from eight *additional* facilities, more than doubling its burden from the initial six inspected facilities.  We have also prioritized the collection of those documents and began producing responsive documents from several of those additional facilities last week.

To further confirm Amazon's position with respect to these requests:

8

**GIBSON DUNN**

Dominika Tarczynska
U.S. Department of Justice
November 7, 2022
Page 9

**CONFIDENTAL TREATMENT REQUESTED**

- With respect to OSHA Request Nos. 60-61, which relate directly to the email communications of Amazon's VP of Health and Safety, the parties have not yet reached agreement upon the scope of ESI review with respect to those communications.  As detailed further below (*infra* at 15-16), once agreement is reached, Amazon will be in a position to identify an anticipated completion date.

- With respect to OSHA Request No. 65, which seeks documents demonstrating participants in site-level safety/health committees (namely, Associate Safety Committees ("ASC")), we have conducted a diligent search and have not identified any responsive documents.

- With respect to OSHA Request No. 66, which seeks minutes from or materials reviewed during site-level safety/health committee meetings, we began producing responsive documents on September 30 and have now produced all responsive ASC minutes and materials from the DYO1 and MCO2 facilities.  We anticipate producing additional responsive documents, if any, from the ALB1, BOI2, and DEN5 facilities by November 18.  Finally, we have conducted a diligent search and have not identified any responsive documents from the MDW8 facility.

- With respect to OSHA Request No. 67, for which Amazon agreed to produce ergonomic assessments for specific process paths, if any, that were completed by personnel at the inspected facilities, Amazon began producing responsive documents on September 30 and has now substantially completed its production of documents for the BOI2 and DYO1 facilities.  We anticipate substantially completing our production of documents from the ALB1, MCO2, MDW8, and DEN5 facilities by November 18.

- With respect to OSHA Request No. 68—and as detailed below (*infra* at 16)—for which Amazon agreed to produce executed contracts or agreements with any external expert or consultant with ergonomic hazard experience who received information from Amazon concerning the manner in which associates work in one of the six OSHA-inspected facilities, including through any site visits, we have conducted a diligent search and have not identified any responsive documents (as stated in our October 7 production letter).

**B.**   **Productivity Data**

Your October 27 letter requested that Amazon provide certain information and "modest sample[s]" regarding productivity data by Tuesday, November 1.  As you know, Amazon provided much of this information in our October 28 letter.  *See* Ltr. at 10.

9

**GIBSON DUNN**

Dominika Tarczynska
U.S. Department of Justice
November 7, 2022
Page 10

**CONFIDENTAL TREATMENT REQUESTED**

Moreover, Amazon provided on Friday (within three days of the demand set out in your letter) additional information, samples of relevant data not yet produced, and anticipated completion dates for the production of data.

**C.**     **SDNY 30(b)(6) Deposition**

 Ms. Tarczynska's October 31 email asks if the government is "correct in [its] understanding that Amazon is refusing to produce witnesses to testify as to any of the topics in [SDNY's] 30(b)(6) notice?"  The answer to that question, of course, is no.  Amazon has repeatedly made clear that it is willing to comply with SDNY's Rule 30(b)(6) subpoena within reason.  But, as detailed above, it is neither feasible nor reasonable for Amazon to do so on the schedule that SDNY is demanding, given the other investigative priorities to which Amazon is already committed.

SDNY is demanding designees be offered for deposition on six different topics (A through F)—spanning multiple facility types and operational functions within the company—in a matter of weeks.  *See* J. Lillywhite October 27 Ltr. at 3-4 (demanding a Topic A deposition by November 4 and a Topic C deposition by November 11); D. Tarczynska October 19 Ltr. at 2 (demanding depositions on Topics D-F by November 4). Amazon already committed during that same time period to produce fourteen witnesses for testimony in response to OSHA deposition subpoenas.  Amazon will also be producing witnesses in response to a *different* corporate designee deposition subpoena served by OSHA that includes eleven topics for deposition testimony that are *different* from those requested by SDNY.

It is unreasonable to expect Amazon to comply with all of these various demands simultaneously.  Consistent with our agreed approach to date in these dual investigations, Amazon committed to first producing witnesses in response to OSHA's health and safety related requests.  That is also consistent with the government's directives, in light of the OSH Act's six-month statute of limitations and your purported concern that there is an ongoing health and safety issue at Amazon facilities.

Still—consistent with Amazon's commitment to cooperating in these investigations—we have not asked SDNY to table its Rule 30(b)(6) topics altogether. Instead, we have attempted to identify what questions or information within those nine broad topics are priorities for SDNY to continue moving forward with its investigation while

**GIBSON DUNN**

Dominika Tarczynska
U.S. Department of Justice
November 7, 2022
Page 11

**CONFIDENTAL TREATMENT REQUESTED**

Amazon is primarily focused on OSHA's investigation.  And we are still committed to doing so.

With respect to **Topic A**—and as set out in our October 28 letter (Ltr. at 9-10)—your complaints regarding our initial proffer are unfounded.  We made clear that, given the breadth of Topic A's request, our proffer would include an organizational chart and job descriptions for WHS employees.  Z. Ahmad Sep. 21 Ltr. at 34-35.  That is exactly what we provided, including both internal and external job descriptions (several of which were prepared or revised specifically for purposes of the proffer).  *See* Z. Ahmad October 28 Ltr. at 9-10.  We were also clear that we were happy to provide additional information or answer any more specific questions you might have.

It is also clear that our Topic A proffer aided your investigation.  From the information that we provided, SDNY noticed nine individuals for deposition, identified custodians for its proposed ESI protocol, and in your October 19 letter identified four individuals within WHS for whom you claimed additional information is a priority.  Amazon promptly began providing that additional information regarding those four individuals and their direct reports last week and anticipates providing the remainder this week.  Thus, we disagree that our proffer was "deficient"—a claim that was first made four weeks after we provided it—simply because SDNY subpoenaed one deponent not relevant to its investigation based on the information provided.

With respect to **Topic C**, we provided a two-hour oral attorney proffer on Amazon's use of productivity metrics.  That proffer directly covered information requested by Topic C (Amazon's "Productivity Requirements or Guidance").  Consistent with our prior correspondence, that proffer described Amazon's principal productivity system, █████ ████████████████████████████████████ R. Stewart Sept. 9 Email; Z. Ahmad Sept. 21 Ltr. at 35.  And it provided information regarding key items that you had identified as priorities, including: "how Amazon's productivity guidelines (including suggested rates and expected guardrails) are calculated," "how these requirements have changed over the last five years," and ██████████████████ D. Tarczynska Sept. 13 Ltr. at 7.

Mr. Lillywhite posed many questions during the proffer, many of which we answered.  Some of the questions, however, did not focus on Amazon's productivity requirements but instead on any informal use of productivity metrics outside of the facilities that utilize ████, on the apparent theory that such informal use of productivity metrics amounts to de facto pace of work "requirements" for associates (███████████████████ ██████████████████████████████████████████████████



**GIBSON DUNN**

Dominika Tarczynska
U.S. Department of Justice
November 7, 2022
Page 12

**CONFIDENTAL TREATMENT REQUESTED**

██████████████ █████ ).  Thus, we committed to providing the government with responses (to the extent feasible given the informal nature of the requested information).

As we have reiterated many times, Amazon remains willing to provide what information it reasonably can in the near term.  But in light of Amazon's other compliance commitments to OSHA, it is neither reasonable nor efficient for Amazon to prepare multiple witnesses across multiple facilities and business units to testify on behalf of the company.  Once Amazon has complied with its commitments in response to the more than 30 OSHA subpoenas issued to date, we will provide witnesses for testimony in response to SDNY's FIRREA Rule 30(b)(6) subpoena.

**D.      SDNY ESI Protocol & Depositions**

Your letter again claims that Amazon did not respond quickly enough to the proposed ESI protocol you sent on September 28.  As set out in our October 28 letter (Ltr. at 10) and our earlier correspondence cited therein, Amazon diligently began the collection process promptly after receiving your proposal.  But the collection and processing of the amount of ESI at issue for that number of custodians takes time.  We provided the hit report promptly after the collection and processing of the ESI was complete (and one month after receipt of your proposal).

We appreciate SDNY's recognition that its initial proposed search terms—which resulted in over 513,000 documents—were overbroad and unduly burdensome.  We ran the updated proposed search terms provided in Ms. Tarczynska's October 31 email and provide the resulting hit report (Ex. A) attached.  As Ms. Tarczynska requested, this hit report demonstrates hits by search term and custodian.  The summary tab includes the total hit count by custodian.

As you can see, SDNY's revisions to the search terms did very little to limit the burden of review.  Your proposed revisions only decreased the overall hit count from 513,000 hits to 461,392.

In an effort to move forward towards some consensus on appropriate search terms and scope of review, we further narrowed the search terms in your October 31 email— including with more meaningful proximity restrictions (e.g., W/15 instead of W/40)—in the hit report attached as Exhibit B.  Even this narrowing—which yields just under 300,000 hits—is too broad and not feasible for review on an accelerated time frame.  Accordingly, we request that you review the search terms in Exhibit B and identify further revisions to those terms as well as any search strings or custodians that you are willing to forego to prioritize our review and production.

**GIBSON DUNN**

Dominika Tarczynska
U.S. Department of Justice
November 7, 2022
Page 13

**CONFIDENTAL TREATMENT REQUESTED**

Finally, notwithstanding that we are still negotiating over search terms,  Ms. Tarczynska's October 31 email demands that Amazon:

(1) Complete ESI review and production for two of these custodians (███████ and █████ using SDNY's original proposed search terms—totaling over 17,000 documents—by November 11 and then offer them for deposition by November 22;

(2) Complete ESI review and production for two more custodians (███████ and █████) using SDNY's original proposed search terms—totaling over 23,000 documents—by November 18 and then offer them for deposition by December 4; and

(3) Complete ESI review and production of four original proposed search strings for all custodians—totaling over 14,000 documents—by November 30.

In other words, SDNY is demanding that over the next four weeks—on top of Amazon's other document production efforts and the full deposition schedule set out above—that Amazon review and produce over 50,000 communications and four additional witnesses for deposition.

Those demands are simply not feasible (*see supra* at 1-7).  Nor can Amazon agree to begin the burdensome, time-consuming, and expensive process of reviewing tens of thousands of electronic communications for a subset of custodians, prior to reaching a comprehensive agreement on an appropriate scope of review.

We look forward to your comments regarding Amazon's most recent hit report.

**E.**     **Injury Records**

Ms. Tarczynska's October 31 email asserts that certain injury record and incident report documents were produced in a "scattered . . . rather than consecutive fashion."  As an initial matter, we note that Amazon has been producing injury record and incident report records in response to OSHA's subpoenas for months.  This is the first time that any issue or concern regarding the manner of their production has been raised.

For us to fully respond to your questions and concerns, it would be helpful for you to provide examples of such documents by Bates number so that we can review in context.  As you know, Amazon has produced injury and incident related records from multiple sources during the course of this investigation.  Some documents, for example, were pulled and produced from Amazon's AUSTIN system.  For those records, we can produce an overlay file with metadata that includes the folder name code for each incident report attachment,

**GIBSON DUNN**

Dominika Tarczynska
U.S. Department of Justice
November 7, 2022
Page 14

**CONFIDENTAL TREATMENT REQUESTED**

which should enable you to sort and view by folder and site location.  We anticipate producing the overlay files (per facility) this week.

Other responsive documents have been produced from workers' compensation files and records.  Amazon contracts with third-party Sedgwick to maintain its workers' compensation system and records.  The responsive files Amazon has produced were received from Sedgwick and produced in the same manner that we received them.

**F.   Video Footage**

In our October 28 letter we committed to providing an update this week on a producing a sampling of the video footage from MCO2.  We are in the process of collecting for production 3 hours and 20 minutes of footage (5 minutes of footage from 5 different cameras in each of the 8 areas identified by the government in its markup of the facility).  We estimate it will take at least 20-30 hours to transfer that footage for external production.  Once that process is complete, we will review and promptly produce the footage.

**G.   The Pace of Amazon's Document Productions**

To date, Amazon has produced 32,748 documents and over 137,000 pages of documents and is continuing to push document collection, review, and production efforts forward, notwithstanding a deluge of deposition demands.  That includes documents responsive to more than 300 document requests.  That is an enormous volume of documents produced in only three months.  And *each* of those documents is responsive to SDNY's subpoena.

We understand that the government—and particularly SDNY—would like Amazon to produce even more documents at an even faster pace, on a timeline that is uniquely aggressive compared to its other civil fraud investigations.  But the process of collecting, reviewing, and ultimately producing documents takes time, especially given that Amazon is doing so in response to *hundreds* of "priority" requests.

Mr. Lillywhite's October 27 letter complains that a significant percentage of documents produced to date are responsive to OSHA Request No. 47.  As we detailed in our October 28 letter (Ltr. at 6), however, the government has consistently claimed OSHA Request No. 47 to be a priority request.  It is also a misleading complaint.  Each document within an injury and incident report record makes up a unique "document."  Meanwhile, in response to other priority requests, Amazon has produced to the government (for convenience) significant amounts of information in formats that technically count as a single "document," when the information provided would otherwise span tens of thousands of

**GIBSON DUNN**

Dominika Tarczynska
U.S. Department of Justice
November 7, 2022
Page 15

CONFIDENTIAL TREATMENT REQUESTED

documents. For example, in response to OSHA Request No. 62 (another government priority request), we produced spreadsheets containing information derived from over 270,000 different safety audits. Yet those "count" as just five "documents." *See* AMZ-ALB1-00032715; AMZ-BOI2-00046661; AMZ-DEN5-00013264; AMZ-DYO1-00003241; AMZ-MDW8-00005697. As another example, Amazon produced ADAPT productivity feedback spreadsheets (another government priority request) that "counts" as four "documents," even though it includes the information contained in over 20,000 different documents. *See* AMZ-ALB1-00003545; AMZ-BOI2-00009837; AMZ-MCO2-00004175.

Finally, we were troubled that Mr. Lillywhite's October 27 letter misconstrues the record with respect to several specific document requests:

| Statements in October 27 Letter | Record |
|---|---|
| Amazon "agreed to substantially complete [its] production by 10/3" for OSHA Request No. 18 but has "produced just three unique documents." Ltr. at 1. | Amazon anticipated it would substantially complete its production by the *week of* 10/3 and in fact did so on October 7 by producing "informational documents regarding Performance Awareness Kiosks (PAKs) that are sufficient to show the information that Tier 1 associates may access regarding their respective units, hours, and units per hour in process paths and their respective percentile ranking compared to peers." Z. Ahmad September 21 Ltr. at 14. |
| Amazon "committed to begin productions in response to OSHA Request[] 55 . . . last month or earlier this month" but no productions have been made and Amazon did not advise the government it "would be missing" the deadline. Ltr. at 1-2. | Amazon's September 21 anticipated production schedule was expressly contingent upon the government's agreement to select four additional "Sibling Facilities" from which we would produce documents responsive to OSHA Request No. 55 (September 21 Anticipated Production Schedule at fn. 1). OSHA rejected that proposed approach. |
| Amazon "committed to begin productions in response to OSHA Request[] 61 . . . last month or earlier this month" but no productions have been made and Amazon | Amazon never agreed to produce any specific documents responsive to OSHA Request No. 61. *See* Amazon's August 23 Responses & Objections to OSHA subpoenas. Nor was OSHA |

15

**GIBSON DUNN**

Dominika Tarczynska
U.S. Department of Justice
November 7, 2022
Page 16

**CONFIDENTAL TREATMENT REQUESTED**

| Statements in October 27 Letter | Record |
|---|---|
| did not advise the government it "would be missing" the deadline.  Ltr. at 1-2. | Request No. 61 included in your September 13 list of requests for a meet and confer.<br><br>That said, as set out in Amazon's objections, Amazon considers this Request (seeking "any documents concerning ergonomic hazards, musculoskeletal disorders, pace of work, struck-by hazards, or injury rates at [any Amazon] Facility created by or at the request of, or reviewed by, Amazon's Vice President of Worldwide Workplace Health and Safety") to be encompassed by OSHA Request No. 60, which seeks all "communications" with Amazon's Vice President of Worldwide Workplace Health and Safety regarding the same.  Accordingly, as stated *supra*, Amazon will be producing responsive documents in conjunction with our review of the relevant ESI once the parties have reached agreement upon the scope of ESI review. |
| Amazon "committed to begin productions in response to OSHA Request[] 68 . . . last month or earlier this month" but no productions have been made and Amazon did not advise the government it "would be missing" the deadline.  Ltr. at 1-2. | Amazon agreed to produce "executed contracts or agreements located after a reasonably diligent search, if any, with any external expert or consultant with experience with ergonomic hazards who received information from Amazon concerning the manner in which Workers work in one of the six OSHA-inspected facilities, including through any site visits."  Z. Ahmad Sept. 21 Ltr. at 22.<br><br>As we made clear in our October 7 production letters—the week we had anticipated beginning the production of any responsive documents—Amazon has not produced any documents because we have not identified any documents based on a diligent search. |

**GIBSON DUNN**

Dominika Tarczynska
U.S. Department of Justice
November 7, 2022
Page 17

## CONFIDENTAL TREATMENT REQUESTED

| Statements in October 27 Letter | Record |
|---|---|
| Amazon "committed to begin productions in response to OSHA Request[] 73 last month or earlier this month" but no productions have been made and Amazon did not advise the government it "would be missing" the deadline. Ltr. at 1-2. | Amazon began its production of documents responsive to this request on October 28 (AMZ-MDW8-00006854) and, based on the volume of responsive material, now anticipates substantially completing its production of documents by the week of November 28. |
| Amazon "committed to substantially complete productions in response to SDNY Request 18 by 10/10" but SDNY has received only one responsive document. Ltr. at 1 | Amazon agreed to produce any "formal policies, procedures, and guidance issued at a national level" concerning AmCare's 21-Day Program. Amazon has substantially completed that production through its production of Amazon's Conservative Care Protocols. However, Amazon will agree—subject to agreement on a comprehensive ESI protocol—to review and produce custodial ESI related to AmCare's 21-Day Program. |
| "Amazon agreed to substantially complete [its] production of documents responsive to OSHA Requests 13 and 14 . . . by 10/7" but that Amazon has produced only 14 responsive documents and that those documents "only concern the current ▮▮▮▮▮▮▮ Ltr. at 1. | In response to these requests, Amazon agreed to produce by the *week of* October *17* only formal policies and training documents, dating back one year, that concern actual or expected Facility productivity or performance—not "any documents" concerning those items. The government never objected to that narrowing. |
|  | Nevertheless, Amazon has in fact produced documents describing productivity and performance expectations outside of the ▮▮▮ ▮▮▮ (*see* AMZ-DEN5-00013269, AMZ-DEN5-00002902, AMZ-DYO1-00003252, AMZ-DYO1-00003251). Amazon has also, in connection with SDNY's requests and 30(b)(6) subpoena, produced documents dating back farther than that the one-year limitation that describe Amazon's earlier productivity management system (*see* AMZ-SDNY-00000001 |

17

**GIBSON DUNN**

Dominika Tarczynska
U.S. Department of Justice
November 7, 2022
Page 18

### CONFIDENTAL TREATMENT REQUESTED

| Statements in October 27 Letter | Record |
|---|---|
| | (describing "Policy Effective May 22, 2019"; AMZ-SDNY-00000042—AMZ-SDNY-00000050; and AMZ-SDNY-00000108—AMZ-SDNY-00000110). |

    As noted in my colleague Ryan Stewart's November 1st email, we remain ready and willing to meet and confer further on these topics if you have additional questions.  Thank you for your time and consideration.

Sincerely,

GIBSON, DUNN & CRUTCHER LLP

Zainab N. Ahmad
Partner

ZNA

# Exhibit 15

| From: | Tarczynska, Dominika (USANYS) |
|---|---|
| To: | Stewart, Ryan C.; Lillywhite, Jacob (USANYS); Hennefeld, Daniel - SOL; Denerstein, Mylan L.; Ahmad, Zainab |
| Cc: | "Boizelle, Ashley"; Schwartz, Jason C.; Jaklevic, David M - SOL; Kim, Elizabeth (USANYS); Gemmill, Kevin (USANYS) [Contractor]; jeffrey.oestericher@usdoj.gov; Gitlin, Adam (USANYS); McArthur, Nikki |
| Subject: | RE: Amazon |
| Date: | Thursday, December 15, 2022 7:50:46 PM |

**[WARNING: External Email]**

Ryan,

Thank you for your email.

We are very troubled about the percentage of documents that are being withheld from the production as "potentially" privileged. For example, for ████, you are producing a total of 870 documents, while 1,900 are being held back as potentially privileged. We find it difficult to understand how almost 70% of his responsive documents could be privileged. Overall, across all 4 custodians, more than 50% of the documents have been withheld as potentially privileged. Given Amazon's position that we only have one opportunity to depose these witnesses, we need you to produce any documents that are deemed not privileged or only partially privileged, and to understand what types of documents are being withheld on the basis of privilege before the depositions. In light of that, we will postpone ████ deposition that is currently scheduled for Monday until January. By the end of next week, we would like Amazon to provide a privilege log for the documents withheld from the productions of ████ documents, as well as produce any documents that are deemed non-privileged or only partially privileged. For the documents withheld from the productions of ████████ and ████ please provide a metadata log by the end of next week that includes Author, Recipients (if applicable), File type, file date, File Name or Subject (for Emails) if it is not feasible to also produce a privilege log for these custodians in this time frame. To the extent that documents that have been withheld involve communications with attorneys at your firm in connection with the current OSHA inspections or SDNY investigation, we do not need you to log those, please simply provide us the total count of documents for each custodian that is being withheld on this basis.

Additionally, we are concerned with the low numbers of documents that are being identified as responsive, compared to the numbers that were identified as hitting on the search terms. You previously indicated that these four custodians had a total of approximately 15,000 unique documents (more than 26,000 documents including family members), however the number of responsive documents (produced, to be produced, or held back on the basis of potential privilege) is only approximately 11,900. That is less than 50% of the documents. Please explain what accounts for this low production rate.

The pace of production is also problematic. You initially committed, on November 30, to substantially completing the production for ████████ and ████ by on or about December 9. Then, on December 9, you advised that substantial completion of the non-privileged ESI production for ████ and ████ would be delayed until December 15. It was not until December 13, that you advised us for the first time that you would not be producing all or substantially all non-privileged documents by that date; instead, you planned withhold documents

that contained "indicia of privilege" for review on a separate track for further privilege review, to be conducted after the ███ and ███ depositions.  It was not until this morning, after multiple inquiries on our part, that you advised how significant the volume of these withheld documents was – accounting for more than half of these custodians' documents.  Now, we understand from your email this morning that you will complete production of ███ and ██████ ESI tomorrow—except for 3,000 "potentially privileged" documents—and you have not provided a date when production would be completed for ███████ and ██████.

Due to these delays, we have had to reschedule two depositions.  Going forward, we need all non-privileged documents for a deponent produced at least 7 days before his or her deposition, including non-privileged documents your reviewers initially flag as "potentially" privileged.

We are also very concerned about the date by which you will complete the production of all ESI under our search protocol.  On November 27, we requested that all such ESI be produced by January 6.  On November 30, you agreed to target January 6 and commit 250 attorney hours a day to meet that target.  On December 7, you indicated that you had completed 1st level review of 41,000 documents, and 2nd level review of 7,000 documents—that is first level review of just 17% the documents captured by our search protocol.  Please advise (1) what these numbers are currently; (2) how many attorney hours have been spent on this review since November 30; and (3) by what date we can expect substantial completion of the ESI productions for all custodians.

There are some additional outstanding issues that we wanted to flag:

First, please provide a response as soon as possible to Jake's inquiry in his December 9 email regarding the basis of Amazon's instruction to BSI to redact their productions to us.  In light of the significant numbers of documents that Amazon has withheld from its own productions, we need to quickly understand the basis of this and other privilege assertions so that we can get any privilege disputes resolved in advance of the depositions.

Second, in your November 18 email you committed to provide search term hit reports for the ESI of Messrs. Jassy and Bezos, but we still have not received this.  Please advise when they will be provided.

Third, we are still waiting on a deposition date for ███████████.

Fourth, on December 2 you indicated that you anticipated producing associate level productivity data by "mid-December." Will this will be included in your production tomorrow? If it won't be included in tomorrow's production, please advise when it will be produced.

Fifth, we are still waiting on an update on the Gensuite data, which you indicated in your December 7 email Amazon would be providing this week; please let us know when we can expect it.

Finally, please confirm whether you are still on track to produced Austin data by tomorrow.

Thank you,

Dominika


Dominika Tarczynska
Assistant United States Attorney
Southern District of New York
86 Chambers Street, 3rd Floor
New York, NY 10007
Tel: (212) 637-2748
Fax: (212) 637-2686
dominika.tarczynska@usdoj.gov

---

**From:** Stewart, Ryan C. <RStewart@gibsondunn.com>
**Sent:** Thursday, December 15, 2022 6:08 AM
**To:** Tarczynska, Dominika (USANYS) <DTarczynska@usa.doj.gov>; Lillywhite, Jacob (USANYS) <JLillywhite@usa.doj.gov>; Hennefeld, Daniel - SOL <Hennefeld.Daniel@dol.gov>; Denerstein, Mylan L. <MDenerstein@gibsondunn.com>; Ahmad, Zainab <ZAhmad@gibsondunn.com>
**Cc:** 'Boizelle, Ashley' <boizelle@amazon.com>; Schwartz, Jason C. <JSchwartz@gibsondunn.com>; Jaklevic, David M - SOL <Jaklevic.David.M@dol.gov>; Kim, Elizabeth (USANYS) <EKim3@usa.doj.gov>; Gemmill, Kevin (USANYS) [Contractor] <KGemmill@usa.doj.gov>; Oestericher, Jeffrey (USANYS) <JOestericher@usa.doj.gov>; Gitlin, Adam (USANYS) <AGitlin@usa.doj.gov>; McArthur, Nikki <NMcArthur@gibsondunn.com>
**Subject:** [EXTERNAL] RE: Amazon

Dominika:   Thanks for your emails.  While the exact final numbers might change in processing, we anticipate producing tomorrow approximately 675 additional ESI documents (approximately 250 from ██████ and 425 from ████████).  This production will substantially complete the production of responsive, non-privileged ESI from ██████ and ████████.  We are quality reviewing approximately 2,000 more documents for ████████ and ████████ (the vast majority of which are for ████████) for production, at which time their non-privileged ESI productions will also be substantially complete.  In total, we will have produced approximately 5,500 documents across these four custodians.

Approximately 6,400 documents (including families) from these custodians have been withheld after second-level review for privilege logging and review because they demonstrate a clear indicia of privilege.  This includes approximately 900 documents from the ESI of ████████, 1,900 from ██████ 2,100 from ████████, and 1,500 from ████████.

At this time we do not have a firm estimate as to when privilege review of these documents will be finalized.  While that process is underway, our primary priority has been the review and production of non-privileged ESI in an attempt to meet the expedited and accelerated deposition schedule (simultaneous with continuing ESI review) set by the government's "deadlines."  Obviously it is important that Amazon engage in all diligence necessary to ensure protection of its privileged information and communications.

If the government prefers that we also complete privilege review in advance of the depositions, we will re-direct our resources accordingly (again, we will continue to do so in order of deposition date).  If you would like to reset ▮▮▮▮▮ deposition, he is available on January 10.  Please let us know promptly.

Thank you,
Ryan


**Ryan Stewart**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3523 • Cell + 1 202.604.0176 • Fax +1 202.467.0539
RStewart@gibsondunn.com • www.gibsondunn.com

---

**From:** Tarczynska, Dominika (USANYS) <Dominika.Tarczynska@usdoj.gov>
**Sent:** Wednesday, December 14, 2022 2:54 PM
**To:** Stewart, Ryan C. <RStewart@gibsondunn.com>; Lillywhite, Jacob (USANYS) <Jacob.Lillywhite@usdoj.gov>; Hennefeld, Daniel - SOL <Hennefeld.Daniel@dol.gov>; Denerstein, Mylan L. <MDenerstein@gibsondunn.com>; Ahmad, Zainab <ZAhmad@gibsondunn.com>
**Cc:** 'Boizelle, Ashley' <boizelle@amazon.com>; Schwartz, Jason C. <JSchwartz@gibsondunn.com>; Jaklevic, David M - SOL <Jaklevic.David.M@dol.gov>; Kim, Elizabeth (USANYS) <Elizabeth.Kim@usdoj.gov>; Gemmill, Kevin (USANYS) [Contractor] <Kevin.Gemmill@usdoj.gov>; jeffrey.oestericher@usdoj.gov; Gitlin, Adam (USANYS) <Adam.Gitlin@usdoj.gov>; McArthur, Nikki <NMcArthur@gibsondunn.com>
**Subject:** RE: Amazon

[WARNING: External Email]

Counsel,

Following up on my email below.  We have now looked at the production Amazon made last night, and it appears that we have now received a total of approximately 620 documents for which █████ is the custodian.  This is only a fraction of the 3,687 documents that hit on search terms / 5,824 family members.  In addition to the overall numbers we requested below, please advise as to the specific number of documents for █████ that have been held back on the basis of privilege.  And if that does not account for the bulk of the discrepancy between the 620 and 3,687/5,824, please explain why there is such a discrepancy between the number of documents that hit on the search terms and the size of the production.

Please provide this information as soon as possible, so that we can make a decision whether to proceed with █████ deposition next week.

Thank you,

Dominika


Dominika Tarczynska
Assistant United States Attorney
Southern District of New York
86 Chambers Street, 3rd Floor
New York, NY 10007
Tel: (212) 637-2748
Fax: (212) 637-2686
dominika.tarczynska@usdoj.gov



**From:** Tarczynska, Dominika (USANYS)
**Sent:** Wednesday, December 14, 2022 12:00 AM
**To:** Stewart, Ryan C. <RStewart@gibsondunn.com>; Lillywhite, Jacob (USANYS) <JLillywhite@usa.doj.gov>; Hennefeld, Daniel - SOL <Hennefeld.Daniel@dol.gov>; Denerstein, Mylan L. <MDenerstein@gibsondunn.com>; Ahmad, Zainab <ZAhmad@gibsondunn.com>
**Cc:** 'Boizelle, Ashley' <boizelle@amazon.com>; Schwartz, Jason C. <JSchwartz@gibsondunn.com>; Jaklevic, David M - SOL <Jaklevic.David.M@dol.gov>; Kim, Elizabeth (USANYS) <EKim3@usa.doj.gov>; Gemmill, Kevin (USANYS) [Contractor] <KGemmill@usa.doj.gov>; Oestericher, Jeffrey (USANYS) <JOestericher@usa.doj.gov>; Gitlin, Adam (USANYS) <AGitlin@usa.doj.gov>; McArthur, Nikki <NMcArthur@gibsondunn.com>
**Subject:** RE: Amazon


Counsel,

Thank you for providing this additional information regarding your upcoming productions. We are, however, concerned about the small number of documents you anticipate producing, approximately 3,500 documents, compared to the more than 15,000 unique document hits (more than 26,000 with family documents) that you previously advised these 4 custodians had. We need to understand the number of documents that are being held back for further review and logging because of "indicia of privilege" and when any documents that are ultimately deemed non-privileged and a privilege log will be provided. Additionally, if the discrepancy between the search term hits and production numbers is not explained by the documents that have been held back due to possible privilege concerns, please explain. To the extent ESI belonging to a particular custodian is produced after their depositions, we reserve our rights to reopen those depositions.

At this point, in light of what appears to be a significant number of documents related to audits performed by people reporting to ███████ in addition to the ESI, that will be produced on Thursday, we would like to reschedule ███████ deposition until January. We will confirm the date once we know whether we will also need to postpone ██████ deposition in light of your response to the above.

Thank you,

Dominika


Dominika Tarczynska
Assistant United States Attorney
Southern District of New York
86 Chambers Street, 3rd Floor
New York, NY 10007
Tel: (212) 637-2748
Fax: (212) 637-2686
dominika.tarczynska@usdoj.gov


---

**From:** Stewart, Ryan C. <RStewart@gibsondunn.com>
**Sent:** Tuesday, December 13, 2022 3:28 PM
**To:** Lillywhite, Jacob (USANYS) <JLillywhite@usa.doj.gov>; Hennefeld, Daniel - SOL <Hennefeld.Daniel@dol.gov>; Denerstein, Mylan L. <MDenerstein@gibsondunn.com>; Ahmad, Zainab <ZAhmad@gibsondunn.com>
**Cc:** 'Boizelle, Ashley' <boizelle@amazon.com>; Schwartz, Jason C. <JSchwartz@gibsondunn.com>; Jaklevic, David M - SOL <Jaklevic.David.M@dol.gov>; Kim, Elizabeth (USANYS) <EKim3@usa.doj.gov>; Gemmill, Kevin (USANYS) [Contractor] <KGemmill@usa.doj.gov>; Oestericher, Jeffrey (USANYS)

<JOesterlicher@usa.doj.gov>; Gitlin, Adam (USANYS) <AGitlin@usa.doj.gov>; McArthur, Nikki
<NMcArthur@gibsondunn.com>; Tarczynska, Dominika (USANYS) <DTarczynska@usa.doj.gov>
**Subject:** [EXTERNAL] RE: Amazon

Counsel:  Thank you for confirming the dates and locations for the depositions of ███
████████████ and ████████████.  We are not available for ████████████ deposition
on January 5 or 6.  However, we can propose January 11 (in Washington, DC).  Please
confirm whether that date works for the government.

With respect to the timing of ESI, as I am sure you recall, we originally anticipated that
we would not substantially complete the review and production of non-privileged
responsive ESI for the first four custodians until December 30.  R. Stewart Nov. 17 Email
On November 23—and in an effort to meet the government's uniquely accelerated
schedule—Amazon agreed to devote additional resources towards ESI review and
endeavor to substantially complete production of these documents "on or around
December 9."  R. Stewart Nov. 23 Email.  We have moved forward with this review as
expeditiously as feasible, devoting hundreds of hours of attorney review time per day
(including non-business days).  The process simply cannot go any faster.  As noted in our
December 9 email, we have also prioritized the quality control and processing of ESI for
those custodians whose depositions are first in time.

Today's ESI production is currently processing for production and contains approximately
2,300 documents from ████████████, and ████████.  We anticipate producing
approximately 600 more documents from ████ and ████ on Thursday, which will
substantially complete the production of non-privileged ESI for ████ and ████
(As noted previously, responsive ESI that contains indicia of privilege is being reviewed
and logged on a separate track.  Any documents deemed not privileged will, of course,
be produced promptly upon such a determination).

Separately, we have identified additional safety audits completed by a team reporting to
████████.  We are reviewing those audits for responsiveness.  Consistent with our prior
representations to substantially complete production of responsive documents for the
facilities by December 16, we will produce responsive safety audits (at most 3) for the six
OSHA inspected facilities and the eight additional selected facilities on Thursday.  Audits
completed in 2022 are centrally stored within ████████ team.  As a result we are also
collecting and reviewing for responsiveness approximately 100 more audits for "Sibling
Facilities" and will endeavor to produce those this week as well.

We are prepared to proceed with ████████ deposition on December 19 and ████████
deposition on December 20.  We understand that the turnaround time between ESI
production and these depositions is not long.  That is a byproduct of the expedited,
accelerated timeline with which the government has demanded this investigation
proceed.  As we noted several times in our meet and confers and written
correspondence, simultaneous ESI review/production and depositions is not the normal
course.  Consistent with the Federal Rules of Civil Procedure, Amazon intends to offer
these witnesses for deposition once.

If you would prefer to briefly postpone the depositions scheduled for next week so that
you have more time to process and review the forthcoming productions, we are willing
to do so and have confirmed their next available dates for deposition.

- ████████: January 9 or January 19 (████████████)
- ████████: January 10 (████████

Please let us know how you would like to proceed promptly so that we can arrange

travel plans accordingly.  Please also confirm the physical address for each of the
upcoming depositions so that we can arrange travel, hotels, and commutes accordingly.

Thank you,

Ryan

**Ryan Stewart**


### GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3523 • Cell + 1 202.604.0176 • Fax +1 202.467.0539
RStewart@gibsondunn.com • www.gibsondunn.com

---

**From:** Lillywhite, Jacob (USANYS) <Jacob.Lillywhite@usdoj.gov>
**Sent:** Sunday, December 11, 2022 8:39 PM
**To:** Stewart, Ryan C. <RStewart@gibsondunn.com>; Hennefeld, Daniel - SOL
<Hennefeld.Daniel@dol.gov>; Denerstein, Mylan L. <MDenerstein@gibsondunn.com>; Ahmad,
Zainab <ZAhmad@gibsondunn.com>
**Cc:** 'Boizelle, Ashley' <boizelle@amazon.com>; Schwartz, Jason C. <JSchwartz@gibsondunn.com>;
Jaklevic, David M - SOL <Jaklevic.David.M@dol.gov>; Kim, Elizabeth (USANYS)
<Elizabeth.Kim@usdoj.gov>; Gemmill, Kevin (USANYS) [Contractor] <Kevin.Gemmill@usdoj.gov>;
jeffrey.oestericher@usdoj.gov; Gitlin, Adam (USANYS) <Adam.Gitlin@usdoj.gov>; McArthur, Nikki
<NMcArthur@gibsondunn.com>; Tarczynska, Dominika (USANYS)
<Dominika.Tarczynska@usdoj.gov>
**Subject:** RE: Amazon

[WARNING: External Email]

Counsel,

Please advise us as soon as possible of your best estimates of the numbers of documents for each of
these four custodians you anticipate producing by Tuesday, as well as the numbers of documents for
each custodian that will not be produced until Thursday.

You committed to substantially complete production for the first four custodians on or around
December 9.  On December 10, we received just 600 documents, though you have advised that
these four custodians had more than 15,000 unique document hits (more than 26,000 with family
documents).  You write that you now anticipate substantially completing the production by
Thursday, December 15.  That is one business day prior to the deposition of ███████ and two
business days prior to the deposition of ███████.  We, too, have processing times on our end,
which means that there is a delay between our receipt of a production and when we can begin to
review it.  If you do not produce documents for ███████ or ███████ until December 15, those
documents may not be loaded onto our review platform prior to their depositions.  We need an
estimate of the number of documents we can expect on December 13 versus December 15, so that
we can determine whether we can proceed with these two depositions.

In addition can you please advise of the number of hits for ESI collected from Mr. Bezos and Mr. Jassy?

Best,

Jake

**From:** Stewart, Ryan C. <RStewart@gibsondunn.com>
**Sent:** Friday, December 9, 2022 10:29 PM
**To:** Lillywhite, Jacob (USANYS) <JLillywhite@usa.doj.gov>; Hennefeld, Daniel - SOL <Hennefeld.Daniel@dol.gov>; Denerstein, Mylan L. <MDenerstein@gibsondunn.com>; Ahmad, Zainab <ZAhmad@gibsondunn.com>
**Cc:** 'Boizelle, Ashley' <boizelle@amazon.com>; Schwartz, Jason C. <JSchwartz@gibsondunn.com>; Jaklevic, David M - SOL <Jaklevic.David.M@dol.gov>; Kim, Elizabeth (USANYS) <EKim3@usa.doj.gov>; Gemmill, Kevin (USANYS) [Contractor] <KGemmill@usa.doj.gov>; Oestericher, Jeffrey (USANYS) <JOestericher@usa.doj.gov>; Gitlin, Adam (USANYS) <AGitlin@usa.doj.gov>; McArthur, Nikki <NMcArthur@gibsondunn.com>; Tarczynska, Dominika (USANYS) <DTarczynska@usa.doj.gov>
**Subject:** [EXTERNAL] [WARNING: MESSAGE ENCRYPTED]RE: Amazon

Counsel:  As promised in our December 7 email, we write with a further update regarding ESI review and productions.  We are including in our next production responsive, non-privileged documents from the ESI of ██████, ████████, and ████ ████.  Processing for that production is currently in progress and we anticipate producing it tomorrow morning.

As a further update, we have completed first and second level review of the ESI for ██ ████████████████████████, and ████████.  Non-privileged, responsive ESI for these custodians that is not produced in the next forthcoming production will be subject to quality control checks and review and production processing over the weekend and early next week (in doing so we will prioritize ████████████, and ████████████ ESI (in that order) given their anticipated deposition dates).  Due to processing times, we anticipate making further ESI productions on Tuesday and Thursday next week and that we will substantially complete the production of non-privileged ESI for these custodians by Thursday (if not in the Tuesday production).  Privileged ESI will be subject to further review and logging on a privilege log as appropriate.

As requested, we also attach here an excel file identifying WHS employees on the 2020 roster previously produced that are former Amazon employees and their last known contact information, where available to Amazon.  The password will follow under separate cover.

In providing this information we emphasize (again) the important ethical constraints regarding your outreach to any of these individuals.  Specifically, state ethics rules

prohibit you from communicating with these former employees in a way that violates the rights of third parties, such as Amazon, including in any way that attempts to obtain Amazon's confidential or privileged information that these individuals might possess based on their former employment.  *See*, *e.g.*, NY ST RPC Rule 4.4.  Moreover, to the extent any of these individuals inform you that they are represented by counsel with respect to any inquiries regarding their Amazon employment, you are obligated to direct any further communications or requests through counsel.

Thank you,

Ryan

**Ryan Stewart**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3523 • Cell + 1 202.604.0176 • Fax +1 202.467.0539
RStewart@gibsondunn.com • www.gibsondunn.com

---

**From:** Lillywhite, Jacob (USANYS) <Jacob.Lillywhite@usdoj.gov>
**Sent:** Friday, December 9, 2022 9:24 PM
**To:** Stewart, Ryan C. <RStewart@gibsondunn.com>; Hennefeld, Daniel - SOL <Hennefeld.Daniel@dol.gov>; Denerstein, Mylan L. <MDenerstein@gibsondunn.com>; Ahmad, Zainab <ZAhmad@gibsondunn.com>
**Cc:** 'Boizelle, Ashley' <boizelle@amazon.com>; Schwartz, Jason C. <JSchwartz@gibsondunn.com>; Jaklevic, David M - SOL <Jaklevic.David.M@dol.gov>; Kim, Elizabeth (USANYS) <Elizabeth.Kim@usdoj.gov>; Gemmill, Kevin (USANYS) [Contractor] <Kevin.Gemmill@usdoj.gov>; jeffrey.oestericher@usdoj.gov; Gitlin, Adam (USANYS) <Adam.Gitlin@usdoj.gov>; McArthur, Nikki <NMcArthur@gibsondunn.com>; Tarczynska, Dominika (USANYS) <Dominika.Tarczynska@usdoj.gov>
**Subject:** RE: Amazon

[WARNING: External Email]

Counsel,

We can confirm the dates and locations for the depositions of ███████████████ , and ███ ███████ .  Unfortunately, we cannot accommodate the change to the date of ██████████ deposition.  As we understand December 16 no longer works for her, we propose holding her deposition in ███ on January 5 or 6.

With respect to procedure, witnesses will not be subject to simultaneous questioning by multiple attorneys.  One attorney from SDNY and one attorney from SOL will be asking questions.  The first

attorney will complete his or her questioning before the second attorney begins.  Please advise us promptly if you have any objections.  We believe this process is far less burdensome to the witness than separating SDNY's deposition and DOL's administrative statement and subjecting the witness to questioning on two separate days.  And yes, we will offer a dial-in or video link; at some of these depositions, one of the attorneys questioning the witness may be remote.

We understand you instructed counsel for BSI to redact their productions to us.  The RFP they produced asserts that the "project will be subject to the attorney-client privilege" and "all communications with [BSI] will be . . . covered by the attorney-client privilege," and further that any BSI work product will constitute "attorney work product."  Can you please explain on what basis you are claiming that BSI's engagement is covered by attorney-client privilege, that communications between Amazon and BSI are covered by attorney-client privilege, and what expected litigation served as the predicate for any claim of attorney work product?

We will respond to the additional points you raised in a later email.

Best,

Jake

**From:** Stewart, Ryan C. <RStewart@gibsondunn.com>
**Sent:** Wednesday, December 7, 2022 10:42 PM
**To:** Lillywhite, Jacob (USANYS) <JLillywhite@usa.doj.gov>; Hennefeld, Daniel - SOL <Hennefeld.Daniel@dol.gov>; Denerstein, Mylan L. <MDenerstein@gibsondunn.com>; Ahmad, Zainab <ZAhmad@gibsondunn.com>
**Cc:** 'Boizelle, Ashley' <boizelle@amazon.com>; Schwartz, Jason C. <JSchwartz@gibsondunn.com>; Jaklevic, David M - SOL <Jaklevic.David.M@dol.gov>; Kim, Elizabeth (USANYS) <EKim3@usa.doj.gov>; Gemmill, Kevin (USANYS) [Contractor] <KGemmill@usa.doj.gov>; Oestericher, Jeffrey (USANYS) <JOestericher@usa.doj.gov>; Gitlin, Adam (USANYS) <AGitlin@usa.doj.gov>; McArthur, Nikki <NMcArthur@gibsondunn.com>; Tarczynska, Dominika (USANYS) <DTarczynska@usa.doj.gov>
**Subject:** [EXTERNAL] RE: Amazon

Counsel:  We write in response to the December 2 emails from Mr. Lillywhite and Mr. Hennefeld.  We appreciate your recognition of the significant effort Amazon is undertaking to cooperate with your investigations.

As you know, since your emails, we already provided updates regarding NACF associate-level productivity data and deposition availability on December 2.  With respect to the remaining items in Mr. Lillywhite's email:

**SDNY and Jointly Noticed Depositions**.  As a further follow up to my December 2 email, we can now offer the dates and times below for the following depositions:

- ▮▮▮▮▮▮: January 12 (▮▮▮▮▮▮▮)
- ▮▮▮▮▮▮▮▮: January 13 (▮▮▮▮▮▮▮)
- ▮▮▮▮▮▮▮: January 30 (▮▮▮▮▮▮)

Although we endeavored to offer ▮▮▮▮▮▮ for deposition in December, she will be out

of the country for multiple weeks. Please confirm whether these dates and locations work for the government. We are continuing to identify mutually available dates for ▮▮▮ ▮▮▮▮ and will revert back shortly with a proposal.

Further, with apologies for any inconvenience, we need to make a slight adjustment to ▮▮▮▮▮▮▮ deposition date. She can be available (in ▮▮▮▮▮▮▮ as previously discussed) on December 21. Please confirm that this date works for you.

Thank you for confirming deposition dates and locations for the other witnesses. At this time, we understand the following dates and times to be confirmed (or pending):



- ▮▮▮: December 19 (▮▮▮▮)
- ▮▮▮ December 20 (▮▮▮)
- ▮▮▮: December 21 (▮▮▮▮) (*pending government confirmation*)
- ▮▮▮: January 12 (▮▮▮▮) (*pending government confirmation*)
- ▮▮▮: January 13 (▮▮▮▮) (*pending government confirmation*)
- ▮▮▮: January 18 (▮▮▮)
- ▮▮▮: January 25 (▮▮▮)
- ▮▮▮▮: January 27 (▮▮▮▮)
- ▮▮▮: January 30 (▮▮▮▮)

Mr. Lillywhite's December 2 email requests that Amazon commit to producing all of these witnesses on or before February 1 rather than February 15. As shown above, Amazon has met that demand with respect to 9 out of the 10 witnesses. While we cannot categorically commit to a February 1 deadline for ▮▮▮▮, we will continue our efforts to do so.

Finally, thank you for confirming that these depositions will be recorded by video. We would also like confirmation regarding your anticipated procedure during the jointly noticed depositions of ▮▮▮▮, and ▮▮▮▮ and have some additional questions regarding the procedure for those depositions.

**First,** we anticipate that you intend to submit both OSHA and SDNY's questioning through a single questioner throughout the course of the deposition. Please confirm promptly if you plan to proceed in a different manner. Amazon objects to any process that would subject a witness to simultaneous or alternating questioning by multiple questioners.

**Second**, please confirm the specific address for each deposition this week so that the witnesses and attorneys can plan travel/commutes accordingly.

**Third**, please confirm—consistent with our practice in the OSHA depositions to date—that a dial-in or video line will be available for those attorneys not present at the deposition itself (including Amazon in-house counsel) to attend the deposition remotely. Consistent with practice in the OSHA depositions to date, remote attendees on behalf of any party would be required to be announced for the record but otherwise will not speak on the record, question, or object during the deposition.

**OSHA Depositions**. As you may know, we have continued to make good progress in scheduling deposition dates for the facility witnesses noticed by OSHA and are continuing to work with Ms. Acosta and Ms. Wu regarding those.

**ESI Productions**. As promised in my December 2 email, we write with a status update

regarding ESI review.  To date, we have completed first level review of 41,000 documents and completed second level review of over 7,000 documents.  Although we have made significant progress in our review of the first custodians' documents and anticipated making our first ESI production today, that is likely to be pushed to tomorrow or no later than Friday due to our vendor's processing turnaround. At this time, we still anticipate that we will be able to substantially complete production of non-privileged ESI for ████████████████████, and ████████ on or around December 9.  We will provide a further update regarding ESI review on December 9.

We are continuing to assess when we can expect to complete all ESI productions.  While we have made significant progress in our review, there is still a large volume of ESI pending first and second level review. We will continue to provide weekly (if not more frequent) updates regarding the status of review and our anticipated timing as the process continues.

Finally, Mr. Lillywhite's December 2 email raised further questions regarding the review universe.   As an initial matter, in an attempt to cut through the technical nature of this confusion regarding prior hit reports, we can confirm that the entire review population, excluding duplicates, is 118,259 documents (233,830 documents including families).  This is the scope of de-duplicated documents in our review platform for this exercise.

With respect to the hit reports, our vendor created multiple hit reports (at SDNY's request) for each run of the proposed search terms.  These reports are run in slightly different ways.  The STR hit reports show every document hit based only on the primary custodian of the document, with each document only counted once.  The custodian summary hit reports show all document hits based on the "all custodians" metadata field, again with documents only counted once either by primary or first-listed custodian.

As noted above, we are including in our review set all documents that hit on the search terms for which any of the identified custodians is included in the "all custodians" metadata field.

**Nationwide Ergonomic Assessments**.  Mr. Lillywhite's December 2 email raises concerns regarding the scope of "nationwide ergonomic assessment" documents that Amazon is producing in response to OSHA Request Nos. 62-64, 67 and SDNY Request Nos. 11 and 12.

As an initial matter, OSHA Request Nos. 62-64 relate to facility specific documents.  For OSHA Request Nos. 62 and 63 we have produced responsive documents from the 6 OSHA-inspected facilities.  And for OSHA Request No. 64 we have negotiated with OSHA an additional 8 facilities from which we are producing responsive facility-level documents.

With respect to the remaining document requests, our objections regarding the expansive scope of the requests and our intended approach for production have been on record for months:

- SDNY Request No 11:  In our responses and objections served on September 19, we agreed to produce "non-privileged studies or analysis [back to August 1, 2017] identified after a reasonable search that were provided by a contractor retained by Amazon at the national level regarding a potential risk to Health and Safety created by the pace of work for any process path in a facility."  In Ms. Ahmad's September 21 letter, we also agreed to produce "Executed contracts or agreements" with any contractor who provided such analysis. Z. Ahmad Ltr. at 29-30.

- SDNY Request No. 12:  In our responses and objections served on September 19,

we agreed to produce "non-privileged studies, identified after a reasonable search, conducted at a national level since August 1, 2017, for the purpose of assessing whether associate pace of work posed a risk to associate health and safety."

- OSHA Request No. 67:  In our responses and objections served on August 23, we agreed to produce "ergonomic assessments for specific process paths, if any, that were completed by personnel at [six specified facilities]."  We also agreed to produce such ergonomic assessments completed by personnel at the 8 additional facilities.

We have also reiterated these positions in our updates regarding document productions.  *See*, *e.g.*, Z. Ahmad Nov. 7 Ltr. at 9 (reiterating scope of anticipated production for OSHA Request No. 67 and anticipated time frame for production); R. Stewart Nov. 18 Email (reiterating scope of anticipated production for SDNY Request Nos. 11 and 12).

Mr. Lillywhite's December 2 email now raises concerns that these objections and our approach to narrowing the overbroad scope of these requests is too narrow on multiple grounds (temporally, by subject matter, and by document type).  This is the first time—months later and within weeks of the government's purported deadlines—that any issue has been raised regarding these objections and our approach to narrowing the expansive scope of these requests.

At this time, given the nature of the requests and the short period to respond before your "deadline," we can commit to producing non-privileged assessments, analyses, and white papers identified after a reasonably diligent search of likely custodians related to potential ergonomic hazards, MSD risks, and pace of work at a national level that were created by or for "National Staff Members" within Amazon's WHS team since August 1, 2017.  We anticipate that we can complete that production on or before January 6 and will update you if that changes.  We are assessing the scope of producing the same non-privileged ergonomic assessments, analyses, and white papers prepared for "National Staff Members" within Amazon's WHS team by third-party consultants and executed contracts for those documents and will provide an update promptly.  (As you know, we separately agreed via email correspondence to produce non-privileged documents relating to ergonomic assessments conducted by BSI in 2016 and are in the process of collecting those.)

We also understand that you have issued subpoenas to third party vendors directly.  Please note that some of this work was conducted on a privileged basis in order to facilitate legal advice.  We ask that you identify the third parties to which you have issued subpoenas so that we can take appropriate steps to preserve Amazon's privilege and avoid the improper disclosure of privileged information to the government.

**New document/data requests**.  Thank you for confirming the data fields you are seeking with respect to the new requests for nationwide pulls of data from Austin, Gensuite, and the Return to Work database.  At this time, we anticipate producing the Austin data on or before December 16 and the Return to Work data on or before January 6, if not earlier.  We are in the process of pulling Gensuite data and are continuing to assess the anticipated timing of pulling and processing that archived data.  We will update you next week regarding anticipated timing and understand that this new request is a priority.

Lastly, in response to Mr. Hennefeld's December 2 email and to ensure that the record is clear, it has never been communicated to us (nor has it been our understanding) that ESI productions are a priority for OSHA's investigation.  To the contrary, it has been communicated to us, including during our November 8 meet and confer, that OSHA does

not require the production of ESI to conduct its depositions.  Nevertheless, as noted above, Amazon is continuing to prioritize and devote significant resources to ESI review and will update you on our progress.

Best,

Ryan


**Ryan Stewart**


## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3523 • Cell + 1 202.604.0176 • Fax +1 202.467.0539
RStewart@gibsondunn.com • www.gibsondunn.com

---

**From:** Lillywhite, Jacob (USANYS) <Jacob.Lillywhite@usdoj.gov>
**Sent:** Tuesday, December 6, 2022 4:41 PM
**To:** Stewart, Ryan C. <RStewart@gibsondunn.com>; Hennefeld, Daniel - SOL <Hennefeld.Daniel@dol.gov>; Denerstein, Mylan L. <MDenerstein@gibsondunn.com>; Ahmad, Zainab <ZAhmad@gibsondunn.com>
**Cc:** 'Boizelle, Ashley' <boizelle@amazon.com>; Schwartz, Jason C. <JSchwartz@gibsondunn.com>; Jaklevic, David M - SOL <Jaklevic.David.M@dol.gov>; Kim, Elizabeth (USANYS) <Elizabeth.Kim@usdoj.gov>; Gemmill, Kevin (USANYS) [Contractor] <Kevin.Gemmill@usdoj.gov>; jeffrey.oestericher@usdoj.gov; Gitlin, Adam (USANYS) <Adam.Gitlin@usdoj.gov>; McArthur, Nikki <NMcArthur@gibsondunn.com>; Tarczynska, Dominika (USANYS) <Dominika.Tarczynska@usdoj.gov>
**Subject:** RE: Amazon


**[WARNING: External Email]**

Counsel,

Thank you for the below.  We can confirm the dates and cities for the depositions of ███████ and ███████ .

We look forward to an update on the remaining corporate deponents, your responses to the additional points from my 12/2 email, and any update on the timing of the initial ESI production.

Best,

Jake

---

**From:** Stewart, Ryan C. <RStewart@gibsondunn.com>
**Sent:** Friday, December 2, 2022 9:12 PM

**To:** Hennefeld, Daniel - SOL <Hennefeld.Daniel@dol.gov>; Lillywhite, Jacob (USANYS) <JLillywhite@usa.doj.gov>; Denerstein, Mylan L. <MDenerstein@gibsondunn.com>; Ahmad, Zainab <ZAhmad@gibsondunn.com>
**Cc:** 'Boizelle, Ashley' <boizelle@amazon.com>; Schwartz, Jason C. <JSchwartz@gibsondunn.com>; Jaklevic, David M - SOL <Jaklevic.David.M@dol.gov>; Kim, Elizabeth (USANYS) <EKim3@usa.doj.gov>; Gemmill, Kevin (USANYS) [Contractor] <KGemmill@usa.doj.gov>; Oestericher, Jeffrey (USANYS) <JOestericher@usa.doj.gov>; Gitlin, Adam (USANYS) <AGitlin@usa.doj.gov>; McArthur, Nikki <NMcArthur@gibsondunn.com>; Tarczynska, Dominika (USANYS) <DTarczynska@usa.doj.gov>
**Subject:** [EXTERNAL] RE: Amazon

Counsel:  Thank you for your emails today.  We will get back to you early next week with responses to the follow up questions noted below.  Early-to-mid next week we will also make our first production of ESI from the first four custodians, along with an update regarding the status of the review.

In the meantime, we write to provide an update regarding deposition availability, as promised in our November 30 email.  As you may know, we have now confirmed the following deposition dates with Ms. Acosta and Ms. Wu:

- ███████████ : December 14
- ██████████ :  December 20

We can also propose the following dates/locations for four deponents:

- ██████████ :  December 13 or 15
- ██████████ :  December 20 or 21
- █████████ :  December 20 (████████████
- ██████████ :  January 25 (████████████

Please confirm whether ████████ and ████████████ dates and locations work for you. We are confirming ████████ and ████████████ dates with Ms. Wu.  We are continuing to identify dates for ███████████████████████, and ████████ and will revert back with a further update early next week.  We will send our update regarding productivity data shortly.

Thank you,

Ryan


**Ryan Stewart**


<span style="color:#5b9bd5">**GIBSON DUNN**</span>

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3523 • Cell + 1 202.604.0176 • Fax +1 202.467.0539
RStewart@gibsondunn.com • www.gibsondunn.com

**From:** Hennefeld, Daniel - SOL <Hennefeld.Daniel@dol.gov>
**Sent:** Friday, December 2, 2022 3:42 PM
**To:** 'Lillywhite, Jacob (USANYS)' <Jacob.Lillywhite@usdoj.gov>; Stewart, Ryan C. <RStewart@gibsondunn.com>; Denerstein, Mylan L. <MDenerstein@gibsondunn.com>; Ahmad, Zainab <ZAhmad@gibsondunn.com>
**Cc:** 'Boizelle, Ashley' <boizelle@amazon.com>; Schwartz, Jason C. <JSchwartz@gibsondunn.com>; Jaklevic, David M - SOL <Jaklevic.David.M@dol.gov>; 'Kim, Elizabeth (USANYS)' <Elizabeth.Kim@usdoj.gov>; 'Gemmill, Kevin (USANYS) [Contractor]' <Kevin.Gemmill@usdoj.gov>; jeffrey.oestericher@usdoj.gov; 'Gitlin, Adam (USANYS)' <Adam.Gitlin@usdoj.gov>; McArthur, Nikki <NMcArthur@gibsondunn.com>; 'Tarczynska, Dominika (USANYS)' <Dominika.Tarczynska@usdoj.gov>
**Subject:** RE: Amazon

**[WARNING: External Email]**

I write now in response to your suggestion of a tolling agreement with OSHA. Thank you for the suggestion, but we cannot agree to enter into a tolling agreement for these inspections. Such an agreement would be unprecedented for enforcement inspections under the OSH Act, and would not be considered by DOL absent extraordinary circumstances, which are not present here. Furthermore, we believe Amazon can and should be able to complete the outstanding productions to OSHA in a timely manner. Thanks.

- Dan

Daniel Hennefeld
Counsel for Occupational Safety and Health
Office of the Solicitor, Region II
U.S. Department of Labor
New York, New York
Phone (646) 264-3688
E-mail Address:  hennefeld.daniel@dol.gov

*This message may contain information that is privileged or otherwise exempt from disclosure under applicable law. Do not disclose without consulting the Office of the Solicitor. If you think you received this email in error, please notify the sender immediately.*

**From:** Hennefeld, Daniel - SOL
**Sent:** Friday, December 2, 2022 12:53 PM
**To:** Lillywhite, Jacob (USANYS) <Jacob.Lillywhite@usdoj.gov>; Stewart, Ryan C. <RStewart@gibsondunn.com>; Denerstein, Mylan L. <MDenerstein@gibsondunn.com>; Ahmad, Zainab <ZAhmad@gibsondunn.com>
**Cc:** Boizelle, Ashley <boizelle@amazon.com>; jschwartz <jschwartz@gibsondunn.com>; Jaklevic, David M - SOL <Jaklevic.David.M@dol.gov>; Kim, Elizabeth (USANYS) <Elizabeth.Kim@usdoj.gov>; Gemmill, Kevin (USANYS) [Contractor] <Kevin.Gemmill@usdoj.gov>; Oestericher, Jeffrey (USANYS) <Jeffrey.Oestericher@usdoj.gov>; Gitlin, Adam (USANYS) <Adam.Gitlin@usdoj.gov>; McArthur, Nikki <NMcArthur@gibsondunn.com>; Tarczynska, Dominika (USANYS)

<Dominika.Tarczynska@usdoj.gov>
**Subject:** RE: Amazon

I am writing to add a few things on behalf of DOL, supplementing Jake's email below, in response to Ryan's Nov. 30 email.

First, as Jake noted, we do appreciate your efforts to make progress on the outstanding issues so that we can complete and conclude the inspections. We hope that progress continues.

Second, please note that nearly all of the outstanding high-priority document requests discussed in the recent email exchange are responsive to OSHA's subpoenas as well as SDNY's, and are needed by OSHA for its inspections. In particular, this includes the ESI productions, which are responsive to a number of OSHA requests.

Third, to clarify, in the event that we are unable to successfully resolve the outstanding production issues, DOL would move jointly with SDNY to enforce the relevant OSHA subpoenas in the Southern District of NY, which of course is the location of one of the inspection sites. Again, we hope such action will be unnecessary provided we can continue the aforementioned progress toward resolution and completion.

Finally, I will respond separately today to your suggestion about tolling OSHA's statute of limitations.

Thanks.

- Dan


Daniel Hennefeld
Counsel for Occupational Safety and Health
Office of the Solicitor, Region II
U.S. Department of Labor
New York, New York
Phone (646) 264-3688
E-mail Address:  hennefeld.daniel@dol.gov

*This message may contain information that is privileged or otherwise exempt from disclosure under applicable law. Do not disclose without consulting the Office of the Solicitor. If you think you received this email in error, please notify the sender immediately.*

**From:** Lillywhite, Jacob (USANYS) <Jacob.Lillywhite@usdoj.gov>
**Sent:** Friday, December 2, 2022 12:24 AM
**To:** Stewart, Ryan C. <RStewart@gibsondunn.com>; Denerstein, Mylan L. <MDenerstein@gibsondunn.com>; Ahmad, Zainab <ZAhmad@gibsondunn.com>
**Cc:** Boizelle, Ashley <boizelle@amazon.com>; jschwartz <jschwartz@gibsondunn.com>; Hennefeld, Daniel - SOL <Hennefeld.Daniel@dol.gov>; Jaklevic, David M - SOL <Jaklevic.David.M@dol.gov>; Kim, Elizabeth (USANYS) <Elizabeth.Kim@usdoj.gov>; Gemmill, Kevin (USANYS) [Contractor] <Kevin.Gemmill@usdoj.gov>; Oestericher, Jeffrey (USANYS) <Jeffrey.Oestericher@usdoj.gov>; Gitlin,

Adam (USANYS) <Adam.Gitlin@usdoj.gov>; McArthur, Nikki <NMcArthur@gibsondunn.com>; Tarczynska, Dominika (USANYS) <Dominika.Tarczynska@usdoj.gov>
**Subject:** RE: Amazon

> **INFO ONLY: This email originated outside the Department of Labor but from a validated government source. Do not click (select) links or open attachments unless you recognize the sender and know the content is safe. Report suspicious emails through the "Report Phishing" button on your email toolbar.**

Counsel,

We appreciate the movement from Amazon.  If this progress continues and we are able to reach agreement on the issues identified below, we are hopeful that we can avoid filing our motion to enforce.

- **Nationwide per-associate productivity data.**  As we have told you, this data is particularly important to us.  We look forward to hearing about timing for a production of the NACF data tomorrow.  Again, if you have not found a way to produce the full NACF data promptly, we expect to have a call very shortly connecting our respective data experts.

- **Dates for the remaining corporate deponents.**  It is important that we hold these depositions before February 1, rather than February 15.  We look forward to hearing back about the earliest available dates for those deponents tomorrow.

- **Dates for the remaining facility-specific deponents.**  We look forward to calendaring dates promptly for ███████████████, and designees for OSHA's Rule 30(b)(6) topics.

- **ESI Productions.**  We appreciate the allocation of additional resources to ESI review.  Please let us know as soon as possible, based on the rate of the review you see, whether we can expect the production of all remaining ESI under our search protocol by January 6.  If you don't believe you can make this deadline with 250 hours of associate review each day, please advise us of the rate of review.

  - We still do not understand your explanation about the ESI counts.  The by-custodian hit count for a given custodian represents all documents which that custodian is included in the "all custodian" field, whether or not they are the assigned "primary custodian," right? What do you mean when you say "duplicates [are] removed" from this count?  We expect that duplicates within a given custodian's hits would be removed from the by-custodian hit count.  However, we would expect that near duplicates (documents duplicated but for metadata) across custodians' hits—e.g., an email sent to both ████ ████ and ███████████—would be counted in the by-custodian hits for each custodian for which they appeared (so, once for ██████████ and again for ███████████), so that the by-custodian hits accurately reflect the total number of hits for that custodian.  Is that correct?  (If not, is the system assigning near duplicates to only one of several custodians with that document in the by-custodian hits?  If none of these matching custodians are the "primary custodian"—as you say is the case for

some of these hits—how is that choice made?)  If our expectation about near duplicates is right—an expectation that is a necessary consequence of accurate by-custodian hit counts—that means that near duplicates are counted multiple times when we sum the by-custodian hit counts, and therefore the total number of unique hits (removing near duplicates) is less than that sum.

- **Nationwide ergonomic assessments.**  Please confirm you will produce, in response to our high-priority request seeking "nationwide ergonomic analyses" responsive to OSHA Request Nos. 62-64, 67, SDNY Request Nos. 11, and/or 12, documents concerning potential ergonomic hazards, risk factors for MSDs, or pace of work at multiple Facilities (not in a single region), created by or for National Staff Members since August 1, 2012.  By "nationwide ergonomic analyses" we meant to capture documents related to analyses that were meant to provide information about ergonomic hazards/MSD risks/pace of work at facilities across the country, not a single site or region.  We see in your objections that you proposed limiting this request to the last five years and only to studies conducted "for the purposes of assessing whether associate pace of work posed a risk to associate health and safety."  That is too narrow temporally, in the sorts of studies you would capture, and the responsive documents (just final reports) you would produce.  We don't believe there are many such nationwide studies since August 2012.

We can confirm the dates you offered for the depositions of ███████████████████████, and ███████████████.  We plan to conduct those depositions in person in the major cities near which these deponents are located.  We will confirm the exact locations, but we expect we will hold them in the U.S. Attorneys' Offices in ███████████, and ███████████.  They will be recorded stenographically and by video.

To your question about the Austin and Gensuite exports, yes, we ask that you produce the same fields for Austin that you have produced in the Austin exports to date.  (We assume you produced all relevant text fields.)  For Gensuite, please produce corresponding fields, as well as any other relevant fields.  Similarly, for the Return to Work database, please produce the same fields, assuming you produced all relevant fields.  If you excluded text fields from any of these exports that are not obviously irrelevant, please let us know what you excluded.

With respect to venue, we have asked multiple times for Amazon to consent to our filing a consolidated motion to compel in SDNY.  We have not received such consent.  Accordingly, we expect we would proceed by separate motions to enforce in WDWA and SDNY.  We note again that we are hopeful, in light of the progress reflected below, that we can avoid filing those motions.

Best,

Jake

---

**From:** Stewart, Ryan C. <RStewart@gibsondunn.com>
**Sent:** Wednesday, November 30, 2022 10:29 PM
**To:** Lillywhite, Jacob (USANYS) <JLillywhite@usa.doj.gov>; Denerstein, Mylan L. <MDenerstein@gibsondunn.com>; Ahmad, Zainab <ZAhmad@gibsondunn.com>

**Cc:** Boizelle, Ashley <boizelle@amazon.com>; Schwartz, Jason C. <JSchwartz@gibsondunn.com>; Hennefeld.Daniel@dol.gov; Jaklevic.David.M@dol.gov; Kim, Elizabeth (USANYS) <EKim3@usa.doj.gov>; Gemmill, Kevin (USANYS) [Contractor] <KGemmill@usa.doj.gov>; Oestericher, Jeffrey (USANYS) <JOestericher@usa.doj.gov>; Gitlin, Adam (USANYS) <AGitlin@usa.doj.gov>; McArthur, Nikki <NMcArthur@gibsondunn.com>; Tarczynska, Dominika (USANYS) <DTarczynska@usa.doj.gov>
**Subject:** [EXTERNAL] RE: Amazon

Counsel:  We write in response to Mr. Lillywhite's Sunday evening email below.  As we have repeatedly made clear, Amazon is committed to cooperating with the government's respective investigations, notwithstanding their expansive nature, unreasonably compressed deadlines, and constantly shifting demands and priorities.  Amazon has been working diligently and as quickly as it can to produce documents, data, information, and witnesses to OSHA and SDNY and will continue to do so.

Mr. Lillywhite's November 21 email threatened to go to court if Amazon did not agree by November 23 to meet five priority sets of demands (on arbitrary deadlines).  In our November 23 response, Amazon committed to meeting those demands promptly, within weeks of the government's deadlines and within OSHA's six-month limitations period.

Amazon believed that its significant concessions on November 23 would resolve the government's purported concerns.  Instead of acknowledging Amazon's continued, good-faith effort to reach agreement and withdrawing the government's threat to go to court, however, Mr. Lillywhite's November 27 email sets out a different list of fifteen demands (ten of which were not included in the November 21 email), again threatening to go to court if Amazon does not commit, in a matter of days, to complying with new arbitrary deadlines for each.  (And Mr. Hennefeld wrote separately today to convey additional, apparently uncoordinated requests from OSHA.)

This is (at least) the fifth time that SDNY has threatened litigation if Amazon does not comply with demands for documents and information on an impractical timeline.  The regular issuance of these demands is neither necessary nor appropriate under the circumstances.  We have repeatedly explained that Amazon is prioritizing OSHA's requests due to OSHA's six-month statute of limitations.  We also have offered to discuss a short tolling agreement if OSHA feels it needs more time to complete its investigation.  We have not received any response to that offer.  Instead, we continue to receive additional demands, the bulk of which relate to SDNY requests (e.g., ESI and depositions not jointly noticed by OSHA).

To be clear, and as set forth below, Amazon is not refusing to respond to any of these requests or refusing to do so promptly.  Amazon can and will provide what you are seeking as expeditiously as we can.  We also remain open to working with you on narrowing these demands to help us to provide certain, higher-priority responses earlier.  Our substantive responses to your latest list of demands is below.  These anticipated dates are based on an assumption that no new requests or priorities will be added during this time.

**Depositions of** ██████████████████████████  In your November 21 email you asked Amazon to commit to producing all responsive ESI (approximately 25,000 family documents) for these individuals by December 6 and to holding each of their depositions the very next week.  In response, Amazon committed to devote additional resources towards ESI, substantially complete ESI production for these individuals on or around December 9 (within days of your request), and produce the employees for deposition in December.  You have now asked for the earliest dates in

December that each can be available for a deposition and where each is located.

At this time, we can offer the following dates and locations for these depositions:

- December 16: ███████████████████████████
- December 19: ███████████████████████

Please confirm whether these dates and locations work for you.

As promised in our Thanksgiving-eve email, we will work with you promptly to confirm dates for ██████████████ in December to the maximum extent feasible. We anticipate providing an update on Friday.

**Dates for the "remaining corporate depositions."**  We assume you are referring to the noticed depositions of ███████████████████████████████████████████████ None of these individuals (or their depositions) was referenced in your November 21 email.

Out of these individuals, ██████████ is the only employee who has been jointly noticed by both OSHA and SDNY. Accordingly, Amazon will commit to producing ██████████ for deposition promptly in December or early January, pending his availability, in light of OSHA's six month statute of limitations. We are coordinating with him regarding his availability and will provide an update this Friday. Further, Amazon agrees to review and produce ██████████ responsive ESI before his deposition. Pursuant to the custodian-by-custodian review process you requested, we plan to review ██████████ ESI after completing review for the first four custodians listed above.

With respect to the remaining depositions, these employees were only noticed by SDNY, so the OSH Act's statute of limitations is not an expediting factor. Nevertheless, Amazon will commit to producing these witnesses for deposition on a rolling basis, staged with substantial production of their ESI. We are coordinating with these witnesses to provide availability in January or, if necessary, February (but no later than February 15). At this time, we can offer the following dates/locations:

- January 18: ███████████████████████
- January 27: ███████████████████████████████

Please confirm whether these dates and locations work for you.

We will get back to you promptly regarding dates in this time frame for ███████████████████ ████████████ ████████████ We anticipate providing an update by Friday.

**Dates For The Remaining Facility-Specific Depositions.**  As you may know, we have been in touch with the relevant OSHA attorneys, Jing Acosta and Emily Wu, regarding scheduling and logistics for these depositions. Specifically, we have proposed:

- ████████████ n: December 12, 13, or 14
- ████████████ : December 20, 21, or 22

The only remaining fact witnesses are ██████████████████████████████, who has been out of work and unavailable this week. We will revert back promptly with the relevant DOL attorneys to finalize these dates as well as appropriate dates and designees for the OSHA Rule 30(b)(6) depositions. We are committed to providing this testimony by early January, if at all feasible. And, as mentioned previously, we are open to discussing limited tolling if OSHA believes it is necessary.

**ESI Counts.**  You asked for confirmation that the STR Hit Report is not double-counting near duplicates and not double-counting the same email across custodians. We can confirm that is not occurring. The total number of unique documents across the search terms and custodians is 118,259 unique hits, 233,830 inclusive of family documents.

You asked us to explain why the "Total Docs Hit" figure in the STR Hit Reports is slightly lower than the total sum of hits by custodian (by a few hundred documents).  To be clear, it is not because documents are double counted across custodians in the total hit count.  When documents are uploaded to our review platform, our vendor assigns them a "primary custodian."  ESI also contains metadata that is pooled into an "all custodians" field (e.g., all individuals who are party to an email).  The "Total Docs Hit" figure in the STR Hit Reports represents the sum total of all documents in the review platform that hit on the search terms and for which one of the 12 identified custodians is the "primary custodian."  The by custodian hit counts represent all documents for which at least one of the 12 identified custodians is included in the "all custodian" field, even if they are not the primary custodian, with duplicates removed.  Thus, the by custodian hit counts exceed the STR Hit Reports by a small number of documents for which at least one of the 12 custodians is identified in the "all custodian" metadata field but for which the "primary custodian" is not one of the 12 custodians (e.g., if a generic "Amazon" was set as the primary custodian upon upload).  For purposes of our ESI review, we are reviewing all documents where at least one of the 12 custodians is included in the "all custodian" field.  Accordingly, we will actually be reviewing more documents than what is included on the STR Hit Report, not fewer.

**Remainder of ESI.**  Your November 21 email requested that Amazon commit to reviewing and producing responsive ESI from the first four priority custodians by December 6.  In response, we agreed to devote even more resources to ESI review and substantially complete production of non-privileged, responsive ESI for those four custodians (over 25,000 documents including family) on or around December 9.

Your latest email now asks Amazon to commit to producing *all* remaining ESI from the search protocol by January 6.  Although Mr. Lillywhite's email states that this is approximately 120,000 documents, that estimate does not account for the fact that we also have to review and produce responsive family documents.  The actual review population is over 233,000 documents.

That said, we will endeavor to complete ESI review as promptly as feasible given the volume.  As noted in our November 23 email, we have continued to direct more resources towards ESI review to speed up review to the extent feasible.  However, at this time—barely a week into our initial review—we are not able to commit to substantially completing production by January 6.  There are simply too many variables, including a more concrete understanding of the average pace of review for the ESI at issue here, the rate of responsiveness (which impacts the average pace of review and the number of family documents requiring review), and privilege or other review issues.

To be clear, Amazon is not refusing to meet your January 6 deadline – we are just not yet sure whether it is feasible to do so.  In an attempt to meet your various ESI demands, Amazon has been committing substantial resources to ESI review.  We are currently committing over *250 attorney hours a day* towards review, on average, and will continue to do so over the next several weeks.  We will provide weekly updates, along with our rolling productions, regarding the status of our ESI review efforts and will be in a better position to estimate ESI completion once more review has been completed.

**Per Associate Productivity Data for NACF.**  As discussed during our meet and confer last week, we are committed to providing this data as promptly as possible.  We have been working with the relevant points of contact for this data and will provide an update regarding anticipating timing by Friday.

In the meantime, as you know, Amazon has already committed to producing the host of other productivity data that you are seeking, on a nationwide basis by mid-December, if

not sooner.

**SDNY Rule 30(b)(6) Topic C Proffer**.  We are working to confirm the relevant information for this proffer.  As you know, we have committed to providing this proffer in early January.  We will follow up with you regarding more specific timing in the next two weeks.

**Dates for the Government's Remaining High Priority Items**.

| Request | Response |
| --- | --- |
| Documents | |
| 1.      Ergonomic hazard assessments, analyses, and audits of, or applicable to, the six inspected facilities and the eight selected sample facilities, including the categories of documents listed in the government's letter of 9/13/22, and any nationwide ergonomic analyses. | Amazon has already agreed to substantially complete production of responsive ergonomic assessments completed at the six inspected facilities or the eight additional sample facilities on or before December 16.<br><br>As previously explained, Amazon did not agree to produce nationwide ergonomic assessments in its responses and objections (other than those related to pace of work in response to OSHA Request No. 69).  However, in a further effort to accommodate your requests and after further review of the feasibility of doing so, Amazon will produce responsive ergonomic assessments conducted by Amazon at a nationwide level (subject to Amazon's other objections) on or before January 6. |
| 2.      Documents or information prepared by National Staff Members or Regional Staff Members concerning Injury Goals or Medical Goals for one or more Facilities, including documents or information identifying such goals or reflecting how they were developed. | These documents were first requested in Mr. Lillywhite's November 11 email and the new subpoenas issued on November 17.  We are continuing to work with likely custodians to identify the universe of any responsive documents.  Although it is difficult to provide a firm production date at this time, we do not anticipate a problem |

| | |
|---|---|
| | producing responsive documents by January 6 and can provide an update on our progress. |
| 3.     Documents sufficient to show any incentives provided to Facility Staff Members, Regional Staff Members, or National Staff Members based in whole or in part on a comparison of actual performance to one or more Injury Goals or Medical Goals. | These documents were first requested in Mr. Lillywhite's November 11 email and the new subpoenas issued on November 17.  We continue to work with likely custodians to identify any responsive documents.  At this time, we have not identified any responsive documents, but will update you on our progress and endeavor to produce any responsive, non-privileged documents on or before January 6. |
| 4.     Documents responsive to OSHA Request No. 61 concerning ergonomics or pace of work.  (Again, we expect responsive documents can be identified with the assistance of the current and former Vice Presidents of Worldwide Workplace Health & Safety and manual review of their document repositories, excluding email.) | We will produce responsive, non-privileged documents identified (separate from ESI) on or before December 9. |
| 5.     Identify which employees identified in response to SDNY Request No. 4 are former employees and provide their dates of employment and last known contact information. | As previously discussed, providing this information requires a manual review and pull.  We will produce this information on or before December 9. |
| Data | |
| 1.     Nationwide exports from Austin and Gensuite for the prior five years. | Mr. Lillywhite committed to providing the relevant data fields when he first identified this new request on November 8.  Despite our follow up requests for those fields on November 10, November 14, and November 18, |

| | |
|---|---|
| | Mr. Lillywhite did not provide the requested fields until November 23 at 4:55 p.m.<br><br>Per our November 23 email, please confirm promptly that you are requesting production of all data fields produced in AMZ-ALB1-00003394; AMZ-BOI2-00000755; AMZ-DEN5-00000002; AMZ-DYO1-00000687; AMZ-MCO2-00004111; AMZ-MDW8-00000499 (for Austin).  Assuming that is the case, we will provide corresponding data fields, to the extent they exist, from Gensuite.<br><br>We are working diligently to pull this data, on a nationwide basis, as promptly as possible.  At this time, and subject to your confirmation regarding data fields, we anticipate we can produce the Austin data on or before December 16.  We will provide an update on our anticipated timing regarding Gensuite data no later than December 7. |
| 2.      Nationwide export from the Return to Work job restriction database for the prior five years. | This request was first identified in the new subpoenas issued on November 17.   Please confirm that you are seeking all data fields produced for the inspected facilities in AMZ-OSHA6-00003583 but across all Sibling Facilities.<br><br>Subject to your confirmation regarding data fields, we are working diligently to pull this data, on a nationwide basis, as promptly as possible.  We will provide an update on our anticipated timing no |

| | later than December 7. |
|---|---|
| 3.      Information reflecting weights handled in each of these facilities, at whatever level of aggregation. | As discussed in our meet and confer calls, based on a diligent search to date, we have not identified any centrally stored system that houses the type of information you are seeking.  As you know, we have produced information related to packages by size (e.g., small, medium, and large).  If the government has any more specific input on what you are seeking, we are available to discuss. |

In addition to the above, Amazon anticipates substantial completion of document production in response to all of the OSHA subpoena requests (as narrowed by Amazon's objections and our meet and confer efforts) on or around January 6.

**Venue**.  Finally, your email requests Amazon's position regarding consolidating any motion practice in SDNY.  However, Mr. Lillywhite's November 27 email does not answer the question we asked in our November 23 email:  is the government only willing to consolidate motions in SDNY?  Mr. Lillywhite's November 27 email asks Amazon to explain why WDWA is a more convenient forum.  The issue is not a matter of convenience.  FIRREA would *require* SDNY to pursue any subpoena enforcement action in WDWA, absent Amazon's consent to a different venue, and we are not aware of any authority prohibiting OSHA from filing there.  Please confirm whether you intend to proceed by separate motions, in separate courts, if Amazon does not consent to consolidated motion practice in SDNY.  We're happy to discuss further at your convenience.

Lastly, we note that we do not understand the basis for any potential motion by OSHA given (1) that Amazon is committing above to provide all of the information OSHA has requested within the six-month statute of limitations and (2) we have offered to discuss a short tolling period as necessary to complete these requests within the time period OSHA represents it needs them to issue citations, if any, to the inspected facilities.

We trust that the above resolves any concerns.  Amazon remains committed to working with you in completing your respective investigations.

Best,

Ryan

**Ryan Stewart**

GIBSON DUNN

Gibson, Dunn & Crutcher LLP

1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3523 • Cell + 1 202.604.0176 • Fax +1 202.467.0539
RStewart@gibsondunn.com • www.gibsondunn.com

---

**From:** Lillywhite, Jacob (USANYS) <Jacob.Lillywhite@usdoj.gov>
**Sent:** Sunday, November 27, 2022 6:24 PM
**To:** Stewart, Ryan C. <RStewart@gibsondunn.com>; Denerstein, Mylan L.
<MDenerstein@gibsondunn.com>; Ahmad, Zainab <ZAhmad@gibsondunn.com>
**Cc:** Boizelle, Ashley <boizelle@amazon.com>; Schwartz, Jason C. <JSchwartz@gibsondunn.com>;
Hennefeld.Daniel@dol.gov; Jaklevic.David.M@dol.gov; Kim, Elizabeth (USANYS)
<Elizabeth.Kim@usdoj.gov>; Gemmill, Kevin (USANYS) [Contractor] <Kevin.Gemmill@usdoj.gov>;
jeffrey.oestericher@usdoj.gov; Gitlin, Adam (USANYS) <Adam.Gitlin@usdoj.gov>; McArthur, Nikki
<NMcArthur@gibsondunn.com>; Tarczynska, Dominika (USANYS)
<Dominika.Tarczynska@usdoj.gov>
**Subject:** RE: Amazon

**[WARNING: External Email]**

Counsel,

We disagree with many of your assertions below but as we have addressed most of them previously
—multiple times, in many cases—we do not believe it would be productive to do so again.

We share your desire to avoid motion practice, if possible, but we need to ensure that the
government quickly receives the critical information we have identified.  Your email reflected some
limited movement from Amazon, but we need further information.  By Wednesday, November 30,
please advise:

1.  **First wave of corporate depositions.**  What are the earliest dates in December that ███
    ████████████████████████████████████████ are each available for a deposition, and where is
    each located?

2.  **Dates for the remaining corporate depositions.**  We had hoped to stage the corporate
    depositions, together with ESI review, but you have not committed to producing the initial
    corporate deponents the week of December 12.  Accordingly, please advise what dates in
    December and January each of the remaining corporate deponents is available for a
    deposition and where each is located.

3.  **Dates for the remaining facility-specific administrative statements.**  Please propose or
    confirm dates for the statements of ████████████ (noticed for Dec. 6), ███████████████
    ███████████████, as well as for the 30(b)(6) statements for MDW8 (noticed for Dec. 7) and for
    BOI2.  Because some or all of the topics for BOI2 may be adequately covered by managers'
    statements, we suggest scheduling the BOI2 30(b)(6) after the completion of those
    statements, in late December or early January.  (The same is not true for MDW8, as OSHA is
    not taking sworn statements of any individual managers for that facility.)  You are welcome to
    communicate directly with the relevant SOL attorneys (Jing Acosta for MDW8 and Emily Wu
    for BOI2) regarding scheduling and related logistics for these statements.

4. **ESI Counts.** Can you please confirm that your total hit count aggregated across custodians (in the "STR Hit Report" documents) counts near duplicates--e.g., copies of the same email collected from two custodians—only once? On a call on 11/17, you said the aggregated hit count reflected unique documents after accounting for near duplicates, but we followed up by email that evening to note that this does not appear consistent with the hit reports you provided. As we flagged in that 11/17 email, when we sum "Total Docs Hit" by custodian and compare it with the "Total Docs Hit" in the "STR Hit Report," the sum of hits for each custodian is actually slightly smaller than the reported total hits across all custodians. We don't see how that can be right.

5. **Remainder of ESI.** We need all responsive ESI from the search protocol for the remaining custodians produced by January 6. With 120,000 documents and about six weeks, that would require the review of about 20,000 documents per week. (If, in fact, the 120,000 figure double-counts near duplicates, the required rate may be significantly less.) If you refuse to meet this deadline, please advise how many associate hours and how many staff attorney hours you are willing to allocate to review of these ESI hits each week (on average), as well as the hourly document review rate you expect.

6. **Per-associate productivity data for NACF.** Unless the relevant Amazon IT experts have figured out a way to produce the per-associate productivity data for NACF, when are they available early this week to speak with our data expert to explain the technical obstacles they are reporting?

7. **Topic C proffer.** Can you confirm that the proffer in response to this question will be in writing? And by what date in early January will you provide it?

8. **Dates for the government's remaining high priority items.** Please provide dates for the production of the other high priority items the government has identified:

    1. Documents
        1. Ergonomic hazard assessments, analyses, and audits of, or applicable to, the six inspected facilities and the eight selected sample facilities, including the categories of documents listed in the government's letter of 9/13/22, and any nationwide ergonomic analyses.
        2. Documents or information prepared by National Staff Members or Regional Staff Members concerning Injury Goals or Medical Goals for one or more Facilities, including documents or information identifying such goals or reflecting how they were developed.
        3. Documents sufficient to show any incentives provided to Facility Staff Members, Regional Staff Members, or National Staff Members based in whole or in part on a comparison of actual performance to one or more Injury Goals or Medical Goals.
        4. Documents responsive to OSHA Request No. 61 concerning ergonomics or pace of work. (Again, we expect responsive documents can be identified with the assistance of the current and former Vice Presidents of Worldwide Workplace Health & Safety and manual review of their document repositories, excluding email.)

5. Identify which employees identified in response to SDNY Request No. 4 are former employees and provide their dates of employment and last known contact information.

2. Data (with unique employee identifiers common across datasets or a crosswalk)
   1. Nationwide exports from Austin and Gensuite for the prior five years.
   2. Nationwide export from the Return to Work job restriction database for the prior five years.
   3. Information reflecting weights handled in each of these facilities, at whatever level of aggregation.

Finally, as we have requested several times, please advise whether Amazon will consent to consolidate these motions in SDNY.  You asked whether we would be willing to consolidate these motions in WDWA instead of SDNY.  Given that the SDNY USAO is conducting the FIRREA investigation and representing OSHA in connection with its subpoenas and that one of the six OSHA-inspected facilities is located in SDNY, we believe SDNY is the most appropriate venue.  However, if you advise that Amazon refuses to consent to consolidate these motions in SDNY but would consent to consolidation in WDWA, and you can explain why WDWA would be a more convenient venue, we would consider filing a consolidated motion in WDWA if we cannot reach agreement.

Sincerely,

Jake

Jacob Lillywhite
Assistant United States Attorney
Southern District of New York
86 Chambers Street, Third Floor
New York, New York 10007
(212) 637-2639

---

**From:** Stewart, Ryan C. <RStewart@gibsondunn.com>
**Sent:** Wednesday, November 23, 2022 11:00 PM
**To:** Lillywhite, Jacob (USANYS) <JLillywhite@usa.doj.gov>; Denerstein, Mylan L. <MDenerstein@gibsondunn.com>; Ahmad, Zainab <ZAhmad@gibsondunn.com>
**Cc:** Boizelle, Ashley <boizelle@amazon.com>; Schwartz, Jason C. <JSchwartz@gibsondunn.com>; Hennefeld.Daniel@dol.gov; Jaklevic.David.M@dol.gov; Kim, Elizabeth (USANYS) <EKim3@usa.doj.gov>; Gemmill, Kevin (USANYS) [Contractor] <KGemmill@usa.doj.gov>; Oestericher, Jeffrey (USANYS) <JOestericher@usa.doj.gov>; Gitlin, Adam (USANYS) <AGitlin@usa.doj.gov>; McArthur, Nikki <NMcArthur@gibsondunn.com>; Tarczynska, Dominika (USANYS) <DTarczynska@usa.doj.gov>
**Subject:** [EXTERNAL] RE: Amazon

Counsel:

As discussed, we write in response to, and by the eve of Thanksgiving deadline set in, Mr.

Lillywhite's November 21 email.

Mr. Lillywhite's email falsely claims that Amazon is moving at a "glacial" pace in an attempt to "run out the clock" on OSHA's six-month statute of limitations. That could not be further from the truth. The government has now served 45 subpoenas containing 561 document requests and calling for testimony from 34 witnesses (including 3 Rule 30(b)(6) subpoenas that would require multiple corporate designees). To date Amazon has produced more than 34,600 documents (over 140,000 pages) in response to more than 350 document requests. Amazon has presented 14 regional and site-level employees for sworn deposition testimony taken by OSHA. This is well beyond any OSHA inspection in our collective experience. Amazon has provided oral and written attorney proffers in response to SDNY's Rule 30(b)(6) FIRREA subpoena. And Amazon has facilitated hundreds of interviews with its employees during on-site OSHA inspections (two at each of the six facilities).

Mr. Lillywhite again criticizes the fact that a number of the documents Amazon has produced are injury records, incident records, and workers' compensation records from the inspected facilities (responsive to OSHA Requests No. 47). We have already explained why that criticism is not only misplaced but unfair. *See* Z. Ahmad Oct. 28 Ltr. at 6; Z. Ahmad Nov. 7 Ltr. at 14-15. OSHA is purportedly inspecting injury reporting and hazards and specifically asked for (in subpoenas and medical access orders) records regarding injuries. These injury-related documents were identified by OSHA as a top priority. For that reason, we dedicated substantial resources to prioritizing the production of these voluminous records. The documents go to the heart of OSHA's investigation into purported underreporting of injuries at these facilities. For the government to complain that more documents have been produced in response to these requests related to associate injuries and incidents than have been produced in response to requests for policy documents related to a productivity performance review process that was in place *prior to 2020* is inconsistent with the so-called "exigencies" purportedly driving this accelerated time frame: alleged immediate, ongoing injury hazards and the OSH Act's six-month statute of limitations.

Mr. Lillywhite's email also claims that the production of those injury and incident records was "flawed" because they were not produced sequentially by employee. That is also unfounded. As we explained, these records were produced in chronological order because that is the form in which they are exported from their relevant repositories when exported *en masse*. (This is not, for example, a typical OSHA investigation where OSHA requested specific injury or incident files related to a specific employee.) The documents were produced with all metadata, which was sufficient to facilitate the government reorganizing the data in any way it sought to, including grouping records by employee or incident number. And even though Amazon made its first production of these records in August, it was not until *November* that the government raised any concern with the way the production was organized. *See* D. Tarczynska Nov. 4 Email. Within four days, Amazon produced an overlay file that made the process of sorting by the metadata contained in the files easier for you. Yet despite the purported time-sensitivity of this issue, the government did not even bother to *download* that overlay file until nearly two weeks later. *See* K. Gemmill Nov. 17 Email to R. Stewart (requesting a new link to download the overlay file because the file had not been downloaded from the original link during its one week live period implemented for security purposes).

Mr. Lillywhite's email also criticizes Amazon for not devoting sufficient resources to the investigation. That is also false. Amazon has devoted enormous amounts of time and resources to complying with these investigations. And we have never claimed that preparing and presenting witnesses for OSHA depositions "exhausted" our resources as stated in Mr. Lillywhite's email. (To the contrary, during the course of the 14 OSHA

depositions held to date we have continued to make weekly productions of documents and even committed to and began producing documents from 8 additional facilities.) But to pretend that preparing and presenting witnesses for deposition does not have some impact on counsel's availability to attend meet and confer calls on one day's notice or does not have some impact on the speed at which ESI can be reviewed and produced is patently unreasonable and not productive. Looking at each request in a vacuum (e.g., Mr. Lillywhite's November 17 email citing cases demonstrating pace of ESI review that did not include second-level review or production and was not being conducted simultaneously with depositions) is not a proper way to view what is being demanded here.

To be clear, Amazon has moved as quickly as it can to provide documents, data, information, and witnesses to OSHA and to SDNY. OSHA has already sought and received far more extensive records and information than is typically sought or produced in a pre-citation investigation. Likewise, SDNY has conceded the pace of its FIRREA investigation is atypical for a civil fraud investigation. In fact—for no reason other than a purported but unspecified "safety exigency" that SDNY would have no authority to address under FIRREA in any event—SDNY is attempting to cram a FIRREA investigation that would typically last years into a matter of months. *See, e.g.*, *United States v. UBS Securities, LLC, et al.*, Case No. 1:18-cv-06369 (E.D.N.Y.) (approximately six-year investigation resulting in FIRREA claims); DOJ Press Release No. 14-884 (August 21, 2014) (announcing settlement of FIRREA claims following two-year investigation).

In an attempt to provide OSHA the information it reasonably believes it needs to close out its investigation and issue any citations (if warranted), we have asked you many times to provide a clear, global, and coordinated position regarding the government's priorities during the next two months. We have expressed many times that it is unclear whether the "priorities" espoused by SDNY are priorities for OSHA (which alone is subject to the six-month statute of limitations) and vice-versa. That never happened. So we have tried to facilitate this by setting out various options for prioritization that would be reasonable on the timetable you are demanding. In response, Mr. Lillywhite's November 17 email demanded that Amazon agree to certain "priority" demands immediately (within one day) and that Amazon would later need to reach agreement with the government on other demands, but without any clear direction as to what that agreement would require of Amazon in total during this time frame. The same is true of Mr. Lillywhite's November 21 email, which concludes with a handful of "priority" demands but also claims that *literally every one* of the 45 subpoenas' specifications—spanning over 550+ document requests, 31 fact witness depositions, and 3 Rule 30(b)(6) depositions with 9 or more topics each—is a "priority."

\* \* \*

That said, we continue to believe that motion practice is unnecessary here. Although, if a motion is filed, Amazon is prepared to defend itself vigorously with respect to the overbreadth and undue burden associated with the 45 subpoenas with which it has been served in this sweeping and disjointed investigation. We are confident that a court would understand that the scope of what SDNY and OSHA are demanding is not reasonable, particularly in such a needlessly compressed time frame. And we believe that given that our disagreements appear to be about a mere matter of days, a court would expect the parties to be able to work this out between themselves.

In that vein, we can agree to the following, which largely mirrors the demands listed at the conclusion of Mr. Lillywhite's email:

- Devote additional resources towards ESI review and substantially complete

production of responsive ESI from ███████████████████████████
on or around December 9 (a few days after the December 6 request in Mr.
Lillywhite's email);

- Produce these four employees for deposition in December (within weeks of the
  request in Mr. Lillywhite's email) if feasible and work with you to confirm dates
  promptly;
- Provide dates for the unscheduled OSHA fact witness depositions of ████████
  ████████████████████████████ in December or the first week of January;
- Produce productivity data as outlined below;
- Provide a proffer in response to SDNY Rule 30(b)(6) Topic C by early January; and
- Continue producing non-ESI documents in response to priority OSHA document
  requests throughout December.

We look forward to continuing to work with you to provide the priority information you
are requesting.  Dan, to the extent the items and schedule we propose above do not
provide OSHA what it believes it needs to complete its investigation within the
timeframe of the OSH Act's statute of limitations, Amazon is open to a conversation
regarding a short tolling period.  Please give us a call at your convenience if you would
like to discuss tolling.

We now address each of the items in Mr. Lillywhite's email.

**ESI Review and Corporate Depositions**

Mr. Lillywhite's email states that Amazon "fail[ed] for months to identify its corporate
executives with responsibility for health and safety."  The falsity of that statement is
apparent from the face of the email itself, which explains that Amazon provided a
written proffer (including an attorney-created organizational chart identifying over 100
employees and job descriptions) on September 23, just over a month after you served
the Rule 30(b)(6) FIRREA subpoena on August 17 and two weeks after our September 7
meet and confer call regarding this topic.

The government had no follow up requests and raised no concerns regarding the
sufficiency of the information provided until October 19—four weeks later.  In response
to those follow-up requests, we promptly provided additional information, including
more granular detail regarding the responsibilities of four employees and their direct
reports (29 total employees) on November 4 and November 11.

Mr. Lillywhite's email also criticizes Amazon's preference to not conduct ESI review on a
custodian by custodian basis and to not begin ESI review before the parties had
substantially agreed to an overarching protocol for that review.  As we have discussed,
our position is in line with best practices for ESI review.  Moreover, we did, in fact, reach
substantial agreement on a comprehensive ESI protocol last week, within the "week or
so" timeframe that Amazon estimated during our November 8 meet and confer call (in
response to which you never raised any threat of court intervention).  The short time
spent meeting and conferring over revisions to the ESI protocol to more appropriately
tailor the search terms significantly reduced the review set from over 510,000
documents to 220,000 documents (more than 55%), including a significant narrowing of
the review set for the first four custodians from over 61,000 documents to 25,000
documents (nearly 60%).  Notably, Mr. Lillywhite's email incorrectly states that the
review population for these custodians was "only a few thousand documents" each
based on the initial search terms – in reality the initial proposed search terms returned
over 40,000 unique documents and 61,000 family documents across these custodians.
*See* Z. Ahmad Nov. 7 Ltr. Ex. A.

Separately, to ensure the record is clear, our November 18 statement that the four jointly noticed depositions are clear attempts to shoehorn SDNY's priorities into OSHA's shorter limitations period is supported by the record.  You are correct that we have consistently stated throughout these investigations that we intend to prioritize OSHA's requests in light of the OSH Act's six-month statute of limitations.  However, OSHA began serving deposition subpoenas on September 23 and of the 22 deposition subpoenas that it has served (excluding these 4), 18 were served before these 4 subpoenas were served on November 2.  In our October 28 letter, we explained that we did not intend to proceed with depositions noticed by SDNY until ESI had been produced, but would continue to produce witnesses in response to OSHA's deposition subpoenas.  Lo and behold, a mere 4 days later, OSHA served subpoenas for these 4 witnesses who had been on SDNY's deposition list since October 11, but had never once been mentioned by OSHA as priority witnesses.  And not once before that correspondence had SDNY and OSHA even mentioned jointly noticing depositions, nor had any depositions been jointly noticed.  Nonetheless, we have taken at face value your assertion that OSHA needs to complete these depositions within its six month statute of limitations and committed to producing the witnesses within that time frame.

Finally, as noted above, we have already demonstrated that the precedent you have provided related to pace of ESI review in other investigations is wholly inapplicable here.  Nevertheless, consistent with Amazon's significant cooperation efforts to date, we have committed above to directing even more resources to ESI review and have agreed to conduct that review on a custodian-by-custodian basis as you have requested.  We anticipate substantial completion of production of the four custodians' responsive ESI on or around December 9.

## The Government's Priorities

We do not think it necessary or productive to belabor again the history of the shifting demands imposed by the government on Amazon over the course of this investigation.  Mr. Lillywhite's email states that literally every request—spanning 45 subpoenas, over 550 document requests (not including subparts), 31 Rule 30(b)(6) topics (not including subparts), and 31 fact depositions—is a "priority," which frankly strains the definition of priority past its breaking point.

The notion that the government has "narrowed" its requests is also false.  Amazon has received at least one additional subpoena or document demand from the government *every week* since September 21.  *See* D. Jaklevic Sep. 23 Email (serving 7 deposition notices); J. Lillywhite Sep. 28 Email (providing proposed ESI protocol and search terms); D. Tarczynska Oct. 4 Email (seeking accelerated production schedule and broader productions in response to certain requests); J. Lillywhite Oct. 11 Email (serving 10 deposition notices); P. Baptiste Oct. 12 Email (serving 4 deposition notices); D. Tarczynska Oct. 19 Ltr. (seeking broader productions in response to certain requests); J. Acosta Oct. 28 Email (serving 2 deposition notices); C. Seidelman Oct. 31 Email (serving 5 deposition notices); E. Wu Nov. 10 Email (serving Rule 30(b)(6) notice); J. Lillywhite Nov. 17 Email (serving new OSHA and SDNY document subpoenas).   Indeed, as you've conceded, the latest purported "narrowing" to "highest priorities" in Mr. Lillywhite's November 8 email required new subpoenas because it contained new requests for "nationwide" documents and data.

Worse, as we have made clear in prior correspondence (*see* Z. Ahmad Oct. 28 Ltr. at 5-6; Z. Ahmad Nov. 7 Ltr. at 3-5), the government has consistently utilized a "bait and switch" approach to imposing its shifting demands, *e.g.*, serving new requests within days (and in some cases minutes) of meet and confers regarding anticipated dates for Amazon's completion of other priority requests.

Regardless, Amazon remains committed to providing the government the priority information it needs, within reason.

**Defending OSHA Depositions**

Mr. Lillywhite's email wrongfully criticizes Amazon for taking a reasonable amount of time (weeks) to prepare and present witnesses for sworn deposition testimony taken by OSHA. As an initial matter, taking sworn statements recorded by a court reporter is not "routine" in OSHA investigations. Most OSHA investigations utilize informal interviews, and not sworn testimony, to seek information from witnesses. And in fact OSHA did that here, interviewing hundreds of employees informally during its on-site inspections. (As noted in our prior correspondence, some OSHA attorneys have in fact noted that they already purportedly know the answers to the questions they are asking at these depositions).

Notwithstanding that this OSHA testimony is apparently a high priority, Mr. Lillywhite's email suggests that this sworn testimony is somehow less important and does not require typical witness preparation efforts because they are "administrative statements" not "depositions." That is a distinction without a difference. These "statements" involve hours of testimony, submitted under oath, and recorded into a transcript by a court reporter (presumably so that the transcript can be shared with SDNY, which has sat in on some but not all of these depositions to date). Indeed, both SDNY and OSHA attorneys have referred to these as depositions. *See, e.g.*, J. Lillywhite Nov. 11 and Nov. 23 Emails; E. Wu Nov. 11 Email; B. Ellis Oct. 31 Email; D. Jaklevic Oct. 20 Email. Moreover, when each set of OSHA deposition subpoenas was issued, we suggested that the statements be taken as informal interviews instead to expedite the process. OSHA refused.

Mr. Lillywhite's email also suggests that these OSHA depositions somehow do not require routine (if not expedited) witness preparation because there are "no documents." That is not true. While these deponents have not been part of any ESI review to date, OSHA has used documents produced by Amazon as exhibits during the depositions. In any event, we assume OSHA would want the witnesses to be well-prepared for their depositions.

Finally, so that the record is clear, we disagree with your statements related to prior representations that OSHA was "reconsidering" its deposition requests. Our earlier correspondence accurately reflects the statements that were made during our meet and confer conversations. Moreover, we never "rejected" an offer to cancel already scheduled OSHA depositions (much less unscheduled but noticed OSHA depositions). We simply stated that we hoped Mr. Lillywhite's suggestion that OSHA was considering withdrawing deposition demands would not mean cancelling depositions that were "imminent" because we would already have devoted resources to those depositions.

**Centrally-stored Productivity Data**

Your letter criticizes Amazon for the speed of its production with respect to nationwide productivity data. That criticism is unfounded. As an initial matter, you write that Amazon committed to producing this data on a nationwide basis "many months ago." That is false. We committed to begin working towards production of this data on October 7. R. Stewart Oct. 7 Email to D. Tarczynska.

We told you then—as we had expressed repeatedly when objecting to the undue burden of collecting the voluminous data you were requesting—that collecting and producing this data would be a significant exercise. The government is seeking five-years' worth of data for each of more than 900 "Sibling Facilities" across the country.

████████████████████████ That means many separate points of contact and separate data queries for each data repository. In most instances these queries must be created in the first instance because Amazon does not pull the data you are requesting on this scope during the normal course of business—in fact, as we explained, ████████████████████

████████████████████████████████████

To say that Amazon has not worked diligently to provide this voluminous data – each data set spanning millions and in some cases *billions* – of rows of data is false. Mr. Lillywhite's email claims that Amazon "finally" produced per worker productivity data on November 4. But that production was entirely consistent with our anticipated time frame. *See* R. Stewart Oct. 7 Email ("For example, we anticipate it will take at least three weeks to pull ████████████████████████████████████ at NACF facilities, after which we will need time for attorney review and production processing."). Despite your insistence that the data requests are not burdensome because your back-of-the-envelope calculations suggest the data could fit on a thumb drive or hard drive, the fact remains that you are requesting data from multiple databases, maintained by multiple business units, across five years, spanning billions of rows of data. The complexity and burden associated with querying, exporting, reviewing, and producing these data exist regardless of the total gigabytes, even assuming your estimates were correct.

In any event, Amazon has already produced a host of extensive productivity data:

- Facility-level productivity data for the OSHA-inspected fulfillment centers;
- A sample of facility-level productivity data for all NACF "Sibling Facilities" from the FCLM database;
- Facility-level productivity data from DYO1 (the inspected delivery station);
- Facility-level productivity data from DEN5 (the inspected sortation center);
- Associate-level productivity data from ALB1 (one of the inspected fulfillment centers); and
- Associate-level productivity data from DYO1 (the inspected delivery station);

Amazon is also producing this week additional data regarding the "Sibling Facilities" that you first requested just two weeks ago to aid your experts in identifying a proposed representative sample set of "Sibling Facilities." *See* J. Lillywhite Nov. 8 Email. Specifically, we have compiled a list of each NACF facility, listing for each the process paths and hours worked in each such process path (per facility), for each calendar year from 2017 to 2022 (YTD).

As discussed during our meet and confer call today, Amazon is also working diligently to address the remaining data requests you have made, notwithstanding the burden. Amazon has already collected, or is in the process of collecting, the data that you have identified as a priority. As we explained during our call, we anticipate producing the following information by mid-December, and will endeavor to deliver it to you as soon as possible if it is available before then:

- Facility-level productivity data for all NACF "Sibling Facilities" from the FCLM database;
- Remaining associate-level productivity data for the OSHA-inspected fulfillment centers;
- Associate-level productivity data for all sortation center "Sibling Facilities"; and
- Associate-level productivity data for all delivery station "Sibling Facilities."

As also discussed today, we look forward to working with you to finalize the specifications for a production of associate-level data from the NACF "sibling facilities" given the scope of that request (billions of rows of data requiring hundreds of data queries). Finally, you said during our call today that you would defer your request for "facility-level" data for sort centers and delivery stations if that data is based upon the associate-level data we are already agreeing to produce. We will therefore prioritize production of the associate-level data for those facility types, as noted above.

## Supplemental Subpoenas

As we have discussed, Amazon is working diligently to cooperate and comply with the new OSHA and SDNY subpoenas served on November 17 (with purported return dates four business days later). To ensure that the record is clear, Mr. Lillywhite first raised these new requests during our meet and confer on November 8. Mr. Lillywhite then included them in his November 8 email identifying the government's "highest priorities." These requests are for documents and data that could have been requested at the outset of this investigation—and certainly well before November given, for example, that we produced Austin data for the inspected facilities on August 19.

Nevertheless, given your representation that this is now a "highest priority" of your investigation, we have pledged to get you the information and documents you are requesting as promptly as possible. Yet, despite the "highest priority" nature of the request, the government has still not provided us with the information it promised to provide in order to enable Amazon to begin that process with respect to nationwide data pulls. Mr. Lillywhite's November 8 email promised to "identify the fields [you] need from Austin" for the data export. During our meet and confer call two days later, we agreed to identify the "potentially relevant Gensuite data fields after receiving the fields you are requesting from AUSTIN." *See* R. Stewart Nov. 14 email. More than two weeks have passed since you raised this "highest priority" request but you still have not provided us the data fields you are requesting (Mr. Lillywhite's November 21 email again promises to do so "promptly"). In fact—as conceded in Mr. Lillywhite's November 21 email—you issued the subpoenas on November 17 with intentionally overbroad requests for all "information" regarding injuries from those two systems rather than the specific data fields that you actually want. As you know, your request as written calls for the production of what is likely to number in the tens of millions of documents.

In Mr. Lillywhite's email from 4:55 pm this afternoon it appears that you might be requesting all data fields that have previously been provided from Austin. We will confer with you shortly regarding this request (after the holiday).

## Venue

As noted above, we continue to believe that motion practice is unnecessary and that the parties can work out a reasonable schedule for priority requests within the near term. In the event that you decide to file a motion, however, you have requested Amazon's position with respect to venue. On November 14 and November 22 we asked that you identify the subpoenas (or requests therein) that the government would be seeking to enforce so that we can confer with you on venue. Mr. Lillywhite provided a response at 3:45 pm ET today.

We have one point of clarification we would like to confirm from Mr. Lillywhite's email. The email states that the government "believe[s] filing a single motion to enforce before a single judge would be in the interests of judicial efficiency." However this efficiency could be achieved by consolidation in either the Western District of Washington or the Southern District of New York. Is the government refusing to agree to consolidation of

the potential motions unless Amazon consents to consolidate in the Southern District of New York?

We will take this back, confer with our client, and will respond promptly.

Best,

Ryan

**Ryan Stewart**


## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3523 • Cell + 1 202.604.0176 • Fax +1 202.467.0539
RStewart@gibsondunn.com • www.gibsondunn.com

---

**From:** Lillywhite, Jacob (USANYS) <Jacob.Lillywhite@usdoj.gov>
**Sent:** Wednesday, November 23, 2022 3:44 PM
**To:** Stewart, Ryan C. <RStewart@gibsondunn.com>; Denerstein, Mylan L. <MDenerstein@gibsondunn.com>; Ahmad, Zainab <ZAhmad@gibsondunn.com>
**Cc:** Boizelle, Ashley <boizelle@amazon.com>; Schwartz, Jason C. <JSchwartz@gibsondunn.com>; Hennefeld.Daniel@dol.gov; Jaklevic.David.M@dol.gov; Kim, Elizabeth (USANYS) <Elizabeth.Kim@usdoj.gov>; Gemmill, Kevin (USANYS) [Contractor] <Kevin.Gemmill@usdoj.gov>; jeffrey.oestericher@usdoj.gov; Gitlin, Adam (USANYS) <Adam.Gitlin@usdoj.gov>; McArthur, Nikki <NMcArthur@gibsondunn.com>; Tarczynska, Dominika (USANYS) <Dominika.Tarczynska@usdoj.gov>
**Subject:** RE: Amazon


[WARNING: External Email]

Counsel,

If Amazon does not significantly change its position and we need to file a motion to enforce, we expect it would cover the subpoenas and requests we have been focused on:

a.    the six largely identical subpoenas OSHA served on August 2, the subpoena SDNY served on August 19, and the subpoenas OSHA and SDNY served on November 17, with respect to the outstanding high priority items identified in my email of November 8:

- the five document-related items,

- the four data-related items (produced either with unique employee identifiers common across these datasets or a crosswalk),

- responsive ESI for the identified corporate custodians, and

- a written proffer responding to our question under Topic C; and

b.  the SDNY and OSHA subpoenas seeking the depositions of corporate-level employees, served on October 11 and November 2.

As we have said, given that the OSHA and SDNY subpoenas are almost entirely coextensive on these points (excepting the 30(b)(6) topic), we believe filing a single motion to enforce before a single judge would be in the interests of judicial efficiency.  Please advise if Amazon consents to SDNY as the venue for a motion to enforce these subpoenas.

Please note, with respect to the unscheduled non-corporate OSHA ad testificandum subpoenas, absent Amazon's prompt commitment to dates in December the government will move to enforce those subpoenas in the relevant local districts.

We look forward to receiving Amazon's response to our prior email later today.

Best,

Jake

Jacob Lillywhite
Assistant United States Attorney
Southern District of New York
86 Chambers Street, Third Floor
New York, New York 10007
(212) 637-2639

---

**From:** Stewart, Ryan C. <RStewart@gibsondunn.com>
**Sent:** Tuesday, November 22, 2022 4:35 PM
**To:** Lillywhite, Jacob (USANYS) <JLillywhite@usa.doj.gov>; Denerstein, Mylan L. <MDenerstein@gibsondunn.com>; Ahmad, Zainab <ZAhmad@gibsondunn.com>
**Cc:** Boizelle, Ashley <boizelle@amazon.com>; Schwartz, Jason C. <JSchwartz@gibsondunn.com>; Hennefeld.Daniel@dol.gov; Jaklevic.David.M@dol.gov; Kim, Elizabeth (USANYS) <EKim3@usa.doj.gov>; Gemmill, Kevin (USANYS) [Contractor] <KGemmill@usa.doj.gov>; Oestericher, Jeffrey (USANYS) <JOestericher@usa.doj.gov>; Gitlin, Adam (USANYS) <AGitlin@usa.doj.gov>; McArthur, Nikki <NMcArthur@gibsondunn.com>; Tarczynska, Dominika (USANYS) <DTarczynska@usa.doj.gov>
**Subject:** [EXTERNAL] RE: Amazon

Jake:  Confirming receipt of your email from last night below.  We are endeavoring to get back to you with substantive responses to your requests tomorrow before the Thanksgiving holiday on Thursday, per your email.

In the meantime, your email asks for Amazon's position on venue for potential motions to enforce.  As we stated on November 14, when you last raised the prospect of an enforcement motion, "[s]hould you insist on filing a motion" we need "to know which of

the various OSHA subpoenas and FIRREA subpoenas [or requests therein] you anticipate moving to enforce" in order to meet and confer with you regarding appropriate venue. To date Amazon has been served with more than 40 subpoenas.  Please confirm and we will get back to you promptly.

We look forward to speaking with you regarding centrally stored productivity data tomorrow morning.  As we will discuss during that call, we will be following up with additional productions shortly.

Best,
Ryan


**Ryan Stewart**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3523 • Cell + 1 202.604.0176 • Fax +1 202.467.0539
RStewart@gibsondunn.com • www.gibsondunn.com

---

**From:** Lillywhite, Jacob (USANYS) <Jacob.Lillywhite@usdoj.gov>
**Sent:** Monday, November 21, 2022 8:47 PM
**To:** Stewart, Ryan C. <RStewart@gibsondunn.com>; Denerstein, Mylan L. <MDenerstein@gibsondunn.com>; Ahmad, Zainab <ZAhmad@gibsondunn.com>
**Cc:** Boizelle, Ashley <boizelle@amazon.com>; Schwartz, Jason C. <JSchwartz@gibsondunn.com>; Hennefeld.Daniel@dol.gov; Jaklevic.David.M@dol.gov; Kim, Elizabeth (USANYS) <Elizabeth.Kim@usdoj.gov>; Gemmill, Kevin (USANYS) [Contractor] <Kevin.Gemmill@usdoj.gov>; jeffrey.oestericher@usdoj.gov; Gitlin, Adam (USANYS) <Adam.Gitlin@usdoj.gov>; McArthur, Nikki <NMcArthur@gibsondunn.com>; Tarczynska, Dominika (USANYS) <Dominika.Tarczynska@usdoj.gov>
**Subject:** RE: Amazon

[WARNING: External Email]

Counsel,

We write in response to Mr. Stewart's email of November 18.  Given where we are, please respond to us by no later than November 23 regarding Amazon's position as to venue for a motion to compel.  Absent significant change in Amazon's position, we may be forced to file a motion to enforce compliance with OSHA's subpoenas in the SDNY and a motion to enforce compliance with SDNY's FIRREA subpoenas in the WDWA or, with Amazon's consent, consolidate the motions and file

both in SDNY.  We renew our request for Amazon's consent, as we believe a consolidated motion before a single judge is in the interests of judicial efficiency.

In an effort to avoid wasting time and attention on irrelevancies, we have tried to overlook in the past what we believed to be numerous inaccurate statements or mischaracterizations in your correspondence.  However, we feel we must correct the record with respect to a number of statements in your November 18  email.  We do so below.

While pledging cooperation, Amazon has been producing documents at an extremely slow rate, failing to provide transparency with respect to delays in production or the resources being allocated to the effort, and, more recently, offering tradeoffs that are not acceptable in a matter of this importance and time sensitivity.  For months we have told you that, in light of the United States' concerns about the safety of hundreds of thousands of Amazon workers around the country, we needed Amazon to mobilize significant resources to respond to OSHA's and SDNY's subpoenas. OSHA's subpoenas and SDNY's request were issued on August 2; three and a half months later, Amazon has produced only a few thousand documents—many of them duplicates produced once for each of the six inspected warehouses—in addition to a flawed production of injury records in which documents related to a single injury were not produced consecutively.  For many important requests, Amazon has produced just a handful of documents.  Amazon has missed production deadlines to which it had committed, without advising the government that a deadline would be missed.  Far from reflecting cooperation with the government's investigations and a mobilization of the resources commensurate with the needs of this important, time-sensitive matter, Amazon's glacial pace of production suggests a desire to run out the clock on OSHA's six-month statute of limitations.

**ESI Review and Corporate Depositions**

After failing for months to identify its corporate executives with responsibility for health and safety in its warehouses, Amazon produced a proffer on September 23 that identified those executives, though it failed accurately to convey their responsibilities.  Five days later, on 9/28, based on that inadequate proffer, the United States proposed ESI custodians and search terms.  It took Amazon until 10/28—a full month later—to produce a hit report.  Three days later, on 10/31, we asked you to begin the ESI review for an initial group of four deponents ███████████████████████████ ██████ ), each of whom had a modest number of hits to be reviewed, so that we could depose them in late November and early December.  Until your email below, you refused to review documents batched by custodian (as is necessary due to the time exigencies); though you have now agreed to do that, you tell us it is "unlikely" you will produce even these four initial deponents in December. That is unacceptable given the governing statute of limitations and the important role that these witnesses play with regard to worker safety at Amazon facilities.

Your suggestion that Amazon's corporate employees responsible for health and safety in its warehouses are not witnesses of interest to OSHA and are merely being "shoehorned" into OSHA's investigation is absurd and unproductive.  As is your assertion that OSHA's subpoenas for these witnesses came shortly after you advised us that you would be prioritizing OSHA's requests over

SDNY's; you advised us of that many months ago.  (*See, e.g.*, 9/21/22 Ahmad Ltr. ("[A]s noted below and in our prior correspondence, we have prioritized the production of documents responsive to the OSHA subpoenas over those responsive to the FIRREA subpoena . . . .").)

More fundamentally, your proposed rate of review—3,000 to 5,000 documents per week, unless the government drops all other requests and unscheduled administrative statements—demonstrates that insufficient resources are being committed to document review.  Big firms representing well-resourced clients in large and important matters routinely review documents at a pace many times that.  Amazon is represented here by Gibson Dunn, one of the country's largest law firms, as well as multiple law firms specializing in labor law.  Given the urgency, size, and importance of this matter, as well as the outside resources available to Amazon and to its counsel, Amazon's refusal to review documents more quickly is also unacceptable.

You write that we have conceded that the ESI for our first four deponents is "admittedly 'voluminous.'"  That is false.  As we told you, we selected these four deponents in large part because the number of ESI hits was so small—fewer than 3,000 documents for ███████, fewer than 4,000 documents for each of ██████ and ██████, and fewer than 5,000 documents for ██ ███  You appear to be quoting from my email below, in which I referred to the protocol for searching "voluminous" ESI.  As you well know, the "voluminous" ESI referenced there is not the number of ESI hits—it's the total number of emails the searches were run against.


**The Government's Priorities**

-
The government's priorities in this case have been clear from the start: for Amazon promptly to respond to the 90 OSHA document requests and 30 SDNY document requests—many of which are coextensive—and to present key witnesses for administrative statements or depositions in a timely fashion.  As Amazon has been unable to produce responsive documents and information month after month, the government has narrowed its priorities in the hopes of extracting information critical to its investigations.  Six weeks after serving these requests, in mid-September, the government proposed a schedule for production covering about half of its initial requests.  The government continued to narrow its requests until, on November 8, we identified a handful of our highest outstanding priorities: five document requests, four exports from centrally-stored datasets, ESI and corporate depositions (in addition to OSHA's remaining administrative statements), and limited follow-up on two 30(b)(6) topics.  Far from "constantly changing and often conflicting priorities," the government has continued to lower its expectations; they cannot be lowered any further without damaging OSHA's and SDNY's investigations.

You write that we have "conceded that Amazon cannot comply with all of []our demands at the same time."  That is untrue.  We recognized that our initial demands would require a very significant effort to complete in the time available.  We have long since narrowed those demands to the point where it is unreasonable for Amazon to refuse to devote the resources necessary to comply, including bringing on additional assistance as necessary.

**Defending OSHA Administrative Statements**

Nearly three months after serving OSHA's and SDNY's document requests, DOL took its first administrative statement since the inspections on October 26.  DOL has now taken a dozen administrative statements from a number of low- or mid-level health and safety employees.  These administrative statements are routine in OSHA matters and were handled by Amazon's labor counsel during the inspections.  Were these matters adequately staffed, prepping witnesses without any documents and appearing to defend their administrative statements would not fully occupy the time of Amazon's outside counsel.  However, you advise us that you are missing production deadlines because of these statements; that you are unavailable to meet and confer because all relevant attorneys are defending these statements; and that you will be unable to meet even the government's handful of highest priorities unless the few statements still be to be scheduled are abandoned.  If this is true, it is because Amazon and its counsel are not devoting adequate resources to this matter.  Defending 12 administrative statements over several weeks should not exhaust the resources of Amazon, Gibson Dunn, and the multiple labor firms that have appeared for Amazon in this matter, particularly with respect to document review.

Below, you claim that I told you that "DOL is reconsidering what is important to its investigation" with respect to these statements.  That is incorrect.  I said that, if it would significantly speed the production of the government's highest priority items, DOL might be willing to be flexible as to some of those statements.  The issue isn't DOL "reconsidering" anything; the issue is that Amazon has failed to produce responsive documents and information for months, leaving us with less than 60 days before OSHA's six-month statute of limitations runs.  Moreover, you rejected that offer, stating that the work had already been done to prep those witnesses and it would not be helpful to push or cut already scheduled statements.

**Centrally-Stored Data**

For more than three and a half months, we have pressed Amazon to produce centrally-stored data.  Despite committing many months ago to producing this data nationwide, Amazon has not yet produced much of this data for all six warehouses that were inspected, let alone the nationwide datasets.  On November 4, you finally produced a sample of per-worker productivity data (data from a single year for two of the inspected sites).  You repeatedly told us that it would be extremely technically difficult to produce the full datasets because the data was so voluminous.  As we advised you on November 11, the sample data suggests that this is not so—the full datasets should fit on a USB flash drive.  We asked for an update at that time and repeated our offer—one we have made for months—to have our data experts speak with yours to discuss how we can overcome any obstacles to production.

We have not received an update on this or any of the other three high priority centrally-stored data requests.  On Thursday, we asked for a call.  We were told the key attorney was defending an administrative statement on Friday.  When we offered to speak early or late Friday or over the weekend, our offer was ignored.  We asked for an email update; that has not come.  You advised late Friday night that the earliest you can speak about the data is this Wednesday.  We need this

data produced promptly; waiting 12 days just to get a response to our email on November 11 is unacceptable.  We are available to speak with you at 10:30 am on Wednesday, and we hope you can commit to near-term production dates for this data.

**Supplemental Subpoenas**

OSHA and SDNY issued very limited supplemental subpoenas setting out five requests—at least two of which are covered by our previous requests, and all of which were discussed with you in advance. As we told you, we set a very near-term date for production not because we are insisting that all responsive documents be produced by that date, but because we did not want to delay the production of any items that could be produced at that point.  Likewise, the request for Austin/Gensuite data is not limited to particular fields because (a) you have not yet produced any Gensuite data, so we do not what the relevant fields are; and (b) we wanted to avoid having to issue another subpoena if there is a need for additional fields from either dataset.  We will promptly share with you the fields we want exported from Austin.

*        *        *

Please respond by Wednesday with respect to venue for a motion to enforce.  To avoid potential motion practice, we would need to see a significant change in Amazon's position: e.g., agreeing to produce responsive ESI for the four initial corporate deponents by December 6 (a compromise date) and committing to do whatever it can to produce these employees for depositions the week of December 12 (or shortly thereafter) and promptly confirming dates; committing to provide December dates for the OSHA administrative statements for MDW8 and BOI2; committing to a near-term date for the production of nationwide per-worker productivity data; and committing to a date for a written proffer in response to the critical, outstanding question under Topic C (identify any analysis or other consideration of safety when setting productivity rates, expectations, or goals).

Sincerely,

Jake

Jacob Lillywhite
Assistant United States Attorney
Southern District of New York
86 Chambers Street, Third Floor
New York, New York 10007
(212) 637-2639

**From:** Stewart, Ryan C. <RStewart@gibsondunn.com>
**Sent:** Friday, November 18, 2022 11:30 PM
**To:** Lillywhite, Jacob (USANYS) <JLillywhite@usa.doj.gov>; Denerstein, Mylan L. <MDenerstein@gibsondunn.com>; Ahmad, Zainab <ZAhmad@gibsondunn.com>
**Cc:** Boizelle, Ashley <boizelle@amazon.com>; Schwartz, Jason C. <JSchwartz@gibsondunn.com>;

Hennefeld.Daniel@dol.gov; Jaklevic.David.M@dol.gov; Kim, Elizabeth (USANYS)
<EKim3@usa.doj.gov>; Gemmill, Kevin (USANYS) [Contractor] <KGemmill@usa.doj.gov>;
Oestericher, Jeffrey (USANYS) <JOestericher@usa.doj.gov>; Gitlin, Adam (USANYS)
<AGitlin@usa.doj.gov>; McArthur, Nikki <NMcArthur@gibsondunn.com>; Tarczynska, Dominika
(USANYS) <DTarczynska@usa.doj.gov>
**Subject:** [EXTERNAL] RE: Amazon - search terms

Counsel:

We write in response to Mr. Lillywhite's November 17 email below and to memorialize
our meet and confer regarding proposed search terms yesterday.

As noted below, Amazon remains committed to engaging with both OSHA and SDNY in
good faith to work out a reasonable schedule for your various requests, including the
prioritization of certain requests in the near term.  Please note, however, that the
government's constantly changing and often conflicting priorities, confused and
apparently uncoordinated communications from multiple contacts at OSHA, SOL, and
SDNY, unreasonable deadlines and demands (including a barrage of requests and
subpoenas, including new subpoenas just yesterday with purported return dates in four
business days), and threats of premature and unwarranted motions to enforce are
counterproductive.  You have conceded that Amazon cannot comply with all of your
demands at the same time, but you have refused to agree to any reasonable
prioritization, even when—as you requested—we took the time to present detailed
options from which you could select your preferred course.  To be clear, we are not
refusing to produce documents, information, or witnesses.  To the contrary, we have
gone great lengths to provide documents, information, and witnesses in response to
your constantly shifting demands.  We simply ask for a more organized, reasonable, and
collaborative approach from the government.

### ESI/Depositions

*ESI Search Terms*.  As demonstrated by our prior correspondence, Amazon has worked
expeditiously with SDNY to significantly narrow SDNY's initial overbroad proposed search
terms, which returned over 330,000 unique hits (over 510,000 family documents).  We
understand from our meet and confer yesterday that—subject to the three search term
revisions noted in Mr. Lillywhite's November 17 email—SDNY considers the search terms
sufficiently narrowed (except that SDNY is open to further narrowing of ESI review for
███████████████████████ at a later date, including with potential further search
term revisions that Ms. Tarczynska referenced during yesterday's call).  We are running
an updated hit report with these final terms, but expect the final hit count to be at least
110,000 unique documents (220,000 with families).

*ESI Review & Depositions.*  As we have stated, our strong recommendation and
preference is to come to agreement on appropriate search terms on a comprehensive
basis before beginning to review ESI based on those search terms.  This is the most
efficient way to proceed and is consistent with well-accepted best practice.  However, as
you requested, we will agree to start our ESI review now based on the current iteration
of search terms in the email below.  Documents hitting on these terms will be processed
in our review platform by Monday and our team will begin ESI review next week.

Further, and again notwithstanding the fact that it is inefficient and inconsistent with
well-accepted best practice, we will comply with your request that we conduct our ESI
review on a custodian-by-custodian basis, starting with ████████████████████
█████████████████████  This approach will allow us to complete their ESI review first

and prepare and present them for deposition first as you requested.  (As we have explained, we believe that your requested custodian-by-custodian approach will significantly slow the overall pace of review and completion of ESI production across the full universe of custodians.)

However—in light of other ongoing workstreams that you have identified as priorities—including 5 OSHA depositions scheduled over the next 3 weeks, 6 unscheduled OSHA depositions, and manual collection and production of ESI in response to OSHA and SDNY's priority document requests (none of which you agreed to table in response to our November 16 email—we cannot commit (on 24 hours' notice), to reviewing and producing all of these four custodians' admittedly "voluminous ESI" (over 25,000 documents, inclusive of families) in the next fourteen days, which includes Thanksgiving. Nor can we definitively commit to then offering all four of those custodians for deposition the very next week, as you request below.

That said, as noted above, we are agreeing with your request to move forward promptly with ESI review for these custodians and are not opposed to prioritizing their depositions, subject to completion of ESI review, witness availability, and a consensus regarding an appropriate and reasonable scope of depositions and other investigative demands.  Assuming we can table non-ESI collection and the unscheduled OSHA depositions, we anticipate substantial completion of ESI review for these four initial custodians on or around December 9.  Alternatively, if we proceed at our current pace with non-ESI collection and review and continue scheduling OSHA depositions, we anticipate completion of ESI for these custodians on or around December 30.  In either case, it is unlikely we would be able to provide all four of these witnesses for depositions in December.

Mr. Lillywhite's email yesterday criticized the estimated proposed pace of our ESI review.  As an initial matter, during our meet and confer call on November 10, you asked us about our estimated pace of ESI review and we previewed the same estimated numbers (5,000 documents per week "if we're staying on the same schedule for manual review" and 10,000 documents per week "if we take all of that away") at that time.  You responded that you would think about those tradeoffs and did not raise any concerns with those estimates until Mr. Lillywhite's November 17 email, claiming this issue was now "must urgent[]."

The cases cited in Mr. Lillywhite's email are inapposite, for many of the same reasons we have explained before.  In the *Fort Worth* case, JP Morgan apparently agreed to review 875,000 ESI hits.  But that large volume of ESI was to be reviewed "over the course of discovery in th[e] litigation," which was scheduled to last one year.  297 F.R.D. 99, 114 (S.D.N.Y. 2013).   Likewise, Omnicare apparently agreed to review 24,000 ESI documents per week in *U.S. ex rel. Basson v. Omnicare*, 15 Civ. 4179, ECF No. 134-2.  But that pace of review did *not* include second level review or privilege review, much less production. *Id.*  Nor was Omnicare required to conduct that ESI review simultaneously with depositions.  In fact, in the *four year* time period of that investigation, Omnicare was only asked to present ten witnesses for testimony.  *Id.*  Here, Amazon has already presented 10 witnesses for sworn testimony to OSHA over the past three weeks, and 6 more OSHA depositions are scheduled over the next two weeks.  And your November 17 email contemplates Amazon will present another 6 witnesses for depositions with OSHA (including two comprehensive Rule 30(b)(6) depositions, likely requiring multiple designees each who must be prepared as corporate representatives) and at least 4 witnesses for jointly noticed depositions with OSHA and SDNY, all simultaneous with ESI review in December.  That is not reasonable or feasible.

To be clear, Amazon is not refusing to complete review of the ESI hits in the proposed

search terms (more than 220,000 documents) or refusing to redirect more resources to doing so.  In fact, we have agreed to proceed as you wish.  But, and as we have repeatedly asked over the past several weeks during our meet and confers and in writing, we need better coordination between SDNY and OSHA and better communication as to which requests are a priority for completion in the December time frame you are demanding.  Indeed, notwithstanding your commitment to coordinate requests and to centralize them through three government representatives (Messrs. Lillywhite, Hennefeld, and Jaklevic), this week we continued to receive demands for documents "by the end of the week" and for deposition dates from another Department of Labor attorney, apparently uncoordinated with your stated priorities.

Completing all of OSHA's and SDNY's various outstanding requests—manual non-ESI collection and production of hundreds of "priority" document requests, 4 OSHA fact depositions, 2 OSHA Rule 30(b)(6) depositions, the new highest priority items outlined in Mr. Lillywhite's November 8 email, ESI review of over 220,000 documents, 5 jointly noticed depositions, and 5 SDNY depositions—in that time frame is not reasonable.  We asked that you prioritize both agencies' highest priority requests, which we believed SDNY provided to us last week.  In response, SDNY has told us several times that there is an understanding that the volume of requests (and their shifting nature) will require some tradeoffs on your part so that we can focus on these latest high priority items.  For example, during our November 8 meet and confer, Mr. Lillywhite stated SDNY and OSHA would "go back" and discuss priorities and that he understood "DOL is reconsidering what is important" to its investigation with respect to its host of noticed depositions.  And during our November 10 meet and confer, Mr. Lillywhite stated that the "only other thing [the government] is expecting is going to happen [other than the "highest priority" requests] is those scheduled [OSHA] depositions" and, again, said that if we needed some of those scheduled depositions to be taken "off the books" to accomplish the priority requests that it would be considered.  But Mr. Lillywhite's email yesterday strongly implies otherwise – that you expect Amazon must commit to completing **all** of these requests by early January and that failure to adhere to these unreasonable demands will somehow "critically harm[]" OSHA's and SDNY's investigations.

That is not true.  SDNY's investigation is under FIRREA, a civil fraud statute with a ten year statute of limitations and without any enforcement authority related to workplace safety.  The purported, but undefined, safety exigency is therefore not relevant to SDNY's case and the "needs of the case" do not require Amazon to undertake the unreasonable schedule demanded.

To the extent OSHA believes it needs certain additional information within its six-month limitations period, Amazon has already provided significantly more documents, data, information, and witnesses than is typical for an OSHA investigation.  Indeed, OSHA attorneys taking some of these ongoing depositions have stated they already know the answers to the questions they are asking.  Moreover, at least four of the unscheduled OSHA depositions (the jointly-noticed depositions of ████████████████████) are plainly an attempt to shoehorn SDNY priorities into the shorter timetable for OSHA's investigation, given that they were only noticed by OSHA on November 2, more than 3 weeks after they were noticed by SDNY and shortly after we made clear that our priority was to complete OSHA requests given the 6-month statute of limitations.

Nevertheless, as we have stated, we are open to prioritizing in this time frame whatever else OSHA might reasonably need.

We remain committed to cooperating in your respective investigations, within reason, and to engaging with you in good faith to work out a reasonable schedule and prioritization for all of the various demands.

*Mr. Bezos and Mr. Jassy ESI.*  Amazon will agree to review and produce responsive documents from the ESI of Mr. Bezos and Mr. Jassy.  We will provide hit reports based on the current version of the search terms once available and anticipate negotiating an appropriate scope of review specific to these two custodians.  We understand from your prior representations that other custodial ESI is your priority.

**Centrally Stored Productivity Data**.  As we explained during our call yesterday, we cannot have a call today related to productivity data because one of our team members key to this area is defending an OSHA deposition today (and was yesterday as well).  Per your request for small group meet and confers, our team members focused on productivity data can be available for an update call on Wednesday from 10:30-11:30 ET.  Let us know if that time works for you.

**Supplemental Subpoenas**.

*Service and Formal, Written Objections.*  We received the new OSHA subpoena regarding DYO1 and the new FIRREA subpoena via email yesterday.  We accept service via email, reserving all rights and objections.  These subpoenas include a return date of November 23, four business days after receipt.  This is patently unreasonable.

During our call yesterday both OSHA and SDNY agreed to extend the date for Amazon's written responses and objections, with a specific date to be confirmed via email.  Please confirm that December 19 is sufficient for written objections.  We assume you would prefer us to be devoting our time to locating and producing responsive documents.  As discussed, we understand these are "highest priority" requests and—as you know, based on the fact that we have already provided information requested about the "LIDAR database" and are providing data responsive to OSHA Request No. 91 and SDNY Request No. 35 today—the pending formal objections will not prevent us from producing responsive material.

*OSHA Request No. 87 and SDNY Request No. 31.*  You previously represented that you would seek an export of "data" and would "identify the fields [you] need from Austin" so that we could identify corresponding data fields in Gensuite.  J. Lillywhite Nov. 8 email; *see also* R. Stewart Nov. 14 email memorializing Nov. 10 meet and confer.  Contrary to those representations, the subpoenas broadly seek any "information stored in Austin or Gensuite concerning" any injury at any of Amazon's 900+ facilities over the past five years.  As written this would include not just data but also any and all incident report document files (which, as you know, are voluminous).  Please confirm the scope of this request so that we can proceed accordingly.

**Communication**.  Thank you for confirming you agree to proceed with a weekly standing call (with topics circulated by you sufficiently in advance), as we proposed on November 7.  We understand your preference is to hold the calls on Tuesdays; we suggest 3:30-4:30 pm ET.  As discussed, we ask that you provide any agenda items and questions you have sufficiently in advance for us to prepare responses and hold a productive conversation.

We have no categorical objection to smaller group meet and confer conversations related to specific items where meeting outside of a weekly standing call would be helpful, subject to an understanding that we need sufficient advance notice of the agenda/questions you have for any conversations to be productive.

**High Priority Requests**

*Ergonomic Assessments By Contractors*.  We are looking into your request related to any ergonomic assessments performed by the British Standards Institution "several years ago."  To ensure the record is clear, your email refers to OSHA Request Nos. 64 and 67,

but Amazon did not agree to produce third-party contractor documents in response to either of those requests. In response to OSHA Request No. 68, Amazon agreed to produce "executed contracts or agreements with any external expert or consultant . . . who received information from Amazon concerning the manner in which Workers work in one of the six OSHA-inspected facilities" dating back one year. Z. Ahmad Sept. 21, 2022 Ltr. at 9, 23. In response to SDNY Request Nos. 11 and 12, Amazon agreed to produce contracts and non-privileged studies or analysis "conducted at a national level since August 1, 2017, for the purpose of assessing whether associate pace of work posed a risk to associate health and safety." Sept. 19, 2022 Responses and Objections.

That said, we will promptly look into your specific request regarding British Standards Institution and will produce non-privileged documents responsive to the SDNY Requests (subject to our objections) back to August 1, 2012, located after a reasonably diligent search.

*Ergonomic assessments form the other eight sites.* We have already produced hundreds of responsive documents from 5 of the 8 additional facilities. We anticipate substantially completing our production of these documents by mid-December.

*Documents or information concerning or reflecting injury or medical goals; documents sufficient to show related incentives.* We have been looking into these requests promptly since receiving them on November 8 and discussing them with you on November 10. The information requested will vary by business unit, which requires multiple different custodial interviews across multiple different business units. We are working to provide you an update as soon as possible.

*OSHA 61.* As previously stated, we are working to produce any non-privileged responsive documents (separate from ESI) located after a reasonably diligent search by the week of November 28.

*SDNY 4.* As we stated last week when we received this request, we anticipated it would take two weeks to complete. We expect to receive the information next week and will provide it promptly after review.

*Return to Work Tool.* We are in receipt of your new questions related to the Return to Work tool and will get back to you shortly with this information.

*Topic C proffer re safety.* We are working on this and will follow up with a proposed timeline for a proffer in December.

*Crosswalk for Employee IDs.* We will provide the requested information today.

\* \* \*

We look forward to your confirmation regarding the timing of a weekly Tuesday call and look forward to what we hope will be productive dialogue. Thank you.

Ryan

**Ryan Stewart**

GIBSON DUNN

Gibson, Dunn & Crutcher LLP

1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3523 • Cell + 1 202.604.0176 • Fax +1 202.467.0539
RStewart@gibsondunn.com • www.gibsondunn.com

---

**From:** Lillywhite, Jacob (USANYS) <Jacob.Lillywhite@usdoj.gov>
**Sent:** Thursday, November 17, 2022 3:14 PM
**To:** Stewart, Ryan C. <RStewart@gibsondunn.com>; Denerstein, Mylan L.
<MDenerstein@gibsondunn.com>; Ahmad, Zainab <ZAhmad@gibsondunn.com>
**Cc:** Boizelle, Ashley <boizelle@amazon.com>; Schwartz, Jason C. <JSchwartz@gibsondunn.com>;
Hennefeld.Daniel@dol.gov; Jaklevic.David.M@dol.gov; Kim, Elizabeth (USANYS)
<Elizabeth.Kim@usdoj.gov>; Gemmill, Kevin (USANYS) [Contractor] <Kevin.Gemmill@usdoj.gov>;
jeffrey.oestericher@usdoj.gov; Gitlin, Adam (USANYS) <Adam.Gitlin@usdoj.gov>; McArthur, Nikki
<NMcArthur@gibsondunn.com>; Tarczynska, Dominika (USANYS)
<Dominika.Tarczynska@usdoj.gov>
**Subject:** RE: Amazon - search terms

   **[WARNING: External Email]**

Counsel,

We write to address, most urgently, ESI and depositions, as well as some additional high priority
items.

**ESI/Depositions**

Thank you for responding to our request to speak; we will circulate an invite for 5 pm.  We are
concerned that we are not close to reaching an agreement that will (a) allow us to conduct the first
four corporate depositions we've identified in early December, with the remainder later in
December or early January; and (b) ensure that responsive documents are reviewed and produced in
advance of those depositions, with all such documents produced by January 6.

We are now one week from Thanksgiving.  By **tomorrow**, we need to determine if we can reach
agreement at least with respect to the four initial corporate deponents.  We need you to commit to
review and produce responsive emails and other voluminous ESI for these four deponents by
December 2 and to make them available for depositions the week of December 5.  (If there is an
unmovable conflict for any of these witnesses, please advise us promptly and provide the soonest
available date.)  And before Thanksgiving, we need to reach agreement—or determine that we can't
—with respect to the remaining custodians and deponents, as well as the MDW8 and BOI2
administrative statements that have not yet been scheduled.  We simply cannot wait any longer
without critically harming DOL's and SDNY's investigations.

The biggest issue appears to be the pace of review.  The pace you proposed—3,000 to 5,000
documents per week unless you drop everything else, and 8,000 to 10,000 documents if you do—is
not proportional to the needs of this case, the number of attorneys across multiple firms working on
this matter, and the resources available to your client.  When representing large corporate clients in
large, important matters, firms of your size are able to review documents far more quickly.  *See, e.g.,*

*U.S. ex rel. Basson v. Omnicare*, 15 Civ. 4179 (CM)(VF), ECF No. 134-2 ¶ 9 (noting commitment to review 450,000 documents between Sept. 12, 2022, and Jan. 20, 2023, a rate of approximately 24,000 emails per week).  This is particularly true when a firm uses technology-assisted review, as you've said you do.   Indeed, in the *Fort Worth* case you've cited twice, JPMorgan committed to reviewing 875,000 ESI hits and offered to conduct a second search protocol in parallel—and that was nine years ago, when technology-assisted review was far less advanced.  *Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 103-04 (S.D.N.Y. 2013).  And here, as we've discussed at length, the need for expedition is particularly great, given our concerns about the safety of hundreds of thousands of workers and OSHA's six-month statute of limitations.

We are now down to about 110,000 documents.  We expect many of these are duplicates with different metadata (e.g., multiple recipients of an email), and so the true number of unique documents should be many times smaller; tools that consolidate multiple documents reflecting a single email thread should further reduce this number.  These documents should be reviewable in the next seven weeks, assuming time off for the intervening holidays.

We also need to circle back on ESI for Mr. Bezos and Mr. Jassy.  You have not cited any authority that supports treating the review and production of the ESI of "apex executives" differently from any other custodian; we do not believe it is necessary or appropriate to do so here.  *Fort Worth*, the only case you've cited, holds that custodians are properly included if including them would be "reasonably calculated to lead to relevant evidence that might not be captured if they were excluded."  297 F.R.D. at 106.  *Fort Worth* does not suggest that senior executives should be treated any differently from any other custodian.  Here, you do not dispute that Mr. Bezos and Mr. Jassy have both made statements about injury rates in Amazon warehouses.  We have no reason to believe that their only communications on that topic were with other agreed-upon custodians— none of whom report directly to Mr. Bezos or Mr. Jassy.  Please promptly run our search terms against the ESI of these two custodians and share hit reports; if you are right, there should be few unique documents added.

Finally, see below with respect to the narrowing of search terms you proposed:

1. Rather than deleting the term "rate*" entirely, please exclude the documents flagged because they contain the term "injury rate" (i.e., use a "NOT" operator).
2. We are OK removing "transfer*" from the second search string in your email
3. We are OK removing "restrict" and "transfer" from the third search string in your email.

Below are some specific comments, notes, and questions on other high priority items.

**Centrally Stored Priority Data.**  Can we please have a brief call tomorrow with the relevant members of your team to get an update on this?

**Supplemental Subpoenas.**  We've attached a supplemental OSHA subpoena covering the four priority requests we previously discussed; we expect to send along a supplemental FIRREA subpoena with the same requests shortly.  We note that two of these requests were covered by prior subpoenas (OSHA Request Nos. 10, 13, 14, 26, 27, 42, 53, 55, and 57 and SDNY Request Nos. 3 and 15).

**Centralizing DOL/SDNY Requests.**  At your request, going forward new requests (if any) will be centralized and come from Dan, Dave, or the SDNY team.  Again, to the extent additional requests are made, if they would impact your ability to respond to our highest priority requests, please let us know.

**Communication.**  We would be happy to have a standing weekly call, with topics circulated in advance.  We propose Tuesday afternoon, if there's an hour that works for you.  We're hoping we can also begin having direct conversations among smaller groups to quickly make progress on high priority items rather than waiting a week for the scheduled call, as we've requested above.

<u>**High Priority Requests**</u>

      **National ergonomic assessments.**  In response to SDNY Request Nos. 11 and 12, you have advised that you are not aware of (a) any contractor retained at the national or regional level that performed work connected to potential safety risks created by the pace of work or (b) any documents reflecting analyses at the facility level by or for Amazon concerning whether some pace of work poses a safety risk with respect to any process path.  (See 9/21 Ltr. 29-30; 10/7 FIRREA Production Cover Ltr. 1-2.)  We have recently learned that several years ago Amazon retained the British Standards Institution to conduct a nationwide ergonomics assessment that included review of the pace of work, that this assessment was completed after studying Amazon warehouses around the country, and that the results of such assessment are available to safety managers.  Can you please promptly produce responsive documents related to this retention and assessment, which are responsive to OSHA Request Nos. 64 and 67 and SDNY Request Nos. 11 and 12?  We are surprised this did not come to light in your diligence to date and want to understand why it didn't.  We also want to be sure you promptly identify and produce responsive documents related to any other such contractors and any other nationwide safety assessments that relate to pace of work; please advise when we can expect such material.

      **Ergonomic assessments from the other eight sites.** Can you advise when in December we can expect the assessments from the eight additional sites?

      **Documents or information concerning or reflecting Injury or Medical Goals; documents sufficient to show related incentives.**  Can you please let us know what responsive documents or information you are finding?  (Is there centrally stored data on this?)  And can you please advise when we will receive it?

      **OSHA 61.**  Can you please provide an update on this?  Have you identified any responsive documents?  If not, can you confirm you have spoken with the present and former VPs of Worldwide Workplace Health & Safety over the Relevant Period and reviewed their files (excluding email)?  We would be surprised if there aren't responsive documents.

      **SDNY 4.**  Can you provide an update on when we can expect the information discussed, which will identify formers and provide their contact information?

**Return to Work Tool.**  Thank you for clarifying ████████ reference to the LiDAR system.  Can you advise how and when Amazon uses the Return to Work tool?  Is this the only dataset other than Austin/Gensuite that would identify when workers are working with modifications/restrictions or transferred in light of an injury or illness or related restrictions?

**Topic C proffer re safety.**  When can we expect to receive this proffer?

**Crosswalk for employee IDs.**  When we spoke last Thursday, you said would be providing the crosswalk we requested, linking together employee names, ID numbers, employee usernames, and any other employee identifiers used in the data Amazon has or will be producing.  When can we expect that?

Thanks,

Jake

---

**From:** Stewart, Ryan C. <RStewart@gibsondunn.com>
**Sent:** Thursday, November 17, 2022 2:49 PM
**To:** Tarczynska, Dominika (USANYS) <DTarczynska@usa.doj.gov>; Ahmad, Zainab <ZAhmad@gibsondunn.com>
**Cc:** Boizelle, Ashley <boizelle@amazon.com>; Schwartz, Jason C. <JSchwartz@gibsondunn.com>; Denerstein, Mylan L. <MDenerstein@gibsondunn.com>; Hennefeld.Daniel@dol.gov; Jaklevic.David.M@dol.gov; Kim, Elizabeth (USANYS) <EKim3@usa.doj.gov>; Gemmill, Kevin (USANYS) [Contractor] <KGemmill@usa.doj.gov>; Oestericher, Jeffrey (USANYS) <JOestericher@usa.doj.gov>; Gitlin, Adam (USANYS) <AGitlin@usa.doj.gov>; McArthur, Nikki <NMcArthur@gibsondunn.com>; Lillywhite, Jacob (USANYS) <JLillywhite@usa.doj.gov>
**Subject:** [EXTERNAL] RE: Amazon - search terms

Thank you, Dominika.  We are happy to confer regarding the proposed search terms. One of our team members working on this is defending one of today's OSHA depositions.  With that in mind we could plan to discuss from 5 – 530 ET today, although we are not sure whether the deposition will be completed.  Alternatively we could discuss tomorrow from 915-10 am or 2-230 pm.

Relatedly, as noted in my email below, attached are two file type reports which show the distribution of hits by file extension type in total and for each proposed search string.

Best,
Ryan


**Ryan Stewart**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3523 • Cell + 1 202.604.0176 • Fax +1 202.467.0539
RStewart@gibsondunn.com • www.gibsondunn.com

---

**From:** Tarczynska, Dominika (USANYS) <Dominika.Tarczynska@usdoj.gov>
**Sent:** Wednesday, November 16, 2022 5:21 PM
**To:** Stewart, Ryan C. <RStewart@gibsondunn.com>; Ahmad, Zainab <ZAhmad@gibsondunn.com>
**Cc:** Boizelle, Ashley <boizelle@amazon.com>; Schwartz, Jason C. <JSchwartz@gibsondunn.com>; Denerstein, Mylan L. <MDenerstein@gibsondunn.com>; Hennefeld.Daniel@dol.gov; Jaklevic.David.M@dol.gov; Kim, Elizabeth (USANYS) <Elizabeth.Kim@usdoj.gov>; Gemmill, Kevin (USANYS) [Contractor] <Kevin.Gemmill@usdoj.gov>; jeffrey.oestericher@usdoj.gov; Gitlin, Adam (USANYS) <Adam.Gitlin@usdoj.gov>; McArthur, Nikki <NMcArthur@gibsondunn.com>; Lillywhite, Jacob (USANYS) <Jacob.Lillywhite@usdoj.gov>
**Subject:** RE: Amazon - search terms

**[WARNING: External Email]**

Ryan,

Thank you for providing this.  Could we set up a time to talk tomorrow with whatever group on your end is working on this? It would be more efficient to talk through this live. Other than 2-3pm tomorrow, we are flexible on our end.

Thanks,
Dominika

---

**From:** Stewart, Ryan C. <RStewart@gibsondunn.com>
**Sent:** Wednesday, November 16, 2022 4:59 PM
**To:** Tarczynska, Dominika (USANYS) <DTarczynska@usa.doj.gov>; Ahmad, Zainab <ZAhmad@gibsondunn.com>
**Cc:** Boizelle, Ashley <boizelle@amazon.com>; Schwartz, Jason C. <JSchwartz@gibsondunn.com>; Denerstein, Mylan L. <MDenerstein@gibsondunn.com>; Hennefeld.Daniel@dol.gov; Jaklevic.David.M@dol.gov; Kim, Elizabeth (USANYS) <EKim3@usa.doj.gov>; Gemmill, Kevin (USANYS) [Contractor] <KGemmill@usa.doj.gov>; Oestericher, Jeffrey (USANYS) <JOestericher@usa.doj.gov>; Gitlin, Adam (USANYS) <AGitlin@usa.doj.gov>; McArthur, Nikki <NMcArthur@gibsondunn.com>; Lillywhite, Jacob (USANYS) <JLillywhite@usa.doj.gov>
**Subject:** [EXTERNAL] RE: Amazon - search terms

Counsel:  We write in response to Ms. Tarczynska's email below regarding the ESI protocol and search terms, and in follow up to our meet and confer call last Thursday. We look forward to your responses and continuing to work together to move this

forward.

## A. ESI Protocol and Search Terms

Thank you for providing the proposed revision to the search string in Ms. Tarczynska's email. We have completed updated hit reports with that revision and attach them here (the SDNY Updated Terms Custodian Report and SDNY Updated Terms STR Hit Report). These terms result in 125,146 unique hits (242,000 including families).

As discussed, we have also prepared (and attach here) additional analysis of those search strings, which continue to yield a very large number of hits. Specifically, we have broken down the number of hits for the five largest-volume search strings into individual terms by connectors (the High Volume Breakdown Report). For example, a search string of (A or B) w/15 (C or D) is broken down separately into the number of hits for A w/15 C, A w/15 D, B w/15 C, and B w/15 D. This should assist in further narrowing the number of hits by helping to identify terms with likely false positives and tailoring them accordingly.

Based on the attached, we propose the additional revisions below to your most recent search strings. We simultaneously ran updated hit reports with these revised terms as well (the AMZ Updated Terms Custodian Report and AMZ Updated Terms STR Hit Report). We believe these revisions materially decrease the overall hit count without materially limiting the responsive documents reviewed and produced. For example, the inclusion of "rate" in the first search string below is returning each and every communication with the phrase "injury rate" (without any further context) when (a) it appears that the intent of the search string is to identify documents related to injuries and productivity rates, not "injury rate" generally and (b) the search string that appears intended to identify documents related to "injury rates" generally is tailored by qualifying words such as decrease, increase, reduce, etc.

- (injur* OR hurt OR sick OR illness* OR fatal* OR die* OR death OR ergo* OR MSD OR WMSD OR musculoskeletal OR faint* OR struck-by OR struck by OR heat OR exhausted OR RIR) W/15 (productivity OR UPH OR units per hour OR ~~rate*~~ OR guardrail* OR quota* OR goal* OR target* OR pace OR TOT OR time off task OR time-off task OR timeoff task OR peak OR Prime Day)
- (reduc* OR low* OR decreas* OR minim* OR down OR wors*) W/15 (incident rate* OR restrict* OR ~~transfer*~~ OR days away OR worker* comp* OR WC)
- (rising OR high* OR increas* OR maxim* OR up OR better OR improv*) W/15 (DART OR DAFW OR DJTR OR TCIR OR TRIR OR SIR OR RIR OR LTI OR SLI OR injur* OR recordable* OR OSHA 300* OR 301* OR incident rate* OR ~~restrict*~~ OR ~~transfer*~~ OR days away)

As shown in the attached hit reports, these terms still return 110,000 unique documents (221,000 including families). We appreciate any further narrowing you can apply with this additional analysis of the search strings returning the highest volume.

Further, we agree that the search term hits for ████████████████████████ are too large and overly burdensome. However, we do not agree with your suggestion that Amazon should review and produce a sampling of documents from those overbroad and unduly burdensome search terms as part of the narrowing process. Rather the additional analysis provided here should be helpful in tailoring the search terms to a reasonable volume. Moreover, we anticipate providing shortly a breakdown of hits by document type (e.g., email, attachment, calendar appointment, etc.) which should further assist with narrowing efforts.

Given that we are continuing to make progress on finalizing the comprehensive ESI

protocol, we continue to prefer to finalize and agree upon appropriately tailored search terms that provide the full scope of Amazon's review. We will continue to move this forward expeditiously so that we can come to a consensus regarding next steps and tradeoffs as outlined below.

Finally, as shown in the attached updated hit reports, ▮▮▮▮▮▮ ESI has been pulled, as requested.

## B. Timing of ESI, Depositions, and Highest Priority Items in Mr. Lillywhite's November 8 Email

As discussed during our meet and confer call on Thursday, we write to confirm our anticipated pace of ESI review and to ensure that SDNY, OSHA, and Amazon are all on the same page with respect to your investigative priorities. As we have emphasized during our recent meet and confer calls, it is important that we understand in what order the government would like Amazon to tackle its various requests (which currently number over 40 subpoenas) over the next two months.

As you know, OSHA has completed 8 depositions of Amazon witnesses and has 8 more already scheduled over the next four weeks. OSHA attorneys have notified Amazon of 6 additional depositions that are not yet scheduled, including 2 Rule 30(b)(6) depositions. These 22 OSHA depositions do not include (i) the depositions listed in the November 8 "highest priorities" email (▮▮▮▮▮▮▮▮▮▮), which were noticed first by SDNY and then by OSHA, (ii) the deposition of ▮▮▮▮▮▮ (who was also noticed both by SDNY and OSHA), or (iii) the other 5 depositions noticed by SDNY. Further, Amazon has also been continuing to complete our manual collection and review of non-ESI documents in response to the more than 500 OSHA document requests and 30 SDNY document requests. Finally, Mr. Lillywhite's November 8 email set out several "highest priority" items for completion over the next two months, four of which we noted during the meet and confer are new requests not covered by existing subpoenas.

As we stated during our last call, we want to ensure that the tradeoffs across these various requests are clear and that we are prioritizing completion of the requests you are most interested in during the two-month timetable you have referenced.

**Option 1**: As we explained during the November 10 call, at the current pace of manual document collection and review, which is ongoing, we estimate we can review 3,000 to 5,000 ESI documents per week. We anticipate this will allow us to complete the following items by December:

- Manual collection and production of non-ESI OSHA documents;
- Produce witnesses for the 8 already scheduled OSHA depositions;
- Produce witnesses for the 6 not yet scheduled OSHA depositions (those not also noticed by SDNY);
- Review approximately 16,000 ESI documents per agreement with SDNY on an ESI review protocol.

**Option 2**: Alternatively, our pace of ESI review can increase substantially if we table the unscheduled OSHA depositions that are not cross noticed and manual document production and focus first on the items on your "highest priorities" list, including ESI and the cross-noticed SDNY/OSHA depositions. Specifically, if we table the time-consuming and labor-intensive manual collection and review of non-ESI documents and the other 6 OSHA depositions not yet scheduled, and instead focus our efforts on completing the "highest priority" documents and data in Mr. Lillywhite's email, we estimate that we can review at least 8,000-10,000 ESI documents a week. This will allow us (subject to

witness availability) to begin producing some of the witnesses noticed by SDNY and OSHA for deposition conducted jointly by OSHA and SDNY.  Moreover, if there are specific OSHA document requests for which you would like us to continue prioritizing non-ESI production (aside from those listed in the November 8 email) we would ask that you identify those promptly and we will confer with you regarding those and let you know our anticipated timing of production and the extent to which doing so would impact our timetable for review and production of ESI to SDNY.  We anticipate this prioritization will allow us to complete the following items through December:

- Production of highest priority items identified in Mr. Lillywhite's November 8 email;
- Produce witnesses for the 8 already scheduled OSHA depositions;
- Review of 32,000 ESI documents per agreement with SDNY on an ESI review protocol;
- Begin producing some of the witnesses jointly noticed by OSHA and SDNY, pending availability; and
- Manual collection and production of non-ESI documents for certain other OSHA requests (pending discussion).

It is our understanding from SDNY's representations during our November 10 meet and confer that the November 8 email lays out the highest priority items for both OSHA and SDNY, in addition to those OSHA depositions already scheduled.  For that reason, we assume that you prefer the latter approach, and we are preparing accordingly.

Finally, we note that the above ESI review estimates are based on a custodian-by-custodian approach, as you have requested.  As we have discussed, we believe that process will be significantly less efficient when it comes to completing the total review and production of all ESI.  At the pace outlined above—and based on an estimated current hit count of 180,000 documents (the current hit count of 125,000 unique documents and estimated review of 50% of the 115,000 family documents associated with those unique documents)—we would complete review of the entire population of hits in SDNY's proposed ESI protocol in 18 weeks (at 10,000 documents per week) or 21 weeks (at a pace of 4,500 documents per week through December and 10,000 documents per week thereafter).  We estimate that machine learning, based on a search string by search string review process, will result in a faster and more efficient overall review and allow us to complete the overall review of ESI as much as 25% faster.

Thank you,

Ryan

**Ryan Stewart**

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3523 • Cell + 1 202.604.0176 • Fax +1 202.467.0539
RStewart@gibsondunn.com • www.gibsondunn.com

**From:** Tarczynska, Dominika (USANYS) <Dominika.Tarczynska@usdoj.gov>
**Sent:** Monday, November 14, 2022 5:33 PM
**To:** Stewart, Ryan C. <RStewart@gibsondunn.com>; Ahmad, Zainab <ZAhmad@gibsondunn.com>
**Cc:** Boizelle, Ashley <boizelle@amazon.com>; Schwartz, Jason C. <JSchwartz@gibsondunn.com>;
Denerstein, Mylan L. <MDenerstein@gibsondunn.com>; Hennefeld.Daniel@dol.gov;
Jaklevic.David.M@dol.gov; Kim, Elizabeth (USANYS) <Elizabeth.Kim@usdoj.gov>; Gemmill, Kevin
(USANYS) [Contractor] <Kevin.Gemmill@usdoj.gov>; jeffrey.oestericher@usdoj.gov; Gitlin, Adam
(USANYS) <Adam.Gitlin@usdoj.gov>; McArthur, Nikki <NMcArthur@gibsondunn.com>; Lillywhite,
Jacob (USANYS) <Jacob.Lillywhite@usdoj.gov>
**Subject:** RE: Amazon - search terms

<span style="color:red">[WARNING: External Email]</span>

Ryan,

Thank you for providing these.  At this point, the only additional limitation that we can propose
based on the information we have is to the following search string:

> ((reduc* OR low* OR decreas* OR minim* OR down OR wors*) W/15 (productivity OR
> production OR UPH OR units per hour OR rate* OR guardrail* OR quota* OR goal* OR
> target* OR pace)) ~~AND~~ **w/25** (injur* OR hurt OR sick OR illness* OR fatal* OR die* OR death
> OR WMSD OR MSD OR musculoskeletal)

To clarify, by this we mean that we would like the last string to be within 25 of either the first or last
of the terms in the prior two strings, which may mean that you need to break it up into two paths: (X
w/15 Y) AND ((X w/25 Z) OR (Y w/25 Z)).) Please let me know if this isn't clear and you would like to
discuss.

It appears that four search strings are disproportionally pulling up the most documents in the
documents of ███████████████████████, so we would propose that these search strings
could be narrowed for just these two custodians.  To do this we need some additional information
about the types of documents in their ESI that are hitting on these terms that might be responsible
for these high numbers.  We would propose that you either send us a sample of 50 or so documents
that are hitting on the following terms for these two custodians, or alternatively if you are able to
identify any particular type of document that is hitting on these terms in significant numbers, we can
discuss further narrowing or sampling of certain types of documents.  If you can provide other
analytics that could help with this narrowing, please let us know.

| | ███████ | ███████ |
|---|---|---|
| ((reduc* OR low* OR decreas* OR minim* OR down OR wors*) W/15 (productivity OR production OR UPH OR units per hour OR rate* OR guardrail* OR quota* OR goal* OR target* OR pace)) AND (injur* OR hurt OR sick OR | 12,107 | 12,702 |

| | | |
|---|---|---|
| illness* OR fatal* OR die* OR death OR WMSD OR MSD OR musculoskeletal) | | |
| (injur* OR hurt OR sick OR illness* OR fatal* OR die* OR death OR ergo* OR MSD OR WMSD OR musculoskeletal OR faint* OR struck-by OR struck by OR heat OR exhausted OR RIR) W/15 (productivity OR UPH OR units per hour OR rate* OR guardrail* OR quota* OR goal* OR target* OR pace OR TOT OR time off task OR time-off task OR timeoff task OR peak OR Prime Day) | 17,333 | 16,272 |
| (reduc* OR low* OR decreas* OR minim* OR down OR wors*) W/15 (DART OR DAFW OR DJTR OR TCIR OR TRIR OR SIR OR RIR OR LTI OR SLI OR injur* OR recordable* OR OSHA 300* OR 301*) | 18,039 | 14,463 |
| (rising OR high* OR increas* OR maxim* OR up OR better OR improv*) W/15 (DART OR DAFW OR DJTR OR TCIR OR TRIR OR SIR OR RIR OR LTI OR SLI OR injur* OR recordable* OR OSHA 300* OR 301* OR incident rate* OR restrict* OR transfer* OR days away) | 21,862 | 19,337 |

We know that you expressed a preference to reach agreement on a complete protocol prior to starting production, however we believe that we are close enough for it to make sense to get started on processing and review of the remaining terms and custodians, while we iron out these four search strings for these two custodians as that might take some time to look at the sampling of documents being pulled by these terms.  In particular, the number of documents with hits for the first four deponents are all under 5,000 (even before the additional limitation above is applied): ▉ (3,753), ▉ (4,056), ▉ (4,885), and ▉ (2,763), so we would like Amazon to commit to getting started on those custodians, provide dates of completion for these custodians and provide dates in early December when they would be available for depositions.

Finally, could you let us know the status of collecting the ESI for ▉, and the anticipated volume.

Please let me know if it would be easier to get on the phone and discuss.

Thanks,

Dominika

---

**From:** Stewart, Ryan C. <RStewart@gibsondunn.com>
**Sent:** Friday, November 11, 2022 6:00 PM
**To:** Tarczynska, Dominika (USANYS) <DTarczynska@usa.doj.gov>; Ahmad, Zainab <ZAhmad@gibsondunn.com>
**Cc:** Boizelle, Ashley <boizelle@amazon.com>; Schwartz, Jason C. <JSchwartz@gibsondunn.com>; Denerstein, Mylan L. <MDenerstein@gibsondunn.com>; Hennefeld.Daniel@dol.gov; Jaklevic.David.M@dol.gov; Kim, Elizabeth (USANYS) <EKim3@usa.doj.gov>; Gemmill, Kevin (USANYS) [Contractor] <KGemmill@usa.doj.gov>; Oestericher, Jeffrey (USANYS) <JOestericher@usa.doj.gov>; Gitlin, Adam (USANYS) <AGitlin@usa.doj.gov>; McArthur, Nikki <NMcArthur@gibsondunn.com>; Lillywhite, Jacob (USANYS) <JLillywhite@usa.doj.gov>
**Subject:** [EXTERNAL] RE: Amazon - search terms

Dominika:  Please see attached the hit reports in the formats requested for the revised terms provided last night.  As you can see, there are still a significant number of hits.  We are working to confirm what additional analysis we can run with respect to the proposed search strings that have a very large number of hits to inform further narrowing, but wanted to provide these reports as soon as they were available to continue this process.

Thank you,
Ryan

**Ryan Stewart**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3523 • Cell + 1 202.604.0176 • Fax +1 202.467.0539
RStewart@gibsondunn.com • www.gibsondunn.com

---

**From:** Tarczynska, Dominika (USANYS) <Dominika.Tarczynska@usdoj.gov>
**Sent:** Thursday, November 10, 2022 10:32 PM
**To:** Stewart, Ryan C. <RStewart@gibsondunn.com>; Ahmad, Zainab <ZAhmad@gibsondunn.com>
**Cc:** Boizelle, Ashley <boizelle@amazon.com>; Schwartz, Jason C. <JSchwartz@gibsondunn.com>; Denerstein, Mylan L. <MDenerstein@gibsondunn.com>; Hennefeld.Daniel@dol.gov;

Jaklevic.David.M@dol.gov; Kim, Elizabeth (USANYS) <Elizabeth.Kim@usdoj.gov>; Gemmill, Kevin (USANYS) [Contractor] <Kevin.Gemmill@usdoj.gov>; jeffrey.oestericher@usdoj.gov; Gitlin, Adam (USANYS) <Adam.Gitlin@usdoj.gov>; McArthur, Nikki <NMcArthur@gibsondunn.com>; Lillywhite, Jacob (USANYS) <Jacob.Lillywhite@usdoj.gov>
**Subject:** RE: Amazon - search terms

**[WARNING: External Email]**

Stewart,

Attached please find further edits to the search terms, working off of the terms in your Exhibit B. I've attached a clean version, as well as a markup showing the changes and some explanatory notes. If you could send us an overall hit report as well as custodian specific reports that would be useful.

Also, if there are particular search strings that are still pulling up a very large number of hits, it would be useful to see some analytics on which set of terms within the string is responsible for the volume.  That would help identify any terms that are generating false positives and allow further narrowing.

If you can get us the hits reports quickly, we can do a quick turn around on additional iterations of the terms if necessary.

Thank you,

Dominika

Dominika Tarczynska
Assistant United States Attorney
Southern District of New York
86 Chambers Street, 3rd Floor
New York, NY 10007
Tel: (212) 637-2748
Fax: (212) 637-2686
dominika.tarczynska@usdoj.gov

---

**From:** Stewart, Ryan C. <RStewart@gibsondunn.com>
**Sent:** Wednesday, November 9, 2022 3:24 PM
**To:** Tarczynska, Dominika (USANYS) <DTarczynska@usa.doj.gov>; Ahmad, Zainab <ZAhmad@gibsondunn.com>
**Cc:** Boizelle, Ashley <boizelle@amazon.com>; Schwartz, Jason C. <JSchwartz@gibsondunn.com>; Denerstein, Mylan L. <MDenerstein@gibsondunn.com>; Hennefeld.Daniel@dol.gov; Jaklevic.David.M@dol.gov; Kim, Elizabeth (USANYS) <EKim3@usa.doj.gov>; Gemmill, Kevin (USANYS) [Contractor] <KGemmill@usa.doj.gov>; Oestericher, Jeffrey (USANYS) <JOestericher@usa.doj.gov>; Gitlin, Adam (USANYS) <AGitlin@usa.doj.gov>; McArthur, Nikki <NMcArthur@gibsondunn.com>;

Lillywhite, Jacob (USANYS) <JLillywhite@usa.doj.gov>
**Subject:** [EXTERNAL] RE: Amazon - highest priorities

Thank you, Dominika.  We are now available from 10:00-11:30 a.m. and have adjusted the meeting invite accordingly.  We look forward to speaking with you then.

As requested, I have attached here the Exhibit A and Exhibit B hit reports in the format we had previously provided them, which were just completed.  To the extent that you are revising the terms, we ask that you please work off of the lists below, which have already been formatted in the way necessary to run them through the document system.  This will speed up the process as we will not need to reformat the terms (e.g., adding ORs within your parentheticals) for each iteration.

Thanks,
Ryan

### Exhibit A

| |
|---|
| ("not report*" OR "*not report*" OR "not record*" OR "*not record*" OR underreport*) AND injur* |
| (AmCare OR Wellness OR safety) W/40 (clinic* OR urgent care OR practice* OR provider*) W/40 ("not refer*" OR "not recommend*" OR don't reocmmend* OR can't recommend* OR discourag* OR medical OR treat) |
| (clinic* OR urgent care OR practice* OR provider* OR consult* OR ergo*) W/40 (hire* OR hiring OR bring on OR fire* OR firing OR cancel* OR stop work* OR no longer work* OR "not use" OR can't use OR won't use OR don't use) |
| (clinic* OR urgent care OR practice* OR provider* OR Sedgwick) W/40 (DART OR DAFW OR DJTR OR TCIR OR TRIR OR SIR OR RIR OR LTI OR SLI OR record* OR OSHA 300* OR 301* OR first-aid OR first aid OR firstaid OR incident rate* OR restrict* OR transfer* OR days away OR worker* comp* OR WC OR too many OR too much OR too often OR high* rate* OR OSHA-sensitive OR OSHA sensitive) |
| (false OR lie* OR lying OR evil OR illegal OR unlawful OR trouble OR jail) AND (bank* OR securit* OR contract* OR agreement* OR rep OR reps OR represent* OR warrant* OR diligence OR SEC* OR Morgan OR Goldman OR Citi* OR HSBC OR Barclays OR BofA OR Bank of America OR Deutsche OR Wells OR Societe OR TD OR Toronto-Dominion OR Toronto Dominion) |
| (false OR lie* OR lying OR evil OR illegal OR unlawful OR trouble OR jail) W/40 (injur* OR hurt OR sick OR illness* OR fatal* OR die* OR death OR ergo* OR WMSD OR MSD OR musculoskeletal OR faint* OR struck-by OR struck by OR heat OR OSHA) |

| |
|---|
| (injur* OR hurt OR sick OR illness* OR fatal* OR die* OR death OR ergo* OR MSD OR WMSD OR musculoskeletal OR faint* OR struck-by OR struck by OR heat OR exhausted) W/40 (productivity OR quality OR UPH OR units per hour OR rate* OR ADAPT OR guardrail* OR quota* OR goal* OR target* OR pace OR process path volume OR DPMO OR SPPR OR SQPR OR 1WW OR 2WW OR TOT OR time off task OR time-off task OR timeoff task OR robot* OR peak OR Prime Day) |
| (MSD W/10 RIR) AND (RIR W/10 (40 OR forty)) |
| (reduc* OR low* OR decreas* OR minim* OR down OR wors*) W/40 (DART OR DAFW OR DJTR OR TCIR OR TRIR OR SIR OR RIR OR LTI OR SLI OR injur* OR record* OR OSHA 300* OR 301* OR first-aid OR first aid OR firstaid OR incident rate* OR restrict* OR transfer* OR days away OR worker* comp* OR WC) |
| (reduc* OR low* OR decreas* OR minim* OR down OR wors*) W/40 (productivity OR production OR UPH OR units per hour OR rate* OR guardrail* OR quota* OR goal* OR target* OR pace) |
| (rising OR high* OR increas* OR maxim* OR up OR better OR best OR improv*) W/40 (DART OR DAFW OR DJTR OR TCIR OR TRIR OR SIR OR RIR OR LTI OR SLI OR injur* OR record* OR OSHA 300* OR 301* OR first-aid OR first aid OR firstaid OR incident rate* OR restrict* OR transfer* OR days away OR worker* comp* OR WC) |
| 21-day program OR 21 day program OR twenty-one day program OR twenty-one-day program OR twenty one day program OR twenty one-day program |
| Austin W/40 (OSHA OR record* OR 300* OR 301*) |
| Austin W/40 (reduc* OR low* OR decreas* OR minim* OR down OR wors*) |
| labor supply AND (injur* OR turnover OR attrition OR retention) |

**Exhibit B**

| |
|---|
| ("not report*" OR "not record*" OR underreport*) W/15 injur* |
| (AmCare OR Wellness OR safety) W/15 (clinic* OR urgent care OR practice* OR provider*) W/25 ("not refer*" OR "not recommend*" OR discourag* OR medical OR treat) |

(clinic* OR urgent care OR practice* OR provider* OR consult* OR ergo*) W/15 (hire* OR hiring OR fire* OR firing OR stop work* OR no longer work* OR "not use")

(clinic* OR urgent care OR practice* OR provider* OR Sedgwick) W/15 (DART OR DAFW OR DJTR OR TCIR OR TRIR OR SIR OR RIR OR LTI OR SLI OR record* OR OSHA 300* OR 301* OR first-aid OR first aid OR firstaid OR incident rate* OR transfer* OR days away OR worker* comp* OR WC OR too many OR too much OR too often OR high* rate* OR OSHA-sensitive OR OSHA sensitive)

(false OR lie* OR lying OR evil OR illegal OR unlawful OR trouble OR jail) W/15 (bank* OR contract* OR agreement* OR rep OR reps OR represent* OR warrant* OR diligence OR SEC* OR Morgan OR Goldman OR Citi* OR HSBC OR Barclays OR BofA OR Bank of America OR Deutsche OR Wells OR Societe OR TD OR Toronto-Dominion OR Toronto Dominion)

(false OR lie* OR lying OR evil OR illegal OR unlawful OR trouble OR jail) W/25 (injur* OR hurt OR sick OR illness* OR fatal* OR die* OR death OR ergo* OR WMSD OR MSD OR musculoskeletal OR faint* OR struck-by OR struck by OR heat OR OSHA)

(injur* OR hurt OR sick OR illness* OR fatal* OR die* OR death OR ergo* OR MSD OR WMSD OR musculoskeletal OR faint* OR struck-by OR struck by OR heat OR exhausted) W/15 (productivity OR quality OR UPH OR units per hour OR rate* OR ADAPT OR guardrail* OR quota* OR goal* OR target* OR pace OR process path volume OR DPMO OR SPPR OR SQPR OR 1WW OR 2WW OR TOT OR time off task OR time-off task OR timeoff task OR robot* OR peak OR Prime Day)

(MSD W/10 RIR) AND (RIR W/10 (40 OR forty))

(reduc* OR low* OR decreas* OR minim* OR down OR wors*) W/15 (DART OR DAFW OR DJTR OR TCIR OR TRIR OR SIR OR RIR OR LTI OR SLI OR injur* OR record* OR OSHA 300* OR 301* OR first-aid OR first aid OR firstaid OR restrict* OR incident rate* OR restrict* OR transfer* OR days away OR worker* comp* OR WC)

(reduc* OR low* OR decreas* OR minim* OR down OR wors*) W/15 (DART OR DAFW OR DJTR OR TCIR OR TRIR OR SIR OR RIR OR LTI OR SLI OR injur* OR record* OR OSHA 300* OR 301*)

| |
|---|
| (reduc* OR low* OR decreas* OR minim* OR down OR wors*) W/15 (first-aid OR first aid OR firstaid OR incident rate* OR restrict* OR transfer* OR days away OR worker* comp* OR WC) |
| (rising OR high* OR increas* OR maxim* OR up OR better OR best OR improv*) W/15 (DART OR DAFW OR DJTR OR TCIR OR TRIR OR SIR OR RIR OR LTI OR SLI OR injur* OR record* OR OSHA 300* OR 301* OR first-aid OR first aid OR firstaid OR incident rate* OR restrict* OR transfer* OR days away OR worker* comp* OR WC) |
| 21-day program OR 21 day program OR twenty-one day program OR twenty-one-day program OR twenty one day program OR twenty one-day program |
| Austin W/15 (OSHA OR record* OR 300* OR 301*) |
| Austin W/15 (reduc* OR low* OR decreas* OR minim* OR down OR wors*) |
| labor supply AND (injur* OR turnover OR attrition OR retention) |

**Ryan Stewart**

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3523 • Cell + 1 202.604.0176 • Fax +1 202.467.0539
RStewart@gibsondunn.com • www.gibsondunn.com

**From:** Tarczynska, Dominika (USANYS) <Dominika.Tarczynska@usdoj.gov>
**Sent:** Wednesday, November 9, 2022 10:02 AM

**To:** Ahmad, Zainab <ZAhmad@gibsondunn.com>; Stewart, Ryan C. <RStewart@gibsondunn.com>
**Cc:** Boizelle, Ashley <boizelle@amazon.com>; Schwartz, Jason C. <JSchwartz@gibsondunn.com>;
Denerstein, Mylan L. <MDenerstein@gibsondunn.com>; Hennefeld.Daniel@dol.gov;
Jaklevic.David.M@dol.gov; Kim, Elizabeth (USANYS) <Elizabeth.Kim@usdoj.gov>; Gemmill, Kevin
(USANYS) [Contractor] <Kevin.Gemmill@usdoj.gov>; jeffrey.oestericher@usdoj.gov; Gitlin, Adam
(USANYS) <Adam.Gitlin@usdoj.gov>; McArthur, Nikki <NMcArthur@gibsondunn.com>; Lillywhite,
Jacob (USANYS) <Jacob.Lillywhite@usdoj.gov>
**Subject:** RE: Amazon - highest priorities

[WARNING: External Email]

Ryan,

Thank you for circulating the meeting invite.  On our end we need to do an earlier start time.  Could
you change it to 9:30-11:30?

Also, do you have any updates on the timing for the overall search term hit list?

Thanks,
Dominika

Dominika Tarczynska
Assistant United States Attorney
Southern District of New York
86 Chambers Street, 3rd Floor
New York, NY 10007
Tel: (212) 637-2748
Fax: (212) 637-2686
dominika.tarczynska@usdoj.gov

---

**From:** Lillywhite, Jacob (USANYS) <JLillywhite@usa.doj.gov>
**Sent:** Tuesday, November 8, 2022 10:44 PM
**To:** Ahmad, Zainab <ZAhmad@gibsondunn.com>; Tarczynska, Dominika (USANYS)
<DTarczynska@usa.doj.gov>
**Cc:** Stewart, Ryan C. <RStewart@gibsondunn.com>; Boizelle, Ashley <boizelle@amazon.com>;
Schwartz, Jason C. <JSchwartz@gibsondunn.com>; Denerstein, Mylan L.
<MDenerstein@gibsondunn.com>; Hennefeld.Daniel@dol.gov; Jaklevic.David.M@dol.gov; Kim,
Elizabeth (USANYS) <EKim3@usa.doj.gov>; Gemmill, Kevin (USANYS) [Contractor]
<KGemmill@usa.doj.gov>; Oestericher, Jeffrey (USANYS) <JOestericher@usa.doj.gov>; Gitlin, Adam
(USANYS) <AGitlin@usa.doj.gov>; McArthur, Nikki <NMcArthur@gibsondunn.com>
**Subject:** RE: Amazon - highest priorities

Counsel,

As we discussed at our meet and confer this afternoon, we are providing the list below of SDNY's and DOL's highest priority items over the next few weeks.  If the production of certain items we discussed previously would make it difficult to produce the below, please let us know so we can discuss whether and to what extent other items should be postponed.

We look forward to discussing these on Thursday.  (We'll get back to you in the morning with a time.)

1. Documents
   A. Ergonomic hazard assessments, analyses, and audits of, or applicable to, the six inspected facilities and the eight selected sample facilities, including the categories of documents listed in the government's letter of 9/13/22, and any nationwide ergonomic analyses (see OSHA Request Nos. 62, 63, 64, 67).
   B. Documents from Regional Staff or National Staff concerning or reflecting metrics or targets provided to facilities or regions concerning injury rates or medical care for injured employees, including metrics or targets for RIR and bypasses.
   C. Documents sufficient to show any incentives provided to facility, regional, or corporate managers based in whole or in part on RIR in supervised facilities.
   D. Documents responsive to OSHA Request No. 61 concerning ergonomics or pace of work.  (We expect responsive documents can be identified with the assistance of the current and former Vice Presidents of Worldwide Workplace Health & Safety and manual review of their document repositories, excluding email.)
   E. Identify which employees identified in response to SDNY Request No. 4 are former employees and provide their dates of employment and last known contact information.

2. Data
   A. Sampling of nationwide associate-level productivity information.
      i. To help us select a sample, we asked earlier today that you provide from these datasets a list of each facility with its designation, address, facility type, a list of each process path/job task reflected in this dataset for that facility, and the number of hours in each such process path/job task (per facility) in each calendar year from 2018 to 2022 (YTD).  If any of those fields would slow this down, please let us know.
   B. Information on weights handled in each of these facilities.  A distribution of the weights handled by year would be ideal.
   C. Nationwide exports from Austin and Gensuite for the prior five years.  We can identify the fields we need from Austin, but need a sample from Gensuite to do the same. (SDNY and DOL will be issuing supplemental subpoenas to cover this and 2(D) below.)
   D. Nationwide export from the LIDAR job restriction database.

3. ESI and Depositions
   A. Production of responsive emails and other ESI that cannot be reviewed manually for the first wave of four corporate-level deponents (████████████████████ in the next few weeks, with depositions scheduled shortly after.  Then moving on through the rest of those deponents.

4. 30(b)(6)
   A. On Topic A, please produce a proffer analogous to what you recently provided for

██████ and her direct reports for ████████████ and their direct reports.

B. On Topic C, please identify any analysis or other consideration of safety when setting productivity rates, expectations, or goals in the prior five years.  Please also produce documents reflecting such analyses or consideration (see SDNY Request No. 9).

Best,

Jake

---

**From:** Ahmad, Zainab <[ZAhmad@gibsondunn.com](mailto:ZAhmad@gibsondunn.com)>
**Sent:** Tuesday, November 8, 2022 3:02 PM
**To:** Tarczynska, Dominika (USANYS) <[DTarczynska@usa.doj.gov](mailto:DTarczynska@usa.doj.gov)>
**Cc:** Stewart, Ryan C. <[RStewart@gibsondunn.com](mailto:RStewart@gibsondunn.com)>; Boizelle, Ashley <[boizelle@amazon.com](mailto:boizelle@amazon.com)>; Schwartz, Jason C. <[JSchwartz@gibsondunn.com](mailto:JSchwartz@gibsondunn.com)>; Denerstein, Mylan L. <[MDenerstein@gibsondunn.com](mailto:MDenerstein@gibsondunn.com)>; [Hennefeld.Daniel@dol.gov](mailto:Hennefeld.Daniel@dol.gov); [Jaklevic.David.M@dol.gov](mailto:Jaklevic.David.M@dol.gov); Lillywhite, Jacob (USANYS) <[JLillywhite@usa.doj.gov](mailto:JLillywhite@usa.doj.gov)>; Kim, Elizabeth (USANYS) <[EKim3@usa.doj.gov](mailto:EKim3@usa.doj.gov)>; Gemmill, Kevin (USANYS) [Contractor] <[KGemmill@usa.doj.gov](mailto:KGemmill@usa.doj.gov)>; Oestericher, Jeffrey (USANYS) <[JOestericher@usa.doj.gov](mailto:JOestericher@usa.doj.gov)>; Gitlin, Adam (USANYS) <[AGitlin@usa.doj.gov](mailto:AGitlin@usa.doj.gov)>; McArthur, Nikki <[NMcArthur@gibsondunn.com](mailto:NMcArthur@gibsondunn.com)>
**Subject:** [EXTERNAL] RE: Amazon - correspondence

Thanks, Dominika.  We look forward to speaking at 4:15.

**Zainab Ahmad**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193
Tel +1 212.351.2609 • Fax +1 212.817.9500
[ZAhmad@gibsondunn.com](mailto:ZAhmad@gibsondunn.com) • [www.gibsondunn.com](http://www.gibsondunn.com)

---

**From:** Tarczynska, Dominika (USANYS) <[Dominika.Tarczynska@usdoj.gov](mailto:Dominika.Tarczynska@usdoj.gov)>
**Sent:** Tuesday, November 8, 2022 1:55 PM
**To:** Ahmad, Zainab <[ZAhmad@gibsondunn.com](mailto:ZAhmad@gibsondunn.com)>
**Cc:** Stewart, Ryan C. <[RStewart@gibsondunn.com](mailto:RStewart@gibsondunn.com)>; Boizelle, Ashley <[boizelle@amazon.com](mailto:boizelle@amazon.com)>; Schwartz, Jason C. <[JSchwartz@gibsondunn.com](mailto:JSchwartz@gibsondunn.com)>; Denerstein, Mylan L. <[MDenerstein@gibsondunn.com](mailto:MDenerstein@gibsondunn.com)>; [Hennefeld.Daniel@dol.gov](mailto:Hennefeld.Daniel@dol.gov); [Jaklevic.David.M@dol.gov](mailto:Jaklevic.David.M@dol.gov); Lillywhite, Jacob (USANYS) <[Jacob.Lillywhite@usdoj.gov](mailto:Jacob.Lillywhite@usdoj.gov)>; Kim, Elizabeth (USANYS) <[Elizabeth.Kim@usdoj.gov](mailto:Elizabeth.Kim@usdoj.gov)>; Gemmill, Kevin (USANYS) [Contractor] <[Kevin.Gemmill@usdoj.gov](mailto:Kevin.Gemmill@usdoj.gov)>; [jeffrey.oestericher@usdoj.gov](mailto:jeffrey.oestericher@usdoj.gov); Gitlin, Adam (USANYS) <[Adam.Gitlin@usdoj.gov](mailto:Adam.Gitlin@usdoj.gov)>; McArthur, Nikki <[NMcArthur@gibsondunn.com](mailto:NMcArthur@gibsondunn.com)>
**Subject:** RE: Amazon - correspondence

**[WARNING: External Email]**

Zainab,

Thank you. We are available today at 4:15. Could you circulate a meeting invite?

We will also have availability on Thursday during the window you proposed, and will get back to you in a bit with exact timing.

Regards,

Dominika

---

**From:** Ahmad, Zainab <ZAhmad@gibsondunn.com>
**Sent:** Monday, November 7, 2022 11:32 PM
**To:** Tarczynska, Dominika (USANYS) <DTarczynska@usa.doj.gov>
**Cc:** Stewart, Ryan C. <RStewart@gibsondunn.com>; Boizelle, Ashley <boizelle@amazon.com>; Schwartz, Jason C. <JSchwartz@gibsondunn.com>; Denerstein, Mylan L. <MDenerstein@gibsondunn.com>; Hennefeld.Daniel@dol.gov; Jaklevic.David.M@dol.gov; Lillywhite, Jacob (USANYS) <JLillywhite@usa.doj.gov>; Kim, Elizabeth (USANYS) <EKim3@usa.doj.gov>; Gemmill, Kevin (USANYS) [Contractor] <KGemmill@usa.doj.gov>; Oestericher, Jeffrey (USANYS) <JOestericher@usa.doj.gov>; Gitlin, Adam (USANYS) <AGitlin@usa.doj.gov>; McArthur, Nikki <NMcArthur@gibsondunn.com>
**Subject:** [EXTERNAL] Re: Amazon - correspondence

Thank you, Dominika.  We don't have a full 2-hour block tomorrow but can be available from 4:15-5:00 pm to address the first 7 items on your proposed agenda.  We can then also be available Thursday anytime from 930-1 ET that works for your side to discuss the remaining topics on your agenda.

Let us know if these windows work for you.  Additionally, thank you for providing these follow ups— we will get back to you on these points very shortly.

Best,
Zainab

**Zainab Ahmad**

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193
Tel +1 212.351.2609 ● Fax +1 212.817.9500
ZAhmad@gibsondunn.com ● www.gibsondunn.com

On Nov 7, 2022, at 6:40 PM, Tarczynska, Dominika (USANYS) <Dominika.Tarczynska@usdoj.gov> wrote:

**[WARNING: External Email]**

Zainab,

Thanks for your email.  That's fine. Let us know when you are available in the next few days.

In the meantime, we do have a few follow ups that we wanted to pass along in advance of our call to make our discussion more productive:

1. Could you also send us overall hit reports for the ESI searches, not just custodian specific ones.  I apologize if my earlier email was unclear, I meant to ask for the custodian specific results in addition to the type of hit reports that you sent on October 28.
2. You asked for examples of the production issue with the injury records.  The issue is present throughout the production, and so these are not isolated incidents, but here are some examples of the types of issues we are seeing:
    1. AMZ-DYO1-00000879 through AMZ-DYO100000947, these files seem to alternate documents related to two different employees Elia Martinez and Robert Derr, and then later in the production scattered amongst records related to other employees are some more records related to ████████ (AMZ-DYO1-00001212 and AMZ-DY01-00001613).
    2. AMZ-DEN5-00000308-310  and AMZ-DEN5-00000311-313: these files have no identifying information about the employee to which they relate
3. Certain spreadsheets use employee name, while others use a login to identify employees (*e.g.* AMZ-OSHA6-00003583).  Can you provide a crosswalk that correlates the Logins to employee names? Or reproduce the spreadsheets so that they include employee names? This is similar to the issue we previously flagged in our September 13 letter (p. 4) regarding employee identification numbers.

Regards,

Dominika

Dominika Tarczynska
Assistant United States Attorney
Southern District of New York
86 Chambers Street, 3rd Floor
New York, NY 10007
Tel: (212) 637-2748
Fax: (212) 637-2686
dominika.tarczynska@usdoj.gov

---

**From:** Ahmad, Zainab <ZAhmad@gibsondunn.com>

**Sent:** Monday, November 7, 2022 2:45 PM
**To:** Tarczynska, Dominika (USANYS) <DTarczynska@usa.doj.gov>; Stewart, Ryan C.
<RStewart@gibsondunn.com>
**Cc:** Boizelle, Ashley <boizelle@amazon.com>; Schwartz, Jason C. <JSchwartz@gibsondunn.com>;
Denerstein, Mylan L. <MDenerstein@gibsondunn.com>; Hennefeld.Daniel@dol.gov;
Jaklevic.David.M@dol.gov; Lillywhite, Jacob (USANYS) <JLillywhite@usa.doj.gov>; Kim, Elizabeth
(USANYS) <EKim3@usa.doj.gov>; Gemmill, Kevin (USANYS) [Contractor] <KGemmill@usa.doj.gov>;
Oestericher, Jeffrey (USANYS) <JOestericher@usa.doj.gov>; Gitlin, Adam (USANYS)
<AGitlin@usa.doj.gov>; McArthur, Nikki <NMcArthur@gibsondunn.com>
**Subject:** [EXTERNAL] RE: Amazon - correspondence

Hi Dominka,

We understand that today's deposition began late because the court reporter retained
by OSHA did not show up at the scheduled time.  And (as I'm sure you are aware since
you are attending that deposition), Mr. Jaklevic has indicated that OSHA anticipates the
deposition of ███████ will not in fact be completed by 5 pm today.

Moreover, we've also learned that our colleague Mylan (who is defending the
deposition) will not be able to participate in the meet and confer call from OSHA's
████ offices, where the deposition is ongoing, because OSHA's representatives at the
deposition do not intend to attend the meet and confer and cannot permit her to stay in
the space without an OSHA escort.  In light of that fact, and because it would not be
appropriate for Mylan to participate in the meet and confer call in a public place like the
████████████, we recommend and respectfully request that we briefly continue
the meet and confer call until ███████████████.  This will also give you sufficient
time to review our letter correspondence from today and us sufficient time to review the
lengthy proposed agenda you circulated last night as well as your additions to that
agenda this morning.  We can provide you tonight times that we can make ourselves
available for two hours tomorrow, Wednesday, and Thursday.

Best,
Zainab


**Zainab Ahmad**

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193
Tel +1 212.351.2609 • Fax +1 212.817.9500
ZAhmad@gibsondunn.com • www.gibsondunn.com

**From:** Tarczynska, Dominika (USANYS) <Dominika.Tarczynska@usdoj.gov>
**Sent:** Monday, November 7, 2022 12:49 PM
**To:** Stewart, Ryan C. <RStewart@gibsondunn.com>; Ahmad, Zainab <ZAhmad@gibsondunn.com>
**Cc:** Boizelle, Ashley <boizelle@amazon.com>; Schwartz, Jason C. <JSchwartz@gibsondunn.com>;
Denerstein, Mylan L. <MDenerstein@gibsondunn.com>; Hennefeld.Daniel@dol.gov;
Jaklevic.David.M@dol.gov; Lillywhite, Jacob (USANYS) <Jacob.Lillywhite@usdoj.gov>; Kim, Elizabeth
(USANYS) <Elizabeth.Kim@usdoj.gov>; Gemmill, Kevin (USANYS) [Contractor]
<Kevin.Gemmill@usdoj.gov>; Oestericher, Jeffrey (USANYS) <Jeffrey.Oestericher@usdoj.gov>; Gitlin,
Adam (USANYS) <Adam.Gitlin@usdoj.gov>; McArthur, Nikki <NMcArthur@gibsondunn.com>
**Subject:** RE: Amazon - correspondence

**[WARNING: External Email]**

Thank you for your letter.  Please advise whether we are speaking today at 5pm.

Regards,

Dominika

Dominika Tarczynska
Assistant United States Attorney
Southern District of New York
86 Chambers Street, 3rd Floor
New York, NY 10007
Tel: (212) 637-2748
Fax: (212) 637-2686
dominika.tarczynska@usdoj.gov

**From:** Stewart, Ryan C. <RStewart@gibsondunn.com>
**Sent:** Monday, November 7, 2022 12:07 PM
**To:** Tarczynska, Dominika (USANYS) <DTarczynska@usa.doj.gov>; Ahmad, Zainab
<ZAhmad@gibsondunn.com>
**Cc:** Boizelle, Ashley <boizelle@amazon.com>; Schwartz, Jason C. <JSchwartz@gibsondunn.com>;
Denerstein, Mylan L. <MDenerstein@gibsondunn.com>; Hennefeld.Daniel@dol.gov;
Jaklevic.David.M@dol.gov; Lillywhite, Jacob (USANYS) <JLillywhite@usa.doj.gov>; Kim, Elizabeth
(USANYS) <EKim3@usa.doj.gov>; Gemmill, Kevin (USANYS) [Contractor] <KGemmill@usa.doj.gov>;
Oestericher, Jeffrey (USANYS) <JOestericher@usa.doj.gov>; Gitlin, Adam (USANYS)
<AGitlin@usa.doj.gov>; McArthur, Nikki <NMcArthur@gibsondunn.com>
**Subject:** [EXTERNAL] RE: Amazon - correspondence

Counsel:  As discussed, please see the attached correspondence.

Best,
Ryan

**Ryan Stewart**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3523 • Cell + 1 202.604.0176 • Fax +1 202.467.0539
RStewart@gibsondunn.com • www.gibsondunn.com

---

**From:** Tarczynska, Dominika (USANYS) <Dominika.Tarczynska@usdoj.gov>
**Sent:** Friday, November 4, 2022 5:24 PM
**To:** Stewart, Ryan C. <RStewart@gibsondunn.com>; Ahmad, Zainab <ZAhmad@gibsondunn.com>
**Cc:** Boizelle, Ashley <boizelle@amazon.com>; Schwartz, Jason C. <JSchwartz@gibsondunn.com>; Denerstein, Mylan L. <MDenerstein@gibsondunn.com>; Hennefeld.Daniel@dol.gov; Jaklevic.David.M@dol.gov; Lillywhite, Jacob (USANYS) <Jacob.Lillywhite@usdoj.gov>; Kim, Elizabeth (USANYS) <Elizabeth.Kim@usdoj.gov>; Gemmill, Kevin (USANYS) [Contractor] <Kevin.Gemmill@usdoj.gov>; Oestericher, Jeffrey (USANYS) <Jeffrey.Oestericher@usdoj.gov>; Gitlin, Adam (USANYS) <Adam.Gitlin@usdoj.gov>; McArthur, Nikki <NMcArthur@gibsondunn.com>
**Subject:** RE: Amazon - correspondence

[WARNING: External Email]

Ryan,

We look forward to receiving your written response on the issues raised in our letter and email, and let's plan to do the meet and confer after the OSHA deposition on Monday.

Thank you,

Dominika

Dominika Tarczynska
Assistant United States Attorney
Southern District of New York
86 Chambers Street, 3rd Floor
New York, NY 10007
Tel: (212) 637-2748
Fax: (212) 637-2686
dominika.tarczynska@usdoj.gov

**From:** Stewart, Ryan C. <RStewart@gibsondunn.com>
**Sent:** Thursday, November 3, 2022 8:56 PM
**To:** Tarczynska, Dominika (USANYS) <DTarczynska@usa.doj.gov>; Ahmad, Zainab <ZAhmad@gibsondunn.com>
**Cc:** Boizelle, Ashley <boizelle@amazon.com>; Schwartz, Jason C. <JSchwartz@gibsondunn.com>; Denerstein, Mylan L. <MDenerstein@gibsondunn.com>; Hennefeld.Daniel@dol.gov; Jaklevic.David.M@dol.gov; Lillywhite, Jacob (USANYS) <JLillywhite@usa.doj.gov>; Kim, Elizabeth (USANYS) <EKim3@usa.doj.gov>; Gemmill, Kevin (USANYS) [Contractor] <KGemmill@usa.doj.gov>; Oestericher, Jeffrey (USANYS) <JOestericher@usa.doj.gov>; Gitlin, Adam (USANYS) <AGitlin@usa.doj.gov>; McArthur, Nikki <NMcArthur@gibsondunn.com>
**Subject:** [EXTERNAL] RE: Amazon - correspondence

Dominika:

Thank you for your email.  To ensure the record is clear, SDNY has not been requesting a multi-hour meet and confer "since Jake Lillywhite's October 11 email."  Mr. Lillywhite's October 11 email asked only: "ESI:  Please let us know when we can meet and confer with respect to the search terms and custodians we sent you."  As we made clear in our correspondence on October 7, October 24, and October 28, Amazon was preparing and did provide an aggregate hit report based on your proposed custodians and search terms in order to facilitate a substantive meet and confer on the scope of the proposed ESI search.  Amazon did so on October 28, and the parties have been conferring regarding ESI since that time, via written correspondence, including your October 31 email providing revised search terms.

As we stated in our November 2 email, Amazon is preparing a written response regarding the items in Mr. Lillywhite's October 27 letter and your October 31 email, which appear from your email today to be the issues you would like to discuss during the requested meet and confer.  We will provide our response promptly and will meet and confer with you if there are remaining items you would like to discuss after reviewing our written responses.  That said—and as we stated—the attorneys situated to handle this meet and confer are not available during business hours on Monday, Tuesday, or Wednesday due to the ongoing OSHA depositions on those days.

Finally, we believe that any motion to enforce would be premature and that the parties' time would be better spent on constructive dialogue to resolve any concerns.  We believe a court would expect the parties to continue working together as opposed to burdening the court with whatever disagreement you believe exists.  Should you insist

on filing a motion, however, it would be helpful to know which of the various OSHA subpoenas and FIRREA subpoenas you anticipate moving to enforce (to date Amazon has been served with more than 40 subpoenas).  Although we maintain a motion to enforce is unnecessary, we will be prepared to discuss our position on venue in the event you decide to file.

Thank you,
Ryan

**Ryan Stewart**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3523 • Cell + 1 202.604.0176 • Fax +1 202.467.0539
RStewart@gibsondunn.com • www.gibsondunn.com

---

**From:** Tarczynska, Dominika (USANYS) <Dominika.Tarczynska@usdoj.gov>
**Sent:** Thursday, November 3, 2022 11:59 AM
**To:** Stewart, Ryan C. <RStewart@gibsondunn.com>; Ahmad, Zainab <ZAhmad@gibsondunn.com>
**Cc:** Boizelle, Ashley <boizelle@amazon.com>; Schwartz, Jason C. <JSchwartz@gibsondunn.com>; Denerstein, Mylan L. <MDenerstein@gibsondunn.com>; Hennefeld.Daniel@dol.gov; Jaklevic.David.M@dol.gov; Lillywhite, Jacob (USANYS) <Jacob.Lillywhite@usdoj.gov>; Kim, Elizabeth (USANYS) <Elizabeth.Kim@usdoj.gov>; Gemmill, Kevin (USANYS) [Contractor] <Kevin.Gemmill@usdoj.gov>; Oestericher, Jeffrey (USANYS) <Jeffrey.Oestericher@usdoj.gov>; Gitlin, Adam (USANYS) <Adam.Gitlin@usdoj.gov>; McArthur, Nikki <NMcArthur@gibsondunn.com>
**Subject:** RE: Amazon - correspondence

**[WARNING: External Email]**
Counsel,

We are very concerned that despite asking for a meet and confer since Jake Lillywhite's October 11 email, your first available dates are almost 4 weeks later.  If you have no availability before that, we would like to schedule the meet and confer on Monday. Given the number of attorneys handling this matter, we should be able to go forward with the meet and confer during normal working hours, while the deposition is ongoing.  Please let us know what time works for you and we will make ourselves available.

Although we believe the issues we'd like to discuss have been identified in our recent correspondence, we will send you a list of topics in advance of Monday's meet and confer.

Although we would prefer to reach agreement on the outstanding issues, during our meet and

confer we also would like to discuss venue for any motion to enforce in the event we are forced to file one.  The Government could move to enforce the six OSHA subpoenas in the SDNY and the FIRREA subpoena in the Western District of Washington, or alternatively we could agree that all motions be filed in the SDNY.

Regards,

Dominika

Dominika Tarczynska
Assistant United States Attorney
Southern District of New York
86 Chambers Street, 3rd Floor
New York, NY 10007
Tel: (212) 637-2748
Fax: (212) 637-2686
dominika.tarczynska@usdoj.gov

**From:** Stewart, Ryan C. <RStewart@gibsondunn.com>
**Sent:** Wednesday, November 2, 2022 8:43 AM
**To:** Tarczynska, Dominika (USANYS) <DTarczynska@usa.doj.gov>; Ahmad, Zainab <ZAhmad@gibsondunn.com>
**Cc:** Boizelle, Ashley <boizelle@amazon.com>; Schwartz, Jason C. <JSchwartz@gibsondunn.com>; Denerstein, Mylan L. <MDenerstein@gibsondunn.com>; Hennefeld.Daniel@dol.gov; Jaklevic.David.M@dol.gov; Lillywhite, Jacob (USANYS) <JLillywhite@usa.doj.gov>; Kim, Elizabeth (USANYS) <EKim3@usa.doj.gov>; Gemmill, Kevin (USANYS) [Contractor] <KGemmill@usa.doj.gov>; Oestericher, Jeffrey (USANYS) <JOestericher@usa.doj.gov>; Gitlin, Adam (USANYS) <AGitlin@usa.doj.gov>; McArthur, Nikki <NMcArthur@gibsondunn.com>
**Subject:** [EXTERNAL] RE: Amazon - correspondence

Dominika:  Thank you for your note.  To be clear, Amazon is not refusing to do anything; to the contrary, Amazon is working diligently to provide documents and information to OSHA and SDNY as promptly as feasible.

We will get back to you promptly in writing regarding the items in your email below and in Mr. Lillywhite's October 27 letter.  We also anticipate providing a sampling of additional productivity datasets later this week.

We are available to meet and confer if you have additional items you would like to discuss after reviewing our written responses to your various correspondence.  So that we can adequately prepare and have a more efficient meeting, please let us know what

specific requests and topics you would like to discuss and what questions you have beyond those in your email and Mr. Lillywhite's October 27 letter.  To date, you have simply requested to discuss all 500+ requests for production.  A more specific agenda would be helpful.

With respect to timing, our team is traveling and is not available for a multi-hour meet and confer this week.  Next week, as you may know, we are in depositions with OSHA on Monday, Tuesday, and Wednesday.  We are happy to meet and confer on Monday, Tuesday or Wednesday after those depositions conclude or on Thursday or Friday.  In the meantime, we will continue to focus on producing the documents and information requested by OSHA and SDNY as quickly as we are able.

Best,
Ryan

**Ryan Stewart**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3523 • Cell + 1 202.604.0176 • Fax +1 202.467.0539
RStewart@gibsondunn.com • www.gibsondunn.com

---

**From:** Tarczynska, Dominika (USANYS) <Dominika.Tarczynska@usdoj.gov>
**Sent:** Monday, October 31, 2022 10:05 PM
**To:** Stewart, Ryan C. <RStewart@gibsondunn.com>; Ahmad, Zainab <ZAhmad@gibsondunn.com>
**Cc:** Boizelle, Ashley <boizelle@amazon.com>; Schwartz, Jason C. <JSchwartz@gibsondunn.com>; Denerstein, Mylan L. <MDenerstein@gibsondunn.com>; Hennefeld.Daniel@dol.gov; Jaklevic.David.M@dol.gov; Lillywhite, Jacob (USANYS) <Jacob.Lillywhite@usdoj.gov>; Kim, Elizabeth (USANYS) <Elizabeth.Kim@usdoj.gov>; Gemmill, Kevin (USANYS) [Contractor] <Kevin.Gemmill@usdoj.gov>; Oestericher, Jeffrey (USANYS) <Jeffrey.Oestericher@usdoj.gov>; Gitlin, Adam (USANYS) <Adam.Gitlin@usdoj.gov>; McArthur, Nikki <NMcArthur@gibsondunn.com>
**Subject:** RE: Amazon - correspondence

[WARNING: External Email]

Counsel,

We were disappointed by your letter of 10/28.  In advance of moving to enforce the subpoenas, we reiterate our request for a meet and confer to discuss the issues raised in our letters of 10/19 and 10/27 and, in particular, to go request-by-request in the manner described in those letters.  Please advise when you are available for at least two hours later this week, or confirm that Amazon is

refusing to meet and confer. In advance of that meet and confer, please advise us of your positions on the items below.

30(b)(6) Depositions: Are we correct in our understanding that Amazon is refusing to produce witnesses to testify as to any of the topics in the 30(b)(6) notice? As we previously explained, although we were willing to try your proposal to provide proffers in lieu of testimony in the first instance as to Topics A and C, this agreement was conditioned on the understanding that if we were not satisfied with the information provided in the proffers we could request witness testimony. As we explained in our letters, the proffers have not provided adequate information on these topics and we are now requesting that Amazon prepare witnesses.

ESI & Depositions: Thank you for providing the hit report for the search terms we proposed on September 28. In order to move forward with depositions soon, we would like Amazon to prioritize production of documents for certain custodians so that we can move forward with their depositions while production of ESI continues on a rolling basis.

Specifically, we would like to prioritize the ESI review for the following custodians and schedule their depositions accordingly. Please produce the ESI for ▮▮▮▮▮▮▮▮▮▮▮▮▮ by November 11 and propose dates for their depositions on or before November 22. Next, please produce the ESI for ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ by November 18 and propose dates for their depositions on or before December 4.

Additionally, please include documents responsive to the following search terms for the additional custodians by November 30:
1. (MSD W/10 RIR) AND (RIR W/10 (40 OR forty)) **[5,009 documents]**
2. ("not report*" OR "*not report*" OR "not record*" OR "*not record*" OR underreport*) AND injur* **[8,929 documents]**
3. 21-day program OR 21 day program OR twenty-one day program OR twenty-one-day program OR twenty one day program OR twenty one-day program **[17 documents]**
4. labor supply AND (Injur* OR turnover OR attrition OR retention) **[127 documents]**

Finally, in an effort to narrow the results of the ESI search, we propose the following edits to the terms. Can you please provide a revised hit report, and provide us the results per search for each custodian so that we can continue to prioritize the deposition scheduling? Please note that in the last search, we have broken out the search string into two separate strings, one with the original "and" and the second with a "w/in 40":

1. (injur* hurt sick illness* fatal* die* death ergo* MSD WMSD musculoskeletal faint* "struck-by" "struck by" heat exhausted) **&~w/in 40** (productivity quality UPH "units per hour" rate* ADAPT guardrail* quota* goal* target* pace "process path volume" DPMO SPPR SQPR 1WW 2WW TOT "time off task" "time-off task" "timeoff task" robot* peak "Prime Day")

2. (reduc* low* decreas* minim* down wors*) **&~w/in 40** (productivity production UPH "units per hour" rate* guardrail* quota* goal* target* pace)

3. (reduc* low* decreas* minim* down wors*) **&~w/in 40** (DART DAFW DJTR TCIR TRIR SIR RIR

LTI SLI injur* record* OSHA 300* 301* "first-aid" "first aid" "firstaid" "incident rate*" restrict* transfer* "days away" "worker comp*" WC)

4. (rising high* increas* maxim* up better best improv*) ~~&~~ **w/in 40** (DART DAFW DJTR TCIR TRIR SIR RIR LTI SLI injur* record* OSHA 300* 301* "first-aid" "first aid" "firstaid" "incident rate*" restrict* transfer* "days away" "worker comp*" WC)

5. (clinic* "urgent care" practice* provider* Sedgwick) ~~&~~ **w/in 40** (DART DAFW DJTR TCIR TRIR SIR RIR LTI SLI record* OSHA 300* 301* "first-aid" "first aid" "firstaid" "incident rate*" restrict* transfer* "days away" "worker comp*" WC "too many" "too much" "too often" "high* rate*" "OSHA-sensitive" "OSHA sensitive")

6. (clinic* "urgent care" practice* provider* consult* ergo*) ~~&~~ **w/in 40** (hire* hiring "bring on" fire* firing cancel* "stop work*" "no longer work*" "not use" "*n't use")

7. (AmCare Wellness safety) ~~&~~ **w/in 40** (clinic* "urgent care" practice* provider*) ~~&~~ **w/in 40** ("not refer*" "*n't refer*" "not recommend*" "*n't recommend" discourag* "medical treat)

8. Austin ~~&~~ **w/in 40** (reduc* low* decreas* minim* down wors*)

9. Austin ~~&~~ **w/in 40** (OSHA record* 300* 301*)

10. (false lie* lying ~~**wrong**~~ evil illegal unlawful trouble jail) & (~~**injur\* hurt sick illness\* fatal\* die\* death ergo\* WMSD MSD musculoskeletal faint\* "struck-by" "struck by" heat OSHA**~~ bank* securit* contract* agreement* rep reps represent* warrant* diligence SEC *Morgan Goldman Citi* HSBC Barclays BofA "Bank of America" Deutsche Wells Societe TD Toronto-Dominion "Toronto Dominion")

11. (false lie* lying ~~**wrong**~~ evil illegal unlawful trouble jail) ~~&~~ **w/in 40** (injur* hurt sick illness* fatal* die* death ergo* WMSD MSD musculoskeletal faint* "struck-by" "struck by" heat OSHA ~~**bank\* securit\* contract\* agreement\* rep reps represent\* warrant\* diligence SEC \*Morgan Goldman Citi\* HSBC Barclays BofA "Bank of America" Deutsche Wells Societe TD Toronto-Dominion "Toronto Dominion")**~~

<u>Injury Records :</u> We would like to discuss Amazon's production of injury documents.  It appears that the production of injury records is not organized in any readily understandable way—documents don't appear to be grouped either by injury or worker or organized chronologically, and documents related to a given injury or worker are scattered across the production rather than consecutive.  Indeed, certain documents do not appear to identify the particular worker to which they pertain.  It is difficult to imagine that Amazon maintains its worker injury records in this manner.  Can you please advise (a) how Amazon maintains these records and (b) whether Amazon can reproduce them in a manner that maintains that organization—and, in particular, can reproduce them such that documents related to a given injury or worker are produced consecutively?


Dominika Tarczynska

Assistant United States Attorney
Southern District of New York
86 Chambers Street, 3rd Floor
New York, NY 10007
Tel: (212) 637-2748
Fax: (212) 637-2686
dominika.tarczynska@usdoj.gov


**From:** Stewart, Ryan C. <RStewart@gibsondunn.com>
**Sent:** Friday, October 28, 2022 11:21 PM
**To:** Tarczynska, Dominika (USANYS) <DTarczynska@usa.doj.gov>; Ahmad, Zainab
<ZAhmad@gibsondunn.com>
**Cc:** Boizelle, Ashley <boizelle@amazon.com>; Schwartz, Jason C. <JSchwartz@gibsondunn.com>;
Denerstein, Mylan L. <MDenerstein@gibsondunn.com>; Hennefeld.Daniel@dol.gov>;
Jaklevic.David.M@dol.gov; Lillywhite, Jacob (USANYS) <JLillywhite@usa.doj.gov>; Kim, Elizabeth
(USANYS) <EKim3@usa.doj.gov>; Gemmill, Kevin (USANYS) [Contractor] <KGemmill@usa.doj.gov>;
Oestericher, Jeffrey (USANYS) <JOestericher@usa.doj.gov>; Gitlin, Adam (USANYS)
<AGitlin@usa.doj.gov>; McArthur, Nikki <NMcArthur@gibsondunn.com>
**Subject:** [EXTERNAL] RE: Amazon - correspondence

Counsel:  Please see the attached correspondence.


Thank you,
Ryan


**Ryan Stewart**


## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3523 • Cell + 1 202.604.0176 • Fax +1 202.467.0539
RStewart@gibsondunn.com • www.gibsondunn.com


**From:** Stewart, Ryan C.
**Sent:** Monday, October 24, 2022 8:12 AM
**To:** 'Tarczynska, Dominika (USANYS)' <Dominika.Tarczynska@usdoj.gov>; Ahmad, Zainab
<ZAhmad@gibsondunn.com>
**Cc:** Boizelle, Ashley <boizelle@amazon.com>; Schwartz, Jason C. <JSchwartz@gibsondunn.com>;
Denerstein, Mylan L. <MDenerstein@gibsondunn.com>; Hennefeld.Daniel@dol.gov>;
Jaklevic.David.M@dol.gov; Lillywhite, Jacob (USANYS) <Jacob.Lillywhite@usdoj.gov>; Kim, Elizabeth
(USANYS) <Elizabeth.Kim@usdoj.gov>; Gemmill, Kevin (USANYS) [Contractor]

<Kevin.Gemmill@usdoj.gov>; Oestericher, Jeffrey (USANYS) <Jeffrey.Oestericher@usdoj.gov>; Gitlin, Adam (USANYS) <Adam.Gitlin@usdoj.gov>; McArthur, Nikki <NMcArthur@gibsondunn.com>
**Subject:** RE: Amazon - correspondence

Counsel:

We write in response to several of the items outlined in your letter received Wednesday afternoon (October 19).  We will provide our complete written response by Friday, October 28.  In the meantime, we address several items that appear to have contemplated a response sooner.

### 30(b)(6)

1. **Topic A**.  We disagree that Amazon should undertake the time and expense of preparing multiple individuals for "short depositions" this week to testify about their primary job responsibilities and those of their direct reports.   Our written proffer in response to Topic A consists of hundreds of pages of job descriptions which accurately summarize the job responsibilities of these employees.  As we have stated previously, if you have specific questions related to the job descriptions, the roles of any particular employee, or which employee(s) hold particular responsibilities, we are happy to field those questions and provide responses directly.  In the meantime, we will provide additional information regarding the job responsibilities of those individuals identified in your letter by Monday, October 31.

2. **Topic C**.  We have scheduled a time to provide our attorney proffer regarding productivity on Tuesday.  We look forward to meeting with you then.

**Productivity Data**:  Your letter asked that we produce "by Friday," data from all centrally-stored databases with responsive information.  As noted below, requesting that documents be produced in fewer than 48 hours is demonstrably not feasible because of the time it takes even to process documents for production.  As you know, we responded to Mr. Lillywhite's September 28 email by confirming Amazon's agreement—notwithstanding the burden involved—to produce centrally-stored productivity data for all of the more than 900 "Sibling Facilities" nationwide for the requested five-year period, and we are now in the process of securing that data for production.  In response to Mr. Lillywhite's October 11 email, we are not proposing that any responsive data be "held back" from production.  Amazon is working diligently to collect, review, process, and produce responsive data from many different databases because, while it is centrally

stored, this data is separately stored both by data type and by facility type.  Finally, I note that we produced on Friday additional productivity data.

**ESI**:  We were not in a position, as requested in your Wednesday letter, to meet and confer "[last] week" regarding the proposed ESI protocol you provided.  As we have explained, we have been working diligently to collect ESI from custodians on your list.  The process of collecting and processing ESI from numerous custodians takes time, but we have now collected the ESI and are in the process of running and assessing your proposed search terms.  As a result, we anticipate providing a response to your ESI by early next week.

In the meantime, we agree that SDNY depositions should not proceed until the production of ESI has been completed.  (We are, as you know, moving forward with presenting witnesses for the 16 OSHA depositions that have been noticed this month.)

**Specific Document Requests**:

1. **SDNY 4.**  Thank you for your feedback regarding the documents we have produced in response to this request.   We were not in a position to produce additional documents "[last] week," as requested in your letter.  As I am sure you understand, the processing of documents for production, alone, requires more than 48 hours.  As a result, requests that we produce documents within 48 hours are not feasible.  We will prioritize production of additional responsive documents, if any, this week and provide an update in our forthcoming letter.

2. **OSHA 9**.  We produced documents responsive to this request on Friday.

3. **Substantial Completion Dates.**  In our September 21 anticipated production schedule, we noted that we would provide an update regarding the anticipated substantial completion of documents responsive to certain requests.  That update is provided below.  As always, Amazon will continue to produce documents on a rolling basis.

| Request | Anticipated Substantial Completion Date |
|---------|-----------------------------------------|
| OSHA 48 | Week of 11/21 |
| OSHA 51 | Week of 11/28 |
| OSHA 62 | Week of 11/28 |
| OSHA 63 | Week of 11/28 |
| OSHA 70 | Week of 11/21 |

| OSHA 80 | Week of 11/28 |
|---------|---------------|
| SDNY 6  | Week of 11/28 |
| SDNY 9  | Week of 11/28 |
| SDNY 12 | Week of 11/28 |

We are continuing to prioritize responses to the requests that you and OSHA have identified, and we are continuing to move diligently and in good faith to get you the information you've requested as quickly and efficiently as practicable.

Thank you,
Ryan

**Ryan Stewart**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3523 • Cell + 1 202.604.0176 • Fax +1 202.467.0539
RStewart@gibsondunn.com • www.gibsondunn.com

---

**From:** Tarczynska, Dominika (USANYS) <Dominika.Tarczynska@usdoj.gov>
**Sent:** Wednesday, October 19, 2022 2:57 PM
**To:** Ahmad, Zainab <ZAhmad@gibsondunn.com>
**Cc:** Boizelle, Ashley <boizelle@amazon.com>; Schwartz, Jason C. <JSchwartz@gibsondunn.com>; Denerstein, Mylan L. <MDenerstein@gibsondunn.com>; Stewart, Ryan C. <RStewart@gibsondunn.com>; Hennefeld.Daniel@dol.gov; Jaklevic.David.M@dol.gov; Lillywhite, Jacob (USANYS) <Jacob.Lillywhite@usdoj.gov>; Kim, Elizabeth (USANYS) <Elizabeth.Kim@usdoj.gov>; Gemmill, Kevin (USANYS) [Contractor] <Kevin.Gemmill@usdoj.gov>; Oestericher, Jeffrey (USANYS) <Jeffrey.Oestericher@usdoj.gov>; Gitlin, Adam (USANYS) <Adam.Gitlin@usdoj.gov>; McArthur, Nikki <NMcArthur@gibsondunn.com>
**Subject:** Amazon - correspondence

[WARNING: External Email]

Counsel —

Please see the attached letter.

Dominika Tarczynska
Assistant United States Attorney
Southern District of New York
86 Chambers Street, 3rd Floor

New York, NY 10007
Tel: (212) 637-2748
Fax: (212) 637-2686
dominika.tarczynska@usdoj.gov

---

**From:** McArthur, Nikki <NMcArthur@gibsondunn.com>
**Sent:** Friday, October 7, 2022 8:02 PM
**To:** Tarczynska, Dominika (USANYS) <DTarczynska@usa.doj.gov>; Lillywhite, Jacob (USANYS) <JLillywhite@usa.doj.gov>; Kim, Elizabeth (USANYS) <EKim3@usa.doj.gov>; Gemmill, Kevin (USANYS) [Contractor] <KGemmill@usa.doj.gov>
**Cc:** Boizelle, Ashley <boizelle@amazon.com>; Schwartz, Jason C. <JSchwartz@gibsondunn.com>; Denerstein, Mylan L. <MDenerstein@gibsondunn.com>; Ahmad, Zainab <ZAhmad@gibsondunn.com>; Stewart, Ryan C. <RStewart@gibsondunn.com>; Hennefeld.Daniel@dol.gov; Jaklevic.David.M@dol.gov
**Subject:** [EXTERNAL] Amazon Response to FIRREA Subpoena

All,

Please see the attached cover letter for today's production, which can be accessed at the following link: https://ftpus.consilio.com/public/file/2Q2oPYYPYkyJ0xu4HI9Hrw/SDNY001.zip.

Password to follow under separate cover.

Best,
**Nikki McArthur**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3634 • Fax +1 202.831.6015
NMcArthur@gibsondunn.com • www.gibsondunn.com

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is

strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error

and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.