# UNITED STATES OF AMERICA
## UNITED STATES DEPARTMENT OF JUSTICE
### SUBPOENA

**TO:** Amazon.com, Inc.
410 Terry Ave. N.
Seattle, WA 98019

☒ **YOU ARE HEREBY COMMANDED TO PRODUCE** and permit inspection and copying of, at the place and on the date and time indicated, all documents and tangible things described in the attached Rider A, which are necessary in the performance of the responsibility of the United States Department of Justice to investigate, in contemplation of a civil proceeding under 12 U.S.C. § 1833a, a violation of, or a conspiracy to violate, sections 215, 656, 657, 1005, 1006, 1007, 1014, or 1344 of Title 18, or section 287, 1001, 1032, 1341, or 1343 of Title 18 affecting a federally insured financial institution.

**PLACE:** United States Attorney's Office
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007

**DATE AND TIME:** September 19, 2022
10:00 a.m.

The production of documents and things in response to this subpoena must be made under a sworn certification, in the form provided herewith, by the person to whom this subpoena is directed or, if not a natural person, by a person or persons having knowledge of the facts and circumstances relating to such production.

☒ **YOU ARE HEREBY COMMANDED TO APPEAR** before the official of the United States Department of Justice designated below, at the place and time designated below, to give oral testimony in connection with this matter as described in the attached Rider C.

**BEFORE:** Jacob Lillywhite
Assistant United States Attorney

**DATE AND TIME:** September 6, 2022
10:00 a.m.

**PLACE:** United States Attorney's Office
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007

**FAILURE TO COMPLY WITH THE REQUIREMENTS OF THIS SUBPOENA WILL RENDER YOU LIABLE TO PROCEEDINGS IN THE DISTRICT COURT OF THE UNITED STATES TO ENFORCE OBEDIENCE TO THE REQUIREMENTS OF THIS SUBPOENA, AND TO PUNISH DEFAULT OR DISOBEDIENCE.**

Issued under authority of Sec. 951 of the Financial Institutions Reform,
Recovery, and Enforcement Act of 1989, Public Law No. 101-73
(12 U.S.C. § 1833a).



*IN TESTIMONY WHEREOF*

The undersigned official of the United States Department of Justice has hereunto set his/her hand this

19th day of August, 20 22

*Jeannette Vargas* /JL
AUSA Jeannette Vargas, Acting Chief, Civil Division

# RIDER A

## DEFINITIONS

1. "Amazon" refers to Amazon.com, Inc.; Amazon.com Services LLC; Amazon, Inc.; Amazon.com Corporate LLC; Amazon.com LLC; Amazon.com.azdc LLC; Amazon.com.dedc LLC; Amazon.com.indc LLC; Amazon.com.ksdc LLC; Amazon.com.kydc LLC; Amazon.com.nvdc LLC; and Prime Now LLC, as well as to any predecessor, successor, corporate parent, subsidiary, or affiliate of any of these entities and to any officer, employee, agent, representative, or person acting or purporting to act on behalf of any such entity or on behalf of any predecessor, successor, corporate parent, subsidiary, or affiliate.

2. "Amazon Boards" means the boards of directors of any company that falls within the definition of "Amazon" above.

3. "AmCare" means the first-aid center or medical provider located within a Facility.

4. "And" and "or" both mean "and/or."

5. "Any" and "all" both mean "any and all."

6. "Austin" means the electronic system referred to as "Austin" that Amazon uses, among other things, to enter information concerning Worker injuries and illnesses.

7. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

8. "Complaints" means any information raising actual or potential issue or concerns.

9. "Concerning" means relating to, referring to, describing, evidencing, or constituting.

10. "Documents" means without limitation any item described by Federal Rule of Civil Procedure 34, and any written, printed, typed, graphic, photographed, and recorded or otherwise reproduced or stored communication or representation, including but not limited to letters, memoranda, correspondences, e-mails, and canceled checks.  This term includes whatever form and by whatever means such documents may have been created or stored including, but not limited to: any handmade form, such as writing; any photographic form, such as microfilm, microfiche, prints, slides, negatives, photocopies; any mechanical form such as printing, or typing; any electrical, electronic, or magnetic form such as tape recordings, cassettes, or any information on an electronic or magnetic storage device such as floppy diskettes, hard disks, backup tapes, CD-ROMS, optical discs, printer buffers, smart cards, memory calculators, electronic dialers, hard drives, or electronic notebooks; and any printout or readout from any magnetic or solid state storage device.  All documents provided in response to this subpoena are to include all marginalia and post-its, as well as any attachments referred to in or incorporated by the documents.  All documents provided in response to this subpoena are to include all versions of each responsive document, including all drafts and copies of each document.

11. "Ergo Inspected Facilities" means all Facilities subject to a state or federal health and safety inspection since January 1, 2020, that included potential ergonomic hazards in the scope of inspection, including the Facilities designated ALB1, BFI3, BFI4, BOI2, DEN5, DYO1, MCO2, and MDW8.

12. "Facilities" means the facilities operated by Amazon in the United States to transport products to Amazon customers, including Amazon's sortable and non-sortable fulfillment centers, sortation centers, receive centers, delivery stations, crossdocks, air hubs, Prime Now hubs, and specialty facilities.

13. "Facility Staff Members" means current and former employees or consultants who performed work in or concerning one or more Facilities and are not National Staff Members or Regional Staff Members.

14. "Gensuite" means the electronic system referred to as "Gensuite" that Amazon previously used, among other things, to enter information concerning Worker injuries and illnesses.

15. "Health and Safety" means Worker health and safety at one or more Facilities, including actual or potential hazards and actual, reported, or recorded injuries or illnesses.

16. "H&S Responsible Person" means each Amazon employee, executive, or officer whose responsibilities included (in whole or in part) Health and Safety at one or more Facilities during the Relevant Period.

17. "H&S Management Chain" means each H&S Responsible Person, as well as those who supervise, oversee, or manage an Amazon employee or executive in this management chain or did so during the Relevant Period.

18. "Including" means "including, but not limited to."

19. "Injury Rate" means a rate at which Workers in one or more Facilities become injured or ill, as calculated by Amazon, regardless of whether it has been calculated according to all injuries or illnesses, only those injuries or illnesses that require job restriction or days off work, or in some other fashion.

20. "Manager" means a Worker who supervised, oversaw, or managed one or more other Workers.

21. "National Staff Members" means current and former Amazon employees or consultants whose responsibilities, at some point during the Relevant Period, concerned all Facilities across the United States.

22. "OSH Act" means the Occupational Safety and Health Act of 1970.

23. "Outside Medical Provider" means a medical provider, whether an individual, clinic, hospital, or practice, that provides a medical diagnosis or care to an Amazon Worker outside of an Amazon facility.

24. "Process" means a specific job type in the Facilities.

25. "Productivity Rate" means the rate at which a Worker performed one or more of the tasks assigned to the Worker.

26. "Productivity Requirement or Guidance" means any requirement, expectation, or guidance concerning Productivity Rates.

27. "Relevant Financial Institution" means a financial institution that (a) since August 1, 2017, has been a counterparty or signatory to agreements with Amazon involving at least $90 million in aggregate; and (b) with which, during the Relevant Period, Amazon has communicated about Health and Safety, Injury Rates, or compliance with applicable labor laws or regulations (including the OSH Act) in one or more Facilities.

28. "Relevant Period" means the time period from August 1, 2012, to the present.

29. "Regional Staff Members" means current and former Amazon employees or consultants other than National Staff Members whose responsibilities, at some point during the Relevant Period, concerned multiple Facilities.

30. "Safety Managers" means the Amazon employees who, at some point during the Relevant Period, supervised one or more Facility's safety officers.

31. "Time Off Task" means the time calculated by Amazon under that heading.

32. "Worker" means anyone who worked at a Facility during the Relevant Period, whether classified by Amazon as an employee, temporary employee, independent contractor, or something else, including delivery drivers who lifted packages in a Facility and Amazon employees assigned to a region, nationwide, or worldwide who performed work at a Facility.

33. "Worker Fatality" means a Worker who died at a Facility during the Relevant Period, whether or not Amazon determined the cause of death was work-related.

34. "You" and "your" refer to Amazon.

## INSTRUCTIONS

1. Unless otherwise specified, this subpoena calls for the production of all documents responsive to the document requests below, and which are in your possession, custody, or control regardless of where such documents or information are located.  Please include all documents that relate to or used during the relevant time period even if they had been prepared or published prior.  Further, if any document requested is no longer in your possession, custody, or control, identify such document completely and provide the following information regarding the document:

    a.   Its present location and custodian;

      b.      The manner in which it was disposed, including the date of disposal, the reason of disposal, the person authorizing the disposal, and the person(s) who disposed of the document.

2. If no documents exist that are responsive to a request below, please include, in your response to this subpoena and at the time of production, a written statement to that effect.

3. For any document or part thereof that you decide not to produce by reason of a claim of privilege, please state the privilege being claimed, give an explanation for your claim of such privilege, and provide the following information concerning the putatively privileged document:

    a. The type of document;

    b. The date of the document;

    c. The subject matter of the document;

    d. The author of the document, including his or her address, telephone number, and role in relation to Amazon;

    e. All recipients of the document, including their addresses, telephone numbers, and roles in relation to Amazon;

    f. The number of pages of the document.

4. In responding to this subpoena, all documents produced should be segregated and labeled so as to identify which request(s) such documents respond to. Alternatively, you shall identify, by bates-numbers, the documents responsive to each request herein.

5. In responding to this subpoena, please locate, gather, and produce documents from your files and other sources in such a manner as to ensure that the source and location of each document may be readily determined.

6. In responding to this subpoena, if you locate responsive documents in file folders or other containers, please produce these folders and containers, including any labels identifying such folders or containers, together with the responsive documents contained therein.

7. In responding to this subpoena, please do not separate documents attached to each other unless you also identify such separation and provide records sufficient to permit the reconstruction of such grouping of documents.

8. In responding to this subpoena, if you locate any document that have markings on both sides, please produce both sides of the document.

9. In responding to this subpoena, please locate, gather, and produce documents or information stored electronically in accordance with the "Document and ESI Production Specifications," attached as Rider B to this subpoena.

10. In identifying a former employee or contractor, please provide the date of separation as well as that employee's or contractor's last known home address, phone number, and email address.

11. Please promptly produce responsive documents or information located at any time after your initial response to this subpoena.

## DOCUMENT REQUESTS

1. All documents reflecting or concerning statements made by Amazon about Health and Safety, Injury Rates, or compliance with applicable labor laws or regulations (including the OSH Act) at one or more Facilities to one or more Relevant Financial Institutions.

2. Documents reflecting the terms of any transactions during the Relevant Period between Amazon and a Relevant Financial Institution.

3. Documents responsive to the requests set forth in the subpoenas issued by the United States Department of Labor Occupational Safety and Health Administration ("OSHA") on August 2, 2022, in connection with Facilities designated ALB1, BOI2, DEN5, DYO1, MCO2, and MDW8, with "Sibling Facilities" replaced by "Facilities" (as defined in this subpoena) throughout OSHA's requests.

4. Documents sufficient to identify each current and former:

    a. National Staff Member who is or was an H&S Responsible Person;

    b. National Staff Member who is or was part of the H&S Management Chain;

    c. committee of an Amazon Board that has or had any responsibility for Health and Safety at the Facilities;

    d. member of an Amazon Board who, singly or together with others, has or had any responsibility for Health and Safety at the Facilities;

    e. Regional Staff Member who is or was an H&S Responsible Person; and

    f. Regional Staff Member who is or was part of the H&S Management Chain.

5. For each current and former National Staff Member who is or was an H&S Responsible Person, documents sufficient to identify that Member's position, work location, and responsibilities concerning Health and Safety in the Facilities.

6. Documents reflecting or concerning any statement or suggestion by a current or former H&S Responsible Person that the pace of work for any Process in the Facilities did or could create a safety hazard.

7. Documents sufficient to identify each incident involving Worker injury or illness that an H&S Responsible Person determined was or may have been caused, in whole or in part,

5

by the pace of work, including the Facility where the incident occurred, the name of the Worker involved in the incident, the nature of the injury or illness work, and date of the incident.

8. Documents reflecting all Productivity Requirements or Guidance in effect at any Facility during the Relevant Period.

9. Documents sufficient to show the method or methods by which each Productivity Requirement or Guidance in effect at any Facility during the Relevant Period was developed, including whether the impact on Health and Safety was considered, and if so, how the impact on Health and Safety was considered.

10. Documents sufficient to identify the role of (a) National Staff Members, (b) Regional Staff Members, and (c) Facility Staff Members in establishing Productivity Requirements or Guidance in effect at any Facility during the Relevant Period.

11. Documents sufficient to identify each contractor who was contacted or retained by a National Staff Member or Regional Staff Member and who did any work (including a site visit or review of any data sent by Amazon) in connection with any potential risk to Health and Safety created by the pace of work for any Process in a Facility, whether or not that consultant was formally retained or an analysis was completed.

12. For each Process in the Facilities, documents concerning or reflecting any analysis conducted by or for Amazon of whether some pace of work poses a risk to Health and Safety.

13. For each Ergo Inspected Facility, video surveillance of Workers in the 30 days prior to each inspection by state or federal health and safety inspectors.

14. For each Ergo Inspected Facility, all documents (including internal communications) concerning the pace of work in the Facility or the Facility's input or output (whether in trucks, boxes, items, weight, or otherwise), or anything that would reduce pace of work or input or output, on a day that Facility was being inspected by state or federal health and safety inspectors.

15. Documents prepared by National Staff Members or Regional Staff Members concerning or reflecting any audit, analysis, monitoring, or other review of Injury Rates at one or more Facilities.

16. Documents prepared by National Staff Members or Regional Staff Members concerning or reflecting any audit, analysis, monitoring, or other review of the effect of one or more Outside Medical Providers on Injury Rates.

17. Documents sufficient to identify the individuals who participated in the drafting of Amazon's "Delivered with Care" report.

18. All documents, including internal communications, prepared by National Staff Members or Regional Staff Members (including consultants) concerning AmCare's 21-Day

  Program.

19. All documents, including internal communications, concerning Amazon's 2021 decision to alter its policies or practices concerning Time Off Task and any prior or subsequent consideration of these or other changes with respect to Time Off Task.

20. All documents, including internal communications, concerning Amazon's decision to transition from Gensuite to Austin.

21. All documents, including internal communications, prepared by National Staff Members or Regional Staff Members (including consultants) concerning or referencing actual or potential risks to Health and Safety posed by the pace of work at any Facility.

22. All documents prepared by National Staff Members or Regional Staff Members (including consultants) concerning turnover at one or more Facilities that reference injuries in those Facilities.

23. All documents prepared by National Staff Members or Regional Staff Members (including consultants) forecasting the labor pool available to work in one or more Facilities.

24. All documents, including internal communications, prepared by National Staff Members or Regional Staff Members (including consultants) concerning or reflecting recommendations made by Safety Managers related to the pace of work, struck-by hazards, or heat hazards that were not followed.

25. All documents prepared by National Staff Members or Regional Staff Members (including consultants) concerning any actual or reported instances of:

  a. pressure from Managers not to report injuries;

  b. retaliation against a Worker for reporting an injury, reporting work restrictions, or going out on medical leave;

  c. the failure to fill out an Initial Report Form, an Initial Report of Injury Form, or the predecessors of such forms within one week of a Worker report of injury or illness; or

  d. the failure to record an injury or illness on a Facility's 300 log.

26. All documents, including communications, prepared by National Staff Members or Regional Staff Members concerning the actual or potential effect of one or more Outside Medical Providers on the Injury Rate at one or more Facilities.

27. All documents prepared by, prepared for, or shared with National Staff Members or Regional Staff Members concerning any Worker Fatality.

28. All documents prepared by National Staff Members (including consultants) concerning

statements, including public statements, to representatives of any branch of federal government about Health and Safety or compliance with applicable labor laws or regulations at one or more Facilities.

29. Minutes of any Amazon Board meetings, including committee meetings, concerning Health and Safety, Injury Rates, or compliance with the OSH Act at one or more Facilities.

30. All documents presented at any Amazon Board meeting, including committee meetings, concerning Health and Safety, Injury Rates, or compliance with the OSH Act at one or more Facilities.

# RIDER B

I. **Electronically Stored Information (ESI)**

   a. Electronically stored information (ESI) should be produced in accordance with these specifications. If compliance with these specifications would cause undue burden, please contact the government attorney designated on the subpoena to discuss. Please do not vary from these standards without prior approval from a government attorney.

   b. ***All ESI must be produced both in native file format, and in electronically converted TIFF image format including extracted text and load files.***

II. **Transactional and Database Records**

   a. Transactional records extracted from a database shall be produced in delimited ASCII text data format or in another easily computer-importable non-proprietary file format that does not incur a loss of data. Field headers shall be included for each column of data, and a data dictionary or other explanation of the contents of each column shall be provided.

   b. Images of items associated with transactions, such as checks, shall be produced in graphic data files in a commonly readable, non-proprietary format, such as TIFF or JPEG, with the highest image quality maintained, and named in a manner that uniquely associates them with the relevant transaction record(s).

   c. Where responsive ESI is contained in a complex relational or proprietary database (*e.g.*, Oracle, SAP, SQL, MySQL, QuickBooks) from which records cannot readily be exported without loss of related data, please call the government attorney to arrange a meet-and-confer. Identify the database type and version number, and provide the database dictionary and user manuals or other documentation sufficient to describe the structure and content of the database. The meet-and-confer will evaluate, for example, production of a backup of the database (*e.g.*, an .SDF file for a SQL implementation), or other alternatives, such as delimited ASCII exports of custom queries.

   d. <u>**Banks**</u>: Please produce records of account transactions as indicated in paragraphs a. and b. above, and not simply in the form of an image or printout of a monthly statement.

III. **Native File Format for ESI**

   a. All documents must be provided in the original file or "native" format in which the document was created.

   b. System and executable files should not be produced unless specifically requested.

   c. Email files must be delivered in their native format (*e.g.*, Outlook .PST or .msg, Lotus .NSF, etc.).

   d. Relevant information stored in database applications (*e.g.*, Oracle, Sybase, or MSSQL) should only be produced after first consulting with the government attorney to determine method and format of delivery.

    e.    Files must be copied and produced in such a manner as to preserve all associated document and file system metadata. See list of required metadata fields below.

    f.    Note: a PDF file is *not* considered a native file unless the document was initially created as a PDF.

## IV. Electronically Converted TIFF Format for ESI

    a.    <u>In addition to the native format</u>, you must also provide an electronically-produced (*i.e.*, not a printed and scanned) TIFF image version, including extracted text and load files, and available metadata, for each document produced in native format.

    b.    The electronically converted TIFF production must comply with the TIFF Image Production and Cross Reference File Specifications set forth below.

    c.    The electronically converted TIFF production must be provided in a Concordance .dat load, together with images and the necessary image cross-reference file. *See* the Delivered Fields Specifications below.

## V. Custodian, ESI Source Location, and Path—Naming Conventions

    a.    For each document that is produced, the custodian; the ESI source location (*e.g.*, network server, network hard drive, media); and the network or folder path, must be specified in a .dat file.

    b.    All ESI provided must be broken down in the following folder structure: by custodian, then by data category (*e.g.*, JohnDoe/Mailfiles/datafiles/desktopfiles).

## VI. Production of Paper Records

    a.    Paper records should be produced in ASCII delimited format, as detailed below.

        <u>ASCII delimited text file (.dat) format</u>
          i.    The first line of the text file must contain the field names.
          ii.    In most instances, the StartBates should be the Image Key field unless another field has been designated the key field by the Government.
          iii.    The delimiters used should be the default values used by Concordance: comma (ASCII value 20); quote (ASCII value 254); and newline (ASCII value 174).
          iv.    Produce a page header indicator in the following format, <<**batesno**>>, on a separate line for every page of OCR.

    b.    If there will be more than one production, please confirm the database fields and structure remain consistent between data deliveries.

## VII. Delivered Fields Specifications

The database and load file provided must contain, at minimum, the first and last Bates number for each document, and all applicable OCR text. The .dat file should contain a path to the OCR. The OCR of the documents should be on a document level.

VIII. **TIFF Image Production and Cross Reference File Specifications**

   a. Documents should be electronically converted or, if need be, scanned (at 300 dpi) into single-page CCITT Group IV TIFF files. TIFF file names should match the assigned Bates number of the underlying document page, should be unique, and sequentially numbered. Searchable PDF files will be accepted only after a consultation between the provider and USAO technical support staff. Multi-page TIFF files are strongly discouraged.

   b. Bates numbers should be electronically "endorsed" onto images. The file name assigned to the image should match the underlying document's Bates number. Bates numbers should be alpha-numeric, with the numeric portion of the stamp being "zero-filled". As an example, as assigned Bates numbered series of documents such as "ABC1", "ABC2", "ABC3" would be unacceptable, whereas "ABC000001", "ABC000002", "ABC000003" is preferred.

   c. Images should be placed on delivered media in a master folder named **XIMAGES**.

   d. Cross-reference File. TIFF files must be accompanied with an image cross-reference file, preferably an Opticon .opt file, otherwise an IPRO .lfp file will be acceptable. *See* below. This file must associate each Bates number with the corresponding single-page TIFF file name and indicate its location on the media provided. The file should contain one line for every page in the collection, and must contain the document Bates number and the fully qualified path to the image, beginning with the media volume.

   Below is a sample for an Opticon .opt file

   ```
   XYZCO_00663941,,D:\Company\Doe Production\AUTO0003\XYZCO_00663941.tif,Y,,,1
   XYZCO_00663942,,D:\Company\Doe Production\AUTO0003\XYZCO_00663942.tif,Y,,,1
   XYZCO_00663943,,D:\Company\Doe Production\AUTO0003\XYZCO_00663943.tif,Y,,,2
   XYZCO_00663944,,D:\Company\Doe Production\AUTO0003\XYZCO_00663944.tif,,,,
   XYZCO_00663945,,D:\Company\Doe Production\AUTO0003\XYZCO_00663945.tif,Y,,,1
   XYZCO_00663946,,D:\Company\Doe Production\AUTO0003\XYZCO_00663946.tif,Y,,,2
   XYZCO_00663947,,D:\Company\Doe Production\AUTO0003\XYZCO_00663947.tif,,,,
   ```

   Below is a sample for an IPRO .lfp file:

   ```
   IM,ABC-000001,D,0,@VOL01;IMG_0000001;ABC-000001.tif;2,0
   IM,ABC-000002,,0,@VOL01;IMG_0000001;ABC-000002.tif;2,0
   IM,3542-S-000001,D,0,@VOL01;IMG_0000001;3542-S-000001.tif;2,0
   IM,3542-S-000002,,0,@VOL01;IMG_0000001;3542-S-000002.tif;2,0
   IM,3542-S-000003,,0,@VOL01;IMG_0000001;3542-S-000003.tif;2,0
   ```

IX. **Delivery Media**

   a. All data and image deliveries must be made through a file-sharing site approved by this Office (*i.e.* USAfx), thumb drive, or USB 3.0 external hard drive, depending on data volume.

## X. Metadata Fields

The production should include the following metadata fields:

```
Prodbeg
Prodend
Prodbegattach
Prodendattach
From
To
CC
BCC
Subject
Date sent
Time Sent
Author
Date Created
Time Created
Date last Modified
Time Last Modified
File Name/Document Name
File Extension
Document Type/Record Type
MD5 Hash
Custodian
Page Count
File Size
Original Folder Path
```

**Rider C**
**Notice of List of Topics for Rule 30(b)(6) Deposition**

PLEASE TAKE NOTICE that, under Rule 30(b)(6) of the Federal Rules of Civil Procedure, the United States of America, by its attorney, Damian Williams, the United States Attorney for the Southern District of New York, will take the deposition upon oral examination of defendant Amazon.com, Inc. ("Amazon"), on September 6, 2022, at 10:00 a.m., at the United States Attorney's Office for the Southern District of New York, 86 Chambers Street, Third Floor, New York, NY, concerning the subjects described below.  The deposition will be stenographically recorded and/or videotaped.

PLEASE TAKE FURTHER NOTICE that, under Rule 30(b)(6), Amazon has a duty to designate one or more of its officers, directors or agents to testify with regard to the subjects set forth below.  *See* Fed. R. Civ. P. 30(b)(6).  In the event that more than one representative is designated to testify on behalf of Amazon with regard to these subjects, Amazon is requested to provide the undersigned counsel with the names of the deponents designated and the subjects on which each will testify at least one week prior to the date of the deposition.

PLEASE TAKE FURTHER NOTICE that the definitions set forth in Rider A to this subpoena apply to this notice, except that "Relevant Period" shall mean "on or after August 1, 2017," for purposes of this notice.

**SUBJECTS OF EXAMINATION**

The subjects of this deposition under Rule 30(b)(6) will be the following:

**A. Roles and Responsibilities of National and Regional H&S Responsible Persons**

The roles and responsibilities, by title, of National Staff Members and Regional Staff Members who were H&S Responsible Persons at any point during the Relevant Period.

### B. National and Regional Pace of Work Analyses

Analyses conducted or relied upon by National Staff Members or Regional Staff Members (including contractors) during the Relevant Period of any actual or potential risk to Health and Safety Information created by the pace of work for any Process in one or more Facilities.

### C. Productivity Requirements or Guidance

Amazon's development of Productivity Requirements or Guidance during the Relevant Period, including:

- how Amazon developed Productivity Requirements or Guidance
- information about any analyses that informed that development;
- what involvement National Staff Members, Regional Staff Members, and Facility Staff Members (by title) had in that development, if any; and
- changes in Amazon's Productivity Requirements or Guidance, supporting analyses, and relative involvement of National Staff Members, Regional Staff Members, and Facility Staff Members (by title).

### D. Review of Injury Rates

National Staff Members' and Regional Staff Members' review of Injury Rates during the Relevant Period, including:

- which Staff Members (by title) conducted such review;
- how they conducted such review; and
- what further actions, if any, resulted from such review.

### E. Strategies for Reducing Injury Rates

Actions taken or recommended during the Relevant Period by National Staff Members or Regional Staff Members to reduce Injury Rates at one or more Facilities—excluding actions intended to remediate a safety hazard—including changes to:

- the decision-making process concerning whether to record an injury or illness on an OSHA 300 log;
- the frequency or circumstances in which AmCare staff or safety team member refers a worker to an Outside Medical Provider; and
- Amazon's relationship with certain Outside Medical Providers.

### F. Failure to Record Recordable Injuries

National Staff Members' and Regional Staff Members' knowledge during the Relevant Period concerning how Amazon determined whether to record an injury or illness on an OSHA

300 log, including how often Amazon failed to record OSHA-recordable injuries on an OSHA 300 log and why.

### G. Review of Outside Medical Providers

National Staff Members' and Regional Staff Members' review of Outside Medical Providers in connection with the frequency with which they provided care beyond first-aid, recommended work restrictions or medical leave, or found an injury or illness to be work-related, including:

- which Staff Members (by title) conducted such review;
- how they conducted such review; and
- what actions by Amazon, if any, resulted from such review.

### H. Vice President of Worldwide Workplace Health & Safety ("H&S VP")

Amazon's current and former H&S VPs' knowledge during the Relevant Period concerning ergonomic and other potential Health & Safety hazards related to the pace of work at the Facilities and what steps, if any, the H&S VPs took or recommended Amazon take to analyze or remediate these potential hazards.

### I. Statements Concerning Injury Rates and Health and Safety

The preparation during the Relevant Period of Amazon statements to the public, to officers or agencies of the federal government, or to Relevant Financial Institutions concerning (a) Injury Rates or (b) to Relevant Financial Institutions only, concerning Health and Safety or compliance with applicable labor laws and regulations, including:

- who was involved in preparing such statements;
- who made final decisions about the text of such statements; and
- what diligence was done, if any, in connection with the portions of these statements concerning Injury Rates.