| | |
|---|---|
| **From:** | Hennefeld, Daniel - SOL |
| **To:** | Lillywhite, Jacob (USANYS); "Stewart, Ryan C."; "Denerstein, Mylan L."; "Ahmad, Zainab" |
| **Cc:** | "Boizelle, Ashley"; jschwartz; Jaklevic, David M - SOL; Kim, Elizabeth (USANYS); Gemmill, Kevin (USANYS) [Contractor]; Oestericher, Jeffrey (USANYS); Gitlin, Adam (USANYS); "McArthur, Nikki"; Tarczynska, Dominika (USANYS) |
| **Subject:** | [EXTERNAL] RE: Amazon |
| **Date:** | Friday, December 2, 2022 3:44:48 PM |

I write now in response to your suggestion of a tolling agreement with OSHA. Thank you for the suggestion, but we cannot agree to enter into a tolling agreement for these inspections. Such an agreement would be unprecedented for enforcement inspections under the OSH Act, and would not be considered by DOL absent extraordinary circumstances, which are not present here. Furthermore, we believe Amazon can and should be able to complete the outstanding productions to OSHA in a timely manner. Thanks.

- Dan


Daniel Hennefeld
Counsel for Occupational Safety and Health
Office of the Solicitor, Region II
U.S. Department of Labor
New York, New York
Phone (646) 264-3688
E-mail Address:  hennefeld.daniel@dol.gov

*This message may contain information that is privileged or otherwise exempt from disclosure under applicable law. Do not disclose without consulting the Office of the Solicitor. If you think you received this email in error, please notify the sender immediately.*

**From:** Hennefeld, Daniel - SOL
**Sent:** Friday, December 2, 2022 12:53 PM
**To:** Lillywhite, Jacob (USANYS) <Jacob.Lillywhite@usdoj.gov>; Stewart, Ryan C. <RStewart@gibsondunn.com>; Denerstein, Mylan L. <MDenerstein@gibsondunn.com>; Ahmad, Zainab <ZAhmad@gibsondunn.com>
**Cc:** Boizelle, Ashley <boizelle@amazon.com>; jschwartz <jschwartz@gibsondunn.com>; Jaklevic, David M - SOL <Jaklevic.David.M@dol.gov>; Kim, Elizabeth (USANYS) <Elizabeth.Kim@usdoj.gov>; Gemmill, Kevin (USANYS) [Contractor] <Kevin.Gemmill@usdoj.gov>; Oestericher, Jeffrey (USANYS) <Jeffrey.Oestericher@usdoj.gov>; Gitlin, Adam (USANYS) <Adam.Gitlin@usdoj.gov>; McArthur, Nikki <NMcArthur@gibsondunn.com>; Tarczynska, Dominika (USANYS) <Dominika.Tarczynska@usdoj.gov>
**Subject:** RE: Amazon

I am writing to add a few things on behalf of DOL, supplementing Jake's email below, in response to Ryan's Nov. 30 email.

First, as Jake noted, we do appreciate your efforts to make progress on the outstanding issues so that we can complete and conclude the inspections.  We hope that progress continues.

Second, please note that nearly all of the outstanding high-priority document requests discussed in the recent email exchange are responsive to OSHA's subpoenas as well as SDNY's, and are needed by OSHA for its inspections.  In particular, this includes the ESI productions, which are responsive to a number of OSHA requests.

Third, to clarify, in the event that we are unable to successfully resolve the outstanding production issues, DOL would move jointly with SDNY to enforce the relevant OSHA subpoenas in the Southern District of NY, which of course is the location of one of the inspection sites.  Again, we hope such action will be unnecessary provided we can continue the aforementioned progress toward resolution and completion.

Finally, I will respond separately today to your suggestion about tolling OSHA's statute of limitations.

Thanks.

- Dan

Daniel Hennefeld
Counsel for Occupational Safety and Health
Office of the Solicitor, Region II
U.S. Department of Labor
New York, New York
Phone (646) 264-3688
E-mail Address:  hennefeld.daniel@dol.gov

*This message may contain information that is privileged or otherwise exempt from disclosure under applicable law. Do not disclose without consulting the Office of the Solicitor. If you think you received this email in error, please notify the sender immediately.*

---

**From:** Lillywhite, Jacob (USANYS) <Jacob.Lillywhite@usdoj.gov>
**Sent:** Friday, December 2, 2022 12:24 AM
**To:** Stewart, Ryan C. <RStewart@gibsondunn.com>; Denerstein, Mylan L. <MDenerstein@gibsondunn.com>; Ahmad, Zainab <ZAhmad@gibsondunn.com>
**Cc:** Boizelle, Ashley <boizelle@amazon.com>; jschwartz <jschwartz@gibsondunn.com>; Hennefeld, Daniel - SOL <Hennefeld.Daniel@dol.gov>; Jaklevic, David M - SOL <Jaklevic.David.M@dol.gov>; Kim, Elizabeth (USANYS) <Elizabeth.Kim@usdoj.gov>; Gemmill, Kevin (USANYS) [Contractor] <Kevin.Gemmill@usdoj.gov>; Oestericher, Jeffrey (USANYS) <Jeffrey.Oestericher@usdoj.gov>; Gitlin, Adam (USANYS) <Adam.Gitlin@usdoj.gov>; McArthur, Nikki <NMcArthur@gibsondunn.com>; Tarczynska, Dominika (USANYS) <Dominika.Tarczynska@usdoj.gov>
**Subject:** RE: Amazon

**INFO ONLY: This email originated outside the Department of Labor but from a validated government source. Do not click (select) links or open attachments unless you recognize the sender and know the content is safe. Report suspicious emails through the "Report Phishing" button on your email toolbar.**

Counsel,

We appreciate the movement from Amazon. If this progress continues and we are able to reach agreement on the issues identified below, we are hopeful that we can avoid filing our motion to enforce.

- **Nationwide per-associate productivity data.** As we have told you, this data is particularly important to us. We look forward to hearing about timing for a production of the NACF data tomorrow. Again, if you have not found a way to produce the full NACF data promptly, we expect to have a call very shortly connecting our respective data experts.

- **Dates for the remaining corporate deponents.** It is important that we hold these depositions before February 1, rather than February 15. We look forward to hearing back about the earliest available dates for those deponents tomorrow.

- **Dates for the remaining facility-specific deponents.** We look forward to calendaring dates promptly for               ,              , and designees for OSHA's Rule 30(b)(6) topics.

- **ESI Productions.** We appreciate the allocation of additional resources to ESI review. Please let us know as soon as possible, based on the rate of the review you see, whether we can expect the production of all remaining ESI under our search protocol by January 6. If you don't believe you can make this deadline with 250 hours of associate review each day, please advise us of the rate of review.

    - We still do not understand your explanation about the ESI counts. The by-custodian hit count for a given custodian represents all documents which that custodian is included in the "all custodian" field, whether or not they are the assigned "primary custodian," right? What do you mean when you say "duplicates [are] removed" from this count? We expect that duplicates within a given custodian's hits would be removed from the by-custodian hit count. However, we would expect that near duplicates (documents duplicated but for metadata) across custodians' hits—e.g., an email sent to both              and              —would be counted in the by-custodian hits for each custodian for which they appeared (so, once for              and again for              ), so that that the by-custodian hits accurately reflect the total number of hits for that custodian. Is that correct? (If not, is the system assigning near duplicates to only one of several custodians with that document in the by-custodian hits? If none of these matching custodians are the "primary custodian"—as you say is the case for some of these hits—how is that choice made?) If our expectation about near duplicates is right—an expectation that is a necessary consequence of accurate by-custodian hit counts—that means that near duplicates are counted multiple times when we sum the by-custodian hit counts, and therefore the total number of unique hits (removing near duplicates) is less than that sum.

- **Nationwide ergonomic assessments.** Please confirm you will produce, in response to our high-priority request seeking "nationwide ergonomic analyses" responsive to OSHA Request Nos. 62-64, 67, SDNY Request Nos. 11, and/or 12, documents concerning potential ergonomic hazards, risk factors for MSDs, or pace of work at multiple Facilities (not in a single region),

created by or for National Staff Members since August 1, 2012.  By "nationwide ergonomic analyses" we meant to capture documents related to analyses that were meant to provide information about ergonomic hazards/MSD risks/pace of work at facilities across the country, not a single site or region.  We see in your objections that you proposed limiting this request to the last five years and only to studies conducted "for the purposes of assessing whether associate pace of work posed a risk to associate health and safety."  That is too narrow temporally, in the sorts of studies you would capture, and the responsive documents (just final reports) you would produce.  We don't believe there are many such nationwide studies since August 2012.

We can confirm the dates you offered for the depositions of                    ,         ,             , and                     .  We plan to conduct those depositions in person in the major cities near which these deponents are located.  We will confirm the exact locations, but we expect we will hold them in the U.S. Attorneys' Offices in D.C., Denver, and Jacksonville.  They will be recorded stenographically and by video.

To your question about the Austin and Gensuite exports, yes, we ask that you produce the same fields for Austin that you have produced in the Austin exports to date.  (We assume you produced all relevant text fields.)  For Gensuite, please produce corresponding fields, as well as any other relevant fields.  Similarly, for the Return to Work database, please produce the same fields, assuming you produced all relevant fields.  If you excluded text fields from any of these exports that are not obviously irrelevant, please let us know what you excluded.

With respect to venue, we have asked multiple times for Amazon to consent to our filing a consolidated motion to compel in SDNY.  We have not received such consent.  Accordingly, we expect we would proceed by separate motions to enforce in WDWA and SDNY.  We note again that we are hopeful, in light of the progress reflected below, that we can avoid filing those motions.

Best,

Jake

**From:** Stewart, Ryan C. <RStewart@gibsondunn.com>
**Sent:** Wednesday, November 30, 2022 10:29 PM
**To:** Lillywhite, Jacob (USANYS) <JLillywhite@usa.doj.gov>; Denerstein, Mylan L. <MDenerstein@gibsondunn.com>; Ahmad, Zainab <ZAhmad@gibsondunn.com>
**Cc:** Boizelle, Ashley <boizelle@amazon.com>; Schwartz, Jason C. <JSchwartz@gibsondunn.com>; Hennefeld.Daniel@dol.gov; Jaklevic.David.M@dol.gov; Kim, Elizabeth (USANYS) <EKim3@usa.doj.gov>; Gemmill, Kevin (USANYS) [Contractor] <KGemmill@usa.doj.gov>; Oestericher, Jeffrey (USANYS) <JOestericher@usa.doj.gov>; Gitlin, Adam (USANYS) <AGitlin@usa.doj.gov>; McArthur, Nikki <NMcArthur@gibsondunn.com>; Tarczynska, Dominika (USANYS) <DTarczynska@usa.doj.gov>
**Subject:** [EXTERNAL] RE: Amazon

Counsel:  We write in response to Mr. Lillywhite's Sunday evening email below.  As we

have repeatedly made clear, Amazon is committed to cooperating with the government's respective investigations, notwithstanding their expansive nature, unreasonably compressed deadlines, and constantly shifting demands and priorities. Amazon has been working diligently and as quickly as it can to produce documents, data, information, and witnesses to OSHA and SDNY and will continue to do so.

Mr. Lillywhite's November 21 email threatened to go to court if Amazon did not agree by November 23 to meet five priority sets of demands (on arbitrary deadlines). In our November 23 response, Amazon committed to meeting those demands promptly, within weeks of the government's deadlines and within OSHA's six-month limitations period.

Amazon believed that its significant concessions on November 23 would resolve the government's purported concerns. Instead of acknowledging Amazon's continued, good-faith effort to reach agreement and withdrawing the government's threat to go to court, however, Mr. Lillywhite's November 27 email sets out a different list of fifteen demands (ten of which were not included in the November 21 email), again threatening to go to court if Amazon does not commit, in a matter of days, to complying with new arbitrary deadlines for each. (And Mr. Hennefeld wrote separately today to convey additional, apparently uncoordinated requests from OSHA.)

This is (at least) the fifth time that SDNY has threatened litigation if Amazon does not comply with demands for documents and information on an impractical timeline. The regular issuance of these demands is neither necessary nor appropriate under the circumstances. We have repeatedly explained that Amazon is prioritizing OSHA's requests due to OSHA's six-month statute of limitations. We also have offered to discuss a short tolling agreement if OSHA feels it needs more time to complete its investigation. We have not received any response to that offer. Instead, we continue to receive additional demands, the bulk of which relate to SDNY requests (e.g., ESI and depositions not jointly noticed by OSHA).

To be clear, and as set forth below, Amazon is not refusing to respond to any of these requests or refusing to do so promptly. Amazon can and will provide what you are seeking as expeditiously as we can. We also remain open to working with you on narrowing these demands to help us to provide certain, higher-priority responses earlier. Our substantive responses to your latest list of demands is below. These anticipated dates are based on an assumption that no new requests or priorities will be added during this time.

**Depositions of** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. In your November 21 email you asked Amazon to commit to producing all responsive ESI (approximately 25,000 family documents) for these individuals by December 6 and to holding each of their depositions the very next week. In response, Amazon committed to devote additional resources towards ESI, substantially complete ESI production for these individuals on or around December 9 (within days of your request), and produce the employees for deposition in December. You have now asked for the earliest dates in December that each can be available for a deposition and where each is located.

At this time, we can offer the following dates and locations for these depositions:

- December 16: ▓▓▓▓▓▓▓▓▓▓ (Washington, DC)
- December 19: ▓▓▓▓▓▓▓ (Denver, CO)

Please confirm whether these dates and locations work for you.

As promised in our Thanksgiving-eve email, we will work with you promptly to confirm dates for ▓▓▓▓▓▓ and ▓▓▓▓▓▓ in December to the maximum extent feasible. We anticipate providing an update on Friday.

**Dates for the "remaining corporate depositions."** We assume you are referring to the noticed depositions of ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛. None of these individuals (or their depositions) was referenced in your November 21 email.

Out of these individuals, ⬛⬛⬛ is the only employee who has been jointly noticed by both OSHA and SDNY. Accordingly, Amazon will commit to producing ⬛⬛⬛ for deposition promptly in December or early January, pending his availability, in light of OSHA's six month statute of limitations. We are coordinating with him regarding his availability and will provide an update this Friday. Further, Amazon agrees to review and produce ⬛⬛⬛ responsive ESI before his deposition. Pursuant to the custodian-by-custodian review process you requested, we plan to review ⬛⬛⬛ ESI after completing review for the first four custodians listed above.

With respect to the remaining depositions, these employees were only noticed by SDNY, so the OSH Act's statute of limitations is not an expediting factor. Nevertheless, Amazon will commit to producing these witnesses for deposition on a rolling basis, staged with substantial production of their ESI. We are coordinating with these witnesses to provide availability in January or, if necessary, February (but no later than February 15). At this time, we can offer the following dates/locations:

- January 18: ⬛⬛⬛ (Saint Johns, FL)
- January 27: ⬛⬛⬛ (Washington, DC)

Please confirm whether these dates and locations work for you.

We will get back to you promptly regarding dates in this time frame for ⬛⬛⬛. We anticipate providing an update by Friday.

**Dates For The Remaining Facility-Specific Depositions.** As you may know, we have been in touch with the relevant OSHA attorneys, Jing Acosta and Emily Wu, regarding scheduling and logistics for these depositions. Specifically, we have proposed:

- ⬛⬛⬛: December 12, 13, or 14
- ⬛⬛⬛: December 20, 21, or 22

The only remaining fact witnesses are ⬛⬛⬛, who has been out of work and unavailable this week. We will revert back promptly with the relevant DOL attorneys to finalize these dates as well as appropriate dates and designees for the OSHA Rule 30(b)(6) depositions. We are committed to providing this testimony by early January, if at all feasible. And, as mentioned previously, we are open to discussing limited tolling if OSHA believes it is necessary.

**ESI Counts**. You asked for confirmation that the STR Hit Report is not double-counting near duplicates and not double-counting the same email across custodians. We can confirm that is not occurring. The total number of unique documents across the search terms and custodians is 118,259 unique hits, 233,830 inclusive of family documents.

You asked us to explain why the "Total Docs Hit" figure in the STR Hit Reports is slightly lower than the total sum of hits by custodian (by a few hundred documents). To be clear, it is not because documents are double counted across custodians in the total hit count. When documents are uploaded to our review platform, our vendor assigns them a "primary custodian." ESI also contains metadata that is pooled into an "all custodians" field (e.g., all individuals who are party to an email). The "Total Docs Hit" figure in the STR Hit Reports represents the sum total of all documents in the review platform that hit on the search terms and for which one of the 12 identified custodians is the "primary custodian." The by custodian hit counts represent all documents for which at least one of the 12 identified custodians is included in the "all custodian" field, even if they are not

the primary custodian, with duplicates removed.  Thus, the by custodian hit counts exceed the STR Hit Reports by a small number of documents for which at least one of the 12 custodians is identified in the "all custodian" metadata field but for which the "primary custodian" is not one of the 12 custodians (e.g., if a generic "Amazon" was set as the primary custodian upon upload).  For purposes of our ESI review, we are reviewing all documents where at least one of the 12 custodians is included in the "all custodian" field.  Accordingly, we will actually be reviewing more documents than what is included on the STR Hit Report, not fewer.

**Remainder of ESI.**  Your November 21 email requested that Amazon commit to reviewing and producing responsive ESI from the first four priority custodians by December 6.  In response, we agreed to devote even more resources to ESI review and substantially complete production of non-privileged, responsive ESI for those four custodians (over 25,000 documents including family) on or around December 9.

Your latest email now asks Amazon to commit to producing *all* remaining ESI from the search protocol by January 6.  Although Mr. Lillywhite's email states that this is approximately 120,000 documents, that estimate does not account for the fact that we also have to review and produce responsive family documents.  The actual review population is over 233,000 documents.

That said, we will endeavor to complete ESI review as promptly as feasible given the volume.  As noted in our November 23 email, we have continued to direct more resources towards ESI review to speed up review to the extent feasible.  However, at this time—barely a week into our initial review—we are not able to commit to substantially completing production by January 6.  There are simply too many variables, including a more concrete understanding of the average pace of review for the ESI at issue here, the rate of responsiveness (which impacts the average pace of review and the number of family documents requiring review), and privilege or other review issues.

To be clear, Amazon is not refusing to meet your January 6 deadline – we are just not yet sure whether it is feasible to do so.  In an attempt to meet your various ESI demands, Amazon has been committing substantial resources to ESI review.  We are currently committing over *250 attorney hours a day* towards review, on average, and will continue to do so over the next several weeks.  We will provide weekly updates, along with our rolling productions, regarding the status of our ESI review efforts and will be in a better position to estimate ESI completion once more review has been completed.

**Per Associate Productivity Data for NACF**.  As discussed during our meet and confer last week, we are committed to providing this data as promptly as possible.  We have been working with the relevant points of contact for this data and will provide an update regarding anticipating timing by Friday.

In the meantime, as you know, Amazon has already committed to producing the host of other productivity data that you are seeking, on a nationwide basis by mid-December, if not sooner.

**SDNY Rule 30(b)(6) Topic C Proffer**.  We are working to confirm the relevant information for this proffer.  As you know, we have committed to providing this proffer in early January.  We will follow up with you regarding more specific timing in the next two weeks.

**Dates for the Government's Remaining High Priority Items**.

| Request | Response |
|---|---|
| Documents ||

| | |
|---|---|
| 1.      Ergonomic hazard assessments, analyses, and audits of, or applicable to, the six inspected facilities and the eight selected sample facilities, including the categories of documents listed in the government's letter of 9/13/22, and any nationwide ergonomic analyses. | Amazon has already agreed to substantially complete production of responsive ergonomic assessments completed at the six inspected facilities or the eight additional sample facilities on or before December 16.<br><br>As previously explained, Amazon did not agree to produce nationwide ergonomic assessments in its responses and objections (other than those related to pace of work in response to OSHA Request No. 69).  However, in a further effort to accommodate your requests and after further review of the feasibility of doing so, Amazon will produce responsive ergonomic assessments conducted by Amazon at a nationwide level (subject to Amazon's other objections) on or before January 6. |
| 2.      Documents or information prepared by National Staff Members or Regional Staff Members concerning Injury Goals or Medical Goals for one or more Facilities, including documents or information identifying such goals or reflecting how they were developed. | These documents were first requested in Mr. Lillywhite's November 11 email and the new subpoenas issued on November 17.  We are continuing to work with likely custodians to identify the universe of any responsive documents.  Although it is difficult to provide a firm production date at this time, we do not anticipate a problem producing responsive documents by January 6 and can provide an update on our progress. |
| 3.      Documents sufficient to show any incentives provided to Facility Staff Members, Regional Staff Members, or National Staff Members based in whole or | These documents were first requested in Mr. Lillywhite's November 11 email and the new subpoenas issued on November 17.  We continue to work |

| | |
|---|---|
| in part on a comparison of actual performance to one or more Injury Goals or Medical Goals. | with likely custodians to identify any responsive documents.  At this time, we have not identified any responsive documents, but will update you on our progress and endeavor to produce any responsive, non-privileged documents on or before January 6. |
| 4.      Documents responsive to OSHA Request No. 61 concerning ergonomics or pace of work.  (Again, we expect responsive documents can be identified with the assistance of the current and former Vice Presidents of Worldwide Workplace Health & Safety and manual review of their document repositories, excluding email.) | We will produce responsive, non-privileged documents identified (separate from ESI) on or before December 9. |
| 5.      Identify which employees identified in response to SDNY Request No. 4 are former employees and provide their dates of employment and last known contact information. | As previously discussed, providing this information requires a manual review and pull.  We will produce this information on or before December 9. |
| Data ||
| 1.      Nationwide exports from Austin and Gensuite for the prior five years. | Mr. Lillywhite committed to providing the relevant data fields when he first identified this new request on November 8.  Despite our follow up requests for those fields on November 10, November 14, and November 18, Mr. Lillywhite did not provide the requested fields until November 23 at 4:55 p.m.<br><br>Per our November 23 email, please confirm promptly that you are requesting production of all data fields produced in AMZ-ALB1-00003394; AMZ- |

| | | |
|---|---|---|
| | | BOI2-00000755; AMZ-DEN5-00000002; AMZ-DYO1-00000687; AMZ-MCO2-00004111; AMZ-MDW8-00000499 (for Austin). Assuming that is the case, we will provide corresponding data fields, to the extent they exist, from Gensuite.<br><br>We are working diligently to pull this data, on a nationwide basis, as promptly as possible. At this time, and subject to your confirmation regarding data fields, we anticipate we can produce the Austin data on or before December 16. We will provide an update on our anticipated timing regarding Gensuite data no later than December 7. |
| | 2. Nationwide export from the Return to Work job restriction database for the prior five years. | This request was first identified in the new subpoenas issued on November 17. Please confirm that you are seeking all data fields produced for the inspected facilities in AMZ-OSHA6-00003583 but across all Sibling Facilities.<br><br>Subject to your confirmation regarding data fields, we are working diligently to pull this data, on a nationwide basis, as promptly as possible. We will provide an update on our anticipated timing no later than December 7. |
| | 3. Information reflecting weights handled in each of these facilities, at whatever level of aggregation. | As discussed in our meet and confer calls, based on a diligent search to date, we have not identified any centrally stored system that houses the type of information you are seeking. As you know, we have produced information |

| | |
|---|---|
| | related to packages by size (e.g., small, medium, and large).  If the government has any more specific input on what you are seeking, we are available to discuss. |

In addition to the above, Amazon anticipates substantial completion of document production in response to all of the OSHA subpoena requests (as narrowed by Amazon's objections and our meet and confer efforts) on or around January 6.

**Venue**.  Finally, your email requests Amazon's position regarding consolidating any motion practice in SDNY.  However, Mr. Lillywhite's November 27 email does not answer the question we asked in our November 23 email:  is the government only willing to consolidate motions in SDNY?  Mr. Lillywhite's November 27 email asks Amazon to explain why WDWA is a more convenient forum.  The issue is not a matter of convenience.  FIRREA would *require* SDNY to pursue any subpoena enforcement action in WDWA, absent Amazon's consent to a different venue, and we are not aware of any authority prohibiting OSHA from filing there.  Please confirm whether you intend to proceed by separate motions, in separate courts, if Amazon does not consent to consolidated motion practice in SDNY.  We're happy to discuss further at your convenience.

Lastly, we note that we do not understand the basis for any potential motion by OSHA given (1) that Amazon is committing above to provide all of the information OSHA has requested within the six-month statute of limitations and (2) we have offered to discuss a short tolling period as necessary to complete these requests within the time period OSHA represents it needs them to issue citations, if any, to the inspected facilities.

We trust that the above resolves any concerns.  Amazon remains committed to working with you in completing your respective investigations.

Best,

Ryan

**Ryan Stewart**

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3523 • Cell + 1 202.604.0176 • Fax +1 202.467.0539
RStewart@gibsondunn.com • www.gibsondunn.com

---

**From:** Lillywhite, Jacob (USANYS) <Jacob.Lillywhite@usdoj.gov>
**Sent:** Sunday, November 27, 2022 6:24 PM
**To:** Stewart, Ryan C. <RStewart@gibsondunn.com>; Denerstein, Mylan L. <MDenerstein@gibsondunn.com>; Ahmad, Zainab <ZAhmad@gibsondunn.com>
**Cc:** Boizelle, Ashley <boizelle@amazon.com>; Schwartz, Jason C. <JSchwartz@gibsondunn.com>;