| | |
|---|---|
| **From:** | Stewart, Ryan C. |
| **To:** | Lillywhite, Jacob (USANYS); Denerstein, Mylan L.; Ahmad, Zainab; Schwartz, Jason C.; McArthur, Nikki; "Boizelle, Ashley" |
| **Cc:** | Oestericher, Jeffrey (USANYS); Tarczynska, Dominika (USANYS); Kim, Elizabeth (USANYS); Gitlin, Adam (USANYS); Gemmill, Kevin (USANYS) [Contractor]; Hennefeld, Daniel - SOL; Jaklevic, David M - SOL |
| **Subject:** | [EXTERNAL] RE: Amazon |
| **Date:** | Saturday, December 31, 2022 3:32:07 PM |

Counsel:  We write in further response to Mr. Lillywhite's December 26 email.  With respect to your request for a meet and confer—and as detailed in our December 27 email—we provided our availability for a meet and confer on December 23 as you requested but did not receive a response.  We are also available to meet and confer next week, should the government wish to do so, on Tuesday from 4:30-5:00 or Wednesday from 9:30 to noon, 1:00-2:00, or 3:00-4:00.  We provide below a detailed response to each of the items listed in Mr. Lillywhite's email.

**Production of ESI to OSHA except for "the single search string that included 'bank*'."**
As we have reiterated many times, we have been working diligently to move forward ESI review expeditiously since our review began full-time on November 28, just four weeks ago.  As of our update last Thursday—within three weeks of initiating our ESI review—we had first-level reviewed approximately 117,000 documents, second-level reviewed approximately 26,000 documents, and completed QC review for and produced approximately 5,500 non-privileged ESI documents.

We have continued to push forward ESI review even during this holiday week.  This week we have completed first-level relevancy review of the unique documents that hit on the government's search terms.  We have completed second-level review of approximately 10,000 more documents.  And we have also completed QC review and produced last night an additional 1,850 non-privileged ESI documents.

To achieve these numbers, Amazon is dedicating significant resources to this review—as set out in our prior correspondence—and will continue to do so.  The review and production of ESI simply cannot move any faster than it is, within reason.  The volume of ESI review SDNY demanded (nearly 235,000 total documents) does not allow it.

Excluding "the single search string that included 'bank*'"—which Mr. Lillywhite's email purports to be the only search string "chiefly relevant to the FIRREA subpoena"—does not solve that issue.  Nor, for the record, is there any basis to imply that the ESI review process could reasonably be split into separate ESI reviews for SDNY and OSHA.  All of the search strings are responsive to SDNY's far-reaching FIRREA requests.  *See, e.g.,* SDNY Request No. 3 (incorporating by reference and seeking production of all documents responsive to over 500 OSHA document requests); SDNY Request Nos. 6-7, 12, 15, 16, 21, 24-25, 27, 33 (requests related to workplace hazards, injuries, or injury rates); SDNY Request No. 17-18 (requests related to AmCare procedures).  The search terms (and custodians) were all negotiated with attorneys for SDNY.  And we were directed—by SDNY—to conduct our ESI review not on a search string by search string basis but on a custodian by custodian basis.  In any event, the search string containing "bank*" yielded fewer than 4,000 unique "hits"—approximately just 3% of the total unique hits in the review protocol.  Excluding those documents from review will not materially speed up the process.

To be clear, Amazon will continue reviewing and producing this ESI expeditiously.  But even with the substantial resources Amazon is devoting to this process, completing all

ESI production (including privilege log diligence and production) will take time.  As set out in our pending motion for a protective order, we anticipate completion by June 30.

Any other timeline will impair Amazon's rights (including to protect its privileged information) and impose a significant, undue burden on Amazon well beyond the "minimum burden" that OSHA is permitted to impose during its investigations.  *See* 29 U.S.C. § 657(d) ("Any information obtained by [OSHA] under this chapter shall be obtained with a minimum burden upon employers.").  Indeed, in our collective experience, we have never seen OSHA request ESI review of this type in an inspection.

**Depositions for the five jointly noticed deponents.**  Specifically, we understand you are referring to the depositions of                    (Global Medical Director),                    (Director of Recordkeeping),                    (Director, Global WHS Ergonomics),                    (WHS Initiatives & Audits), and                    (Senior Manager – North America Ergonomics), each of whom was jointly noticed for deposition by OSHA and SDNY.

As set out in Ms. Ahmad's December 22 correspondence and our pending motion, we offered these witnesses for depositions on an expedited basis following substantially complete productions of their responsive, non-privileged ESI.  Those efforts were met with explicit accusations that Amazon was being "obstructionist" and thinly veiled accusations that we were improperly withholding documents on responsiveness or privilege grounds.

As a result—and as set out in our pending motion—we do not intend to offer these witnesses for deposition until the complete production of ESI and privilege logs, including the opportunity to resolve any disputes regarding privilege and responsiveness.  Amazon will not undertake the undue burden of offering these witnesses for deposition twice.  Nor would such a demand be permitted by the OSH Act, which expressly requires OSHA to impose the "minimum burden" possible on Amazon including "reduc[ing] to the maximum extent feasible" the "unnecessary duplication of efforts in obtaining information."  29 U.S.C. § 657(d).

To be clear—and notwithstanding Amazon's voluntary compliance—OSHA's investigation to date has imposed much more than a "minimum burden."  OSHA has issued eight document subpoenas containing more than 520 document requests, many of which demand documents not just from the inspected facilities but also from hundreds of "Sibling Facilities" nationwide.  In addition to hundreds of employee interviews, OSHA has issued 27 deposition subpoenas to Amazon in its investigation, including subpoenas for 25 fact witnesses and 2 subpoenas for corporate designee testimony (each with 11 topics, requiring multiple designees).  In five months Amazon has expended millions of dollars to comply with these subpoenas.  Amazon has produced more than 40,000 documents and completed 19 depositions (with 2 more scheduled for next week) of national, regional, and site-level employees.  That is a substantial—not a "minimum"—burden and significantly more than OSHA has collected in any other investigation in our collective experience.

Further, and as we have previously articulated, OSHA's subpoenas to these individuals were clear attempts to shoehorn SDNY priorities into an unnecessarily expedited time frame under the guise of the OSH Act's statute of limitations.  SDNY subpoenaed these witnesses for deposition on October 11.  OSHA began serving its host of deposition subpoenas weeks earlier, on September 23.  OSHA issued 18 deposition subpoenas between September 23 and October 28.  On October 28 we sent a letter explaining that

we did not intend to proceed with depositions noticed by SDNY until all ESI had been produced and that producing witnesses to OSHA would take priority given the statute of limitations.  OSHA jointly noticed these witnesses for deposition three business days later, despite having never previously mentioned them.

**OSHA's request for certain ergonomic assessments or reports discussed during the depositions of                                    .**  We have separately responded to OSHA's correspondence from both Ms. Acosta and Mr. Hennefeld regarding these documents.

Contrary to OSHA's assertions, the assessments that            testified about during her deposition were produced on November 19, 2022 (prior to her deposition).  They are Bates-stamped AMZ-MCO2-00028680—AMZ-MCO2-00028729.

With respect to the nationwide ergonomic assessments, including those that            testified about during his deposition, Amazon did not agree to produce such documents during our extensive meet and confers in September.  The government made no objection to Amazon's intended approach for months.  As noted in Mr. Lillywhite's email, we subsequently agreed on November 30 and December 7 to produce certain nationwide assessments and analyses.  Since agreeing to do so, we have worked diligently to collect and review these documents.  At this time, we anticipate producing all non-privileged assessments that            testified about on or before January 6.  A privilege log for any responsive documents withheld from production will follow.  We anticipate producing the privilege log on or before February 3.

**Nationwide ergonomic assessments.**  As you know, Amazon originally agreed to produce nationwide ergonomic assessments only to the extent they related to the impact of pace of work on injury rates.  The government did not object to Amazon's stated approach for months.  Once the government raised concerns, in the interest of compromise, Amazon agreed (on November 30 and December 7) to produce certain ergonomic assessments and analyses conducted on a national level on or before January 6.  Over the last few weeks since making that commitment—and notwithstanding that it is Amazon's peak season—Amazon has worked diligently to gather responsive documents.  We still anticipate substantially completing the production of non-privileged responsive documents on or around January 6, within just five weeks of our agreement to do so.  To the extent any documents responsive to this request (as narrowed by Amazon's objections) are withheld, we will promptly produce a privilege log.  We anticipate producing that privilege log on or before February 3.

**2016 BSI ergonomic project.**  As stated in the Request for Proposal that has been produced to you, and pursuant to which BSI was retained, the project was undertaken and conducted at the direction and request of the Amazon Legal Department.  Specifically, the project was undertaken in response to the Hazard Letter issued by OSHA to Amazon's then Senior Manager of Environmental, Health, and Safety Governance for North American Fulfillment Centers on December 30, 2015.  That letter recommended that Amazon "voluntarily take reasonable steps to address and reduce or eliminate the issue of ergonomic stressors to which your employees are exposed" and recommended that Amazon undertake "work place analysis of jobs and tasks," assess "engineering, administrative, and work practice controls," and assess its "education and training of workers and management."  The letter also noted OSHA might return to Amazon's worksite(s) to further examine ergonomic conditions, during which time OSHA could have issued citations and commenced litigation.  The 2016 ergonomic assessment was undertaken in response to this hazard letter from OSHA and at the direction of and in

consultation with Amazon attorneys.

We are continuing to review documents collected related to this BSI project.  We will, of course, log any responsive communications and documents that are withheld on privilege or work product grounds.  To the extent we ultimately determine that any specific communications or documents are not privileged or protected work product, they will be produced.

**The government's November 17 supplemental subpoena request for documents concerning "Injury Goals" or "Medical Goals."**  On November 17, both SDNY and OSHA issued supplemental subpoenas requesting these documents.  We agreed to produce certain responsive, non-privileged documents, including "CX decks," "weekly operations business reviews," and "page 0 metrics."  We have been working diligently to collect and produce these documents in the weeks since this request was issued.  To date, we have substantially completed the production of CX decks.  We also anticipate that we will produce a number of other responsive documents by January 6.  As you may know, we have also produced a number of responsive documents in our recent ESI productions.  In light of the expansive date range for these requests, we anticipate we will substantially complete production of these documents on or before January 27.

**The government's November 17 supplemental subpoena request for documents concerning incentives related to "Injury Goals" or "Medical Goals."**  At this time, and after a reasonably diligent search, including custodial interviews with employees at the national, regional, and site level, we have not identified any documents responsive to this request.  No documents are being withheld on privilege grounds.

**Associate-level productivity data.**  Per our email update on December 23, the sheer volume of data the government has demanded related to associate-level productivity (which we understand to be tens of billions of rows of data dating back multiple years at all "Sibling Facilities" nationwide) caused the custom queries exporting the data to fail during machine processing multiple times.  Amazon was forced to run a different query to export the data on a month to month basis.  That query successfully completed this week.  We are now working to export the data (nearly 400 GB in total) to separate drives for external production.  Please advise where you would like the drives delivered once that machine processing is completed.

**The government's November 17 supplemental subpoena request for information from Austin/Gensuite nationwide dating back 5 years.**  The government's supplemental subpoenas issued on November 17 seek documents and information dating back 5 years regarding injuries or incidents at Amazon "Sibling Facilities" on a nationwide basis.  Amazon has been working diligently on this request since it was first received.

Responsive information from Amazon's AUSTIN database was produced on December 28.  It is located at AMZ-OSHA6-00030792.

With respect to information from Amazon's archived Gensuite database, we are in the process of collecting the information.  Our review from our initial collection of the information demonstrated several errors, including some corrupted data fields and a lack of "crosswalks" across the various files.  The information is currently being repulled and we anticipate this processing will be complete and the information will be available for our review mid-to-late next week.  We will review it promptly once it is available and produce it promptly, absent any further processing errors.

**The government's November 17 supplemental subpoena request for information from Amazon's Return to Work database dating back to its inception.**  The government confirmed the data fields it was requesting for this request on December 2.  On December 7 we estimated that we anticipated producing the data on January 6.  We can confirm that the data has been exported for our review this week, and we are currently reviewing for any processing errors.  Absent any such errors, we will produce the data next week, as originally anticipated, or shortly after addressing any such errors.

**Weight data.**  As discussed in our prior meet and confer calls and in our November 30 email to you, we have not identified any centrally stored system that houses the type of granular weight data that you are seeking.  In our November 30 email, we suggested you provide any more specific input on what you are seeking.  Mr. Lillywhite's December 26 email references weight data that Amazon produced to the Washington State Department of Labor & Industries in 2020.  As your email notes, however, that data was provided for a specific facility (BFI3).  We can confirm that we have investigated that data and that it was pulled from data sources at the site level, such that identifying the existence of and collecting such data would require site by site collection.  We have not identified any centrally managed system or database that houses this data.  The only centrally stored weight data we have identified is data by package size (e.g., small, medium, and large) housed in the FCLM database that will be produced with the associate-level productivity data once machine processing completes.

Thank you,

Ryan

**Ryan Stewart**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3523 • Cell + 1 202.604.0176 • Fax +1 202.467.0539
RStewart@gibsondunn.com • www.gibsondunn.com

---

**From:** Lillywhite, Jacob (USANYS) <Jacob.Lillywhite@usdoj.gov>
**Sent:** Monday, December 26, 2022 8:51 PM
**To:** Stewart, Ryan C. <RStewart@gibsondunn.com>; Denerstein, Mylan L. <MDenerstein@gibsondunn.com>; Ahmad, Zainab <ZAhmad@gibsondunn.com>; Schwartz, Jason C. <JSchwartz@gibsondunn.com>; McArthur, Nikki <NMcArthur@gibsondunn.com>; 'Boizelle, Ashley' <boizelle@amazon.com>
**Cc:** jeffrey.oestericher@usdoj.gov; Tarczynska, Dominika (USANYS) <Dominika.Tarczynska@usdoj.gov>; Kim, Elizabeth (USANYS) <Elizabeth.Kim@usdoj.gov>; Gitlin, Adam (USANYS) <Adam.Gitlin@usdoj.gov>; Gemmill, Kevin (USANYS) [Contractor] <Kevin.Gemmill@usdoj.gov>; Hennefeld, Daniel - SOL <Hennefeld.Daniel@dol.gov>; Jaklevic, David M - SOL <Jaklevic.David.M@dol.gov>
**Subject:** RE: Amazon