The Honorable John C. Coughenour

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

Amazon.com Services, LLC,

    *Petitioner*,

v.

United States Department of Justice,

    *Respondent*,

    and

Martin J. Walsh, Secretary of the United States Department of Labor,

    *Intervenor*.

Case No. 2:22-cv-01815-JCC

**PETITIONER'S OPPOSITION TO SECRETARY'S MOTION TO COMPEL COMPLIANCE WITH OSHA SUBPOENAS AND CROSS-MOTION FOR PROTECTIVE ORDER**

NOTED ON MOTION CALENDAR: JANUARY 27, 2023

PETITIONER'S OPPOSITION & CROSS-MOTION
FOR A PROTECTIVE ORDER
(CASE NO. 2:22-CV-01815-JCC)

DAVIS WRIGHT TREMAINE LLP
920 Fifth Ave, Suite 3300
Seattle, WA 98104

**TABLE OF CONTENTS**

Page

BACKGROUND ..........................................................................................................................3

    I.    Amazon Has Diligently Complied With An Investigation Of Unprecedented Burden............................................................................................3

    II.    OSHA Has Made Unprecedented And Unreasonable Demands For ESI................4

    III.    Amazon Devoted Extensive Resources To Complying With Its Initial ESI Commitments And Has Continued Its Reasonable Review Process and Productions. ................................................................................................................5

    IV.    Amazon Continued To Review And Produce ESI Even After Filing This Proceeding..................................................................................................................6

    V.    Amazon's ESI Review Process Is Consistent With Industry Standards.................7

ARGUMENT ..............................................................................................................................8

    I.    OSHA Ignores The OSH Act's Requirements..........................................................8

    II.    The Secretary's Demand For Expedited ESI Production Is Unreasonable..............9

    III.    This Court Should Adopt Amazon's Reasonable Proposed ESI Production Schedule. ...............................................................................................................12

CONCLUSION.........................................................................................................................12

PETITIONER'S OPPOSITION & CROSS-MOTION
FOR A PROTECTIVE ORDER - i
(CASE NO. 2:22-CV-01815-JCC)

DAVIS WRIGHT TREMAINE LLP
920 Fifth Ave, Suite 3300
Seattle, WA 98104

# TABLE OF AUTHORITIES

Page

**CASES**

*Apex Colors, Inc. v. Chemworld Int'l Ltd., Inc.*,
   2017 WL 4684608 (N.D. Ind. Oct. 19, 2017)..................................................................10

*Brown v. Barnes & Noble, Inc.*,
   474 F. Supp. 3d 637 (S.D.N.Y. 2019)............................................................................10

*Corp. v. Salazar*,
   2011 WL 10894974 (S.D.N.Y. Aug. 23, 2011)..............................................................10

*Delek Ref., Ltd. v. Occupational Safety & Health Rev. Comm'n*,
   845 F.3d 170 (5th Cir. 2016) .........................................................................................11

*Gen. Aluminum Mfg. Co. v. Walsh*,
   2021 WL 4310592 (N.D. Ohio Sept. 22, 2021)................................................................1

*Gutierrez v. Martinez*,
   2012 WL 13149228 (S.D. Tex. Mar. 12, 2012)..............................................................12

*Lawson v. Spirit AeroSystems, Inc.*,
   2020 WL 1813395 (D. Kan. Apr. 9, 2020)......................................................................9

*Oliva v. Infinite Energy, Inc.*,
   2013 WL 6815989 (N.D. Fla. Dec. 24, 2013) ...............................................................10

*People First of Ala. v. Merrill*,
   491 F. Supp. 3d 1076 (N.D. Ala. 2020).........................................................................12

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
   566 U.S. 639 (2012).........................................................................................................9

*Reich v. Montana Sulphur & Chem. Co.*,
   32 F.3d 440 (9th Cir. 1994) .............................................................................................9

*In re Subpoenas Duces Tecum*
   *Nos*. A99-0001, A99-0002, A99-0003 & A99-0004, 51 F. Supp. 2d 726 (W.D. Va. 1999)...12

*Todd Shipyards Corp. v. Sec'y of Lab.*,
   566 F.2d 1327 (9th Cir. 1977) .......................................................................................11

*Yamada v. Nobel Biocare Holding AG*,
   2011 WL 13190123 (C.D. Cal. May 12, 2011) ...............................................................9

PETITIONER'S OPPOSITION & CROSS-MOTION
FOR A PROTECTIVE ORDER - ii
(CASE NO. 2:22-CV-01815-JCC)

DAVIS WRIGHT TREMAINE LLP
920 Fifth Ave, Suite 3300
Seattle, WA 98104

# TABLE OF AUTHORITIES
(continued)

Page

**STATUTES**

29 U.S.C. § 657(b) .................................................................................................................8

29 U.S.C. § 657(d) .................................................................................................................9

29 U.S.C. § 662(a) ...............................................................................................................12

**REGULATIONS**

29 C.F.R. § 1903.13 .............................................................................................................12

PETITIONER'S OPPOSITION AND CROSS
MOTION FOR A PROTECTIVE ORDER - iii
(CASE NO. 2:22-CV-01815-JCC)

DAVIS WRIGHT TREMAINE LLP
920 Fifth Ave, Suite 3300
Seattle, WA 98104

Since July 2022, Amazon.com Services, LLC ("Amazon") has been dutifully and diligently complying with a far-reaching joint investigation by the Occupational Safety and Health Administration ("OSHA") and the U.S. Attorney's Office for the Southern District of New York ("SDNY")—at great expense and burden. In December, after SDNY unreasonably threatened for the sixth time to go to court—this time because Amazon explained that it could not feasibly review and produce hundreds of thousands of electronically stored information ("ESI") documents and conduct the depositions of 10 witnesses in a matter of weeks—Amazon petitioned this Court for a protective order setting a reasonable timeframe for its compliance with SDNY's demands.[1]

Two weeks later, the Secretary of Labor intervened and moved to compel "expedited production" of essentially the same ESI and five of the 10 depositions at issue in Amazon's motion. D.E. 15 at 1, 12. Tellingly, OSHA's brief rests almost exclusively on case law from other administrative contexts and omits the controlling standards under the Occupational Safety and Health ("OSH") Act. OSHA may move to compel only when an employer refuses to comply with an administrative subpoena. 29 U.S.C. § 657(b). But here Amazon is *not* refusing to comply; it is simply asking for a reasonable period in which to complete the onerous ESI review and production process. OSHA also tellingly omits that the governing statute requires OSHA to impose the "minimum burden upon employers" when conducting its investigations. 29 U.S.C. § 657(d). Here, OSHA's investigation has imposed the *maximum* burden. OSHA demanded and Amazon produced in just five months more than is typical even for a multi-year federal litigation: 46,284 documents and 22 witnesses for deposition (more than double that permitted by the Federal Rules). Stewart Decl. ¶¶ 2–5. This is *already* more discovery and burden than any other OSHA investigation known to Amazon's experienced counsel. Paul Decl. ¶¶ 2–11; Bailey Decl. ¶¶ 2–9.

OSHA now seeks expedited review and production of hundreds of thousands of *additional* ESI documents and five more depositions within weeks. This demand is also unprecedented for

---

[1] In moving to intervene, OSHA seemingly faults Amazon for initially seeking a protective order only against SDNY's subpoenas and not OSHA's overlapping subpoenas. D.E. 14 at 1 n.1. But the OSH Act allows only *OSHA* to invoke federal court jurisdiction over subpoena disputes. 29 U.S.C. § 657(b); *see also Gen. Aluminum Mfg. Co. v. Walsh*, 2021 WL 4310592, at *1 (N.D. Ohio Sept. 22, 2021) (granting Secretary's motion to dismiss on jurisdictional grounds where employer moved to quash/for a protective order before OSHA had moved to enforce its subpoenas). Now that OSHA has done so, Amazon respectfully cross-moves for a protective order against OSHA's subpoenas as well.

PETITIONER'S OPPOSITION & CROSS-MOTION
FOR A PROTECTIVE ORDER - 1
(CASE NO. 2:22-CV-01815-JCC)

DAVIS WRIGHT TREMAINE LLP
920 Fifth Ave, Suite 3300
Seattle, WA 98104

OSHA and imposes an undue (and certainly more than the "minimum") burden. The volume OSHA seeks to compel is more than *550 times* that presumed overbroad in this Court. W.D. Wash. Model Agreement re: Discovery of ESI (>400 documents presumed overly broad); *infra* at 10.

Nevertheless, Amazon has agreed to provide OSHA the ESI and depositions it requests. Amazon has mobilized over 100 attorneys and expended millions of dollars to implement a "robust" ESI review process. Nichols Decl. ¶¶ 66–75, 84. As a result, many of the demands in OSHA's motion are already complete or will be soon:

- Amazon has already completed the production of non-privileged ESI with respect to all five custodians noticed for deposition by OSHA;

- Amazon anticipates producing its privilege log for withheld ergonomic assessments by February 3 (within nine days of OSHA's requested relief); and

- Amazon anticipates completing its privilege diligence and producing logs for all five custodians noticed for deposition by OSHA by March 1. Amazon would then be willing to schedule joint depositions for these five witnesses in March, based on their availability.[2]

If OSHA requires, however, that ESI production and privilege logs be completed for *all* 12 custodians before it takes these five depositions, that process will take until June 30 for the reasons set forth in Amazon's pending motion. Contrary to OSHA's assertion that Amazon's production is too slow, Amazon's review process adheres to standard practice, is moving at a reasonable pace, and has been endorsed by an ESI expert who formerly taught ESI courses for government attorneys. *See infra* at 6–7; Nichols Decl. ¶¶ 6–16, 66, 76–85. In fact, Ms. Nichols is clear that OSHA's demanded timing for the production of this volume of ESI would require a "not sound" approach to ESI review that would "represent a breach of the fiduciary and ethical duties Amazon's attorneys have to protect [Amazon's] privileged [and confidential] information." *Id.* ¶ 87.

OSHA offers no legitimate reason for the purported "'unusual urgency'" warranting "expedited production." D.E. 15 at 12. OSHA's primary justification—the OSH Act's six-month statute of limitations expiring on January 18 and February 1—provides no basis. OSHA buries in a footnote on the last page of its brief that Amazon offered to toll the limitations period, but OSHA refused even to discuss doing so. OSHA also refused to discuss with Amazon any critical safety

---

[2] Consistent with the government's representations to date and the OSH Act's minimum burden standard, which expressly forbids "unnecessary duplication of efforts," 29 U.S.C. § 657(d), Amazon expects that each of the witnesses jointly noticed by both OSHA and SDNY will sit for deposition once.

PETITIONER'S OPPOSITION AND CROSS
MOTION FOR A PROTECTIVE ORDER - 2
(CASE NO. 2:22-CV-01815-JCC)

DAVIS WRIGHT TREMAINE LLP
920 Fifth Ave, Suite 3300
Seattle, WA 98104

risks Amazon could immediately abate, and OSHA has not employed the emergency procedures available to address imminent hazards. Instead, OSHA has concluded its inspections and issued its ergonomic and other citations within the limitations period—thus disproving OSHA's claim that it needed the ESI and depositions to issue citations and address critical safety issues.[3]

The Court should deny OSHA's motion to compel and grant Amazon's cross-motion for a reasonable schedule for document production and depositions.

## BACKGROUND

**I.     Amazon Has Diligently Complied With An Investigation Of Unprecedented Burden.**

OSHA served Amazon with 35 subpoenas, including more than 525 requests for documents. Bailey Decl. ¶ 3. That is more than Amazon's experienced counsel has known OSHA to have issued in any other investigation. *Id.* ¶ 5. These document requests seek extensive information not just from the six facilities OSHA inspected but also from more than 900 so-called "Sibling Facilities" nationwide. *Id.* ¶¶ 3–4; D.E. 8, Ex. 1 at 2 n.2 & Ex. 15 at 186. This, too, is unprecedented. Paul Decl. ¶¶ 4–5; Bailey Decl. ¶ 5 ("In my 25 years of practicing in this area, I have never been involved with or heard about any investigation in which OSHA subpoenaed or otherwise sought such far-ranging documents from facilities outside of those it was inspecting.").

Nonetheless, Amazon has expended millions of dollars to comply. It has produced over 46,200 documents (nearly 190,000 pages) (Stewart Decl. ¶ 5)—significantly more than OSHA typically receives (and perhaps has ever received) in an investigation. Bailey Decl. ¶ 9; Paul Decl. ¶ 10. The false urgency claimed by the government is evident by the fact that both agencies have not reviewed the documents Amazon is producing at the speed the agencies are demanding it. On multiple occasions, OSHA has asked Amazon to resend productions because the production's download link had expired before OSHA downloaded the documents. D.E. 8, Exs. 3–4. OSHA has also raised purported technical difficulties months after productions were provided (D.E. 8,

---

[3] Once challenged, these citations will proceed to litigation, where OSHA can conduct discovery and develop additional evidence and, as OSHA admits, even amend its citations accordingly. Based on OSHA's Field Manual, which generally prohibits further investigation into any issues related to a challenged citation, Amazon could reasonably take the position it need not comply further with the current OSHA subpoenas at all and that OSHA must obtain any needed discovery in the forthcoming litigation. OSHA, Field Operations Manual, ch. 15, § VIII.A.1 (2020). But Amazon is not here to argue form over substance; it is willing to comply but needs reasonable time to do so.

PETITIONER'S OPPOSITION AND CROSS
MOTION FOR A PROTECTIVE ORDER - 3
(CASE NO. 2:22-CV-01815-JCC)

DAVIS WRIGHT TREMAINE LLP
920 Fifth Ave, Suite 3300
Seattle, WA 98104

Ex. 16 at 13–14) and demanded production of documents described in depositions when those documents had *already* been produced (Ex. 1).

OSHA has also served 25 deposition subpoenas and two Rule 30(b)(6) subpoenas (each with 11 topics). Stewart Decl. ¶ 2. These depositions are in addition to *hundreds* of unsworn interviews. *Id.* Again, this is unprecedented—often OSHA does not subpoena sworn testimony *at all*, and when it does, it is on a much smaller scale. Bailey Decl. ¶¶ 8–9; Paul Decl. ¶¶ 6–7. Still, Amazon has complied. Amazon presented 20 individuals and 2 corporate designees for deposition in just 10 weeks' time (nearly all within 4 or 5 weeks of their subpoena). Stewart Decl. ¶¶ 3–4.[4]

## II. OSHA Has Made Unprecedented And Unreasonable Demands For ESI.

Because of Amazon's extensive compliance to date, the only issue now pending before the Court relates to the review and production of voluminous ESI and corresponding privilege diligence and depositions.[5] That OSHA is requesting ESI at the investigation stage is unique. Bailey Decl. ¶ 7. Even once a matter moves to administrative litigation, OSHA rarely requests ESI and, if it does, it is limited—typically a small subset of readily identifiable emails or messages related to a specific incident, not a massive search term review on which it has insisted here. *Id.*

Amazon again agreed to provide what the government requested—but repeatedly cautioned that the review would be burdensome and take substantial time. SDNY provided proposed ESI search terms and custodians on September 28. Stewart Decl. ¶ 6. Amazon promptly completed the forensic collection and processing of ESI for the 12 custodians (over 1.4 million files) and negotiated with SDNY over the breadth of the proposed search terms. *Id.* The government agreed to minimal narrowing of the search terms, but by November 17 refused to narrow any further. *Id.* Nearly 120,000 documents (almost 10% of the custodians' entire accounts) "hit" on the government's final search terms. Stewart Decl. ¶ 7. Once "families" (e.g., email attachments) to those "hits" were included, the review population totaled over 233,000 documents. *Id.* Based on the average length of documents reviewed to date (five pages per document, *id.* ¶ 8),

---

[4] OSHA contends (at 3) that it "narrowed" its demands during the course of this investigation, but the record shows the opposite. Rather than narrowing its demands, OSHA issued supplemental requests just nine weeks ago (four months after opening its inspections) that sought the most far-reaching amounts of information across all "Sibling Facilities." Ex. 2. And even for those *new* requests, Amazon has been pushing forward with prompt production.
[5] OSHA's request for a privilege log for nationwide ergonomic assessments will be moot by February 3. *Infra* at 6.

PETITIONER'S OPPOSITION AND CROSS MOTION FOR A PROTECTIVE ORDER - 4
(CASE NO. 2:22-CV-01815-JCC)

DAVIS WRIGHT TREMAINE LLP
920 Fifth Ave, Suite 3300
Seattle, WA 98104

Amazon estimates the review population is approximately 1.15 million pages.

Days later, the government threatened to move to compel if Amazon did not agree to a plainly unreasonable schedule for reviewing and producing that voluminous ESI. Specifically, the government demanded that Amazon commit to producing all responsive ESI for the first four OSHA-noticed custodians (totaling more than 25,000 documents, including families) by December 6 (just 10 business days later), then produce those custodians for deposition by December 12. D.E. 8, Ex. 15 at 191. The government also demanded that Amazon commit to producing responsive ESI for all 12 custodians (more than 233,000 documents) by January 6 (just 25 business days later) and then produce all ten noticed custodians (half of whom were noticed only by SDNY) for deposition in the month of January. *Id.* at 179. The government contended this pace of ESI production was feasible if Amazon would agree to "review 20,000 documents per week." *Id.* In other words, the government expected Amazon to review each document "hit" just once before production and produce all of the document families without *ever* reviewing them.

Amazon agreed to provide deposition availability for the witnesses on the government's demanded timeframe. Amazon also stated it would (1) devote additional resources towards ESI review and (2) substantially complete its production of non-privileged ESI for the first four OSHA custodians "on or around December 9, 2022," in advance of their anticipated December depositions. *Id.* at 184. Amazon made no agreement to complete productions of *all* ESI and privilege logs for these custodians, nor did it make any commitments with respect to the remaining custodians. Amazon was clear it could not make any further commitments because of the volume of the ESI and the many unknown factors that could complicate the review, including average length and complexity of documents and indicia of privilege. *Id.*

**III. Amazon Devoted Extensive Resources To Complying With Its Initial ESI Commitments And Has Continued Its Reasonable Review Process and Productions.**

OSHA claims (at 6) that Amazon "failed to live up to" those ESI commitments. The record contradicts that claim. Amazon engaged a team of more than 100 lawyers who on average devoted hundreds of hours per day to its ESI review process. Stewart Decl. ¶¶ 9–10; D.E. 8, Ex. 1 at 9. Amazon promptly offered earliest available deposition dates for each of the deponents, including

PETITIONER'S OPPOSITION AND CROSS
MOTION FOR A PROTECTIVE ORDER - 5
(CASE NO. 2:22-CV-01815-JCC)

DAVIS WRIGHT TREMAINE LLP
920 Fifth Ave, Suite 3300
Seattle, WA 98104

December dates for three of the "first four" OSHA deponents. D.E. 8, Ex. 15 at 163 (the fourth was traveling internationally until January). Two of those depositions were scheduled for December. *Id.* at 161 (the government was not available on the date offered for the third). Amazon substantially completed the production of responsive, non-privileged ESI for both of those deponents on December 14 (within five days of the "on or around" December 9 anticipated date).[6]

Rather than proceed with the expedited depositions it had demanded, the government complained about the size of Amazon's ESI productions for these custodians. Amazon promptly responded that—consistent with standard practice—documents bearing clear indicia of privilege were routed to further privilege diligence and, if ultimately deemed appropriate, privilege logging. Ex. 4 at 26; Nichols Decl. ¶¶ 89–91 (noting this is consistent with industry standard practice). Amazon reiterated that it was prepared to proceed with both depositions as scheduled. But the government cancelled the depositions, instead demanding that all ESI, privilege diligence, and privilege logs be completed at least seven days in advance of any deposition.[7] This was a sequence that Amazon had always suggested—but the government's requested timeframe would be impossible and compromise Amazon's rights. D.E. 8, Ex. 15 at 152–53, 157; Nichols Decl. ¶¶ 62 ("In my experience, this demand is not realistic and was not feasible."), 76–87. So Amazon moved for protection and asked the Court to set a reasonable schedule.[8]

## IV. Amazon Continued To Review And Produce ESI Even After Filing This Proceeding.

Since December 23, Amazon has made weekly ESI productions and completed second-level review of another 38,000 documents. Stewart Decl. ¶ 12. On January 6, Amazon finished producing the nationwide ergonomic assessments OSHA demanded. Ex. 4 at 1. Amazon has produced approximately 300 assessments and will provide a privilege log for any withheld assessments by February 3 or sooner. *Id.* at 8–9. Amazon is already working to provide an initial privilege log for the four priority deponents' ESI by February 3, anticipating a completed privilege

---

[6] Amazon substantially completed the production of responsive, non-privileged ESI for the other two custodians, whose depositions were not scheduled until January as noted above, by December 21. D.E. 8, Ex. 1 at 10.

[7] OSHA's claim (at 2) that Amazon "cancelled" the December depositions is false. It was the government that opted to cancel them. *See* D.E. 8, Ex. 15 at 155 (12/15/22 SDNY Email).

[8] OSHA's implication (at 11) that Amazon refused to meet and confer with the government is false. The government requested that Amazon provide its availability for a meet and confer on December 23. Amazon offered a multiple-hour window of availability on December 23 (D.E. 8, Ex. 1 at 12), but the government did not respond.

log for them by March 1.

## V. Amazon's ESI Review Process Is Consistent With Industry Standards.

A respected ESI and e-discovery expert described Amazon's review process here as "robust and proper." Nichols Decl. ¶ 66. Amazon is conducting a multi-tiered review: a first level of review by contract attorneys followed by a second level of review by Amazon's outside counsel to ensure Amazon accurately produces responsive material and protects privileged communications. Stewart Decl. ¶¶ 9–10. This is industry standard. Nichols Decl. ¶¶ 66–75.

First-level review, which culls documents that are clearly not responsive, is the fastest. Still, given the large review population here, Amazon dedicated over 8,400 hours of attorney time to first level review in just six weeks. Stewart Decl. ¶ 9. At the second level, the reviewing attorney must read the entire document and determine whether it is responsive to any requests. *Id.* ¶ 10; Nichols Decl. ¶¶ 69–70. This is especially time-consuming here because of the sheer number of unique requests (118). *Id.* ¶¶ 55–56, 69. For each document an attorney reviews, the attorney must make 118 determinations regarding responsiveness. *Id.* So when Amazon completes second-level review of 10,000 documents in a week, its attorneys are making nearly 1.2 *million* decisions.

OSHA criticizes Amazon for routing documents bearing a "clear indicia of privilege" for further privilege diligence. These documents have typically been identified by attorney reviewers as potentially privileged based on privilege markings. D.E. 8, Ex. 1 at 12 (approximately 97% of the documents bear the term "privileged" or "legal counsel"). Routing these documents for further privilege diligence—i.e., speaking to the employees and attorneys involved in the communication to assess whether the document is, in fact, privileged—is standard practice. Nichols Decl. ¶¶ 40–43, 89–91. Amazon cannot be expected to simply produce these documents without confirming with the relevant individuals whether a document (or portions of it) is privileged. Nor would it be proper for Amazon to withhold the document based on the privilege markings alone. Indeed, privilege diligence is often the most time-consuming aspect of ESI review. *Id.* ¶¶ 43–44.

OSHA also criticizes the pace of Amazon's review. But Amazon's "rates of review are consistent with what [one] would expect in light of the number of attorneys involved . . . the complexity of the review, [and] the large number of requests each document is being evaluated

PETITIONER'S OPPOSITION AND CROSS
MOTION FOR A PROTECTIVE ORDER - 7
(CASE NO. 2:22-CV-01815-JCC)

DAVIS WRIGHT TREMAINE LLP
920 Fifth Ave, Suite 3300
Seattle, WA 98104

against." *Id.* ¶ 78. If anything is slowing Amazon's pace of review, it is the government's demand over Amazon's repeated objection (D.E. 8, Ex. 15 at 196; Ex. 4 at 25) that Amazon review ESI on a custodian-by-custodian basis. Nichols Decl. ¶¶ 27–28, 63–64. Were Amazon's review being conducted on a search string/subject matter basis (as Amazon suggested), its reviewers would be able to more quickly develop subject matter expertise. *Id.*[9] Most importantly, Amazon's request for a June 30, 2023 deadline to complete production of all ESI and privilege logs "is reasonable and based on an approach that is consistent with standard practices." *Id.* ¶ 92.

## ARGUMENT

Three of the four requests in OSHA's motion are moot or will be in weeks, based on Amazon's robust ESI efforts. *See supra* at 6–7. The fourth—the completion of *all* ESI productions by February 8—should be denied as unreasonable (and, in fact, impossible). Amazon cross-moves and respectfully requests, instead, that the Court adopt the proposed schedule in Amazon's motion for a protective order and direct that all responsive, non-privileged ESI be produced by June 30, and that depositions occur thereafter and no later than August 31, with the further compromise that Amazon anticipates producing final privilege logs for the five custodians OSHA subpoenaed by March 1 and those five depositions may proceed as early as March, if the government so chooses.

### I. OSHA Ignores The OSH Act's Requirements.

OSHA's motion to compel does not carry its heavy burden of showing that this is a case involving "contumacy, failure, or refusal" by Amazon to abide by an OSHA subpoena. 29 U.S.C. § 657(b). Amazon has not refused or failed to do anything. On the contrary, it has made every reasonable effort to comply with the more than 525 document requests and dozens of deposition subpoenas, and has communicated openly and candidly about the measures it has been taking and the expected timeframes for compliance.

OSHA also misstates governing law in arguing that the onus is on employers to show that an investigation by OSHA is overbroad or burdensome. D.E. 15 at 8. The OSH Act, under which

---

[9] As Amazon's motion for a protective order against SDNY's subpoenas recounts, the government has slowed Amazon's review in other ways, including by repeatedly shifting priorities and insisting that Amazon change the focus and direction of its review at the drop of a hat. *See* D.E. 8, Ex. 8 at 61; D.E. 8, Ex. 15 at 155. OSHA has also lodged via email many informal "priority" document demands requiring Amazon's attention, including since filings its motion to compel. Exs. 5-7.

PETITIONER'S OPPOSITION AND CROSS
MOTION FOR A PROTECTIVE ORDER - 8
(CASE NO. 2:22-CV-01815-JCC)

DAVIS WRIGHT TREMAINE LLP
920 Fifth Ave, Suite 3300
Seattle, WA 98104

OSHA issued its subpoenas, *id.* at 9, imposes on OSHA an express duty to minimize burden: "***Any information*** obtained by the Secretary [of Labor]. . . shall be obtained ***with a minimum burden upon employers****. . . . **Unnecessary duplication of efforts in obtaining information shall be reduced to the maximum extent feasible***." 29 U.S.C. § 657(d) (emphases added). The Ninth Circuit has held that this provision protects employers by limiting OSHA to imposing only those burdens strictly necessary to fulfil its legitimate investigative functions. *Reich v. Montana Sulphur & Chem. Co.*, 32 F.3d 440, 448 (9th Cir. 1994). OSHA must "carefully tailor" discovery requests and impose obligations on employers that are no greater than what its investigation "necessarily entail[s]." *Id.* OSHA does not even acknowledge this standard, much less explain how its numerous and unprecedented onerous demands comport with it.[10] Nor could it; OSHA has stated it does not need these documents or depositions to close its inspections and issue citations. OSHA has already done so for three of the six facilities prior to the limitations period expiring (Stewart Decl. ¶ 14), and has implied it will do so for the other three facilities by February 1 (D.E. 16 ¶ 28).

## II. The Secretary's Demand For Expedited ESI Production Is Unreasonable.

OSHA compounds its error by ignoring standard practice and this Court's guidance on e-discovery. Courts have repeatedly found that "[t]wo levels of review—first by contract attorneys hired to review documents, and then a second review—are necessary to ensure that trade secrets or irrelevant information are not disseminated" and to protect privilege. *Yamada v. Nobel Biocare Holding AG*, 2011 WL 13190123, at *1 (C.D. Cal. May 12, 2011). This multi-level approach is followed for the "sound reasons" of ensuring responsiveness, privilege, and confidentiality—and should not be compromised. *Lawson v. Spirit AeroSystems, Inc.*, 2020 WL 1813395, at *8 (D. Kan. Apr. 9, 2020). And this district's own model ESI agreement begins with a base assumption that "[a] search that returns more than . . . 250 megabytes of data, excluding Microsoft PowerPoint files, audio files, and similarly large files types" or "400 unique documents, excluding families, is presumed to be overbroad." W.D. Wash. Model Agreement re: Discovery of ESI. The

---

[10] OSHA cites inapposite cases recognizing only that administrative subpoenas are subject to a broad relevancy requirement. *See* D.E. 15 at 9–10 (citing cases involving the NLRB, FDIC, FHFA, and EEOC). That general principle is not controlling where, as here, a statute (the OSH Act) imposes a more specific standard. *See RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012).

government's requests have exceeded both benchmarks by orders of magnitude, returning more than 109,000 megabytes and 117,000 unique documents, *excluding* families. Stewart Decl. ¶ 7.

These types of reviews take time, and the process cannot go faster. Nichols Decl. ¶¶ 38, 81–84. Ms. Nichols—an expert who has conducted ESI training for judges and government attorneys and has consulted on ESI review principles for both the Sedona conference and the Federal Rules of Civil Procedure advisory committee—is adamant both that Amazon's process is "robust" and consistent with standard practice and that any alternative process to complete review on the government's demanded timetable would be "not sound" and violate fiduciary obligations. Nichols Decl. ¶¶ 6–16, 76–80, 84–87. In fact, even SDNY's opposition brief makes clear that the "expedited" schedule OSHA is asking this Court to compel is not reasonable. SDNY proposes as reasonable an order for Amazon to review 5,000 ESI documents in one month and produce five witnesses for deposition in the next. D.E. 20 at 8. In contrast, OSHA now asks that Amazon be compelled to review over 45 times that volume of ESI (more than 225,000 documents) and produce five witnesses for deposition in less than four weeks. That is not reasonable.

The cases OSHA cites do not support its request. D.E. 15 at 11 & n.10 (citing four cases related to an "average rate of document review"). The first—*Oliva v. Infinite Energy, Inc.*, 2013 WL 6815989, at *8 (N.D. Fla. Dec. 24, 2013)—does not relate to ESI production review at all, but instead to time spent reviewing documents produced by the opposing party in discovery. And to the extent the other three refer to an average "review rate" in those cases, "such averages are generally unhelpful when judging any particular document review, much less a single phase of a review," because they ignore variability based on document complexity, length, and other factors. Nichols Decl. ¶ 82. Indeed, while OSHA omits it from its brief, its case law expressly states these rates of review "can vary considerably based on the complexity of the documents." *Brown v. Barnes & Noble, Inc.*, 474 F. Supp. 3d 637, 645 (S.D.N.Y. 2019).[11] Further, the cases OSHA cites all appear to involve a *single* layer review process. A single layer process might be sufficient for certain rudimentary ESI reviews—like in *Apex Colors, Inc. v. Chemworld Int'l Ltd.*, where the

---

[11] In discussing *Chevron Corp. v. Salazar*, the Secretary misleadingly claims the court found a review rate of 500 documents every 30 hours to be "tardy and unpersuasive." In fact, the court was calling the litigant's *arguments* "tardy and unpersuasive" because they should have been made sooner. 2011 WL 10894974, at *1 (S.D.N.Y. Aug. 23, 2011).

PETITIONER'S OPPOSITION AND CROSS
MOTION FOR A PROTECTIVE ORDER - 10
(CASE NO. 2:22-CV-01815-JCC)

DAVIS WRIGHT TREMAINE LLP
920 Fifth Ave, Suite 3300
Seattle, WA 98104

reviewer was examining his "own correspondence" such that a "quick glance" would be sufficient to determine "whether the email [was] privileged/confidential and/or relevant." 2017 WL 4684608, at *6 (N.D. Ind. Oct. 19, 2017). But for the kind of voluminous and complex ESI production Amazon is making here (involving a large number of document requests and issues), a multi-tiered review is well-accepted practice. Nichols Decl. ¶¶ 30–39, 66–75, 84; The Sedona Conference, *Commentary on Achieving Quality in the E-Discovery Process*, 15 Sedona Conf. J. 265, 293 (2014). Amazon's process and review rate is reasonable. *Id*. ¶¶ 78–80, 84, 92.

OSHA offers two reasons why Amazon should disregard standard ESI review practice and comply with OSHA's subpoenas on an expedited timeframe. Neither reason withstands scrutiny.

*First*, OSHA contends the OSH Act's "impending six-month statute of limitations" means Amazon must somehow squeeze a volume of discovery that usually takes a year or longer into a few weeks. D.E. 15 at 1. But the statute of limitations is a *protection* for employers, not a hammer to coerce them to forgo necessary document reviews for relevance and privilege. *See Todd Shipyards Corp. v. Sec'y of Lab.*, 566 F.2d 1327, 1330 (9th Cir. 1977); *see also Delek Ref., Ltd. v. Occupational Safety & Health Rev. Comm'n*, 845 F.3d 170, 177 (5th Cir. 2016).

This is a problem of OSHA's own making. Amazon offered to toll OSHA's statute of limitations to ensure both that Amazon could protect its rights through an orderly ESI review and that OSHA received whatever information it felt it needed to complete its investigations. D.E. 8, Ex. 15 at 184. OSHA initially ignored the offer. *Id.* at 172. Then, it refused even to discuss it. *Id.* at 169. That squarely undermines any claimed urgency based on statute of limitations. OSHA acknowledges Amazon's tolling offer only in a footnote at the end of its motion, asserting without explanation that this case does not present the "extraordinary circumstances" needed for tolling. D.E. 15 at 12 n.11. That conclusory assertion is insufficient where OSHA seeks a massive production volume on an extraordinarily compressed timeframe *and* bears the burden of demonstrating its demands impose the minimum burden necessary.

In any event, OSHA's own action belies any claim it needs this ESI or depositions to issue any citations it (mistakenly) believes are warranted. OSHA issued initial citations for all six inspected facilities on December 15. OSHA then issued additional citations and formally closed

its inspections for three of the facilities—and presumably will issue more citations for the remaining facilities—all within the limitations periods. *See* Stewart Decl. ¶ 14; *supra* a 10. OSHA also can seek to amend its citations in later administrative proceedings based on facts learned through further discovery. D.E. 15 at 14 n.9.

*Second*, OSHA's unsupported claim that "critical worker safety issues . . . warrant expedited production," D.E. 15 at 12, likewise falls short. Throughout the investigation, OSHA refused to describe these "critical" issues despite Amazon's repeated requests for that information so it could take immediate action to rectify true risks. Now, OSHA has issued citations and closed inspections related to the purported issues. Moreover, OSHA has not employed the emergency procedures available to address imminent hazards. *See* 29 U.S.C. § 662(a); 29 C.F.R. § 1903.13.[12]

### III. This Court Should Adopt Amazon's Reasonable Proposed ESI Production Schedule.

Without a sound justification for why its demands for an unprecedented volume of ESI must be completed by February 8, or even any showing this impossible task could be accomplished on that timeline (it cannot), OSHA has failed to carry its burden of proving its proposed production schedule imposes a "minimum burden" on Amazon, much less that it is warranted. Instead of imposing OSHA's unnecessary and infeasible schedule, a "compromise schedule for production" is a reasonable way of "minimiz[ing] the burden of compliance" in the enforcement of an administrative subpoena. *In re Subpoenas Duces Tecum Nos*. A99-0001, A99-0002, A99-0003 & A99-0004, 51 F. Supp. 2d 726, 737 (W.D. Va. 1999). OSHA's proposed production schedule is not only highly and unnecessarily burdensome, it is in fact impossible for Amazon to satisfy. Nichols Decl. ¶¶ 62, 80–82; *see* D.E. 7 at 10–12. Amazon has therefore proposed a compromise— one that will still require substantial resources from Amazon to satisfy that should be adopted.

### CONCLUSION

Amazon respectfully requests that the Court deny OSHA's motion to compel, and enter a protective order as detailed above. *Supra* at 8.

---

[12] This case is a far cry from the inapposite circumstances presented in the two non-OSHA cases OSHA cites to justify "expedited production," one of which included a constitutional challenge to election laws mere weeks before an election. *See People First of Ala. v. Merrill*, 491 F. Supp. 3d 1076 (N.D. Ala. 2020); *see also Gutierrez v. Martinez*, 2012 WL 13149228 (S.D. Tex. Mar. 12, 2012) (expedited discovery granted solely to identify John Doe defendants).

| | |
|---|---|
| DATED: January 18, 2023 | Respectfully submitted, |
| | By: */s/ James E. Howard* |
| | James E. Howard, WSBA# 37259<br>DAVIS WRIGHT TREMAINE LLP<br>920 Fifth Avenue, Suite 3300<br>Seattle, WA 98104<br>Telephone: +1 206.757.8179<br>Facsimile: +1 206.757.7179<br>Email: jimhoward@dwt.com |
| | GIBSON, DUNN & CRUTCHER LLP |
| | Jason C. Schwartz (*pro hac vice*)<br>Ryan C. Stewart (*pro hac vice*)<br>1050 Connecticut Avenue, N.W.<br>Washington, D.C. 20036<br>Telephone: +1 (202) 955-8500<br>jschwartz@gibsondunn.com |
| | Zainab N. Ahmad (*pro hac vice*)<br>Mylan L. Denerstein (*pro hac vice*)<br>200 Park Avenue<br>New York, NY 10166<br>Telephone: +1 (212) 351-4000<br>zahmad@gibsondunn.com<br>mdenerstein@gibsondunn.com |
| | *Attorneys for Petitioner Amazon.com Services, LLC* |

PETITIONER'S OPPOSITION & CROSS-MOTION
FOR A PROTECTIVE ORDER - 13
(CASE NO. 2:22-CV-01815-JCC)

DAVIS WRIGHT TREMAINE LLP
920 Fifth Ave, Suite 3300
Seattle, WA 98104