UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMAZON.COM SERVICES LLC., | |
| Petitioner, | Case No. C22-1815-JCC-MLP |
| v. | ORDER |
| UNITED STATES DEPARTMENT OF JUSTICE, | |
| Respondent, | |
| and | |
| MARTIN J. WALSH, SECRETARY OF THE UNITED STATES DEPARTMENT OF LABOR, | |
| Intervenor-Cross Petitioner. | |

### I.   INTRODUCTION

This matter is before the Court on Petitioner Amazon.com Services, LLC's ("Amazon") Motion for Protective/Confidentiality Order ("Amazon's Motion"). (Pet.'s Mot. (dkt. # 53).) Respondent United States Department of Justice ("DOJ") filed an opposition (Resp.'s Opp. (dkt. # 69)), Amazon filed a reply (Pet.'s Reply (dkt. # 71)), and DOJ filed a surreply (Resp.'s Surreply (dkt. # 73)). The Court heard oral argument on October 23, 2023, and directed the

ORDER - 1

parties to meet and confer and submit an agreed protective order. (Dkt. # 81.) The parties were unable to agree, and instead, each submitted a proposed protective order. (Dkt. ## 86-87.) Having considered the parties' submissions, oral argument, the governing law, and the balance of the record, the Court GRANTS in part Amazon's Motion (dkt. # 53).

## II.     BACKGROUND

This action arises under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1833a, and the civil investigative demand statute, 18 U.S.C. § 1968, of the Racketeer Influenced and Corrupt Organizations Act of 1970. DOJ issued FIRREA subpoenas to Amazon between August and December 2022. (Lillywhite Decl. (dkt. # 70) at ¶¶ 6-9.) "DOJ has been closely coordinating its investigation with [the Occupational Safety and Health Administration ("OSHA")], which has been conducting its own investigation of worker safety hazards at Amazon warehouses." (*Id.* at ¶ 5.) DOJ's investigation concerns whether Amazon makes "misrepresentations to Amazon's lenders" related to worker safety. (*Id.* at ¶ 2.)

On December 22, 2022, Amazon opened the instant case by filing a Petition pursuant to FIRREA and 18 U.S.C. § 1968(h) to modify the subpoenas to allow additional time for Amazon to comply. (Pet. (dkt. # 1); *see also* dkt. # 7.) On January 30, 2023, after cross-motions for protective order and to compel production, this Court set a schedule for production with staggered deadlines through July 31, 2023. (Dkt. # 37.) Production continued and extensions were granted as necessary, with certain deadlines extended to October 20, 2023. (Dkt. ## 41, 43, 51.)

On April 27, 2023, DOJ received a subpoena duces tecum from the Washington Attorney General to produce "ergonomic assessments of Amazon warehouses" for an administrative

ORDER - 2

1  "ergonomics safety citation" proceeding before Washington's Board of Industrial Insurance
2  Appeals. (Lillywhite Decl. at ¶ 19; Denerstein Decl. (dkt. # 54) at ¶ 12.) DOJ decided to grant
3  the request but also gave Amazon ten days' notice of the Washington subpoena on May 19,
4  2023. (Lillywhite Decl. at ¶ 20; Denerstein Decl. at ¶ 12, Ex. 5 (dkt. # 54-5).) Amazon objected
5  to the DOJ's disclosing documents to the Washington Attorney General. (Denerstein Decl. at
6  ¶ 13, Ex. 6 (dkt. # 54-6).) On May 26, 2023, the Washington Attorney General withdrew its
7  subpoena and, accordingly, on May 30, 2023, DOJ informed Amazon that it would not produce
8  the documents. (Lillywhite Decl. at ¶ 20.) Amazon ultimately produced the ergonomic
9  assessments directly to the Washington Attorney General, subject to a protective order in the
10 Washington state administrative proceeding. (Denerstein Decl. at ¶ 15; *see also* Lillywhite Decl.
11 at ¶ 22.)

12     DOJ and the Washington Attorney General's office thereafter retained the same expert,
13 Dr. David Rempel, whom DOJ "repeatedly cautioned" not to disclose information from the DOJ
14 investigation in the Washington proceeding and cautioned the Washington Attorney General not
15 to accept such information. (Lillywhite Decl. at ¶¶ 23-25.) On July 14, 2023, the Washington
16 Attorney General showed Amazon a presentation that referenced a document Amazon had
17 produced to DOJ but not to the Washington Attorney General in the state proceeding.
18 (Denerstein Decl. at ¶ 18.) Amazon notified DOJ, which determined that the Washington
19 Attorney General had erroneously advised Dr. Rempel that it had received all ergonomic
20 assessments provided to DOJ. (*Id.*; Lillywhite Decl. at ¶¶ 26-30.) The Washington Attorney
21 General and Dr. Rempel agreed not to reference or use any DOJ documents in the state
22 proceeding. (Lillywhite Decl. at ¶ 30.)
23

ORDER - 3

Amazon filed the instant Motion on September 8, 2023. (Pet.'s Mot.) Amazon seeks entry of a protective order to "require the government to maintain the confidentiality of Amazon's sensitive information and prevent further disclosure to third parties." (*Id.* at 2.) Amazon states it needs "to protect Amazon's commercially-sensitive information, its employees' personal information, and Amazon's due process rights[.]" (*Id.* at 8.)

On September 12, 2023, pursuant to Local Civil Rule ("LCR") 7(i), DOJ filed a motion to compel, which was heard telephonically on September 14, 2023. (Dkt. ## 57-65.) As the telephonic motion addressed the same substantive issue as Amazon's Motion, the Court denied it without prejudice to permit full briefing on Amazon's Motion. (Dkt. # 65.) The Court entered a provisional confidentiality order governing future document productions and depositions, with an exception for evidence of an imminent crime, until Amazon's Motion could be adjudicated. (*Id.*)

DOJ contends Amazon's Motion is time-barred and improperly seeks to prevent intergovernmental cooperation to frustrate investigations. (Resp.'s Opp. at 2.) DOJ further contends Amazon's pursuit of retroactive protection for material it has already produced is improper, and its blanket designation of its entire production as confidential is prohibited by this Court's local rules. (*Id.* at 2-3 (citing LCR 26(c)(2)).)

### III.   DISCUSSION

#### A.   Timeliness of Amazon's Motion

There is no dispute that Amazon timely filed a Petition seeking "modification of the subpoenas to establish a schedule for the production of electronically stored information[.]" (Pet. at 1-2.) DOJ contends, however, that Amazon's instant Motion is untimely because FIRREA provides that motions for protective order must be brought within twenty days after service of a

subpoena. (Resp.'s Opp. at 6 (citing 12 U.S.C. § 1833a(g)(2), 18 U.S.C. §§ 1968(h), (j)).) Amazon responds that this Court has continuing jurisdiction based on its timely Petition, and moreover, Federal Rule of Civil Procedure ("Rule") 81 provides that the Rules apply to proceedings related to a subpoena issued by DOJ. (Pet.'s Reply at 2.) DOJ contends that this Court's continuing jurisdiction over the timing of production does not extend to Amazon's effort to seek "entirely new relief" and that Rule 81 does not supersede the statutory time limit. (Resp.'s Opp. at 7; Resp.'s Surreply at 2.)

FIRREA authorizes the Attorney General to, "by subpoena, summon witnesses and require the production of any . . . records which the Attorney General deems relevant or material to the inquiry." 12 U.S.C. § 1833a(g)(1)(C). "The same procedures and limitations as are provided with respect to civil investigative demands in subsections (g), (h), and (j) of section 1968 of Title 18 apply with respect to a subpoena issued under this subsection." 12 U.S.C. § 1833a(g)(2). The incorporated provisions state that, "[w]ithin twenty days after the service of any [civil investigative] demand upon any person, . . . such person may file . . . a petition for an order . . . modifying or setting aside such demand[.]" 18 U.S.C. § 1968(h).

In the instant motion, Amazon does not seek to modify the subpoenas and thus is not subject to the twenty-day deadline. Instead, Amazon seeks issuance of an order to protect the confidentiality of the material produced pursuant to the subpoenas.

Rule 81 provides that "[t]hese rules apply to proceedings to compel testimony or the production of documents through a subpoena issued by a United States officer or agency under a federal statute, except as otherwise provided by statute, by local rule, or by court order in the proceedings." Fed. R. Civ. P. 81(a)(5). Because the statutory time limits for modifying the

ORDER - 5

subpoenas do not apply here, the Court concludes Amazon's Motion is not untimely and is governed by the Federal Rules of Civil Procedure.

It is well established that, "in appropriate circumstances, [a court] may modify a subpoena it is asked to enforce to incorporate such confidentiality provisions." *Adair v. Rose L. Firm*, 867 F. Supp. 1111, 1119 (D.D.C. 1994). "An agency invoking the aid of a court to enforce a subpoena may not tell a court it has no authority to condition or modify the subpoena to protect those whom enforcement of the subpoena may put at risk." *Id.* "[W]here the processes of the Court are involved, there must be opportunity for the Court to satisfy itself that the agency's power will be properly used." *Resol. Tr. Corp. v. KPMG Peat Marwick*, 779 F. Supp. 2, 4 (D.D.C. 1991).

**B.     Good Cause for Protective Order**

Under Rule 26, the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c)(1). Good cause "requires a showing 'that specific prejudice or harm will result' if the protective order is not granted." *In re Roman Cath. Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (9th Cir. 2011) (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003)). "[B]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Id.* (quoting *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992)). "If the party makes this showing, the court must then determine if an order is necessary by 'balanc[ing] the public and private interests' at stake." *Ground Zero Ctr. for Non-Violent Action v. U.S. Dep't of Navy*, 860 F.3d 1244, 1260 (9th Cir. 2017) (quoting *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002)). "A trial court possesses broad discretion in issuing a protective order and in

determining what degree of protection is required." *Sec. & Exch. Comm'n v. R.J. Reynolds Tobacco Holdings, Inc.*, 2004 WL 3168281, at *9 (D.D.C. June 29, 2004).

Amazon seeks to prevent disclosure of its "employees' personal information" and its "commercially-sensitive information." (Pet.'s Mot. at 8-9.) There is no dispute that these are important interests deserving of protection. *See, e.g.*, *U.S. v. Educ. Mgmt. LLC*, 2013 WL 1568060, at *9 (E.D.N.Y. Feb. 7, 2018) (noting company's "very strong interest [in] keeping their trade secrets and related information confidential.").

In addition, Amazon contends disclosure to its governmental "litigation opponents" could endanger its due process rights. (Pet.'s Mot. at 8-9.) Amazon argues "existing protections are insufficient" because DOJ released documents to the Washington Attorney General, with whom Amazon is in active litigation. (Pet.'s Reply at 2.) It appears that, in the end, the Washington Attorney General was able to compel disclosure of most or all the documents sought through its own legal channels without involving DOJ. (*See* Denerstein Decl. at ¶ 15; Lillywhite Decl. at ¶ 22.) Nevertheless, the episode illustrates it is preferable for civil enforcement agencies to utilize their own proper legal channels, rather than take shortcuts to get information that DOJ has obtained through its legal channels. *See Educ. Mgmt. LLC*, 2013 WL 1568060, at *9 ("[I]f other agencies wish to obtain the information, . . . they can conduct their own investigation . . . using the statutory and regulatory tools granted any particular agency."). The presiding official of the Washington proceeding is in the best position to determine what disclosures should be requested in that proceeding.

Amazon has identified important interests entitled to confidentiality. Having found specific harm may result from disclosure, the Court balances the public and private interests to determine if a protective order is necessary. Because the issue here is not disclosure to the public

ORDER - 7

but disclosure to civil law enforcement agencies, and the material is not part of the judicial record, the public interests are lessened. *Cf. Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006) ("[J]udicial records are public documents almost by definition, and the public is entitled to access by default."); LCR 5(g) ("There is a strong presumption of public access to the court's files.").

DOJ contends Amazon's proposed protective order would hamper "efficient and effective law enforcement" and "hampering such interagency coordination would be contrary to the public good." (Resp.'s Opp. at 11-12.) While wholly unfettered law enforcement may be more efficient as a general proposition, other concerns such as privacy and constitutional rights must be considered.[1] Without specific information as to how law enforcement will be hampered, the Court concludes that the interests here weigh in favor of a protective order.

The Court finds the analysis in *R.J. Reynolds* helpful. In that case, the Securities and Exchange Commission ("SEC") subpoenaed material related to past and future tobacco litigation costs, while DOJ was actively engaged in tobacco litigation against the company. 2004 WL 3168281 at *3. The company maintained it would be "seriously prejudiced" if the litigation costs material were provided to its litigation adversary, which had no right to it otherwise. *Id.* at *10. The SEC argued that its law enforcement function would be "seriously impeded" by any protective order. *Id.*

The district court noted broad statutory language "allow[ing] the SEC to share documents and information with other law enforcement agencies (including DOJ) and regulatory

---

[1] In its motion to compel, DOJ argued that due to "DOJ's law enforcement responsibilities, we cannot agree not to alert other agencies if we learn of a crime or other misconduct." (Dkt. # 60 at 3.) At oral argument on Amazon's Motion, however, DOJ disavowed any intent to disclose Amazon's subpoenaed material to criminal enforcement agencies. (*See* dkt. # 83 at 35:18-36:18.)

ORDER - 8

organizations when the SEC deems it appropriate." *R.J. Reynolds*, 2004 WL 3168281 at *12 (citing 15 U.S.C. § 78x(c); 17 C.F.R. § 240.24c-1). The court was concerned, however, that the SEC would share information with DOJ without any opportunity for the company "to contest the disclosure as being inconsistent with the SEC's securities enforcement authority." *Id.* at *13. The court required the SEC to obtain court permission *ex parte* before providing subpoenaed information to DOJ attorneys litigating against the company, to prohibit sharing "in a circumstance inconsistent with the strictures of the SEC's securities enforcement mandate." *Id.* at *12-13.

Here, the Court deems it appropriate for Amazon to have an opportunity to challenge potential disclosures as inconsistent with DOJ's authority. It is perhaps even more appropriate here than in *R.J. Reynolds* because DOJ points to no statutory language authorizing sharing subpoenaed information with other civil enforcement agencies.

DOJ cites *Sec. & Exch. Comm'n v. Dresser Indus., Inc.*, where the *en banc* D.C. Circuit affirmed the district court, vacating a panel decision that prohibited SEC from giving DOJ any subpoenaed information. 628 F.2d 1368, 1370-71 (D.C. Cir. 1980). The D.C. Circuit noted that DOJ could subpoena "directly whatever materials it might procure indirectly through the SEC" and held that, although SEC and DOJ were engaged in parallel civil and criminal investigations, prior to indictment and without evidence of SEC abusing its power, it was "an inappropriate situation to impose a 'prophylactic' rule against cooperation between the agencies." *Id.* at 1381, 1384, 1387.

Again, any statutory language like that noted in *Dresser*, authorizing SEC to share with DOJ, is lacking here. In addition, unlike in *Dresser*, there is no showing that an agency DOJ might disclose information to is able to subpoena Amazon's materials itself because DOJ

ORDER - 9

maintains it may share information with any civil enforcement agency. *See Educ. Mgmt. LLC*, 2013 WL 1568060 at *9 (distinguishing *Dresser* because "[u]nlike the situation in *Dresser*, [DOJ does] not propose to share [the company's] information with any particular agency nor is there a specific subpoena pending in this case."). And, as the court in *Educ. Mgmt. LLC* noted, permission such as DOJ seeks here "is far beyond that contemplated in *Dresser Industries*." *Id.* This Court, too, rejects DOJ's request for "blanket permission in advance of any subpoena that will permit them to disclose any portion of [Amazon's] confidential information, no matter how sensitive, to any other federal [or other] agency." *Id.*

DOJ argues no protective order is necessary or appropriate here because "Congress elected not to restrict DOJ's use of FIRREA subpoena returns." (Resp.'s Opp. at 2.) When FIRREA was enacted in 1989, Congress incorporated several sections of the civil investigative demand statute enacted in 1970 but chose not to include section (f), which provides that no subpoenaed material "shall be available for examination, without the consent of the person who produced such material, by any individual other than the Attorney General." 18 U.S.C. § 1968(f)(3); *see* Resp.'s Opp. at 11. The Court agrees that Congress' omission indicates it would be inappropriate to require Amazon's consent before DOJ could disclose information.

Establishing appropriate safeguards, however, is not inconsistent with the statutory language. The Court's authority is not limited to determining whether a subpoena is enforceable. *See F.T.C. v. Owens-Corning Fiberglas Corp.*, 626 F.2d 966, 974 (D.C. Cir. 1980) ("[J]udges should not simply rubber-stamp Commission subpoenas"); *U.S. v. Exxon Corp.*, 628 F.2d 70, 77 (D.C. Cir. 1980) ("Since the enforcement of a subpoena is an independent judicial action, and not merely an action ancillary to an earlier agency action, a court is free to change the terms of an agency subpoena as it sees fit.") (internal citation omitted). "It therefore necessarily falls

ORDER - 10

within the Court's discretion to provide additional confidentiality protections beyond those offered by the agency when it concludes that the agency, in the exercise of its discretion, has not provided safeguards sufficient to protect the interests of those at risk." *Adair*, 867 F. Supp. at 1119.

Here, by opposing any protective order, DOJ maintains it is entitled to proceed with no safeguards whatsoever.[2] Yet even the cases DOJ cites denying motions for protective order do so in part because significant safeguards already apply. *See, e.g.*, *U.S. Dep't of Educ. v. Nat'l Collegiate Athletic Ass'n*, 481 F.3d 936, 940 (7th Cir. 2007) ("the internal policies of the Department of Education seek to preserve informants' confidentiality"); *F.T.C. v. Texaco, Inc.*, 555 F.2d 862, 884 (D.C. Cir. 1977) (court "accept[ed,] with some modifications, the FTC's proposed confidentiality protection"). In the absence of such safeguards here, the Court concludes a protective order is appropriate. Accordingly, the Court addresses the parties' competing proposed orders. (*See* Pet.'s Prop. Order (dkt. # 86-1); Resp.'s Prop. Order (dkt. # 87-1).)

### C. Proposed Protective Orders

Both proposed orders provide that DOJ must give Amazon notice before disclosing Amazon's subpoenaed material. DOJ's order requires "ten days" for disclosure pursuant to a subpoena or court order and "ten business days" for voluntary disclosure. (Resp.'s Prop. Order at ¶¶ 4.4(a), 7.) Amazon's order requires "ten business days" for either situation. (Pet.'s Prop. Order at ¶¶ 3.4, 3.5.) The Court concludes ten business days' notice is appropriate here. *See, e.g.*, *Dresser Indus.*, 628 F.2d at 1389 ("Courts have held an offer of ten days notice before release of

---

[2] The Court acknowledges that beginning August 8, 2023, "DOJ agreed to provide Amazon ten days' notice before it discloses material produced by Amazon in response to a third-party demand." (Lillywhite Decl. at ¶ 17, Ex. 1 at 2.) No such offer was made with respect to DOJ's voluntary disclosure to other governmental entities.

ORDER - 11

information to be adequate protection in several cases involving business information."); *Owens-Corning Fiberglas Corp.*, 626 F.2d at 969 (rejecting further conditions where the government "committed itself to giving the company that submitted a document ten days' notice before disclosing its contents to anyone outside the [agency]").

The parties agree that if DOJ reasonably believes that giving Amazon notice would "improperly interfere with a valid enforcement purpose," DOJ may petition the Court to approve the disclosure on an *ex parte* basis. (Pet.'s Prop. Order at ¶ 3.5(b); Resp.'s Prop. Order at ¶ 4.4(b).) The Court accepts the parties' agreement on this term as well. *See, e.g.*, *R.J. Reynolds*, 2004 WL 3168281 at *14 (entering protective order "requiring the SEC to obtain, through an *ex parte* process, advance permission of this Court" before providing subpoenaed information to DOJ attorneys litigating against the company).

The Court turns next to the disputed provisions. As further explained below, the Court finds DOJ's proposed order more useful regarding many of the disputed provisions, with certain exceptions.

      1.  *Confidential Information*

Both proposals protect employees' personal information and Amazon's competitive business information. (Pet.'s Prop. Order at ¶ 2.1; Resp.'s Prop. Order at ¶ 2.) Amazon proposes, in addition, to protect: (1) "confidential documents prepared for [its] Board of Directors"; and (2) information it "determines in good faith that, if disseminated, would cause a significant harm to its competitive and financial position." (Pet.'s Prop. Order at ¶ 2.1.) Amazon further provides that its list is "illustrative, but non-exhaustive[.]" (*Id.*)

The Court concludes these additional proposed categories are not entitled to protection. The fact that a document was prepared for the Board of Directors, alone, does not implicate

ORDER - 12

employees' privacy, competitive or trade secrets, or due process rights, which are the grounds for the protective order. And the Court finds that what "Amazon determines" to be confidential is not a manageable standard that the Court can apply to any future dispute. Finally, a merely illustrative list is inconsistent with the Court's Local Civil Rules, which require specificity. (*See* LCR 26(c) (protective order may not "purport to confer blanket protection" and must extend "only to the *limited* information or items that are entitled to confidential treatment" (emphasis added)). Accordingly, the Court will use DOJ's definition of confidential information.

2. *Information Based on Confidential Information*

Amazon's proposed order tracks this Court's Model Protective Order by conferring protection on information "copied or extracted from" confidential material; "copies, excerpts, summaries, or compilations" of confidential material; and conversations "that might reveal" confidential material. (Pet.'s Prop. Order at ¶ 3.1.) DOJ proposes instead that "information derived from" or "conversations referencing or quoting portions of" confidential material are not protected. (Resp.'s Prop. Order at ¶ 3; *see also id.* at ¶¶ 4.1, 4.6.)

Copies should be treated the same as originals and a compilation is accorded no less protection than its components. Amazon's remaining provisions, however, even though they are taken from this district's Model Protective Order, do not fit in this context. Amazon has acknowledged that DOJ is permitted to discuss the substance of its confidential material with other governmental agencies, unlike in a typical litigation context. (*See* dkt. # 86 at 2 (Amazon's counsel was "not saying that [the government] can't call the Washington AG's office and talk about documents that they've seen") (quoting dkt. # 83 at 39:4-6) (alteration in original).)

In this situation, DOJ's proposed language better describes appropriate limits. To be sure, the language may not be used to elevate form over substance to circumvent the protective order.

ORDER - 13

(*See* dkt. # 86 at 2 ("[the government] would not be permitted to . . . circumvent the court's authority by saying, I can't send you this, but I'd like to read you a document") (quoting dkt. # 83 at 39:13-16) (alteration in original).) Should Amazon become aware that DOJ is attempting to circumvent the protective order, it should be brought to the Court's attention.

### 3. Retroactivity

Abandoning its prior position that all material produced to date should be designated confidential (*see* Pet.'s Reply at 3), Amazon proposes that it may designate as confidential material produced prior to the entry of a protective order within sixty days after the order is entered. (Pet.'s Prop. Order at ¶ 2.3(a).) It would do so for documents by providing DOJ a list of Bates numbers, and for deposition testimony by identifying portions of transcripts. (*Id.* at ¶ 2.3(b).) Documents that are only partially confidential would be reproduced "with appropriate markings" within thirty additional days. (*Id.* at ¶ 2.3(a).) Amazon further proposes that material produced while the Court's provisional confidentiality order (dkt. # 65) was in effect and marked "Confidential Treatment Requested by Amazon" shall be treated as confidential. (*Id.*)

DOJ contends retroactive protection is inappropriate (*see* Resp.'s Opp. at 9-10) but in the alternative proposes that Amazon may identify material produced prior to a protective order as confidential by reproducing it "with appropriate markings" within sixty days of entry of the protective order. (Resp.'s Prop. Order at ¶ 5.2(d).)

The Court finds protections for material already produced appropriate based on the parties' course of conduct. Amazon consistently requested notice prior to any disclosure, and the episode with the Washington Attorney General demonstrates that DOJ expected to, and did, provide such notice. Formalizing the protection that both parties appear to have anticipated should not hamper DOJ's investigation.

ORDER - 14

Amazon's proposal is unnecessarily complicated, however, and having multiple methods of denoting confidentiality is more likely to lead to mistakes. The Court finds DOJ's proposal is simpler and appropriately puts the burden on Amazon to designate and mark confidential material.

### 4. Sharing with OSHA

Amazon's proposed order specifies that DOJ and OSHA may not share Amazon's subpoenaed material unless Amazon has produced it to both. (Pet.'s Prop. Order at ¶ 3.2.) Amazon's proposed order would not "prevent DOJ and/or OSHA from communicating in a general manner about the contents of documents or testimony"; however, DOJ and/or OSHA could not "circumvent" the order "by quoting from or otherwise recounting the detailed contents of protected documents or testimony." (Pet.'s Prop. Order at ¶ 3.3.)

In contrast, DOJ's proposed order "shall not limit DOJ from sharing" Amazon's subpoenaed material with OSHA. (Resp.'s Prop. Order at ¶ 4.3.) Otherwise, DOJ argues the protective order "would frustrate DOJ's use of OSHA's subject-matter expertise" (Resp. Opp. at 12) and make it "difficult for DOJ" to provide OSHA legal advice (dkt. # 87 at 9).

The Court finds no reason to carve out an exception for sharing with OSHA. The same privacy, trade secret, and due process concerns are present as for any other regulatory agency DOJ might disclose confidential material to. DOJ argues OSHA has agreed to protective orders in pending proceedings in another jurisdiction and "should not be subjected to an overlapping protective order . . . supervised by another judge." (Dkt. # 87 at 5.) But such other protective order presumably covers material OSHA might disclose to DOJ, unlike the protective order here, which governs material DOJ may disclose to OSHA. The Court rejects DOJ's carveout provision (Resp.'s Prop. Order at ¶ 4.3).

5. *Jurisdiction over Future Disputes and Litigation*

The parties agree that any future filings in the instant action will comply with LCR 5(g)(3)(A). (Pet.'s Prop. Order at ¶ 3.6; Resp.'s Prop. Order at ¶ 4.5.) Because DOJ may file a complaint in another jurisdiction based on its investigation, DOJ's proposal states that the protective order "does not apply to any complaint filed by DOJ arising from its investigation" and notes that "DOJ remains subject to applicable law, including the Trade Secrets Act and the Privacy Act." (Resp.'s Prop. Order at ¶ 4.6.)

Amazon's proposal states that the protective order shall "remain in effect after the conclusion of this Action, the DOJ Investigation, the OSHA Inspections, and any Resulting Litigation" and this Court "shall retain jurisdiction to hear and resolve any disputes arising out of" the protective order. (Pet.'s Prop. Order at ¶ 5.2.)

Amazon's proposal of perpetual jurisdiction would entangle this Court unnecessarily in any future litigation before other courts. The protective order entered by this Court gives Amazon an opportunity to ensure that any disclosure by DOJ complies with the law—not additional grounds for Amazon to contest disclosure. Accordingly, if DOJ files a complaint in another jurisdiction, the appropriate court will be perfectly capable of adjudicating any disputes arising out of potential disclosures in that action.

DOJ's proposed order provides that "[t]he confidentiality obligations imposed by this Order shall remain in effect until a designating party agrees otherwise in writing or a court orders otherwise." (Resp.'s Prop. Order at ¶ 10.) This provision is consistent with the Court's Model Protective Order and avoids unnecessarily interfering with other courts adjudicating future litigation. The Court adopts DOJ's proposed provisions related to jurisdiction and future litigation.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS in part Amazon's Motion (dkt. # 53). DOJ is ORDERED to provide a clean, updated version of its proposed protective order (dkt. # 87-1) that complies with this Order by **November 17, 2023**.

The Clerk is directed to send copies of this Order to the parties and to the Honorable John C. Coughenour.

Dated this 15th day of November, 2023.

MICHELLE L. PETERSON
United States Magistrate Judge